IN THE UNITED STATES DISTRICT COURT FOR RECEIVED
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION    2006 OCT 16  A 9: 29

| | | |
|---|---|---|
| PROGRESSIVE PREFERRED INSURANCE COMPANY, | ) ) ) | DEBRA P. HACKETT, CLK. U.S. DISTRICT COURT MIDDLE DISTRICT ALA. |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NUMBER: 3:06-CV-934-WKW |
| JMP ENTERPRISES, INC.; JOHN MARK PARKER; and JENNIFER M. GOLDEN, | ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

### PARTIES AND JURISDICTIONAL ALLEGATIONS

1.      The plaintiff, Progressive Preferred Insurance Company ("Progressive"), is an insurance company incorporated and organized under the laws of the state of Ohio, having its principal place of business in the state of Ohio.

2.      The defendant, JMP Enterprises, Inc. ("JMP"), is corporation incorporated and organized under the laws of the state of Georgia, having its principal place of business in LaGrange, Georgia.  Its owner is the defendant, John Mark Parker ("Parker"), who is an individual over the age of 19 years and is a resident citizen of the state of Georgia.

3.    The defendant, Jennifer M. Golden ("Golden"), is the plaintiff in an underlying state court case.  She is over the age of 19 years and is a resident citizen of the state of Alabama.

4.    The amount in controversy exceeds, exclusive of interest and cost, the sum of $75,000.  Golden is seeking an unspecified amount of compensatory and punitive damages as the result of the damages to her mobile home as well as fraudulent representations relating to it.

5.    Jurisdiction is predicted on diversity of citizenship and the amount in controversy, 28 U.S.C. §1332, and on the Declaratory Judgment Act, 28 U.S.C. §2201.

UNDERLYING COMPLAINT

6.    Golden filed a complaint against Parker and an amended complaint against JMP as well as other defendants arising out of the purchase of her mobile home from Deer Valley Homebuilders, Inc. on April 27, 2005.  The complaint is styled Jennifer M. Golden v. Deer Valley Homebuilders, Inc., et al., in the Circuit Court of Lee County, Alabama, civil action number CV-2006-106. A true and correct copy of the complaint is attached as exhibit "A" and incorporated by reference.  Progressive will amend its complaint to attach the amended complaint when it is received by it.

7.    The complaint seeks damages against JMP and Parker in count XII for negligent delivery and installation of the mobile home. It seeks damages in count XIII for wanton delivery and installation of the mobile home. It seeks damages in count XIV for breach of implied warranty that the home would not be damaged during delivery and installation. It seeks damages in damages in count XV for fraudulent failure to disclose that JMP and Parker were not properly licensed to install mobile homes.

## POLICY PROVISIONS

8.    Progressive issued a policy of commercial automobile insurance to JMP. The policy number was 08263817-0. The policy was in effect from August 1, 2004 to August 1, 2005. Progressive is attaching a certified copy of its policy as exhibit "B".

9.    The policy provided liability coverage for compensatory damages which JMP and Parker were liable because of an "accident".

10.    The term "accident" was defined in definition eight to generally mean a sudden, unexpected and unintended event that causes damage and arising out of the "ownership, maintenance or use of your insured auto." The term "your insured auto" was defined in definition nine to include any auto described on the declarations page.

11.    The policy excluded coverage in exclusion one for expected or intended damages. It excluded coverage in exclusion nine for property damage to any property being transported or in the charge of the insured. It excluded coverage in exclusion ten for property damage caused by the loading or unloading of property.

## JUSTICIABLE CONTROVERSY

12.    It is Progressive's position that JMP and Parker are not entitled to coverage under the Progressive policy. The damage to Golden's mobile home was not caused by an "accident" as that term is defined in the policy which includes a requirement that the damage arise out of the ownership, maintenance or use of the insured auto.

13.    Further, coverage is excluded by the exclusions in the policy, including the exclusion for contractual liability in exclusion two.

14.    Finally, the Progressive policy does not cover punitive damages.

15.    There is a judicable controversy which requires the court to declare the rights and obligations of the parties under the Progressive policy.

## REQUESTED RELIEF

WHEREFORE, the premises considered, Progressive requests the court to grant the following relief:

A.     Declare that the Progressive policy does not provide liability coverage for JMP and Parker for the allegations of the complaint as amended; and

B.     Grant Progressive such other or different relief to which it may be entitled in this case.

_R. Larry Bradford_
R. Larry Bradford, Attorney for Plaintiff,
Progressive Preferred Insurance Company
Attorney Bar Code: BRA039

OF COUNSEL:

Bradford & Sears, P.C.
2020 Canyon Road
Suite 100
Birmingham, AL 35216
(205)871-7733

## CERTIFICATE OF SERVICE

I hereby certify that I have this the _12_ day of October, 2006, served a copy of the foregoing to all attorneys of record by placing a copy of same in the United States Mail, postage prepaid and properly addressed as follows:

G. Houston Howard, Esq.
Howard, Dunn, Howard & Howard
P.O. Box 1148
Wetumpka, Alabama 36092

_____
OF COUNSEL


**DEFENDANT SERVED BY CERTIFIED MAIL:**

Mr. John Mark Parker
P.O. Box 3501
LaGrange, Georgia 30242

JMP Enterprises, Inc.
2205 Greenville Road
LaGrange, Georgia 30242

# Exhibit
## "A"

IN THE CIRCUIT COURT OF LEE COUNTY



JENNIFER M. GOLDEN,
PLAINTIFF,

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

v.

CASE NO. 2006- 106

DEER VALLEY HOMEBUILDERS, INC.,
a CORPORATION; TIMBERLINE HOMES, INC.,
a corporation; JOHN MARK PARKER,
an individual,
    DEFENDANTS

## COMPLAINT

1.   The plaintiff is an individual residing at 2999 Lee Road 17, Opelika, AL.

2.   Timberline Homes, Inc., is a corporation engaged in the business of selling manufactured homes. Its registered agent for service of process is Michael K. Morris, 1251 South Boulevard, Brewton, AL 36426

3.   John Mark Parker is an individual engaged in the business of installing manufactured homes. His address is P. O. Box 3501, La Grange, Ga. 30241.

4.   Deer Valley Homebuilders, Inc., is a corporation engaged in the business of constructing manufactured homes. Its address for service of process is P.O. 310 Guin, Alabama 35563.

## CLAIMS AGAINST DEER VALLEY
## COUNT I: BREACH OF EXPRESS WARRANTY

5.   On or about April 27, 2005, the plaintiff purchased a home manufactured by Deer Valley.

6.   Deer Valley had manufactured the home specifically for the plaintiff.

7.   The plaintiff purchased the home for her personal, family, or household use.

8. Deer Valley expressly warranted to the plaintiff by written warranty that the home was free from manufacturing defects in material or workmanship and that it would repair any such defects.

9. The home contained substantial manufacturing defects.

10. The plaintiff gave Deer Valley notice of this breach of warranty as provided in the warranty or Deer Valley has waived any failure to give notice as provided in the warranty.

11. Deer Valley attempted to make repairs on some items, but has failed to repair the home properly and has failed to complete repairs. As a result, Deer Valley has breached the warranty, and the warranty has failed of its essential purpose.

12. As a proximate consequence of this defendant's breach of warranty, the plaintiff has suffered annoyance, inconvenience, and mental anguish, and the value of the home is less than it would have been if the home had been as warranted and if the defendant had performed according to its warranty.

## COUNT II: BREACH OF IMPLIED WARRANTY

13. On or about April 27, 2005, the plaintiff purchased a manufactured home constructed by Deer Valley.

14. Deer Valley manufactured the home specifically for the plaintiff.

15. The plaintiff purchased the home for her personal, family, or household use.

16. Pursuant to section 7-2-314 of the Alabama Code and section 2308(a) of title fifteen of the United States Code, the defendant impliedly warranted to the plaintiff that the home was merchantable, that it was habitable, that it was free from defects, and that it would meet the ordinary expectations of a consumer concerning a new product.

2.

17. The home contained substantial defects upon delivery to the plaintiff.

18. The plaintiff gave Deer Valley notice of this breach of warranty, and Deer Valley failed or refused to repair some defects and failed to repair properly other defects.

19. As a proximate consequence of Deer Valley's breach of warranty, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been as warranted and if Deer Valley had performed according to its warranty.

## COUNT III: VIOLATION OF MAGNUSON MOSS ACT

20. The plaintiff incorporates herein the allegations of counts one and two.

21. This defendant's conduct described therein is a violation of the Magnuson Moss Warranty Act.

## COUNT IV: NEGLIGENT REPAIR

22. Deer Valley undertook to repair certain defects in the plaintiff's home.

23. Deer Valley negligently performed this undertaking.

24. As a proximate consequence of Deer Valley's negligence, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been properly repaired.

## COUNT V: WANTON REPAIR

25. Deer Valley undertook to repair certain defects in the plaintiff's home.

26. Deer Valley wantonly performed its undertaking.

27. Deer Valley consciously and deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff.

3

28. With respect to any conduct herein for which a principal or employer is to be held liable for the wrongful conduct of an agent, servant or employee, the plaintiff alleges that the principal knew or should have known of the unfitness of the agent, servant, or employee, and employed him or continued to employ him or continued to use his services without proper instruction or with a disregard of the rights or safety of others; or authorized the wrongful conduct; or ratified the wrongful conduct; or the act of the agent, servant, or employee was calculated to or did benefit the principal or employer.

29. As a proximate consequence of Deer Valley's wantonness, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been properly repaired.

WHEREFORE, the plaintiff demands judgment against Deer Valley Homebuilders, Inc. for such compensatory and punitive damages, in excess of $10,000, as a jury may award.

## CLAIMS AGAINST TIMBERLINE
## COUNT VI: BREACH OF IMPLIED WARRANTY

30. On or about April 27, 2005, the plaintiff purchased from Timberline a home constructed by Deer Valley.

31. The plaintiff purchased the home for their personal, family, or household use.

32. Pursuant to section 7-2-314 of the Alabama Code, Timberline impliedly warranted to the plaintiff that the home was merchantable, that it was habitable, that it was free from substantial defects, and that it would meet the ordinary expectations of a consumer concerning a new product.

33. The home contained substantial defects.

34. The plaintiff gave Timberline notice of this breach of warranty, and it failed or refused to repair the defects.

35. As a proximate consequence of Timberline's breach of warranty, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been as warranted and if the defendant had performed according to its warranty.

## COUNT VII: BREACH OF IMPLIED WARRANTY

36. Prior to April 27, 2005, the plaintiff contracted to purchase from Timberline a home constructed by Deer Valley.

37. The plaintiff contracted to purchase the home for her personal, family, or household use.

38. As part of the purchase, Timberline agreed to deliver and set up the home.

39. Timberline impliedly warranted to the plaintiff that home would not be damaged in delivery and that the home would be properly set and installed.

40. The defendant breached such implied warranties in that it, or persons acting on its behalf, damaged the home in delivery, installation, and set up and failed to install properly the home.

41. The plaintiffs gave Timberline notice of this breach of warranty, and it failed or refused to repair the defects.

42. As a proximate consequence of this defendants' breach of warranty, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been as warranted and if the defendant had performed according to its warranty.

5

## COUNT VIII: VIOLATION OF MAGNUSON MOSS ACT

43. The plaintiff incorporates herein the allegations of the last two counts.

44. The conduct of Timberline described therein constitutes a violation of the Magnuson Moss Act.

## COUNT IX: NEGLIGENT DELIVERY AND SET UP

45. Timberline undertook to deliver and install the plaintiff's home.

46. Timberline negligently performed this undertaking.

47. As a proximate consequence of the negligence of Timberline, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been properly delivered and installed.

## COUNT X: WANTON DELIVERY AND SET UP

48. Timberline undertook to deliver and install the plaintiff's home.

49. Timberline wantonly performed this undertaking.

50. The defendant consciously and deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiffs.

51. With respect to any conduct herein for which a principal or employer is to be held liable for the wrongful conduct of an agent, servant, or employee, the plaintiff alleges that the principal knew or should have known of the unfitness of the agent, servant, or employee, and employed him or continued to employ him or continued to use his services without proper instruction or with a disregard of the rights or safety of others; or authorized the wrongful conduct; or ratified the wrongful conduct; or the act of the agent, servant, or employee was calculated to or did benefit the principal or employer.

6

52. As a proximate consequence of the wantonness of Timberline, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been properly delivered and installed.

## COUNT XI: FRAUD BY FAILURE TO DISCLOSE

53. The plaintiff incorporates herein the allegations of counts six, seven, nine and ten.

54. Timberline innocently, negligently, wantonly, or intentionally withheld, concealed, and failed to disclose to the plaintiffs certain material facts that it was under a duty to communicate to the plaintiffs based upon a confidential relationship between the parties or the particular facts of the case; namely, that Parker was not licensed, as required by law, to install manufactured homes.

55. In reasonable reliance on the defendants, the plaintiff purchased a home from Timberline and made no objection to Parker's installing it.

56. The defendant consciously and deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff.

57. With respect to any conduct herein for which a principal or employer is to be held liable for the wrongful conduct of an agent, servant, or employee, the plaintiff alleges that the principal knew or should have known of the unfitness of the agent, servant, or employee, and employed him or continued to employ him or continued to use his services without proper instruction or with a disregard of the rights or safety of others; or authorized the wrongful conduct; or ratified the wrongful conduct; or the act of the agent, servant, or employee was calculated to or did benefit the principal or employer.

7

58. As a proximate consequence of Timberline's failure to disclose, the plaintiff has suffered annoyance, inconvenience, and mental anguish, and the value of the home is less than it otherwise would have been.

WHEREFORE, the plaintiff demand judgment against Timberline Homes, Inc., for such compensatory and punitive damages, in excess of $10,000, as a jury may award.

### CLAIMS AGAINST GERALD MARK PARKER
### COUNT XII: NEGLIGENT DELIVERY AND INSTALLATION

59. Parker, acting by and through his agents, servants, and employees, undertook to deliver and install the plaintiff's home

60. Parker negligently performed this undertaking.

61. As a proximate consequence of Parker's negligence, the home was damaged; the plaintiff has suffered annoyance, inconvenience, and mental anguish; and the value of the home is now less than it otherwise would have been.

### COUNT XIII: WANTON DELIVERY AND INSTALLATION

62. Parker, acting by and through his agents, servants, and employees, undertook to deliver and install the plaintiff home.

63. This defendant wantonly performed this undertaking.

64. This wantonness included, among other things, this defendant's failure to protect the home from rain during installation.

65. This defendant consciously and deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff.

66. With respect to any conduct herein for which a principal or employer is to be held liable for the wrongful conduct of an agent, servant or employee, the plaintiff allege that the principal knew or should have known of the unfitness of the agent, servant, or

or the particular facts of the case; namely, that he was not licensed, as required by law, to install manufactured homes.

75.  In reasonable reliance on the defendants, the plaintiff purchased a home from Timberline and made no objection to Parker's installing it.

76.  The defendant consciously and deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff.

77.  With respect to any conduct herein for which a principal or employer is to be held liable for the wrongful conduct of an agent, servant, or employee, the plaintiff alleges that the principal knew or should have known of the unfitness of the agent, servant, or employee, and employed him or continued to employ him or continued to use his services without proper instruction or with a disregard of the rights or safety of others; or authorized the wrongful conduct; or ratified the wrongful conduct; or the act of the agent, servant, or employee was calculated to or did benefit the principal or employer.

78.  As a proximate consequence of Parker's failure to disclose, the plaintiff has suffered annoyance, inconvenience, and mental anguish, and the value of the home is less than it otherwise would have been.

WHEREFORE, the plaintiff demands judgment against Gerald Mark Parker for such compensatory and punitive damages, in excess of $10,000, as a jury may award.

HOWARD, DUNN, HOWARD & HOWARD,
Attorneys for Plaintiff

By _____
G. Houston Howard II (HOW15)

16

employee, and employed him or continued to employ him or continued to use his services without proper instruction or with a disregard of the rights or safety of others; or authorized the wrongful conduct; or ratified the wrongful conduct; or the act of the agent, servant, or employee was calculated to or did benefit the principal or employer.

67. As a proximate consequence of Parker's wantonness, the home was damaged; the plaintiff has suffered annoyance, inconvenience, and mental anguish; and the value of the home is less than it otherwise would have been.

### COUNT XIV: BREACH OF IMPLIED WARRANTY

68. Parker, acting by and through his agents, servants, and employees, undertook to deliver and install the plaintiff's home.

69. Parker impliedly warranted to the plaintiff that the home would not be damaged during delivery and installation and would be properly set and installed.

70. Parker, acting by and through his agents, servants, and employees damaged the home in delivery and installation.

71. The plaintiff gave Parker notice of the damage, and he has failed to correct it.

72. As a proximate consequence of Parker' breach of warranty, the home was damaged; the plaintiff has suffered annoyance, inconvenience, and mental anguish; and the value of the home is less than it otherwise would have been.

### COUNT XV: FRAUD BY FAILURE TO DISCLOSE

73. The plaintiff incorporates herein the allegations of last three counts.

74. Parker innocently, negligently, wantonly, or intentionally withheld, concealed, and failed to disclose to the plaintiff certain material facts that he was under a duty to communicate to the plaintiff based upon a confidential relationship between the parties

9

OF COUNSEL:
G. HOUSTON HOWARD II
HOWARD, DUNN, HOWARD & HOWARD
P. O. BOX 1148
WETUMPKA, AL 36092
(334) 567-4356

PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL ISSUES.

_____
    G. Houston Howard II

PLAINTIFF REQUESTS SERVICE ON ALL DEFENDANTS BY CERTIFIED MAIL.

_____
    G. Houston Howard II

11

**PROGRESSIVE**

UNIVERSITY AGCY INC
PO BOX 3557
AUBURN AL 36831

Named Insured

JMP ENTERPRISES, INC
PO BOX 3501
LAGRANGE, GA 30241

**Policy number: 08263817-0**
Progressive Preferred Insurance Company
January 5, 2005
Policy Period: Aug 1, 2004 - Aug 1, 2005
Page 1 of 2

**personal.progressive.com**
Make payments, check billing activity or check
status of a claim

**334-887-6569**
**UNIVERSITY AGCY INC**
Contact your agent during business hours.

**800-444-4487**
For policy service and claims service,
24 hours a day, 7 days a week.

## Commercial Auto
## Insurance Coverage Summary
### This is your Declarations Page
### Your coverage has changed

Your coverage began the later of August 1, 2004 at 12:01 a.m. or at the time your application is executed on the first day of the policy period. This policy period ends on August 1, 2005 at 12:01 a.m.

This coverage summary replaces your prior one. Your insurance policy and any policy endorsements contain a full explanation of your coverage. The policy limits shown for an auto may not be combined with the limits for the same coverage on another auto, unless the policy contract allows the stacking of limits. The policy contract is form 1050 (11-54). The contract is modified by forms 1602 (08/83), 1857 (03/96), 6931 (04/89), 2012 (03/96), 8282 (04/84), 9470 (12/86), 4792A (01/03), 1197 (08/93), ME1632 (06/71), 9809 (04/96) and 8627 (03/88).

The named insured organization type is a corporation.

## Policy changes effective January 4, 2005

| | |
|---|---|
| Premium change | $0.00 |
| Changes: | The lienholder information on this policy has changed. |

The changes shown above will not be effective prior to the time the changes were requested.

## Outline of coverage

| Description | Limits | Deductible | Premium |
|---|---|---|---|
| Liability To Others | | | $8,353 |
| Bodily Injury and Property Damage Liability | $1,000,000 combined single limit | | |
| Uninsured/Underinsured Motorist | $25,000 each person/$50,000 each accident | | 84 |
| Uninsured Motorist Property Damage | $25,000 each accident | $250 | 44 |
| Medical Payments | $2,000 each accident | | 60 |
| Comprehensive | | | 451 |
| See Schedule Of Covered Autos | Limit of liability less deductible | | |
| Collision | | | 2,188 |
| See Schedule Of Covered Autos | Limit of liability less deductible | | |
| **Subtotal policy premium** | | | **$11,180** |
| Fees | | | 150 |
| **Total 12 month policy premium** | | | **$11,330** |

## Rated drivers

1. JOHN PARKER
2. JILL PARKER

CERTIFIED COPY
THIS WILL CERTIFY THAT THE
ATTACHED IS A TRUE AND CORRECT COPY
OF THE ORIGINAL
Stephanie Meehan
CUSTODIAN OF RECORDS

Form 4409 (04/00)

## Auto coverage schedule

**1.**  **1992 Intl 810**
VIN: 1HSHBA7N2NH443814      Stated Amount: $75,000   Garaging Zip Code: 30240   Radius: 100

| Liability Premium | Liability | UM/UIM BI | UM PD | Med Pay | | |
|---|---|---|---|---|---|---|
| | $4,836 | $42 | $22 | $25 | | |

| Physical Damage Premium | Comp Deductible | Comp Premium | Collision Deductible | Collision Premium | | Auto Total |
|---|---|---|---|---|---|---|
| | $1,000 | $242 | $1,000 | $1,092 | | **$6,259** |

**2.**  **NON Owned Attached Trlr ***
VIN: NONE      Garaging Zip Code: 30240   Radius: 100

| Liability Premium | Liability | | | | | Auto Total |
|---|---|---|---|---|---|---|
| | $1,107 | | | | | **$1,107** |

**3.**  **2000 Ford F650 Super Duty**
VIN: 3FDNW65A0YMA03102      Stated Amount: $28,000   Garaging Zip Code: 30240   Radius: 100

| Liability Premium | Liability | UM/UIM BI | UM PD | Med Pay | | |
|---|---|---|---|---|---|---|
| | $2,420 | $42 | $22 | $35 | | |

| Physical Damage Premium | Comp Deductible | Comp Premium | Collision Deductible | Collision Premium | | Auto Total |
|---|---|---|---|---|---|---|
| | $1,000 | $219 | $1,000 | $1,025 | | **$3,814** |

* Non-Owned trailer but only while attached to a listed power unit specifically described on the declarations page

## Lienholder information

We will send certain notices such as coverage summaries and cancellation notices to the following:

| 1. | Lienholder | Auto 1 | CHARTER BANK<br>PO BOX 570 WEST POINT, GA 31833<br>1992 Intl 810 (1HSHBA7N2NH443814) |
|---|---|---|---|
| 2. | Lienholder | Auto 3 | CHARTER BANK<br>PO BOX 570 WESTPOINT, GA 31833<br>2000 Ford F650 Super Duty (3FDNW65A0YMA03102) |

Form 6463 (25.0.0)

# Exhibit "B"

*1050 1194*





COMMERCIAL
AUTO POLICY

Form No. 1050 (11-94)
© 1995 The Progressive Corporation. All Rights Reserved.

**WE'RE HERE FOR YOU!**

Our Immediate Response®

claims service

and 24 Hour Policy Service

are available 24 hours a day,

7 days a week.

To report a claim, call

**1-800-274-4499**

For policy service, call

**1-800-444-4487**

**INDEX OF POLICY PROVISIONS**

**PAGE**

**YOUR DUTIES IN CASE OF**
**ACCIDENT OR LOSS** . . . . . . . . . . . . . . . . . . . .1
    Notice of Accident or Loss . . . . . . . . . . . . . . . 1
    Other Duties . . . . . . . . . . . . . . . . . . . . . . . . . .1

**GENERAL DEFINITIONS** . . . . . . . . . . . . . . . . .3

**ADDITIONAL PREMIUM AGREEMENT** . . . . . . . .8

**PART I - LIABILITY TO OTHERS** . . . . . . . . . . . . .9
    Coverage A - Bodily Injury . . . . . . . . . . . . . . .9
    Coverage B - Property Damage . . . . . . . . . . . .9
    Additional Definitions . . . . . . . . . . . . . . . . . . .10
    Additional Payments . . . . . . . . . . . . . . . . . . .10
    Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . .11
    Limit of Liability . . . . . . . . . . . . . . . . . . . . . . .16
    Coverage Required by Filings . . . . . . . . . . . .16
    Other Insurance . . . . . . . . . . . . . . . . . . . . . .18

**PART II - EXPENSES FOR MEDICAL**
**SERVICES TO INSUREDS** . . . . . . . . . . . . . . . .19
    Coverage C - Medical Payments . . . . . . . . . .19
    Additional Definitions . . . . . . . . . . . . . . . . . . .19
    Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . 20
    Limit of Liability . . . . . . . . . . . . . . . . . . . . . . .21
    Other Insurance . . . . . . . . . . . . . . . . . . . . . . 22

**PART III - DAMAGE TO YOUR AUTO** . . . . . . . . 22
    Coverage D - Comprehensive . . . . . . . . . . . . 22
    Coverage E - Collision . . . . . . . . . . . . . . . . .23
    Coverage F - Fire and Theft with
      Combined Additional Coverage (CAC) . . . .23
    Additional Definitions . . . . . . . . . . . . . . . . . . 24
    Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . 24
    Limit of Liability . . . . . . . . . . . . . . . . . . . . . . .26
    No Benefit to Bailee . . . . . . . . . . . . . . . . . . 27
    Appraisal . . . . . . . . . . . . . . . . . . . . . . . . . .27
    Payment of Loss . . . . . . . . . . . . . . . . . . . . . 28
    Other Insurance . . . . . . . . . . . . . . . . . . . . . . 29

## INDEX OF POLICY PROVISIONS (CONT'D)

**PAGE**

**PART IV - GENERAL PROVISIONS** . . . . . . . . . . 29

    Policy Period . . . . . . . . . . . . . . . . . . . . . . 29

    Changes . . . . . . . . . . . . . . . . . . . . . . . . . 29

    Two or More Autos Insured . . . . . . . . . . . . . 29

    Suit Against Us . . . . . . . . . . . . . . . . . . . . . . 29

    Our Recovery Rights . . . . . . . . . . . . . . . . . 30

    Assignment . . . . . . . . . . . . . . . . . . . . . . . . 30

    Waiver . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

    Bankruptcy . . . . . . . . . . . . . . . . . . . . . . . . 31

    Inspection and Audit . . . . . . . . . . . . . . . . . 31

    Fraud and Misrepresentation . . . . . . . . . . . . 31

    Terms of Policy Conformed to Statutes . . . . . 32

**CANCELLATION OF THIS POLICY** . . . . . . . . . 32

**NONRENEWAL OF THIS POLICY** . . . . . . . . . . 33

## WE'RE HERE FOR YOU!

Our Immediate Response*

claims service

and 24 Hour Policy Service

are available 24 hours a day,

7 days a week.

To report a claim, call:

**1-800-274-4499**

For policy service, call:

**1-800-444-4487**

## INDEX OF POLICY PROVISIONS

PAGE

**YOUR DUTIES IN CASE OF**
**ACCIDENT OR LOSS** . . . . . . . . . . . . . . . . . . . .1
    Notice of Accident or Loss . . . . . . . . . . . . . . . .1
    Other Duties . . . . . . . . . . . . . . . . . . . . . . . . . . .1

**GENERAL DEFINITIONS** . . . . . . . . . . . . . . . . .3

**ADDITIONAL PREMIUM AGREEMENT** . . . . . . .8

**PART I - LIABILITY TO OTHERS** . . . . . . . . . . . .9
    Coverage A - Bodily Injury . . . . . . . . . . . . . . .9
    Coverage B - Property Damage . . . . . . . . . . . .9
    Additional Definitions . . . . . . . . . . . . . . . . . . .10
    Additional Payments . . . . . . . . . . . . . . . . . . . 10
    Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . .11
    Limit of Liability . . . . . . . . . . . . . . . . . . . . . . .16
    Coverage Required by Filings . . . . . . . . . . . .16
    Other Insurance . . . . . . . . . . . . . . . . . . . . . . .18

**PART II - EXPENSES FOR MEDICAL**
**SERVICES TO INSUREDS** . . . . . . . . . . . . . . . .19
    Coverage C - Medical Payments . . . . . . . . . .19
    Additional Definitions . . . . . . . . . . . . . . . . . . .19
    Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . .20
    Limit of Liability . . . . . . . . . . . . . . . . . . . . . . .21
    Other Insurance . . . . . . . . . . . . . . . . . . . . . . .22

**PART III - DAMAGE TO YOUR AUTO** . . . . . . . .22
    Coverage D - Comprehensive . . . . . . . . . . . .22
    Coverage E - Collision . . . . . . . . . . . . . . . . . .23
    Coverage F - Fire and Theft with
        Combined Additional Coverage (CAC) . . . .23
    Additional Definitions . . . . . . . . . . . . . . . . . . .24
    Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . .24
    Limit of Liability . . . . . . . . . . . . . . . . . . . . . . .26
    No Benefit to Bailee . . . . . . . . . . . . . . . . . . . .27
    Appraisal . . . . . . . . . . . . . . . . . . . . . . . . . . . .27
    Payment of Loss . . . . . . . . . . . . . . . . . . . . . . .28
    Other Insurance . . . . . . . . . . . . . . . . . . . . . . .29

## INDEX OF POLICY PROVISIONS (CONT'D)

PAGE

**PART IV - GENERAL PROVISIONS** . . . . . . .29
   Policy Period . . . . . . . . . . . . . . . . . . . . . . .29
   Changes . . . . . . . . . . . . . . . . . . . . . . . . . .29
   Two or More Autos Insured . . . . . . . . . . . . 29
   Suit Against Us . . . . . . . . . . . . . . . . . . . . 29
   Our Recovery Rights . . . . . . . . . . . . . . . . 30
   Assignment . . . . . . . . . . . . . . . . . . . . . . . 30
   Waiver . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
   Bankruptcy . . . . . . . . . . . . . . . . . . . . . . . 31
   Inspection and Audit . . . . . . . . . . . . . . . 31
   Fraud and Misrepresentation . . . . . . . . . . 31
   Terms of Policy Conformed to Statutes . . . . 32

**CANCELLATION OF THIS POLICY** . . . . . . . . . .32

**NONRENEWAL OF THIS POLICY** . . . . . . . . . . .33

## POLICY AGREEMENT

If **you** pay **your** premium when due, **we** agree to insure **you**, based upon the warranties and representations made by **you** in **your** application, subject to all of the terms of this Policy including all applicable endorsements attached to this Policy and shown in the Declarations. The Declarations and **your** application are a part of this Policy.

---

## YOUR DUTIES IN CASE OF AN ACCIDENT OR LOSS

### Notice of Accident or Loss

In the event of an **accident or loss**, report it to **us** as soon as practicable by calling **our** toll-free claims reporting number 1-800-274-4499. The report should give the time, place and circumstances of the **accident or loss**, including the names and addresses of any injured persons and witnesses, and the license plates of the vehicles involved.

**You** should also notify the police within twenty-four (24) hours or as soon as practicable if:
a.    a hit-and-run **auto** is involved; or
b.    theft or vandalism has occurred.

All **accidents** or **losses** should be reported even if an insured person is not at fault.

### Other Duties

Any person claiming coverage under this Policy must:

1.    cooperate with and assist **us** in any matter concerning a claim or lawsuit;

2.    provide any sworn or written proof of loss that **we** require before payment of a loss;

3.    provide **us** with signed or recorded statements under oath as often as **we** may reasonably require;

1

4.  promptly send **us** any and all legal papers received relating to any claim or lawsuit;

5.  attend hearings and trials as **we** require;

6.  submit to medical examination at **our** expense by doctors **we** select as often as **we** may reasonably require;

7.  authorize **us** to obtain medical and other records which **we** deem appropriate;

8.  authorize **us** access to **your** business or personal records as often as **we** deem necessary;

9.  provide **us** with written notice of any legal action which such person has undertaken in regard to the **accident** for which coverage is sought;

10. assume no obligation, make no payment or incur no expense without **our** consent, except at **your** own cost;

11. convey title to and possession of the damaged, destroyed, or stolen property to **us** if **our** payment is based on a total loss or constructive total loss of the property; a constructive total loss occurs when the cost of repairs exceeds the lesser of the actual cash value of the damaged property immediately before the **loss**, or the limit of liability of the damaged property as indicated in the Policy.

In addition to the above, a person claiming coverage under PART III - DAMAGE TO **YOUR AUTO** must:

1.  take reasonable steps after a **loss** to protect the **insured auto** and its equipment from further **loss**, provided that **we** shall pay reasonable expenses incurred in providing that protection, provided further that if **you** fail to do so, any further damages will not be covered under this Policy.

2

2.  keep a record of **your** expenses for consideration in the settlement of a claim;

3.  report the theft or vandalism of the **insured auto** to the police within twenty-four (24) hours of the **accident**;

4.  allow **us** to inspect and appraise the **insured auto** before repair or disposal.

## GENERAL DEFINITIONS

The following words and phrases have special meaning when used in **bold** throughout this Policy and in the endorsements unless specifically modified.

1.  "**We**", "**us**" and "**our**" mean the Company providing this insurance as shown in the Declarations.

2.  "**You**" and "**your**" mean:

    a.  if the policy is issued in the name of an individual, the person shown in the Declarations as the named insured; or

    b.  the organization shown in the Declarations as the named insured.

3.  "**Bodily injury**" means physical injury to or sickness, disease or death of any person. **Bodily injury** does not include harm, sickness, disease or death arising out of a medically defined communicable disease contracted by any person, nor the exposure of such a disease by any person to any other person.

4.  "**Property damage**" means damage to or destruction of tangible property, including loss of its use.

5.  "**Auto**" means a land motor vehicle or **trailer** designed for travel on public roads. It does not include **mobile equipment**.

3

6. "Trailer" includes a semi-trailer and any piece of equipment used to convert a semi-trailer to a full trailer while it is attached to the semi-trailer.

7. "Mobile equipment" means any of the following types of equipment, including but not limited to any attached machinery:

   a. Equipment such as: Bulldozers, power shovels, cranes, rollers, booms, winches, graders, diggers, mixers, compressors, generators, drills, welders, pumps, farm implements and machinery, forklifts, shredders or other similar specialized equipment.

   b. Vehicles you use solely on premises you own or rent and on accesses to public roads from these premises, unless listed in the declarations of this policy and not defined as mobile equipment under other parts of this definition.

   c. Any vehicle designed for customary use off public roads or those which do not require licensing in the state in which you live or your business is licensed.

   d. Vehicles, whether self-propelled or not, used primarily to provide mobility to permanently attached equipment including, but not limited to: Air compressors, pumps, generators, spraying, welding, cleaning, lighting, geophysical exploration and well servicing equipment, cherry pickers or other devices used to raise or lower workers, snow removal equipment, or road maintenance equipment.

   e. Vehicles used primarily for purposes other than transportation of persons

4

or cargo. However, self-propelled vehicles with permanently attached equipment listed below are not mobile equipment but will be considered autos:

   1) Snow removal, road maintenance and street cleaning equipment.

8. "Accident" means a sudden, unexpected and unintended event, or a continuous or repeated exposure to that event, that causes bodily injury or property damage and arises out of the ownership, maintenance or use of your insured auto.

9. "Your insured auto" or "insured auto" means:

   a. Any auto described in the Declarations or any replacement auto. The same coverages and limits will apply to the replacement auto as applied to the auto being replaced, until you notify us. You must, however, notify us within 30 days of replacement for coverage to continue to apply. Once ownership in the original auto is transferred or it becomes permanently inoperable, this policy no longer applies to it.

   b. Any additional auto of which you acquire ownership during the policy period provided that: 1) if the auto is used in your business, we must insure all other autos you own and that have been used in your business, and 2) if the auto is not used in your business, we must insure all other autos you own. The same coverages and limits will apply to the additionally acquired auto as apply to your other autos on the policy, except that:

5

1) For coverage to apply to the additional **auto** under PART I - LIABILITY TO OTHERS and PART II - EXPENSES FOR MEDICAL SERVICES TO IN-SUREDS, **you** must notify **us** within 30 days of its acquisition. If **you** have not notified **us** of an additional **auto** and an **accident** occurs within 30 days of **your** acquisition, only those coverages and limits for Parts I and II shown in **your** most current declarations will apply.

2) For coverage to apply to the additional **auto** under PART III - DAMAGE TO YOUR AUTO, **you** must have notified **us** of the **auto** prior to any **accident** or loss.

c. Any **non-owned auto** while **you** or an employee of **yours** is temporarily driving it as a substitute for any other **auto** described in this definition because of its withdrawal from normal use for a period of not greater than 30 days without notification to **us** due to breakdown, repair, servicing, loss, or destruction. Coverage for PART III - DAMAGE TO YOUR AUTO does not apply to these temporary substitute **autos**.

d. **Trailers** designed primarily for travel on public roads, even if such **trailers** are not shown in the Declarations, but only while upon a public road and connected to **your insured auto**. However, no coverage shall be provided for a **trailer** under PART III - DAMAGE TO YOUR AUTO, unless the appropriate premium has been paid for that coverage for such **trailer**.

e. **Mobile equipment**, even if not shown in the Declarations, but only if

6

it is permanently attached to **your insured auto** and **your insured auto** is in transit on a public roadway.

10. "**Replacement auto**" means any **auto** which **you** have acquired ownership of during the current policy term that has taken the place of an **auto** described in the Declarations due to:

a. termination of **your** ownership of the **auto** described in the Declarations; or

b. mechanical breakdown, deterioration or loss of the **auto** described in the Declarations, rendering it permanently inoperable.

11. "**Non-owned auto**" means any **auto** which is:

a. not owned by or registered to **you**, **your** nonresident spouse or a resident of the household in which **you** reside;

b. not hired, owned or borrowed from **your** employees or members of their households; or

c. Not hired by **you** or an employee of **yours**, and if **you** are a person, not hired by a resident of the household in which **you** reside unless it is specifically listed on the policy Declarations.

12. "**Occupying**" means in, on, getting into, getting off, or getting out of.

13. "**State**" means the District of Columbia and any state, territory or possession of the United States and any province of Canada.

14. "**Relative**" means, if **you** are a person, any other person living in the household

7

in which **you** reside who is related to **you** by blood, marriage or adoption, including a ward or foster child.

15. "**Loss**" means sudden, direct and accidental destruction of, theft or damage to **your insured auto**.

16. "**Actual cash value**" means the amount it would cost to replace the stolen or damaged property with property of like kind and quality. In the event replacement property of like kind and quality is unavailable, allowances can be made for the difference in value between the replacement and damaged property.

17. "**Pollutants**" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

## ADDITIONAL PREMIUM AGREEMENT

**You** acknowledge that the premium for each term of **your** Policy is determined by information in **our** possession at the inception date of the Policy period. Any change in this information during the period which would affect the rating of **your** Policy gives **us** the right to make an additional charge on a pro-rata basis. In addition, **you** have a duty to inform **us** of any such change.

1. If a premium adjustment is necessary because of an error made by **us** or **our** agent, **we** shall:

   a. Notify **you** of the nature of the error and the amount of additional premium required; and

   b. Offer to cancel the policy pro rata based on the original (incorrect) premium for the period for which coverage was provided, or

8

c. Offer to continue the policy for its full term with the correct premium applying for the entire term.

2. If the premium revision results from erroneous or incomplete information supplied by **you** or on **your** behalf, **we** shall:

   a. Correct the premium or rate retroactive to the inception date of the policy; and

   b. Notify **you** of the reason for the amount of the change. If **you** are not willing to pay the additional premium billed, within ten (10) days of **our** demand for such premium, **you** may cancel the policy by not paying the additional premium. **We** will notify **you** of the date such cancellation becomes effective and compute any return premium based on the correct premium.

3. In the event **we** discover that additional premium is due when **we** adjust a claim under PART II - EXPENSES FOR MEDICAL SERVICES TO INSUREDS or PART III - DAMAGE TO YOUR INSURED AUTO, **you** agree that such premium may be deducted from the amount of payment otherwise due under such Parts if such payment is to benefit **you** either directly or indirectly.

Nothing contained in this section will limit **our** right to void this policy for breach of warranty or misrepresentation of any information by **you**.

## PART I - LIABILITY TO OTHERS

Coverage A - Bodily Injury
Coverage B - Property Damage

**We** will pay damages, OTHER THAN PUNITIVE OR EXEMPLARY DAMAGES, for which an **Insured** is legally liable because of an **accident**.

9

We will defend any lawsuit for damages which are payable under this Policy or settle any claim for those damages as we think appropriate. We have no duty to settle or defend any lawsuit or make any additional payments after we have paid or offered to pay the Limit of Liability for this coverage.

## Additional Definitions Used in this Part Only:

When used in PART I - LIABILITY TO OTHERS, "Insured" means:

1. You;

2. Any additional driver listed on your policy but only while driving your insured auto;

3. Any other person driving your insured auto with your permission and within the scope of that permission;

4. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this PART I - LIABILITY TO OTHERS while driving your insured auto.

However, the owner or anyone else from whom you hire or borrow your insured auto is an insured with respect to that auto only if it is a trailer connected to an insured auto.

## Additional Payments

For an insured, we will pay, in addition to our Limit of Liability:

1. interest, on damages not exceeding our Limit of Liability, accruing after entry of judgment in any lawsuit we defend before we have paid or tendered payment of that portion of the judgment which does not exceed our Limit of Liability;

10

2. premiums on appeal bonds and attachment bonds required in any lawsuit we defend, provided that we will not pay the premium for attachment bonds that are more than our Limit of Liability, and we have no duty to apply for or furnish these bonds;

3. up to $250 for a bail bond required because of an accident or traffic law violation arising out of the use of your insured auto, but we have no duty to apply for or furnish such a bond;

4. reasonable expenses, except loss of earnings, incurred at our request;

5. reasonable expenses, up to $1,000, incurred by an insured for immediate medical or surgical relief to others necessary at the time of an accident resulting in bodily injury covered by this PART I - LIABILITY TO OTHERS provided that such expenses are not due to war;

6. all costs we incur in any settlement of any claim.

## EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, AN INSURED WILL NOT HAVE COVERAGE FOR AN ACCIDENT OR LOSS THAT OTHERWISE WOULD BE COVERED UNDER THIS PART I - LIABILITY TO OTHERS.

Coverage under this PART I and our duty to defend does not apply to:

1. Bodily injury and property damage either expected or caused intentionally by or at the direction of an insured.

2. Any liability assumed by an insured under any contract or agreement, including liability imposed upon an insured by statute arising from the insured's sponsorship of a minor for an operator's license.

11

3. Any obligation assumed or expense incurred by any person claiming coverage under this Policy other than for emergency medical and surgical care imperative at the time of the **accident**.

4. Any obligation for which an **insured** or the insurer of that **insured**, even if one does not exist, may be held liable under Workers' Compensation, unemployment compensation, or disability benefits law or any similar law.

5. An **accident** for which any person is insured under nuclear energy liability insurance. This exclusion applies even if the limits of that insurance are exhausted.

6. **Bodily injury** to an employee of an **insured**, or a spouse, child, parent, brother or sister of that employee, arising out of or within the course of employment, except with respect to a domestic employee if benefits are neither paid nor required to be provided under any Workers' Compensation, disability benefits or other similar law. This exclusion applies whether the **insured** may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

7. **Bodily injury** to a fellow employee of an **insured** injured while within the course of their employment, except injuries for which the **insured** is legally liable.

8. **Bodily injury** or **property damage** involving an **auto** while being operated, used or maintained by any person when employed or engaged in the business of selling, repairing, parking, storing, servicing, or while delivering, testing, road testing, parking or storing **autos**, unless the business is **your** business, and it was warranted in **your** application.

12

9. **Property damage** to any property owned by, rented to, being transported by, used by, or in the charge of an **insured**, including any motor vehicle operated or being towed.

10. **Bodily injury** or **property damage** resulting from or caused by the loading or unloading of property with any device other than a hand truck.

11. **Bodily injury** or **property damage** resulting from or caused by the loading or unloading of property with a hand truck before the property is placed in or upon the **insured auto** or after it has been removed from the **insured auto**.

12. **Bodily injury** or **property damage** resulting from anyone who is not **your** employee loading or unloading an **auto**.

13. **Bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any **pollutants**:

  a. That are, or that are contained in any property that is:

    1) Being transported or towed by, or handled for movement into, onto or from, the **insured auto**;

    2) Otherwise being transported by or on behalf of the **insured**; or

    3) Being stored, disposed of, treated or processed in or upon the **insured auto**;

  b. Before the **pollutants** or any property in which the **pollutants** are contained are moved from the place where they are accepted by the **insured** for movement into or onto the **insured auto**; or

13

c. After the **pollutants** or any property in which the **pollutants** are contained are moved from the **insured auto** to the place where they are finally delivered, disposed of or abandoned by the **insured**.

Paragraph a. does not apply to fuels, lubricants, fluids, exhaust gasses or other similar **pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the insured auto or its parts, if:

(1) The **pollutants** escape or are discharged, dispersed or released directly from an **insured** auto part designed by its manufacturer to hold, store, receive or dispose of such pollutants and is a part that would be required for the customary operation of the insured auto; and

(2) The **bodily injury or property damage** does not arise out of the operation of any **mobile equipment**.

Paragraphs b. and c. of this exclusion do not apply to **accidents** that occur away from premises owned by or rented to an **insured** with respect to **pollutants** not in or upon an insured auto if:

a. The **pollutants** or any property in which the **pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of an insured auto; and

b. The discharge, dispersal, release or escape of the **pollutants** is caused directly by such upset, overturn or damage.

14. Any loss, cost or expense arising out of any governmental direction or request that **you** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **pollutants**.

14

15. **Bodily injury** to you or an **insured**.

16. **Bodily injury or property damage** arising out of **you** or an **insured** participating in or preparing for an organized race, speed contest or performance contest.

17. **Bodily injury or property damage** due to war (declared or undeclared), civil war, insurrection, rebellion, revolution, or to any act or condition incident to these.

18. Any obligation for which the United States Government is liable under Federal Tort Claim Act.

19. **Bodily injury or property damage** resulting from the delivery of any liquid into the wrong receptacle or the wrong address, or from the delivery of one liquid in place of another.

20. **Bodily injury or property damage** resulting from the explosion or discharge of Class A and B explosives, poisonous gas, liquid gas, compressed gas, or radioactive material and all other materials and/or commodities as listed in the Motor Carrier Act of 1980 (49 CFR 173, 172.101, 173.389, 171.389, 171.8), manufactured, sold, transported, handled or distributed by an **insured**.

21. **Bodily injury or property damage** occurring outside any territory or possession of the United States and any province of Canada, or while an auto is being transported between their ports.

22. **Bodily injury or property damage** if **your** insured auto or a **non-owned auto** is attached to a trailer with load capacity in excess of two thousand (2,000) pounds if it is not listed in the Declarations and it:

a. is owned by **you** or **your** employee, or

15

b.  has been hired or borrowed by **you** or **your** employee for more than 60 consecutive calendar days.

23. **Bodily injury** or **property damage** caused by or through the ownership, use or operation of any **mobile equipment** or other apparatus attached to or pulled by **your insured auto** except while **your insured auto** is in transit on a public roadway.

24. **Bodily injury** or **property damage** arising out of the operation of **your insured auto** by any driver not meeting legal age requirements to operate a vehicle in the state shown in the declarations.

### Limit of Liability

Regardless of the number of **insured autos**, separate premiums paid, **insureds**, claims made, vehicles involved or lawsuits brought, **we** will pay no more than the Limit of Liability shown for this coverage in the Declarations, subject to the following:

1. **COVERAGE REQUIRED BY FILINGS:**

   If **we** are required by any applicable filing which **we** have made on **your** behalf to provide coverage not otherwise provided by this policy under this PART I - LIABIL-ITY TO OTHERS, to any person or organization, the coverage provided hereunder for such person shall be the minimum coverage required by law. If **we** are required to make any payment under this policy that would not have been made except for the certification, **you** must reimburse **us**.

2. **COMBINED BODILY INJURY AND PROPERTY DAMAGE LIMITS:**

   Subject to Section 1 above, if **your** Declarations indicates that combined **bodily injury** and **property damage** lim-

its apply, the most **we** will pay for the aggregate of all damages resulting from any one **accident** is the combined liability insurance limit shown in the Declarations.

3. **SEPARATE BODILY INJURY LIABILITY AND PROPERTY DAMAGE LIABILITY LIMITS:**

   Subject to Section 1 above, if **your** Declarations indicates that Separate **Bodily Injury** Liability and **Property Damage** Liability Limits apply:

   a. The **bodily injury** liability limit for "each person" listed on the Declarations page is the maximum **we** will pay for **bodily injury** sustained by any one person in any one **accident**, and only the limit for "each person" will apply to the aggregate of claims made for such **bodily injury** and any and all claims derived from such **bodily injury** including, but not limited to, loss of society, loss of companionship, loss of services, loss of consortium and wrongful death.

   b. Subject to the **bodily injury** liability limit for "each person", the **bodily injury** limit for "each accident" listed on the Declarations Page is the maximum **we** will pay for **bodily injury** sustained by two or more persons in any one **accident**, including all derivative claims which include, but are not limited to, loss of society, loss of companionship, loss of services, loss of consortium and wrongful death.

   c. The **property damage** liability limit for "each accident" listed on the Declarations page is the maximum **we** will pay for all **property damage** sustained in any one **accident**.

For the purpose of determining **our** Limit of Liability under sections 1, 2, or 3 above, all **bod-**

16

17

ily injury and property damage resulting from continuous or repeated exposure to substantially the same conditions shall be considered as resulting from one **accident**.

An **insured auto** and a **trailer** or **trailers** attached thereto shall be deemed to be one **auto** as respects **our** Limit of Liability.

Any amount payable under PART I - LIABILITY TO OTHERS to or for an injured person will be reduced by any payment made to that person under any UNINSURED MOTORIST COVERAGE, UNDERINSURED MOTORIST COVERAGE, PERSONAL INJURY PROTECTION OR EXPENSES FOR MEDICAL SERVICES TO INSUREDS coverages of this policy.

### Other Insurance

Subject to the above, if there is other applicable liability insurance for an **accident** covered by this PART I - LIABILITY TO OTHERS for a **replacement auto**, an **additional auto** or a **non-owned auto** used as a temporary substitute auto, coverage under this Policy will be excess to all other applicable insurance.

This coverage is primary when **your insured auto** which is a trailer is attached to an insured **auto you** own and is excess while attached to a motor vehicle **you** do not own.

If there is other applicable liability insurance for an **accident** covered by this PART I - LIABILITY TO OTHERS, **we** will pay the proportionate share **our** Limit of Liability bears to the total of all applicable liability limits.

If coverage under more than one policy applies as excess.

1.  the total limits of liability under such excess coverages shall not exceed the difference between the limit of liability of the primary coverage and the highest limit of liability of any one of the excess coverages; and

2.  the difference between the limit of liability of the primary coverage and the highest limit of liability of any one of the excess coverages shall be referred to as the excess amount; and

3.  **we** shall be liable only for that percent of the excess amount that the Limit of Liability under this PART I - LIABILITY TO OTHERS bears to the total of all limits of liability for coverages applicable as excess.

If any applicable insurance other than this policy is issued by **us** and is applicable to a covered **accident**, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability.

---

### PART II - EXPENSES FOR MEDICAL SERVICES TO INSUREDS

### Coverage C - Medical Payments

If **you** purchase this coverage and it is shown on the Declarations page, **we** will pay **medical expenses** incurred by an **insured** caused by an **accident**.

### Additional Definitions as used in this Part only:

"**Insured**" means any person **occupying your insured auto** while it is being driven by **you** or anyone with **your** permission and within the scope of that permission.

"**Medical expenses**" means reasonable, necessary and curative medical, surgical, dental, x-ray, ambulance, hospital and funeral services, including the cost of pharmaceuticals, orthopedic and prosthetic devices, incurred within one (1) year of the date of **accident**.

"**Accident**" means a sudden, unexpected and unintended event that causes **bodily injury**.

18

19

**EXCLUSIONS - PLEASE READ THE EXCLU-
SIONS CAREFULLY. IF AN EXCLUSION
APPLIES, AN INSURED WILL NOT HAVE
COVERAGE FOR AN ACCIDENT THAT OTH-
ERWISE WOULD BE COVERED UNDER THIS
POLICY.**

This coverage does not apply for bodily injury to
any person:

1. Occurring during the course of employ-
   ment if Workers' Compensation cover-
   age should apply.

2. Caused by war (declared or undeclared),
   civil war, insurrection, rebellion, revolu-
   tion, nuclear reaction, radiation or
   radioactive contamination, or any conse-
   quence of any of these.

3. Caused while the insured is committing
   or attempting to commit a felony, or while
   the insured is involved in an illegal occu-
   pation. This exclusion does not apply
   when the felony is solely a violation of a
   Motor Vehicle Law.

4. Caused by the operation of your insured
   auto by any driver not meeting legal age
   requirements to operate a vehicle in the
   state shown in the declarations.

5. Sustained while your insured auto is
   driven in or preparing for any pre-
   arranged or organized race, speed con-
   test or performance contest.

6. Sustained by any person while occupy-
   ing your insured auto while it is being
   used or maintained by a person when
   employed or engaged in the business of
   selling, repairing, parking, storing, servic-
   ing, delivering or while testing, road test-
   ing, parking or storing autos.

7. To any person entitled to receive similar
   services from the United States Govern-
   ment or its military services.

20

8. Sustained in any accident which occurs
   outside any state.

9. Sustained while using or occupying a
   non-owned auto or a temporary substi-
   tute auto.

**Limit of Liability**

Our Limit of Liability for payments provided under
this PART II - EXPENSES FOR MEDICAL SER-
VICES TO INSUREDS for covered medical
expenses incurred by one or more persons in
any one accident shall not exceed the amount
stated in the Declarations for each accident.
Regardless of the number of insured autos, pre-
miums paid, insureds injured, claims made, poli-
cies applicable, or vehicles involved in any one
accident, we shall pay no more than the Limit
of Liability shown for this coverage on the
Declarations page for any one accident.

The limit for funeral expenses shall not exceed
$1,500 per person, subject to the maximum per
accident limit of liability listed on the Declara-
tions page for this coverage.

We will not be liable under this Policy for any
medical expense paid or payable under the pro-
visions of any:

1. Workers' Compensation or disability ben-
   efits law or any similar law; or

2. State No-Fault Law requiring personal
   injury protection coverage; or

3. premises insurance providing coverage
   for medical expenses; or

4. individual, blanket, or group accident,
   disability or hospitalization; or

5. medical, surgical, hospital or funeral ser-
   vices, benefit or reimbursement plan.

Any amount paid or payable under PART I -
LIABILITY TO OTHERS or the UNINSURED

21

MOTORIST COVERAGE OR UNDERINSURED MOTORIST COVERAGE of this policy shall be deducted from the amounts payable under this PART II if the **insured** has been fully compensated for his/her injuries.

## Other Insurance

If there is other applicable medical payment insurance for **medical expenses** covered by this PART II - EXPENSES FOR MEDICAL SERVICES TO INSUREDS, **we** shall pay the proportionate share **our** Limit of Liability bears to the total of all applicable medical payments limits. HOWEVER, COVERAGE AFFORDED UNDER PART II - EXPENSES FOR MEDICAL SERVICES TO INSUREDS OTHER THAN **YOU** OR A **RELATIVE** IS EXCESS OVER SUCH OTHER APPLICABLE MEDICAL PAYMENT INSURANCE, AND IS THEN AFFORDED ONLY IN THE AMOUNT BY WHICH THE LIMIT OF LIABILITY UNDER THIS PART II - EXPENSES FOR MEDICAL SERVICES TO INSUREDS EXCEEDS THE LIMIT OF LIABILITY OF OTHER MEDICAL PAYMENTS INSURANCE AVAILABLE TO SUCH PERSON

If any applicable insurance other than this policy is issued by us, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability.

---

## PART III - DAMAGE TO YOUR AUTO

## Coverage D - Comprehensive

If **you** pay a specific premium for Comprehensive coverage, as shown in the Declarations, **we will** pay for **loss** to **your insured auto**, less any applicable deductible, caused by means other than are covered under **Coverage E - Collision**. Any deductible amount shall apply separately to each **loss**.

Any **loss** caused by missiles, falling objects, fire, theft, collision with an animal or accidental glass breakage shall be deemed a **Comprehensive loss**.

22

## Coverage E - Collision

If **you** pay a specific premium for **Collision** coverage, as shown in the Declarations, **we** will pay for **loss** to **your insured auto**, less any applicable deductible, when it collides with another object or overturns. Any deductible amount shall apply separately to each **loss**.

## Coverage F - Fire and Theft with Combined Additional Coverage (CAC)

If **you** pay a specific premium for **Fire and Theft with Combined Additional Coverage (CAC)**, as shown in the Declarations, **we** will pay for **loss**, less any applicable deductibles, caused by:

1. fire;

2. theft;

3. windstorms;

4. hail;

5. earthquakes;

6. explosions;

7. the forced landing or falling of any aircraft or its parts or equipment;

8. flood or rising waters;

9. malicious mischief or vandalism;

10. external discharge or leakage of water except **loss** resulting from rain, snow, or sleet whether or not wind driven; or

11. Collision with a bird or animal.

No losses other than those specifically described above will be covered under the terms of this Policy. Any deductible will apply separately to each loss.

23

**Additional definitions used in this Part only:**

1. "Fire" means:

   a. fire or lightning, or

   b. smoke or smudge due to a sudden, unusual, and faulty operation of any fixed heating equipment serving the premises on which the **insured auto** is located, or

   c. the stranding, sinking, burning, collision, or derailment of any conveyance in or upon which the **insured auto** is being transported.

2. "Theft" means theft, larceny, robbery, or pilferage.

3. "**Your insured auto**" means any auto described on the Declarations page, including any permanently attached equipment included in the Limit of Liability shown on the Declarations or by endorsement attached to this Policy, or any **replacement auto**, if the **auto** being replaced previously had DAMAGE TO YOUR AUTO COVERAGE and **we** are notified within 30 days of acquisition of the **replacement auto**.

**EXCLUSIONS - PLEASE READ THE EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, YOU WILL NOT HAVE COVERAGE FOR A LOSS THAT OTHERWISE WOULD BE COVERED UNDER THIS POLICY.**

This coverage does not apply to **loss**:

1. Caused by war (declared or undeclared), any warlike action, any action taken to defend against an actual or expected attack, civil war or commotion, insurrection, rebellion, revolution, or nuclear contamination, regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**.

24

2. To any sound equipment, video equipment or transmitting equipment not permanently installed in **your insured auto**, or to tapes, records, or similar items used with sound equipment.

3. To radar detectors.

4. To camper units, pickup covers, caps or shells which are not permanently installed in **your insured auto**.

5. To tarpaulins, binders, chains, or any other cargo securing devices.

6. Resulting from manufacturer's defects, wear and tear, freezing, mechanical or electrical breakdown or failure. But, coverage does apply if the damage is the result of other **loss** covered by the Policy.

7. To **your insured auto** when it is in the care, custody or control of any person for the purpose of selling it.

8. To wearing apparel, tools, or personal effects.

9. While **your insured auto** is used in any illicit trade or transportation.

10. Due to use of **your insured auto** for transportation of any explosive substance, flammable liquid, or similarly hazardous material other than substances transported for common household usage.

11. Caused by **you** or an **insured** participating in or preparing for an organized race, speed contest or performance contest.

12. While **your insured auto** is subject to any bailment lease, conditional sale, mortgage or other encumbrance not specifically declared and described on the Declarations.

25

13. Due to **theft** or conversion of **your insured auto**:

   a. by **you, a relative** or a resident of **your** household or an employee;

   b. prior to its delivery to **you**; or

   c. while it is in the care, custody or control of anyone for the purpose of selling **your insured auto**.

14. To **your insured auto** while in anyone else's possession under a written trailer exchange agreement, provided that this exclusion shall not apply to a loss payee. If **we** pay the loss payee, **you** must reimburse **us** for payment.

15. To any **non-owned auto** or temporary substitute auto.

16. To any **trailer**, unless a premium has been paid for **DAMAGE TO YOUR AUTO COVERAGE** for the trailer involved in the **loss**.

## Limit of Liability

The most **we** will pay for **loss** to **your insured auto** is the least of:

1. the **actual cash value** of the stolen or damaged property at the time of **loss** reduced by the applicable deductible;

2. the amount necessary to repair or replace the property with other of like kind and quality reduced by the applicable deductible and subject to any other endorsement or policy provisions;

3. the applicable Limit of Liability shown in the Declarations or in the endorsements to this policy.

4. the amount necessary to repair or replace with new property, less any applicable depreciation and deductible.

26

When **we** determine **our** payment for **loss** to **your insured auto**, any salvage value of **your insured auto** as a result of **loss** may at **our** option be deducted from 1, 2, 3 or 4 above. If **we** pay the **actual cash value** of **your insured auto** or the limit of liability as stated within the policy, less the deductible, **we** are entitled to all salvage.

A separate deductible applies to each **insured auto** involved in the **loss**.

If **we** repair the property, **we** shall not be responsible for any diminution in value of the property caused by the **loss**. If repair or replacement of damaged property increases the overall value of **your insured auto**, **we** may deduct this amount from the repair cost.

If the Limit of Liability shown on the Declarations for the **insured auto** involved in the **loss** is less than 90% of the **actual cash value** at the time of **loss**, **you** will share with **us** in the cost of repair or replacement as follows:

1. **We** will pay the same proportion of the **loss** which the Limit of Liability shown in the Declarations or in the endorsements to this policy for **your insured auto** involved in the **loss** bears to the **actual cash value** of **your insured auto** at the time of **loss**.

2. **We** will reduce the amount of **loss** by the appropriate deductible shown in the Declarations prior to calculating the proportionate amount **we** will pay.

## No Benefit to Bailee

These coverages shall not directly or indirectly benefit any carrier or other bailee for hire liable for **loss** to **your insured auto**.

## Appraisal

If **we** cannot agree with **you** on the amount of **your loss**, then **you** or **we** may demand an appraisal of the **loss**. Each party shall appoint a competent and disinterested appraiser. If the

27

appraisers agree on the amount of the **loss**, they shall submit a written report to **us** and this shall be deemed to be the amount of the **loss**.

If the appraisers cannot agree within a reasonable time, they shall then choose a competent, impartial umpire, provided that if they cannot agree on an umpire within fifteen (15) days, either **you** or **we** may petition a judge of a court having jurisdiction to choose an umpire. The disagreement of the appraisers shall then be submitted to the umpire. Subject to the provisions of the Policy, a written agreement signed by two of these three will then be the amount of the **loss**.

**You** must pay **your** fees and expenses and those of **your** appraiser. **We** will pay **our** fees and expenses and those of **our** appraiser. **We** shall share evenly with **you**:

　　1.　payment of the umpire; and

　　2.　all other expenses of the appraisal.

By agreeing to appraisal, **we** do not waive any of **our** rights under any other part of this Policy, including **our** right to deny the claim.

**Payment of Loss**

**We** may pay the **loss** in money or repair or replace the damaged or stolen property. **We** may, at any time before the **loss** is paid or the property is replaced, return, at **our** expense, any stolen property either to **you** or to the address shown on the declarations page, with payment for the resulting damage less any applicable deductibles. **We** may keep all or part of the property at the agreed or appraised value, but there shall be no abandonment to **us**.

**We** may make payment for a **loss** to **you** or the owner of the property. Payment for a **loss** is required only if **you** have fully complied with the terms of this Policy.

**Other Insurance**

If there is other applicable insurance on a **loss** covered by this PART III - DAMAGE TO YOUR AUTO, **we** will pay the proportionate share **our** Limit of Liability bears to the total limits of all applicable similar insurance.

---

**PART IV - GENERAL PROVISIONS**

1.　**Policy Period**

　　Subject to other provisions in the policy, this Policy applies only to **accidents**, **losses** and occurrences during the Policy period shown in the Declarations.

2.　**Changes**

　　This Policy with the Declarations includes all the agreements between **you** and **us** relating to this insurance. No change or waiver may be effected except by endorsement issued by **us**. It is **your** responsibility to notify **us** immediately of any changes to drivers or vehicles.

3.　**Two or More Autos Insured**

　　With respect to any **accident** or occurrence to which this and any other Policy issued to **you** by **us** applies, the total limit of **our** liability under all the Policies shall not exceed the highest applicable Limit of Liability under any one Policy.

4.　**Suit Against Us**

　　**We** may not be sued unless there is full compliance by **you** or an **insured** with all the terms of this Policy. **We** may not be sued under the PART I - LIABILITY TO OTHERS coverage until the obligation of an **insured** to pay is finally determined by judgment against the **insured** after actual trial or by written agreement of the **insured**, the claimant, and **us**.

5. **Our Recovery Rights**

In the event of any payment under this Policy, **we** are entitled to all the rights of recovery of the person or organization to whom payment was made. That person or organization must sign and deliver to **us** any legal papers relating to that recovery, do whatever else is necessary to help **us** exercise those rights, and do nothing after **loss** or **accident** to harm **our** rights.

When a person has been paid damages by **us** under this Policy and also recovers from another, the amount recovered from the other shall be held in trust for **us** and reimbursed to **us** to the extent of **our** payment, provided that the person to or on behalf of whom such payment is made is fully compensated for their **loss**.

In the event recovery has already been made from the responsible party, any rights to recovery by the person(s) claiming coverage under this policy no longer exist.

6. **Assignment**

Interest in this Policy may not be assigned without **our** written consent. If the Policyholder named in the Declarations is a person and that person dies, the Policy will cover:

a. the survivor;

b. the legal representative of the deceased person while acting within the scope of duty of a legal representative; and

c. any person having proper custody of **your insured auto** until a legal representative is appointed, but in no event for more than thirty (30) days after the date of death.

30

7. **Waiver**

Notice to any agent or knowledge possessed by any agent or other person shall not change or effect a waiver on any portion of this Policy nor stop **us** from exerting any of **our** rights under this Policy.

8. **Bankruptcy**

**We** are not relieved of any obligation under this Policy because of the bankruptcy or insolvency of an **insured**.

9. **Inspection and Audit**

**We** shall have the right to inspect **your** property and operations at anytime. This includes, but is not limited to, the right to inspect and audit the maintenance of any **autos** covered hereunder, who **your** drivers are and what their driving records are, and **your** radius of operations. In doing so, **we** do not warrant that the property or operations are safe and healthful, or are in compliance with any law, rule or regulation.

**We** shall also have the right to examine and audit **your** books and records at any time during the Policy period and any extensions of that period and within three (3) years after termination of the Policy, as far as they relate to the subject matter of this insurance.

10. **Fraud and Misrepresentation**

This Policy shall be void if **you** or an **insured** has concealed or misrepresented any material fact, or in case of any fraud or attempted fraud touching any matter regarding this Policy, whether before or after a **loss** or **accident**.

31

11. **Terms of Policy Conformed to Statutes**

Terms of this Policy which are in conflict with the statutes of the **state** in which this Policy is issued are hereby amended to conform to the statutes.

---

### CANCELLATION OF THIS POLICY

1. **You** may cancel this policy by mailing or delivering to **us** advance written notice of cancellation or by not paying a premium installment when it comes due. The cancellation date can be no earlier than 12:01 a.m. on the day after **your** written request is postmarked.

2. If **you** cancel this policy by not paying a premium installment when it is due, **we** will provide **you** written notice of cancellation, at **your** last mailing address known to **us**, at least 10 days before the effective date of cancellation.

3. **We** may cancel this policy by mailing or delivering to **you** and **your** representative in charge of the subject of the insurance, if applicable, written notice of cancellation, including the actual reason for the cancellation, to the last mailing address known to **us**, at least 45 days before the effective date of cancellation, except as provided below.

4. **We** will also mail to any lienholder, pledgee or other person shown in this policy with a financial interest in **your insured auto**, at their last mailing address known to **us**, the same written notice of cancellation that we provide to **you**.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is canceled, **we** will send **you** any premium refund due. If **we** cancel, the refund will be pro rata. If **you** cancel, **we** will return 90% of the calculated pro-rata refund.

7. If notice is mailed, proof of mailing will be sufficient proof of notice.

---

### NONRENEWAL OF THIS POLICY

1. **We** may elect not to renew or continue this policy by mailing or delivering to **you** written notice before the end of the policy period including the actual reason for nonrenewal. If **we** fail to provide notice within 30 days of the end of the policy period, the policy will continue in effect until 30 days from the date of the notice. **You** will be responsible for any premiums due while the policy is in effect. If **we** offer to renew or continue and **you** do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that **you** have not accepted **our** offer.

2. If **we** fail to mail or deliver proper notice of nonrenewal and **you** obtain other insurance, this policy will end on the effective date of that insurance.

Secretary                President

32

33

