IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

PROGRESSIVE PREFERRED
INSURANCE COMPANY
    Plaintiff

vs.

CASE NO. 3:06-CV-00934

JMP ENTERPRISES, INC.;
JOHN MARK PARKER; and
JENNIFER M. GOLDEN
    Defendants

## ANSWER OF JENNIFER GOLDEN TO AMENDED COMPLAINT

### FIRST DEFENSE

1.   Golden admits the allegations of paragraphs one through seven of the Amended Complaint filed by Progressive. Golden's Amended Complaint against JMP and Parker is attached hereto as exhibit A.

2.   Golden lacks sufficient information to form an opinion about the truth of the allegations of paragraph eight. The policy as filed with the court does not appear to contain various endorsements listed on the Declaration's page of the policy.

3.   Golden admits the allegations of paragraphs nine and ten of the Complaint.

4.   Golden admits the allegations of paragraph eleven of the Complaint, but denies that the exclusions listed are applicable to the present suit.

5.   Golden admits that her counsel provided notice to Progressive on April 13, 2006, but otherwise denies the allegations of paragraph twelve of the Amended Complaint.

1

6. Golden denies the allegations of paragraphs thirteen through fifteen of the Amended Complaint.

7. Golden admits the allegations of paragraphs sixteen and seventeen of the Amended Complaint.

## SECOND DEFENSE

Progressive has waived any lack of coverage, or any exclusions from coverage, by filing an Answer and Appearance in the underlying action against John Mark Parker in the Circuit Court of Lee County, Alabama, without the prior knowledge or consent of John Mark Parker.

## THIRD DEFENSE

The declaration's page for the policy specifically provides liability coverage for any "non-owned trailer . . . while attached to a listed power unit." The mobile home that is the subject of the action in Lee County, as reflected by Exhibit A to the Complaint, is a "non-owned trailer," and the policy specifically provides coverage for it, without regard to any policy exclusion or exception.

## FOURTH DEFENSE

Progressive failed to provide JMP or Parker with a copy of the policy of insurance as required by section 27-14-19 of the Alabama Code, and as a consequence, Progressive has waived any exclusions in its policy, including exclusions concerning notice.

## FIFTH DEFENSE

Golden followed the procedure authorized in *Safeway Insurance Company v. Thompson,* 688 So.2d 271 (Ala. Civ. App. 1996), and *Webb v. Zurich Insurance Company,* 200 F.3d 759 n.1 (11th Cir. 2000), and as such Parker's failure to give notice to Progressive does not excuse Progressive from liability to Golden.

2

## SIXTH DEFENSE

Golden gave notice to Progressive within the statute of limitations within which an action would be filed.  Thus, Golden could have voluntarily dismissed the state-court action, re-filed the same and immediately provided notice to Progressive.  Progressive has, therefore, suffered no prejudice, and permitting it to escape liability would frustrate the policies contained in sections 27-23-1 and 27-23-2 of the Alabama Code.

## SEVENTH DEFENSE

Any deficiency in the notice provided by JMP or Parker would not prohibit Golden from recovering on any judgment as allowed by sections 27-23-1 and 27-23-2 of the Alabama Code.

## EIGHTH DEFENSE

Progressive has waived any deficiency in notice by assuming defense and control of the state-court action without providing Parker or JMP any notice that it was contesting the sufficiency of the "notice" it received.

**HOWARD, DUNN, HOWARD & HOWARD**
Attorney for Jennifer M. Golden

By: _____
G. Houston Howard II

Of Counsel:
**G. Houston Howard II (HOW015)**
Howard, Dunn, Howard & Howard
P.O. Box 1148
Wetumpka, Alabama 36092
Telephone:  334-567-4356
Facsimile:  334-567-7080

3

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on:

**R. Larry Bradford**
**Bradford & Sears, P.C.**
**2020 Canyon Road, Suite 100**
**Birmingham, AL 35216**

**John Mark Parker**
**P. O. Box 3501**
**LaGrange, GA 30242**

counsel of record, by placing the same in the U.S. Mail, postage prepaid and properly addressed, on this the 29th day of May, 2007.

_____
Of Counsel

*Doc:Houston\Golden.Jennifer\Amended.Answer*

4

COPY

IN THE CIRCUIT COURT OF LEE COUNTY

FILED

OCT 0 3 2006

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

JENNIFER M. GOLDEN,
       PLAINTIFF,

v.

CASE NO. CV-2006-106

DEER VALLEY HOMEBUILDERS, INC.,
a CORPORATION; TIMBERLINE HOMES, INC.,
a corporation; JMP ENTERPRISE SERVICES, INC.,
a corporation, and JOHN MARK PARKER,
an individual.
       DEFENDANTS

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Comes now the plaintiff and adds JMP ENTERPRISE SERVICES, INC., a corporation, as a defendant and substitutes the following for the complaint originally filed in this action on February 14, 2006:

1.   The plaintiff is an individual residing at 2999 Lee Road 17, Opelika, AL.

2.   Timberline Homes, Inc., is a corporation engaged in the business of selling manufactured homes.

3.   John Mark Parker is an individual engaged in the business of installing manufactured homes.

4.   JMP Enterprise Services, Inc., is a Georgia corporation engaged in the business of installing manufactured homes. Its agent for service of process is John Mark Parker, 2205 Greenville Road, LaGrange, GA 30240.

5.   Deer Valley Homebuilders, Inc., is a corporation engaged in the business of constructing manufactured homes.

1

## CLAIMS AGAINST DEER VALLEY
## COUNT I: BREACH OF EXPRESS WARRANTY

6. On or about April 27, 2005, the plaintiff purchased a home manufactured by Deer Valley.

7. Deer Valley had manufactured the home specifically for the plaintiff.

8. The plaintiff purchased the home for her personal, family, or household use.

9. Deer Valley expressly warranted to the plaintiff by written warranty that the home was free from manufacturing defects in material or workmanship and that it would repair any such defects.

10. The home contained substantial manufacturing defects.

11. The plaintiff gave Deer Valley notice of this breach of warranty as provided in the warranty or Deer Valley has waived any failure to give notice as provided in the warranty.

12. Deer Valley attempted to make repairs on some items, but has failed to repair the home properly and has failed to complete repairs. As a result, Deer Valley has breached the warranty, and the warranty has failed of its essential purpose.

13. As a proximate consequence of this defendant's breach of warranty, the plaintiff has suffered annoyance, inconvenience, and mental anguish, and the value of the home is less than it would have been if the home had been as warranted and if the defendant had performed according to its warranty.

## COUNT II: BREACH OF IMPLIED WARRANTY

14. On or about April 27, 2005, the plaintiff purchased a manufactured home constructed by Deer Valley.

15. Deer Valley manufactured the home specifically for the plaintiff.

16. The plaintiff purchased the home for her personal, family, or household use.

17. Pursuant to section 7-2-314 of the Alabama Code and section 2308(a) of title fifteen of the United States Code, the defendant impliedly warranted to the plaintiff that the home was merchantable, that it was habitable, that it was free from defects, and that it would meet the ordinary expectations of a consumer concerning a new product.

18. The home contained substantial defects upon delivery to the plaintiff.

19. The plaintiff gave Deer Valley notice of this breach of warranty, and Deer Valley failed or refused to repair some defects and failed to repair properly other defects.

20. As a proximate consequence of Deer Valley's breach of warranty, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been as warranted and if Deer Valley had performed according to its warranty.

## COUNT III: VIOLATION OF MAGNUSON MOSS ACT

21. The plaintiff incorporates herein the allegations of counts one and two.

22. This defendant's conduct described therein is a violation of the Magnuson Moss Warranty Act.

## COUNT IV: NEGLIGENT TRIM OUT

23. Deer Valley undertook to trim out the plaintiff's home after the home was placed on her property.

24. Deer Valley negligently performed this undertaking.

25. As a proximate consequence of Deer Valley's negligence, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been properly trimmed.

3

## COUNT V: WANTON TRIM OUT

26. Deer Valley undertook to trim out the plaintiff's home after the home was placed on her property.

27. Deer Valley wantonly performed its undertaking.

28. Deer Valley consciously and deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff.

29. With respect to any conduct herein for which a principal or employer is to be held liable for the wrongful conduct of an agent, servant, or employee, the plaintiff alleges that the principal knew or should have known of the unfitness of the agent, servant, or employee, and employed him or continued to employ him or continued to use his services without proper instruction or with a disregard of the rights or safety of others; or authorized the wrongful conduct; or ratified the wrongful conduct; or the act of the agent, servant, or employee was calculated to or did benefit the principal or employer.

30. As a proximate consequence of Deer Valley's wantonness, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been properly trimmed.

## COUNT VI: NEGLIGENT REPAIR

31. Deer Valley undertook to repair certain defects in the plaintiff's home.

32. Deer Valley negligently performed this undertaking.

33. As a proximate consequence of Deer Valley's negligence, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been properly repaired.

4

## COUNT VII: WANTON REPAIR

34. Deer Valley undertook to repair certain defects in the plaintiff's home.

35. Deer Valley wantonly performed its undertaking.

36. Deer Valley consciously and deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff.

37. With respect to any conduct herein for which a principal or employer is to be held liable for the wrongful conduct of an agent, servant, or employee, the plaintiff alleges that the principal knew or should have known of the unfitness of the agent, servant, or employee, and employed him or continued to employ him or continued to use his services without proper instruction or with a disregard of the rights or safety of others; or authorized the wrongful conduct; or ratified the wrongful conduct; or the act of the agent, servant, or employee was calculated to or did benefit the principal or employer.

38. As a proximate consequence of Deer Valley's wantonness, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been properly repaired.

WHEREFORE, the plaintiff demands judgment against Deer Valley Homebuilders, Inc. for such compensatory and punitive damages, in excess of $10,000, as a jury may award. The plaintiff further claims attorney's fees and costs under the Magnuson Moss Act.

5

## CLAIMS AGAINST TIMBERLINE
## COUNT VIII: BREACH OF WRITTEN WARRANTIES

39. The plaintiff entered into the written contract with Timberline attached hereto as exhibit 1.

40. In the contract, Timberline "represent[ed] and warrant[ed] to Buyer that the entire property conforms to all building codes and restrictions that may be imposed by any governmental agency national, state or local."

41. Timberline further provided the plaintiff with the Warranty of Completion of Construction attached hereto as exhibit 2. In that document, Timberline warranted the "property against defects in equipment, material, or workmanship and materials supplied or performed by the Warrantor *or any subcontractor or supplier at any tier* . . . ."

42. Timberline further warranted that the two "sections [of the home] were properly joined and sealed." Exhibit 2.

43. Finally, Timberline provided the warranty of Plans, Specifications, and Site attached as exhibit 3. In that warranty, Timberline warranted, among other things, that the foundation complied with the "Permanent Foundations Guide for Manufactured Housing."

44. The parties closed the sale on April 27, 2005, and Timberline delivered the home to the plaintiff.

45. The home and property as delivered to the plaintiff did not comply with warranties described above.

46. The plaintiff thereafter gave this defendant notice of defects in the home and property, and Timberline took no action to correct the defects.

47. As a proximate consequence of Timberline's breach of warranty, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been as warranted and if the defendant had performed according to its warranty.

## COUNT IX: BREACH OF IMPLIED WARRANTY

48. On or about April 27, 2005, the plaintiff purchased from Timberline a home constructed by Deer Valley.

49. The plaintiff purchased the home for her personal, family, or household use.

50. Pursuant to section 7-2-314 of the Alabama Code and section 2308(a) of title fifteen of the United States Code, Timberline impliedly warranted to the plaintiff that the home was merchantable, that it was habitable, that it was free from substantial defects, and that it would meet the ordinary expectations of a consumer concerning a new product.

51. The home contained substantial defects.

52. The plaintiff gave Timberline notice of this breach of warranty, and it failed or refused to repair the defects.

53. As a proximate consequence of Timberline's breach of warranty, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been as warranted and if the defendant had performed according to its warranty.

## COUNT X: BREACH OF IMPLIED WARRANTY

54. Prior to April 27, 2005, the plaintiff contracted to purchase from Timberline a home constructed by Deer Valley.

55. The plaintiff contracted to purchase the home for her personal, family, or household use.

56. As part of the purchase, Timberline agreed to deliver and set up the home and construct a brick foundation wall around the home.

57. Timberline impliedly warranted to the plaintiff that home would not be damaged in delivery, that the home would be properly set and installed, and the wall would be properly constructed.

58. The defendant breached such implied warranties in that it, or persons acting on its behalf, damaged the home in delivery, installation, and set up and failed to install properly the home.

59. The plaintiff gave Timberline notice of this breach of warranty, and it failed or refused to repair the defects.

60. As a proximate consequence of this defendant's breach of warranty, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been as warranted and if the defendant had performed according to its warranty.

## COUNT XI: VIOLATION OF MAGNUSON MOSS ACT

61. The plaintiff incorporates herein the allegations of the last three counts.

62. The conduct of Timberline described therein constitutes a violation of the Magnuson Moss Act.

## COUNT XII: NEGLIGENT DELIVERY AND INSTALLATION

63. Timberline contracted to deliver and install the plaintiff's home and construct a block foundation wall for the home.

8

64. Timberline's duty was a non-delegable duty.

65. Timberline, or persons acting on its behalf, undertook to deliver and install the home, and construct a block foundation wall for the home.

66. These persons negligently performed their undertaking.

67. As a proximate consequence of their negligence, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been properly delivered and installed.

## COUNT XIII: WANTON DELIVERY AND INSTALLATION

68. Timberline contracted to deliver and install the plaintiff's home and construct a block foundation wall for the home.

69. Timberline's duty was a non-delegable duty.

70. Timberline, or persons acting on its behalf, undertook to deliver and install the home, and construct a block foundation wall for the home.

71. These persons wantonly performed their undertaking.

72. This defendant consciously and deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiffs.

73. With respect to any conduct herein for which a principal or employer is to be held liable for the wrongful conduct of an agent, servant, or employee, the plaintiff alleges that the principal knew or should have known of the unfitness of the agent, servant, or employee, and employed him or continued to employ him or continued to use his services without proper instruction or with a disregard of the rights or safety of others; or authorized the wrongful conduct; or ratified the wrongful conduct; or the act of

the agent, servant, or employee was calculated to or did benefit the principal or employer.

74. As a proximate consequence of the wantonness of Timberline, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been properly delivered and installed.

## COUNT XIV: REFUND OF PAYMENTS

75. The plaintiff contracted with Timberline for the purchase and installation of a manufactured home and paid it $10,000.00.

76. Section 24-5-32 of the Alabama Code provides, "All installers of manufactured homes and manufactured buildings must be certified by the commission to install such structures."

77. Timberline was not certified to install manufactured homes.

78. Regulation 535-X-12.04 of the Alabama Manufactured Housing Commission provides, "No person, *retailer*, or manufacturer shall *employ* any person, firm, or corporation as an installer who is not certified as required . . . ."

79. Timberline contracted with John Mark Parker or JMP Enterprises to install the home.

80. Neither Parker nor Timberline was certified to install manufactured homes.

81. The Alabama Manufactured Housing Commission inspected the installation on April 7, 2005, and determined that the home was not installed as required by its rules and regulations. Exhibit 4.

82. Section 24-5-33 of the Alabama Code provides, "It is a misdemeanor for any person to install, allow to be installed, occupy, *or allow to be occupied*, any

manufactured home . . . which is not in accordance with the uniform standards and the rules and regulations adopted and set forth by the commission . . . ."

83. On April 27, 2005, Timberline closed the sale to the plaintiff, and the plaintiff paid Timberline the additional sum of $74,095.

84. Timberline's contracting to deliver and set up the plaintiff's home, when it was not licensed to do so, was contrary to law; Timberline's employment of an unlicensed contractor to install the home was contrary to law, and Timberline's closing the sale to the plaintiff without first correcting the defects in the home was contrary to law.

85. Allowing Timberline to retain the plaintiff's payments is contrary to the public policy of Alabama. Consequently, the plaintiff is entitled to a refund from Timberline in the amount of $84,095.

## COUNT XV: FRAUD BY FAILURE TO DISCLOSE

86. The plaintiff incorporates herein the allegations of the last count.

87. Timberline innocently, negligently, wantonly, or intentionally withheld, concealed, and failed to disclose to the plaintiffs certain material facts that it was under a duty to communicate to her based upon the particular facts of the case; namely, (a) that Parker and JMP were not licensed, as required by law, to install manufactured homes (b) that the home and the installation of the home did not comply with the regulations of the Alabama Manufactured Housing Commission; (c) that Alabama law prohibited occupancy of the home; and (d) federal law prohibited the defendant from closing the sale to the plaintiff.

88. In reasonable reliance on Timberline, the plaintiff paid Timberline for the home and made no objection to Parker's installing it.

89. The defendant consciously and deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff.

90. With respect to any conduct herein for which a principal or employer is to be held liable for the wrongful conduct of an agent, servant, or employee, the plaintiff alleges that the principal knew or should have known of the unfitness of the agent, servant, or employee, and employed him or continued to employ him or continued to use his services without proper instruction or with a disregard of the rights or safety of others; or authorized the wrongful conduct; or ratified the wrongful conduct; or the act of the agent, servant, or employee was calculated to or did benefit the principal or employer.

91. As a proximate consequence of Timberline's failure to disclose, the plaintiff has suffered annoyance, inconvenience, and mental anguish, and the value of the home is less than it otherwise would have been.

WHEREFORE, the plaintiff demand judgment against Timberline Homes, Inc., for such compensatory and punitive damages, in excess of $10,000, as the arbitrator may award. The plaintiff further claims attorney's fees and costs under the Magnuson Moss Act.

## CLAIMS AGAINST JOHN MARK PARKER and JMP ENTERPRISE

## COUNT XVI:  NEGLIGENT DELIVERY AND INSTALLATION

92. Parker and JMP, acting by and through their agents, servants, and employees, undertook to deliver and install the plaintiff's home.

93. Parker and JMP negligently performed this undertaking.

94. As a proximate consequence of these defendants' negligence, the home was not properly installed, and it was damaged; the plaintiff has suffered annoyance, inconvenience, and mental anguish; and the value of the home is now less than it otherwise would have been.

### COUNT XVII: WANTON DELIVERY AND INSTALLATION

95. Parker and JMP, acting by and through their agents, servants, and employees, undertook to deliver and install the plaintiff's home.

96. This defendant wantonly performed this undertaking.

97. This defendant consciously and deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff.

98. With respect to any conduct herein for which a principal or employer is to be held liable for the wrongful conduct of an agent, servant or employee, the plaintiff allege that the principal knew or should have known of the unfitness of the agent, servant, or employee, and employed him or continued to employ him or continued to use his services without proper instruction or with a disregard of the rights or safety of others; or authorized the wrongful conduct; or ratified the wrongful conduct; or the act of the agent, servant, or employee was calculated to or did benefit the principal or employer.

99. As a proximate consequence of these defendants' wantonness, the home was not properly installed and it was damaged; the plaintiff has suffered annoyance, inconvenience, and mental anguish; and the value of the home is less than it otherwise would have been.

## COUNT XVIII:  BREACH OF IMPLIED WARRANTY

100. Parker and JMP, acting by and through their agents, servants, and employees, undertook to deliver and install the plaintiff's home.

101. These defendants impliedly warranted to the plaintiff that the home would not be damaged during delivery and installation and would be properly set and installed.

102. Parker and JMP, acting by and through their agents, servants, and employees damaged the home in delivery and installation and failed to install the home properly.

103. The plaintiff gave these defendants' notice of the damage, and they failed to correct it.

104. As a proximate consequence of these defendants' breach of warranty, the home was damaged; the plaintiff has suffered annoyance, inconvenience, and mental anguish; and the value of the home is less than it otherwise would have been.

## COUNT XIX: FRAUD BY FAILURE TO DISCLOSE

105. The plaintiff incorporates herein the allegations of last three counts.

106. Parker and JMP innocently, negligently, wantonly, or intentionally withheld, concealed, and failed to disclose to the plaintiff certain material facts that they were under a duty to communicate to the plaintiff based upon a confidential relationship between the parties or the particular facts of the case; namely, that they were not licensed, as required by law, to install manufactured homes.

107. In reasonable reliance on the defendants, the plaintiff paid Timberline for the home and made no objection to JMP's and Parker's installing it.

108. These defendants consciously and deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff.

109. With respect to any conduct herein for which a principal or employer is to be held liable for the wrongful conduct of an agent, servant, or employee, the plaintiff alleges that the principal knew or should have known of the unfitness of the agent, servant, or employee, and employed him or continued to employ him or continued to use his services without proper instruction or with a disregard of the rights or safety of others; or authorized the wrongful conduct; or ratified the wrongful conduct; or the act of the agent, servant, or employee was calculated to or did benefit the principal or employer.

110. As a proximate consequence of these defendants' failure to disclose, the plaintiff has suffered annoyance, inconvenience, and mental anguish, and the value of the home is less than it otherwise would have been.

WHEREFORE, the plaintiff demands judgment against John Mark Parker and JMP Enterprise Services, Inc., a corporation, for such compensatory and punitive damages, in excess of $10,000, as a jury may award.

HOWARD, DUNN, HOWARD & HOWARD,
Attorneys for Plaintiff

By _____
    G. Houston Howard II (HOW15)

OF COUNSEL:
G. HOUSTON HOWARD II
HOWARD, DUNN, HOWARD & HOWARD
P. O. BOX 1148
WETUMPKA, AL 36092
(334) 567-4356

PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL ISSUES.

_____
    G. Houston Howard II

PLAINTIFF REQUESTS SERVICE ON JMP ENTERPRISE SERVICES, INC. BY
CERTIFIED MAIL.

_____
G. Houston Howard II

### CERTIFICATE OF SERVICE

    I hereby certify that I have served a copy of the foregoing document on Scott
Hunt at P.O. Box 397, Hamilton, Alabama 35570; Joel A. Williams at 2500 Wachovia
Tower, 420 North 20th Street, Birmingham, Alabama 35203-5203; and M. Warren Butler
at P.O. Box 2727, Mobile, Alabama 36652-2727, and Jeffrey G. Hunter, P.O. Box 4128,
Montgomery, AL 36103 by depositing a copy thereof in a United States mail receptacle,
addressed to the last known address of such counsel, first class mail, postage prepaid, this
the 29th day of September 2006.

_____
OF COUNSEL (HOW015)

16

WHEN COMPLETED AND SIGNED BY BOTH PARTIES, THIS IS A LEGALLY BINDING CONTRACT. IF THIS CONTRACT IS NOT FULLY UNDER-STOOD, THE SERVICES OF A COMPETENT PROFESSIONAL SHOULD BE SOUGHT.

Seller, _Timberline Homes, Inc._____ hereby agrees to sell to Buyer, _Jennifer Golden_____, or Buyer's Nominee, the real property set forth below and all improvements thereon (herein referred to as the Property), and Buyer agrees to purchase said Property from the Seller on the terms and conditions set forth in this contract.

**PROPERTY DESCRIPTION:** The Property is located in _Lee_____ County, (city/state _Opelika , Alabama_____ and is commonly known as (Physical Address) _2999 Lee Road 117_ zip _36804_, has approximate lot dimensions of _____ x _____, and is legally described as follows:_____

(If the legal description is not included at the time of execution, it may be attached to and incorporated herein afterward.)

**PURCHASE PRICE:** Buyer warrant that buyer will have sufficient funds at closing, which when combined with the loan(s), if any, referenced herein, will allow the Buyer to complete the purchase of Property.  The purchase price of the property to be paid by Buyer at closing is: _one hundred three thousand dollars $0/100_____ U.S. Dollars, $ _103,000.__

**METHOD OF PAYMENT: New Loan to be Obtained:** This agreement is made conditional upon the Buyers Ability to Obtain a loan in the principal amount of 97% of the purc ase price listed above, with an interest rate of no more than _6.5_ % per year. The unpaid balance, to be secured by a first lien security deed on the Property. The loan is to be paid in consecutive monthly installments of principal and interest over a term of not less than _30_ years. " Ability to Obtain" as used herein means the buyer is qualified to receive the loan described herein based upon lenders customary and standard underwriting criteria. The loan shall be of type listed below. The sections not marked are not made part of this agreement.

   1) **Loan Type: FHA**
   2) **Rate Type: Fixed Rate Mortgage**

**CLOSING COST AND DISCOUNT POINTS:** At closing **Seller** shall pay a sum not to exceed $ _4500.__ to be used at the buyers discretion to pay for closing cost, discount points, survey cost, insurance related to the property and if allowed by, other cost to close including escrows and prepaid.  Buyer shall pay any additional fees, closing costs, insurance premiums or escrow amounts to fulfill lenders requirements or to otherwise close this transaction.

**PRORATED ITEMS:** All rents, water taxes or charges, taxes, assessments, monthly mortgage insurance premiums, fuel, prepaid service contracts, and interest on existing mortgages shall be prorated as of the date of closing. If Buyer is to accept the Property, subject to an existing mortgage requiring an escrow deposit for taxes, insurance, and/or other items, all escrow payments required to be made up to the time of closing shall be made to the escrow holder at Seller's expense and said escrow balance shall be assigned to the Buyer without compensation to the Seller; it being expressly understood that said escrow balance is included in the Total Purchase Price. All mortgage payments required of Seller to be made shall be current as of the time of closing. If the exact amount of real estate taxes cannot be ascertained   r   n time of closing, Seller agrees to prorate said taxes on the basis of 110% of the last a.   ntainable amount.

EXHIBIT

1

1

Seller's Initial _____   Buyer's Initial _____

as specified above disclose that Seller is vested with fee simple title to the Property (subject only to the permitted exceptions set forth above) acceptable to Buyer, the same sale shall be closed and Buyer shall perform the agreements made in this contract, at the office of Buyer's Attorney, on or before _____ DAY Of _____, 20_____ or on such other date as agreed upon by both parties in writing. If title evidence or survey reveal any defect Or condition which is not acceptable to Buyer, the Buyer shall, within fifteen ( ) days, notify the Seller of such title defects and Seller agrees to use reasonable efforts to remedy such defects and shall have thirty (30) days to do so, in which case this sale shall be closed within ten (10) days after delivery of acceptable evidence to Buyer and Buyer's Attorney that such defects have been cured. Seller agrees to pay for and clear all delinquent taxes, liens, and other encumbrances, unless the parties otherwise agree. If Seller is unable to convey to Buyer a good and insurable title to the Property, the Buyer shall have the right to demand all sums deposited by Buyer and held by or for the Seller. At the same time, Buyer shall return to Seller all items, if any, received from Seller, whereupon all rights and liabilities of the parties to this contract shall cease. However, the Buyer shall have the right to accept such title as Seller may be able to convey and to close this sale upon the other terms as set forth in this contract.

**RISK OF LOSS OR DAMAGE:** the Seller retains Risk of loss or damage to the Property by any cause until closing.

**CONDITION OF THE PROPERTY:** Seller agrees to deliver the Property to Buyer in its present condition, ordinary wear and tear excepted, and further certifies and represents that Seller knows of no latent defect in the Property. All heating, cooling, plumbing, electrical, sanitary systems, and appliances shall be in good working order at the time of closing. Seller represents and warrants that the personal property conveyed with the premises shall Buyer inspect the same property and that no substitutions will be made without the Buyer's written consent. Buyer may also inspect or cause to be inspected the foundation, roof supports, or structural member of all improvements located upon the Property. If any such system, appliance, roof, foundation, or structural member shall be found defective, Buyer shall notify Seller at or before closing and Seller shall thereupon remedy the defect forthwith at his/her sole expense (in which case the time for closing shall be reasonably extended as necessary). If the costs of such repairs shall exceed 5% of the total purchase price, Seller may elect not to make such repairs and the Buyer may elect to take the Property in such defective condition and deduct 5% from the purchase price or Buyer may, at his/her option, elect to terminate this act and receive the full refund of all deposits and other sums tendered hereunder. In addition, Seller agrees to remove all debris from the Property by date of possession.

**OCCUPANCY:** Seller shall deliver possession to Buyer no later than the closing date unless otherwise stated herein:

**ZONING:** Unless the property is properly zoned for *Residential* use and there are no deed restrictions against such use at the time of closing, the Buyer shall have the right to terminate this contract and receive a full refund of all deposits made by Buyer hereunder.

**LEGAL USE:** Seller represents and warrants to Buyer that the entire property conforms to all building codes and restrictions that may be imposed by any governmental agency national, state, or local. Seller also warrants that there are no building code violations on the Property and that Seller has received no notice of any building code violations for the past ten years that have not been fully corrected.

**LOCAL ORDINANCES:** Seller shall procure for Buyer, at Seller's expense, all certificates of inspection, certificates of occupancy, or the like required under the terms of any local ordinance.

**R.E.S.P.A. COMPLIANCE:** Seller and Buyer agree to make all disclosures and do all things necessary to comply with the provisions of the Real-Estate Settlement Procedures Act of 1974 if it is applicable to this transaction.

**REAL ESTATE CERTIFICATE:** The Seller, Buyer and the Real Estate agent or broker involved in this sales transaction each certify that the terms of the sales contract are true to the best of their knowledge and belief and that any other agreement entered into by any of the parties in connection with the transaction is part of, or attached, to the sales agreement.

2

Seller's Initial _____          Buyer's Initial _____

TH132

**AMENDATORY CLAUSE:** It is expressly agreed that not withstanding any other provisions of the contract, the buyer shall not be obligated to complete the purchase of the property described above or to incur any penalty by forfeiture of earnest money deposit or otherwise, unless the buyer has been given in accordance with HUD\FHA or department of Veterans Affairs requirements, a written statement by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct Endorsement lender setting forth the appraised value of the _____ (Purchase Price). The Buyer shall have the privilege of not less $_____ and option of proceeding with consummation of the contract without regard to the amount of the appraise valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant neither the value nor the condition of the property. The buyer should satisfy himself\herself that the price and condition of the property are acceptable.

**TERMITE LETTER:** Five (5) days prior to the time of closing, **Seller** shall provide buyer with a report prepared by a *Licensed Pest Control* operator dated within thirty (30) days of the closing, stating that each dwelling and garage has been found to be free from active infestation of termites and other wood destroying organisms. Prior to closing **Seller** shall treat active infestation of termites and other wood destroying organisms, if any. This paragraph shall not limit Buyer's rights to request that Seller repair and\or replace defects resulting from termites or wood destroying organisms. If Termites or wood destroying organisms are found the **Seller** will provide to Buyer a letter of structural integrity by a licensed contractor, engineer or home inspector.

**ADDITIONAL TERMS AND CONDITIONS:**
(a) Where the context requires, the terms that Seller and Buyer shall include are in the masculine as well as the feminine and the singular as well as the plural.
(b) There are no agreements, promises, or understandings between the parties except as specifically set forth in this contract. No alterations or changes shall be made to this contract unless the same are in writing and signed or initialed by the parties hereto.
(c) The provisions of this contract shall survive the closing and shall not merge in any deed of conveyance herein.
(d) This agreement shall be construed under the laws of the State of _____Alabama_____
(e) Other:

**NOTICES:** Any notices required to be given herein shall be sent to the parties listed below at their respective addresses either by personal delivery or by certified mail - return receipt requested. Such notice shall be effective upon delivery or mailing.

**EXHIBITS AND ADDENDA:** All exhibits and\or addenda attached hereto listed below, or referenced herein are made part of this Agreement. If any such exhibit or addendum conflicts with any preceding paragraph, said exhibit, addendum or preceding paragraph shall control.

1.) Any repair required by FHA will be completed and paid for by **Seller** prior to closing provided such repairs do not exceed _____ in total dollars.

2.) Seller shall pay the following lender fees: Underwriting, Document Preparation, Courier and Tax Service Fee. These cost **are__** OR **are not___** *(Check One)* included in any closing cost that the seller may have agreed to pay in accordance to the closing cost sub paragraph in this Real Estate Contract.

3.) Seller Retains $____10,000____.00__ for earnest money.

4.) Sales Price includes $10,000 land equity.

TH131

Seller's Initial _A. C. L_ _____    SSENCE OI    Buyer's Initial _____

witness whereof, the parties signed their names on the dates in the year set forth below.

Buyer Signature: _Jennifer Golden_ _____

Print Name: _Jennifer  Golden_ _____

SSN _421_ , _25_ , _7874_ _____

Buyer Signature: _____

Print Name: _____

SSN_____ , _____ , _____

Seller Signature: _A. C. Lee_ _____

Print Name: _A. C. Lee_ _____

SSN_____ , _____ , _____

Seller Signature: _____

Print Name: _____

SSN_____ , _____ , _____

## This offer to Purchase said Property is ACCEPTED this

_____ Day of _____ 20_____

Time _____ : _____ PM or AM

4

TH129

# Warranty of Completion of Construction

U.S. Department of Housing
and Urban Development
Office of Housing
Federal Housing Commissioner

OMB Approval No. 2502-0059
(Expires 8/30/2007)

This information is required to obtain a HUD-insured single family mortgage. Public reporting burden for this collection of information is estimated to average 3 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing this collection of information. This agency may not conduct or sponsor, and you are not required to respond to, a collection of information unless that collection displays a valid OMB control number.

| Lender's Name, Address and Phone Number (include Area Code) | Name(s) of Purchaser/Owner |
|---|---|
| AuburnBank Mortgage<br>3206 20th Ave<br>Valley AL 36854 | Jennifer Golden |
| FHA/VA Case Number | Property Address |
| 011-5362150 | 2999 Lee Road 117<br>Opelika AL 36804 |

For good and valuable consideration, and in accordance with Section 801 of the Housing Act of 1954, and Public Law 85-857 (38 U.S.C. 3705), the undersigned Warrantor hereby warrants to the Purchaser(s) or Owner(s) identified in the caption hereof, and to his/her successors or transferees, that:

The dwelling located on the property identified in the caption hereof is constructed in substantial conformity with the plans and specifications (including any amendments thereof, or changes and variations therein) which have been approved in writing by the Federal Housing Commissioner or the Secretary of Veterans Affairs on which the Federal Housing Commissioner or the Secretary of Veterans Affairs based the valuation of the dwelling: Provided, however, That this warranty shall apply only to such instances of substantial nonconformity as to which the Purchaser(s)/Owner(s) or his/her (their) successors or transferees shall have given written notice to the Warrantor at any time or times within one year from the date of original conveyance of title to such Purchaser(s)/Owner(s) or the date of initial occupancy, whichever first occurs: Provided further, however, That in the event (1) the Purchaser(s)/Owner(s) acquired title to the captioned property prior to the completion of construction of the dwelling thereon, such notice of nonconformity to the Warrantor may be given any time or times within one year from the date of completion or initial occupancy of such dwelling, whichever first occurs, or (2) where it has been necessary to postpone improvements such notice of nonconformity to the Warrantor as to such incomplete items may be given at any time or times within one year from the date of full completion of each of such items. The term "dwelling" as used herein shall be deemed to include all improvements or appurtenances set forth in the plans and specifications upon which the Federal Housing Commissioner or the Secretary of Veterans Affairs has based the valuation of the property, excepting those constructed by a municipality or other government authority.

The undersigned Warrantor further warrants to the Purchaser(s) Owner(s) and his/her (their) successors or transferees, the property against defects in equipment, material, or workmanship and materials supplied or performed by the Warrantor or any subcontractor or supplier at any tier resulting in noncompliance with standards of quality as measured by acceptable trade practices. This warranty shall continue for a period of one year from the date of conveyance of title to such Purchaser(s) or from the date of full completion of each of any items completed after conveyance of title. The Warrantor shall remedy, at the Warrantor's expense, any defect(s) of equipment, material, or workmanship furnished by the Warrantor. Warrantor shall restore any work damaged in fulfilling the terms and conditions of this warranty.

| | Manufacturer's Name, Address & Phone Number (include Area Code) |
|---|---|
| If a manufactured (mobile) home was erected on this property, the Warrantor further warrants that (1) the property (other than the manufactured unit itself) complies with the submitted construction exhibits; (2) the manufactured home sustained no hidden damage during transportation and erection; and (3) if the home was manufactured in separate sections, the sections were properly joined and sealed. | Timberline Homes<br>1809 Columbus Par Kway<br>Opelike AL 36804 |

This warranty shall be in addition to, and not in derogation of, all other rights and privileges which such Purchaser(s)/ Owner(s) or his/her (their) successors or transferees may have under any other law or instrument, and shall survive the conveyance of title, delivery of possession of the property, or other final settlement made by the Purchaser(s)/Owner(s), and shall be binding on the Warrantor notwithstanding any provision to the contrary contained in the contract of purchase or other writing executed by the Purchaser(s)/Owner(s) or his/her (their) successors or transferees heretofore or contemporaneously with the execution of this agreement or prior to final settlement.

This warranty is executed for the purpose of inducing the Federal Housing Commissioner or the Secretary of Veterans Affairs to make, to guarantee or to insure a mortgage on the captioned property, and the person signing for the Warrantor represents and certifies that he/she is authorized to execute the same by the warrantor and by his/her signature the Warrantor is duly bound under the terms and conditions of said warranty. The FHA Commissioner or the Secretary of Veterans' Affairs reserves the right to make a final determination as to whether a defect exists and whether the builder must remedy the defect.

| Warrantor | | | Purchaser(s) Acknowledgment | |
|---|---|---|---|---|
| Warrantor's Title<br>General Manager | | | Signature of Purchaser<br>Jennifer Golden | Date (mm/dd/yyyy)<br>11 8 04 |
| Signature<br>J. P. Lee | Date (mm/dd/yyyy)<br>11 8 04 | | Signature of Purchaser | Date (mm/dd/yyyy) |
| Builder's Name and Address<br>Timberline Homes<br>1809 Columbus Arkway<br>Opelika, AL 36804 | | | Builder's Phone Number (include Area Code)<br>334-749-6538 | |

Purchaser Note: Any notice of nonconformity must be delivered to the warrantor within the period or periods set forth above.
Warning: HUD will prosecute false claims and statements. Conviction may result in criminal and/or civil penalties. (18 U.S.C. 1001, 1010, 1012; 31 U.S.C. 3729, 3802)
Provide completed copies of this warranty to both the homebuyer and the builder, at closing. Include a copy of this warranty in the case binder when sent to HUD.

Previous editions are obsolete. Combines previous HUD-92544-A.    VA form 26-1859    form HUD-92544 (9/92)
ref. Handbook 4145.1



EXHIBIT
2

# Builder's Certification
## of Plans, Specifications, & Site

**U.S. Department of Housing and Urban Development**
Office of Housing
Federal Housing Commissioner

OMB Approval No. 2502-0496
(exp. 08/30/2006)

| | |
|---|---|
| Property Address (street, city, State, & zip code)<br><br>2999 Lee Road 117<br>Opelika Al 36804 | Subdivision Name |
| Mortgagee's (Lender's) Name & Address  (this is the lender who closed the loan)<br><br>AuburnBank Mortgage<br>3205 20th Ave<br>Valley Al 36854 | FHA Case Number<br><br>011-5362150<br><br>Phone Number<br><br>334-768-5626 |

**1. Site Analysis Information:**  To be completed on all proposed and newly constructed properties regardless of LTV ratio.

a. **Flood Hazards.** Are the property improvements in a Special Flood Hazard Area (SFHA)?  ☐ Yes  ☒ No

   1) Provide the community number and date of the Flood Insurance Rate Map (FIRM) used to document your answer.  Community Number _____ Map Date _____

   2) Is the community participating in the National Flood Insurance Program and in good standing?  ☐ Yes  ☒ No

   3) If "Yes" to 1a. above, attach:
    (i) a Letter of Map Amendment (LOMA) or;
    (ii) a Letter of Map Revision (LOMR) or;
    (iii) a signed Elevation Certificate documenting that the lowest floor (including basement) is built in compliance with 24 CFR 200.926d(c)(4).

b. **Noise.** Is the property located within 1000 feet of a highway, freeway, or heavily traveled road?  ☐ Yes  ☒ No
   Within 3000 feet of a railroad?  ☐ Yes  ☒ No
   Within one mile or a civil airfield or 5 miles of a military airfield?  ☐ Yes  ☒ No

c. **Runway Clear Zones / Clear Zones.** Is the property within 3000 feet of a civil or military airfield?  ☐ Yes  ☒ No
   If "Yes," is the property in a Runway Clear Zone / Clear Zone?  ☐ Yes  ☒ No

d. **Explosive / Flammable Materials Storage Hazard.** Does the property have an unobstructed view, or is it located within 2000 feet of any facility handling or storing explosive or fire prone materials?  ☐ Yes  ☒ No

e. **Toxic Waste Hazards.** Is property within 3000 feet of a dump or landfill, or a site on an EPA Superfund (NPL) list or equivalent State list?  ☐ Yes  ☒ No

f. **Foreseeable Hazards or Adverse Conditions.**
   (1) Does the site have any rock formations, high ground water levels, inadequate surface drainage, springs, sinkholes, etc.?  ☐ Yes  ☒ No
   (2) Does the site have unstable soils (expensive, collapsible, or erodible)?  ☐ Yes  ☒ No
   (3) Does the site have any excessive slopes?  ☐ Yes  ☒ No
   (4) Does the site have any earth fill?  ☐ Yes  ☒ No
   If "Yes," will foundations, slabs, or flatwork rest on the fill?  ☐ Yes  ☒ No

If you marked "Yes" to any of the above questions in f, please attach a copy of the State licensed engineers' (soils and structural) reports, designs, and/or certifications showing compliance with HUD requirements to ensure the structural soundness of the improvements and the health and safety of the occupants. Refer to HUD Handbook 4145.1 and FHA Data Sheet 79g.

**Complete this section when seeking eligibility for Maximum Loan-to-Value Financing.** Items 2 and 3 must be checked.

| | | | |
|---|---|---|---|
| 2. | ☒ | HUD Minimum Property Standards in the Code of Federal Regulations at 24 CFR 200.926d. | |
| 3. | ☒ | HUD Handbook 4145.1, Architectural Processing & Inspections for Home Mortgage Insurance, including Appendix 8. Site Grading & Drainage Guidelines. | |
| 4. | ☒ | Local/State Code | |
| | | Code - One | Applicable Provisions<br>All |
| 5. | ☒ | CABO One- and Two-Family Dwelling Code, as listed in 24 CFR 200.926b. | |
| 6. | ☒ | CABO 1992 Model Energy Code | |
| 7. | ☒ | Electrical Code for One- and Two-Family Dwellings, as listed in 24 CFR 200.926b. (current edition; NFPA 70A/1984). | |
| 8. | ☒ | This is a manufactured (mobile) home and was constructed in accordance with the Federal Manufactured Home Construction & Safety Standards (FMHCS). The label on the manufactured home shows compliance with the FMHCS. I hereby certify that the plans and specifications for all other construction (i.e., site, foundation) comply with the applicable building code or HUD requirement listed above, including para. 3-4, Handbook 4145.1, and the Permanent Foundation Guide for Manufactured Housing. | |

**Builder or Builder's Agent:**  I hereby certify that the site analysis information above is true and accurate to the best of my knowledge and belief and that the plans and specifications and site information were designed to mitigate any foreseeable hazards or adverse conditions. On all properties eligible for maximum LTV financing, I further certify that I have personally reviewed the plans, specifications, and site information submitted herewith. Based upon my review, I hereby certify that such plans, specifications comply with the applicable building code specified above as well as complying with the HUD construction requirements listed above.  An "X" marked in the blank by each numbered item indicates that provisions from the marked code apply.

| | |
|---|---|
| 9 a. Name of Builder's Company or Builder's Agent  (type or print)<br><br>Timberline Homes Inc. | 10a. Name & Title of Builder or Builder's Agent  (type or print)<br><br>A. C. Lee   G.M.          11 8-04 |
| b. Street Address<br><br>1909 Columbus Parkway | b. Signature of Builder or Builder's Agent        Date (mm/dd/yyyy)<br><br>A. C. Lee |
| c. City, State, & Zip Code<br><br>Opelika Al 36804 | c. Telephone Number (include area code)<br><br>334-749-6538 |

Previous editions are obsolete.          Page 1 of 3          ref, Handbook 4145.1          form HUD-92541 (4/2001)

EXHIBIT
**3**



**BOB RILEY**
**GOVERNOR**

**JIM SLOAN**
**ADMINISTRATOR**

# ALABAMA MANUFACTURED HOUSING COMMISSION
350 SOUTH DECATUR STREET • MONTGOMERY, ALABAMA 36104
(334) 242-4036 • FAX (334) 240-3178
WWW.AMHC.STATE.AL.US

May 5, 2005

1789
John Mark Parker
P.O. Box 3501
LaGrange, GA 30241

Dear Mr. Parker:

**Your Installer Certification was closed on 12/31/04.**

The Set-Up Inspection Report pertaining to the home of Jennifer Golden, located at 2999 Lee Rd 117 Opelika, Alabama 36804 (32x76 HUD#TRA546306 & 307) is enclosed for your information and immediate corrective action.

Alabama law requires anyone who installs a manufactured home to be certified with the Alabama Manufactured Housing Commission (AMHC). It also requires anyone who transports a manufactured home to be a certified installer unless they are under written contract with a licensed manufacturer or licensed retailer with the Alabama Manufactured Housing Commission. Our records indicate that you are not a certified installer. **Therefore, you must contract with a certified installer to install this home correctly within 30 days of the date of this letter, in compliance with the AMHC law, rules and regulations.**

You are assessed fines in the amount of $700.00 for this violation ($500.00, uncertified installer; $100.00, no installer decal; $100.00, no locator). This fine must be remitted to the above address by check or money order by Monday, June 5, 2005. If you do not comply within the allotted time, you case may be referred for prosecution.

You may appeal this decision by filing a written request for a hearing at this office within ten (10) days from your receipt of this letter. If you have any questions you should contact Mr. Lee Pamplin, ext. 23 or me at ext. 25.

You are advised to reimburse the homeowner any payments you received from him/her for work you were not certified to do.

Sincerely,

*Jim Sloan*

Jim Sloan
Administrator

JBS/lp

EXHIBIT
**4**

cc:  Jennifer Golden
     2999 Lee Rd 117
     Opelika, Alabama 36804

cc:  AMHC Inspector

*N/S Decal*
*Installer not cert.*

ALABAMA MANUFACTURED HOUSING COMMISSION
350 SOUTH DECATUR STREET ■ MONTGOMERY, ALABAMA 36104
(334)242-4036 ■ FAX (334)240-3178

## SET-UP INSPECTION REPORT

LOCATOR Y __ N ☒

DATE 4/2/05

### INSTALLER
John Mark Parker
PO Box 3501
LaGrange, GA 30241
CERTIFICATION # 1789   DECAL # None
INSPECTED BY: Mangum, S #18
MANUFACTURER: Ultra Jolly 125
HUD LABEL # TRA 546306  TRA 546307
SERIAL # CB72 AB
INSIGNIA # n/a

### OWNER
Jennifer Golden
2999 Cre Rd 117
Opelika, AL 36804
COUNTY Lee
YEAR: NEW ☒   USED
SIZE OF UNIT 32x76/
RESALE DECAL # N/A
RETAILER Timberline
CITY Opelika

| | CORRECT | INCORRECT |
|---|---|---|
| 1. FIRE SEPARATION | ☒ | |
| *(Being installed)* | | |
| 2. SITE PREPARATION | | ☒ |
| *water standing* | | |
| 3. PIERS | | |
| *#bent* FOOTINGS | ☒ | |
| *Booking areas* SPACING | ☒ | |
| *W TE* ALIGNMENT | ☒ | |
| ── CAPS/PLATES | | ☒ |
| SHIMS | ☒ | |
| MARRIAGE WALL | ☒ | |
| PERIMETER PIERS | ☒ | |
| *of sitting* CONSTRUCTION | | ☒ |
| *38"* PIER HEIGHT | ☒ | |
| 4. TYPE ANCHOR USED | Homelide CH #17 | |
| DEPTH | | ☒ |
| SPACING | ☒ | |
| STABILIZER PLATE | ☒ | |
| VERTICAL TIES | ☒ | |
| *per* DIAGONAL TIES | ☒ | |
| *nc.* LONGITUDINAL TIES | | ☒ |
| *JTT* STRAP SECUREMENT | | ☒ |
| STRAP TENSION | ☒ | |
| *45° All straps* STRAP ANGLE | | ☒ |
| 5. TYPE SYSTEM USED | N/A | |
| INSTALLATION | N/A | |

### COMMENTS:
1. Water standing under home.
2. All piers are to have full sized caps. (M.W. tailend)
3. Several piers found leaning.
4. Anchors are to be installed to full depth until the anchor head rests on stabilizer
5. Longitudinal ties not installed per manufacturers instruction
6. Securement to vertical tie tabs not per manufacturers instruction
7. Strap angle is not to exceed 45°

INSTALLER MUST: (1) CERTIFY THAT CORRECTIONS HAVE BEEN MADE BY SIGNING THIS FORM
AND (2) RETURNING IT TO THIS OFFICE BY _____

DATE _____   SIGNATURE _____