IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RECEIVED

2007 JUL 10  A 0: 23

DEBRA P. HACKETT. CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

PROGRESSIVE PREFERRED
INSURANCE COMPANY
        Plaintiff


vs.                          CASE NO. 3:06-CV-00934-WKW


JMP ENTERPRISES, INC.;
JOHN MARK PARKER; and
JENNIFER M. GOLDEN
        Defendants


**GOLDEN'S BRIEF IN OPPOSITION TO PROGRESSIVE'S
MOTION FOR SUMMARY JUDGMENT AND
IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT**


Of Counsel:
**G. Houston Howard II**
HOWARD, DUNN, HOWARD & HOWARD
P. O. Box 1148
Wetumpka, AL 36092
334-567-4356

## TABLE OF CONTENTS

STATEMENT OF FACTS .......................................................................... 1-9

ARGUMENT ............................................................................................ 10-48

**1. PROGRESSIVE IS PRECLUDED FROM DENYING COVERAGE BECAUSE IT ASSUMED THE DEFENSE OF PARKER WITHOUT NOTIFYING HIM AND WITHOUT EVER ADVISING HIM OF ITS ALLEGED DEFENSES TO COVERAGE.** ........................................................................................ 1-9

*A. Progressive Is Estopped to Deny Coverage because it Assumed the Defense of Parker without Advising Him that It Intended to Assume His Defense and without Reserving Its Rights.* ................................................................ 10-12

Burnham Shoes, Inc. v. West American Ins. Co., 504 So. 2d 238 (Ala. 1987)

The Home Insurance Co. v. Rice, 585 So. 2d 859, 861 (Ala. 1991)

*B. Progressive Is Precluded from Denying Coverage because It Breached Its Duty to Inform Parker of the Basis for Its Alleged Reservation of Rights.* .... 13-14

Shelby Steel Fabricators, Inc. v. U.S.F. & G, 569 So. 2d 309, 312 (Ala. 1990).

**2. PROGRESSIVE'S FALSE CERTIFICATION OF AN INCOMPLETE POLICY PRECLUDES IT FROM PREVAILING.** ................................................................ 15

May v. Moore, 424 So. 2d 596, 603 (Ala. 1982).

**3. GOLDEN HAS THE BURDEN TO SHOW THAT THE COMPLAINT ALLEGES, OR THE FACTS ESTABLISH, THAT HER CLAIMS ARE COVERED BY THE INSURING PROVISION OF THE POLICY; PROGRESSIVE HAS THE BURDEN TO SHOW THAT GOLDEN'S COMPLAINT ALLEGES FACTS ESTABLISHING THAT AN EXCLUSION BARS RECOVERY.** ............................................................................................ 16-17

Acceptance Ins. Co. v. Brown, 832 So. 1, 12 (Ala. 2001)

Tanner v. State Farm Fire & Cas. Co., 874 So. 2d 1058 (Ala. 2003).

1

**4. GOLDEN'S CLAIMS ARE COVERED BY THE INSURING PROVISION OF THE POLICY.** ..................................................................................... 18-28

   A. *The Insuring Provision of the Policy Covers Golden's Negligence Claim.* ........ .................................................................................................... 18-23

      *(1) Golden alleges that she suffered property damage and bodily injury.*

         American Economy Ins. Co. v. Fort Deposit Bank, 890 F. Supp. 1011, 1017 (S.D. Ala. 1995)

         American States Ins. Co. v. Cooper, 518 So. 2d 708 (Ala. 1987)

      *(2) Golden alleges that she suffered bodily injury and property damage because of an accident.*

         Moss v. Champion Insurance Co., 442 So. 2d 26, 28 (Ala. 1983)

      *(3) The evidence shows that Golden's claim "arises out of the ownership, maintenance or use of [Parker's] insured auto."*

         State Farm Fire & Casualty Co. v. Erwin, 393 So. 2d 996 (Ala. 1981).

         Taliaferro v. Progressive Specialty Ins. Co., 871 So. 2d 976, 980 (Ala. 2001)

         Exhibit R, Regulation 535-X-12-.02(5), at 48

         Exhibit R, Regulation 535-X-12-.03(1) at 48

   B. *The Insuring Provision of the Policy Covers Golden's Wantonness Claim.* ........ .................................................................................................... 23-24

         Tapscott v. Allstate Ins. Co., 526 So. 2d 570, 574 n.3 (Ala. 1988)

         U.S.F. & G. v. National Tank & Machine Works, Inc., 402 So. 2d 925, 927 (1981)

   C. *The Insuring Provision of the Policy Covers Golden's Breach-of-Warranty Claim.* .................................................................................................... 25-26

         Townsend Ford, Inc. v. Auto-Owners Insurance Co., 656 So. 2d 360, 364 (Ala. 1995)

D. *The Insuring Provision of the Policy Covers Golden's Failure-to-Disclose Claim.* ............................................................................................ 26-28

(1) *Golden alleges that she suffered property damage and bodily injury.*

Tanner v. State Farm Fire & Cas. Co., 874 So. 2d 1058, 1065 (Ala. 2003)

Townsend Ford, Inc. v. Auto-Owners Insurance Co., *656 So. 2d 360, 364 (Ala. 1995)*

(2) *Golden alleges that she suffered property damage and bodily injury because of an accident.*

(3) *The evidence shows that Golden's claim "arises out of the ownership, maintenance or use of [Parker's] insured auto."*

Exhibit R, Regulation 535-X-12-.03(1), at 48

Exhibit R, Regulation 535-X-12-.02(5), at 48

State Farm Fire & Casualty Co. v. Erwin, 393 So. 2d 996, 998 (Ala. 1981).

**5. THE NOTICE PROVISION AND THE EXCLUSIONS ARE NOT ENFORCEABLE AGAINST GOLDEN.** ............................................................ 29-33

A. *The Uniform Motor Carrier Endorsement Precludes Progressive from Enforcing the Notice Provision and the Exclusions against Golden.* ............ 29-30

Ala. Code § 37-3-18 (1975)

Employers Ins. Co. of Alabama v. Johnston, 238 Ala. 26, 189 So. 58 (1939)

Fidelity & Casualty Company of New York v. Jacks, 231 Ala. 394, 165 So. 242 (1936)

B. *The Endorsement under the Federal Motor Carrier Act Precludes Progressive from Enforcing the Notice Provision and the Exclusions against Golden.* ... 30-31

C. *Section 27-23-1 Precludes Progressive from Asserting the Notice Provision against Golden.* ............................................................................... 31-33

Ala. Code § 27-23-1 (1975)

Haston v. Transamerica Insurance Services, 662 So. 2d 1138 (Ala. 1995)

**6. PROGRESSIVE WAIVED ANY DEFICIENCY IN NOTICE.** ..................... 34-35

First Alabama Bank of Montgomery, N.A., v. First State Insurance Co., 899 F.2d 1045, 1064 (11th Cir. 1990)

B. Allen, *Alabama Liability Insurance Handbook*, § 4-2(h), at 91 (1996)

**7. PROGRESSIVE RECEIVED ADEQUATE NOTICE.** .................................. 36-39

Webb v Zurich Ins. Co., 200 F.3d 759 (11th Cir. 2000)

Provident Life & Accident Ins. Co. v. Elliot, 198 Ala. 230, 232, 73 So. 476 (1916).

**8. THE EXCLUSION FOR PROPERTY "IN THE CHARGE OF ANY INSURED" DOES NOT RELIEVE PROGRESSIVE.** ............................................................ 40-43

*A. If Exclusion Nine Applies to the Coverage on the "Non Owned Attached Trailer," then the Exclusion Renders Such Coverage Illusory.* ..................... 40-43

State Farm Fire & Cas. Co. v. Erwin, 393 So. 2d 996, 997 (Ala. 1981)

Scottsdale Insurance Co. v. National Security Fire & Cas. Co., 741 So. 2d 424 (Ala. Civ. App. 1999)

Townsend Ford, Inc. v. Auto-Owners Insurance Co., 656 So. 2d 360 (Ala. 1995)

*B. Even if Exclusion Nine Excludes Liability for Property Damage, It Does Not Exclude Liability for Mental Anguish.* ................................................................ 43

**9. THE EXCLUSION FOR LOADING AND UNLOADING DOES NOT RELIEVE PROGRESSIVE.** ............................................................................................... 44-45

Tanner v. State Farm Fire & Cas. Co., 874 So. 2d 1058, 1064 (Ala. 2003)

**10. THE EXCLUSION FOR ASSUMED LIABILITY DOES NOT RELIEVE PROGRESSIVE.** ............................................................................................... 46-47

U.S. Fidelity & Guaranty Co. v. National Tank & Machine Works, Inc., 402 So. 2d 925 (Ala. 1981)

Townsend Ford, Inc. v. Auto-Owners Insurance Co., 656 So. 2d 360 (Ala. 1995)

**11. WHETHER PROGRESSIVE WOULD BE RELIEVED BY THE EXCLUSION FOR INTENTIONAL INJURY IS NOT RIPE FOR DECISION.** ........................... 48

CONCLUSION ............................................................................................... 49

CERTIFICATE OF SERVICE .................................................................... 49

# STATEMENT OF UNDISPUTED FACTS

## A. Golden's Purchase Contract and Employment of Parker

1.    On January 28, 2005, Golden signed a "Purchase Agreement Form 500" to purchase a manufactured home from Timberline. Exhibit HH.

2.    Timberline employed Parker as a subcontractor to install the home.

3.    Under Alabama law, one who installs manufactured homes must be licensed by the Alabama Manufactured Housing Commission. Ala. Code § 24-5-32 (1975).

4.    Alabama Manufactured Housing Commission Regulations define "installation" as "locating, setting up, siting, installing, tying down, anchoring or placing a manufactured home ... on the lot or site of installation." Exhibit R, Regulation 535-X-12-.02(5), at 48.

5.    Additionally, "transporters of manufactured homes ... who are not under written contract with a licensed manufacturer or licensed retailer must be a certified installer ...." Exhibit R, Regulation 535-X-12-.03(1), at 48.

6.    Parker was not under written contract with Timberline or Deer Valley. Exhibit AA, Parker Deposition page 36, lines 5-7.

## B. Parker's Licensure

7.    Parker had a license in 2004. Parker's 2004 license states on its face that it "expires: December 31, 2004." Exhibit EE.

8.    Regulation 535-X-12.03(3) provides that a certified installer may renew his license "upon the payment of annual certification fee." Exhibit R, at 48.

9.    Parker has admitted that he did not submit any payment for a 2005 license until May 19, 2005. Exhibit NN.

1

10. This was several weeks after Golden's purchase of the home closed on April 27, 2005. Exhibit FF.

### C. Delivery and Installation of Home.

11. Parker met with Randall Bracknell, Golden's live-in boyfriend, on the property before he delivered the home. Exhibit AA, Parker Deposition 74, line 12-page 75, line 12.

12. When Parker later delivered the home to the property, Bracknell testified that "[i]t was just too wet trying to get in there." Exhibit BB, Bracknell Deposition at 124.

13. Parker said, "We backed off the road. And as soon as those tires hit, whatever you want to call it, the gravel drive or whatever, it started to sink because it had been wet." Exhibit AA, Parker Deposition page 84, lines 2-5.

14. Indeed, Gordon Davis, a licensed engineer has testified, "The change in elevation from the county road to the home site is such an abrupt drop that, considering the length of the home, the girders under the home would have been binding and dragging across the ground surface as the home was brought from the county road onto the lot." Exhibit KK, Davis Affidavit ¶ 10.

15. Parker admitted that both halves of the home became stuck. Exhibit AA, Parker Deposition page 79, lines 10-12.

16. Davis "observed, an accumulation of soil on the bottom flanges of the girders and imbedded adjacent to the web of the girders," "a curvature in the girders that was perpendicular to the frame," "minor twisting and racking of door frames," and "a bowed interior wall that was directly above the area where [he] observed the curvature or bend in the frame." Exhibit KK, Davis Affidavit ¶¶ 5-9.

17. In Davis's opinion, this damage resulted from "improper handling of the structure during the transportation process to the site. This resulted in lateral movements of the structure and caused permanent deformations in the structure." Exhibit KK, Davis Affidavit ¶ 12.

**D. Golden's Letter**

18. On January 11, 2006, Golden wrote Parker, Timberline and Deer Valley a certified letter listing problems with the home. Exhibit Z.

19. This was Golden's first complaint to Parker about the home. Exhibit CC, Golden Deposition at page 195, line 3-page 196, line 6.

20. The letter was not, however, delivered to Parker personally; his wife signed the return receipt card for the letter. Exhibit Z.

21. Parker testified that he had never seen Golden's letter. Exhibit AA, Parker Deposition page 133, line 15- 17; page 135, lines 16-19.

22. Parker also testified that he has never had any conversations with his wife about the letter. Exhibit AA, Parker Deposition page 135, lines 20-23.

**E. Golden's Suit**

23. Golden filed suit against Parker, Timberline, and Deer Valley on February 14, 2006. Exhibit A.

24. The suit alleged four claims against Parker: negligent delivery and installation, wanton delivery and installation, breach of warranty, and fraud by failure to disclose.

25. Parker was served by certified mail on February 23, 2006. Exhibit S.

3

26. On April 13, 2006, Golden's attorney wrote Progressive and notified it of the suit.[1] Exhibit T.

27. On April 27, 2006, Progressive wrote Parker a letter, which stated as the sole coverage issue that "this loss doesn't appear to meet the definition of a [sic] "accident" under your policy." The letter did not state whether Progressive would provide a defense in the case. Exhibit U.

28. Parker's wife, Jill Parker, signed for the letter on May 3, 2006. Exhibit G, Progressive Response to Second Request for Production at 4.

29. On May 1, 2006, Parker had filed a pro se Motion to Stay and Motion to Amend. Exhibits V-W.

30. Progressive authorized the law firm of Nix Holtsford to file an answer for Parker on May 17, 2006. Exhibit Exhibits N-O, Golden Request for Admission No. 5 & Exhibit 10.

31. When Nix Holtsford undertook Parker's defense, Progressive had not notified Parker that it was undertaking control his defense. Exhibits II-JJ, Progressive's Responses to Golden's Second Interrogatories, 9-10.

32. Although Progressive notified Parker's wife on June 1, 2006, that it was assuming defense of Golden's action, it **never** notified John Mark Parker that it had assumed control of his defense. Exhibits II-JJ, Progressive's Responses to Golden's Second Interrogatories 9-10.

33. Parker personally appeared at a scheduling conference in Golden's action on August 22, 2006. Exhibit DD.

---

[1] This was pursuant to the procedure approved in *Webb v Zurich Ins. Co.*, 200 F.3d 759, 661 n.1 (11th Cir. 2000).

34. On October 3, 2006, Golden filed an Amended Complaint in the state-court action. Golden's claims against Parker were identical to those in the original complaint, but Golden's Amended Complaint added JMP Enterprise Services, Inc., as a defendant. Exhibit X.

35. Nix Holtsford filed an answer to Golden's Amended Complaint for Parker and JMP on November 27, 2006. Exhibit Y.

36. In response to Golden's Request for Production, Progressive has not produced any reservation of rights letter that it issued to JMP before assuming the defense of the claims asserted in Golden's Amended Complaint. Exhibits J-K.

37. On March 27, 2007, Progressive filed a Motion to Amend its Complaint in this action to add notice as a defense to coverage. Document 15. The court permitted the amendment. Document 18.

38. This was the first time that Progressive had advised Parker or JMP that they had provided inadequate notice.

39. Progressive's complaint, as amended, alleges that no coverage exists for Golden's claims for the following reasons:

> (a) "The damage to Golden's mobile home was not caused by an 'accident' as that term is defined in the policy which includes a requirement that the damage arise out of the ownership, or maintenance or use of the insured auto." Amended Complaint, Document 19, ¶ 13.

> (b) "[C]overage is excluded by the exclusions in the policy, including the exclusion for contractual liability in exclusion two."[2] Document 19, Amended Complaint, ¶ 14.

---

[2] Paragraph eleven of the Amended Complaint mentions the exclusions for "expected or intended damages," "damage to any property being transported or in the charge of the insured," and "damage caused by loading or unloading of property." Document 19, Amended Complaint ¶ 11.

(c) "JMP and Parker are not entitled to coverage because they violated the notice requirements in the policy." Document 19, Amended Complaint, ¶ 15.

*F. The Policy*

40.  The insuring provision of the policy provides, "We will pay damages, OTHER THAN PUNITIVE OR EXEMPLARY DAMAGES, for which an insured is legally liable because of an accident." Exhibit B, policy pages 9-10.

41.  Although Progressive filed a policy certified to be a "true and **complete** copy of the original," Document 22, Exhibit B, page 1 of 24, that policy does **not** contain any of the endorsements listed on the declarations page.

42.  Endorsement 8627 (03/88) provides, "The phrase 'other than punitive damages' in this section **does not apply** to your policy."Exhibit G, Progressive Response to Second Request for Production, at 17 (emphasis added).

43.  Similarly, Progressive did not file with the court the Uniform Motor Carrier Bodily Injury and Property Damage Liability-Certificate of Insurance, which it had filed with the Alabama Public Service Commission. That form provides in part,

> This is to certify, that the PROGRESSIVE SPECIALTY INSURANCE COMPANY ... has issued to JMP ENTERPRISES, INC. ...  a policy or policies of insurance effective from 08/-01/2004 ... which by attachment of the Uniform Motor Carrier Bodily Injury and Property Damage Liability Insurance Endorsement, has or have been amended to provide automobile bodily injury and property damage liability insurance covering the obligations imposed upon such motor carrier by the provisions of the motor carrier law of the State in which the Commission has jurisdiction ....

Exhibit C; Exhibit E, University Agency File, at 14-15, 20-21. Progressive charged a fee of $50.00 for this endorsement.[3]

---

[3] The bottom of the first page of the declarations lists "Fees" of $150.00, without explanation. Exhibit B, page 1 of 24. The University Agency file shows that this $150.00

44. Finally, Progressive did not file with the court Form MCS-90, which was required by the Motor Carrier Act of 1980:

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. ... It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured.

Exhibit E, University Agency File at 16. Progressive likewise charged a fee of $50 for this endorsement. See note 4 *supra*.

45. The policy defines an accident as "a sudden, unexpected and unintended event, or a continuous or repeated exposure to that event, that causes bodily injury or property damage and *arises out of the ownership, maintenance, or use of your insured auto*." Exhibit B, § 8, policy page 5.

46. The policy defines "your insured auto" or "insured auto" as

a. Any auto described in the Declarations or any replacement auto. ...

\*          \*          \*          \*

d. Trailers designed primarily for travel on public roads, even if such trailers are not shown in the Declarations, but only while upon a public road and connected to your insured auto.

Exhibit B, § 9, policy pages 5-6.

---

is for two state public-liability filings and one ICC filing. Exhibit E, University Agency File at 5.

47. The Declarations lists three vehicles: (1) "1992 Intl 810"; (2) "NON Owned Attached Trlr,"[4] and (3) "2000 Ford F650 Super Duty." Exhibit B, page 2 of 24.

48. Progressive has admitted that Golden's mobile home was covered under paragraph 9d as a "trailer[] designed primarily for travel on public roads." Exhibits H-I, Response to Request for Admission 1. See *Taylor v. Ins. Co. of N.A.,* 565 So. 2d 129, 134 (Ala. 1990) ("[T]he **policy** provides that a **trailer attached** to an insured auto is covered as an insured auto.").

49. Progressive has also admitted that "Ms. Golden's mobile home would constitute as a non-owned attached trailer while it was attached to a listed tower [*sic*] unit as described in item number 2 of the auto coverage schedule." Exhibits H-I, Response to Request for Admission No. 2. Progressive charged $1,107 for this additional coverage. Exhibit B, Declarations, page 2 of 24.

50. Yet, the body of the policy purports to exclude this coverage for which Parker had paid $1107. The policy contains an exclusion for "[p]roperty damage to any property owned by, rented to, being transported by, used by, or in the charge of any insured including any motor vehicle operated or being operated."Exhibit B, § 9, policy page 13.

51. Under the heading "Your Duties in Case of An Accident or Loss," the policy states,

> In the event of an accident or loss, report it to us as soon as practicable by calling our toll free claims reporting number 1-800-272-4499. The report should give the time, place, and circumstances of the accident or loss, including the names and addresses of any injured persons and witnesses, and the licenses plates of the vehicles involved.

Exhibit B, policy page 1.

---

[4] The "non-owned attached trailer" was covered "only while attached to a listed power unit specifically described on the declarations page."

52. The policy defines "you and your" as "the organization shown in the Declarations page as the named insured." Exhibit B, General Definitions, § 2, at policy page 3. The declarations list JMP Enterprises as the named insured. Exhibit B, page 1 of 24.

53. In addition to the named insured's duty to notify Progressive of "an accident or loss ... as soon as practicable," "Any person claiming coverage under the Policy must:...4. *promptly* send us any and all papers received relating to any claim or lawsuit." Exhibit B, Other Duties § 4, policy page 4.

54. In addition to providing coverage for the named insured, the policy provides coverage for "any additional driver listed on your policy...." Exhibit B, Additional Definitions § 2. Parker was listed as a driver. Exhibit B, page 1 of 24.

# ARGUMENT

## 1. PROGRESSIVE IS PRECLUDED FROM DENYING COVERAGE BECAUSE IT ASSUMED THE DEFENSE OF PARKER WITHOUT NOTIFYING HIM AND WITHOUT EVER ADVISING HIM OF ITS ALLEGED DEFENSES TO COVERAGE.

### A. Progressive Is Estopped to Deny Coverage because it Assumed the Defense of Parker without Advising Him that It Intended to Assume His Defense and without Reserving Its Rights.

Golden requested Progressive to produce the following documents:

2. All reservation of rights letters issued to John Mark Parker and JMP Enterprises, Inc.

3. All reservations of rights agreements with John Mark Parker and JMP Enterprises, Inc.

4. All notices provided to John Mark Parker and JMP Enterprises, Inc. that Progressive had or would assume the defense of the state court action.

Exhibit J, Golden's First Request for Production.

Progressive has produced only one document: a letter dated April 27, 2006. Exhibit K. The letter states as the sole coverage issue that "this loss doesn't appear to meet the definition of a [*sic*] "accident." The letter does not state whether Progressive will provide a defense, but says, "Once we complete our investigation into this matter, we will be in touch to advise you of our position with regards to coverage." Exhibit U. Although Progressive sent the letter certified mail, Parker's wife—and not Parker— signed for the letter. Exhibit G, at 4. No evidence reflects that John Mark Parker ever saw the letter.

10

In response to Interrogatories, Progressive has admitted that **it never orally told John Parker** that it was assuming the defense of Golden's action and that it only told Parker's wife two weeks **after** it had assumed that defense:[5]

> **Interrogatory nine: Did any agent, servant or employee of Progressive ever tell John Mark Parker orally that it was assuming defense of the Golden state court action?**
>
> Progressive Answer: Knight advised Jill Parker ("Parker") that Progressive would defend the state court action filed by Jennifer Golden ("Golden") under a reservation of rights.
>
> **Interrogatory 10. If the answer to the last question is yes, who told Parker this and when?**
>
> Progressive's Answer: Knight advised Parker that Progressive's defense of the state court action would be under a reservation of rights on or about June 1, 2006.

Exhibits II-JJ, Progressive's Responses to Golden's Second Interrogatories, 9-10. Parker himself appeared at a hearing in the Circuit Court of Lee County on August 22, 2006. Exhibit DD.

"[U]nder Alabama law, if an insurer does, in fact, *undertake to defend* an insured without reserving the right to withdraw its defense, it thereby waives its right to do so." *Burnham Shoes, Inc. v. West American Ins. Co.*, 504 So. 2d 238 (Ala. 1987); *see Shelby Steel Fabricators, Inc. v. U.S.F. & G*, 569 So. 2d 309 (Ala. 1990) (citing numerous cases). Here, Progressive undertook to defend Parker on May 17, 2006, when Nix Holtsford filed an answer on his behalf. "[I]t was incumbent upon [Progressive] to preserve its rights by giving notice that its assumption of [Parker's] defense was not a waiver of its right to deny a duty defend." *The Home Insurance Co. v. Rice*, 585 So. 2d 859, 861 (Ala. 1991). According to the undisputed evidence, Progressive never

---

[5]Nix Holtsford had filed an Answer for Parker on May 17, 2006. Exhibits N-O, Second Request for Admission No. 5 & exhibit 10.

personally notified Parker that it would or had assumed his defense, and it never notified him that it reserved the right to withdraw that defense. This precludes Progressive from now denying coverage.

Progressive's letter of April 27, 2006, was insufficient for two reasons: first, it did not state that Progressive would defend Golden's action. Progressive's duty arose *on its assumption of Parker's defense.* Second, no evidence shows that Parker received the letter of April 27, 2006. "There is no presumption in Alabama that a wife acts as the agent of her husband," *Gist v. Vulcan Oil Co.*, 640 So. 2d 940, 942 (Ala. 1994), and notice to Jill Parker was not notice to John Mark Parker. *American States Ins. Co. v. Barker*, 438 So. 2d 748, 749-50 (Ala. 1983) (summons and complaint delivered to insured's wife did not trigger insured's duty to notify carrier); *cf. Shelby Steel Fabricators, Inc. v. U.S.F. & G*, 569 So. 2d 309 (Ala. 1990) (letter to insured's attorney was minimal notice, but was sufficient); exhibit LL, B. Allen, *Alabama Liability Insurance Handbook*, § 4-2(b), at 88 (1996) ("[A] letter denying coverage, or reserving rights to contest coverage at a later date, must go not only to the named insured but to all possible insureds.").

Progressive's alleged conversation on June 1, 2006, with Parker's wife was likewise insufficient because (1) no case law establishes that a reservation of rights can occur by telephone; (2) it occurred **after** Progressive had assumed defense of the action; (3) and no evidence establishes that Parker's wife was his agent. See cases cited supra.

**B. Progressive Is Precluded from Denying Coverage because It Breached Its Duty to Inform Parker of the Basis for Its Alleged Reservation of Rights.**

Even if Progressive properly assumed control of Parker's defense, it nevertheless breached its enhanced obligation of good faith:

> "[W]hen an insurance company **undertakes a defense** pursuant to a reservation of rights, it does so under an 'enhanced obligation of good faith' toward its insured in conducting such a defense." *Aetna Cas. & Sur. Co. v. Mitchell Bros., Inc.*, 814 So. 2d 191, 195 (Ala. 2001). L & S Roofing set forth specific criteria for fulfilling the enhanced duty of good faith an insurer owes the insured in such a situation:

> "This enhanced obligation is fulfilled by meeting specific criteria. First, the company must thoroughly investigate the cause of the insured's accident and the nature and severity of the plaintiff's injuries. Second, it must retain competent defense counsel for the insured. Both retained defense counsel and the insurer must understand that only the insured is the client. **Third, the company has the responsibility for fully informing the insured not only of the reservation-of-rights defense itself, but of all developments relevant to his policy coverage and the progress of this lawsuit.** Information regarding progress of the lawsuit includes disclosure of all settlement offers made by the company. Finally, an insurance company must refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk."

*City Fire Insurance Co. v. Colonial Life & Accident Insurance Co.*, 839 So. 2d 614, 616 (Ala. 2002) (emphasis added); *Shelby Steel Fabricators, Inc. v. U.S.F. & G*, 569 So. 2d 309, 312 (Ala. 1990).

Golden's complaint, "which set forth the claims and allegations against [Parker], contained facts sufficient to put [Progressive] on notice of any potential problem with coverage." *Home Insurance Co. v. Rice*, 585 So. 2d 859, 861 (Ala. 1991). In support of its Motion for Summary Judgment, Progressive does not rely on any evidentiary material other than the complaint. Exhibit A.

13

Progressive *now contends that complaint* shows that Golden's claims are excluded under policy exclusions 1, 2, 9, and 10. Document 22, Progressive Brief at 4-5. It also contends that Parker failed to provide notice of Golden's claims or the suit.

None of these defenses were listed in Progressive letter of April 27, 2006. Exhibit U. Progressive has admitted that it never notified Parker or JMP that it had received inadequate notice of Golden's claim until it filed its Amended Complaint on March 27, 2007. Exhibits P-Q, Third Requests for Admission No. 13-14. Moreover, it has produced no evidence that it ever notified Parker or JMP that it reserved the right to contest coverage under any policy exclusion. Exhibits J-K, First Requests for Production.

This was a breach of its obligations "**for fully informing the insured not only of the reservation-of-rights defense itself, but of all developments relevant to his policy coverage ...**" *Shelby Steel Fabricators, Inc. v. U.S.F. & G*, 569 So. 2d 309 (Ala. 1990). As a result, Progressive is estopped to deny coverage; alternatively, it is estopped to rely on the defenses of which it failed to advise Parker. *See id; cf.* exhibit LL, B. Allen, *Alabama Liability Insurance Handbook*, § 4-2(h), at 91 (1996) ("A reservation of rights letter must be clear and specific. An insurer that specifically disclaims coverage on one ground of forfeiture waives all other grounds which might have been stated but were not.").

14

## 2. PROGRESSIVE'S FALSE CERTIFICATION OF AN INCOMPLETE POLICY PRECLUDES IT FROM PREVAILING.

Progressive filed with the court an insurance policy which it certified to be a "true and complete copy of the original." Exhibit B, page 1 of 24. It then argued in its brief that the policy excluded punitive damages and that Parker's lack of notice and policy exclusions precluded coverage.

The policy Progressive filed did not include endorsement 8627 (03/88), which eliminated the exclusion for punitive damages that Progressive had argued in its brief. Exhibit G, Progressive Response to Golden's Second Request for Production at 17; Document 22, Progressive Brief at 8.

Similarly, the policy Progressive filed did not include endorsements under the Motor Carriers Act of 1980 and the Alabama Motor Carrier Liability Act, which eliminate Progressive's right to rely on "any condition, stipulation, or limitation in the policy" against an injured party such as Golden. Exhibit E, University Agency File at 14, 16, 21. See pages 29-31 *infra*.

Progressive's filing and certification of a policy that did not contain endorsements relevant to the issues it argued prevents Progressive from prevailing in this action. "[T]he spoliation or attempt to suppress material evidence by a party to a suit, favorable to an adversary, is sufficient foundation for an inference of his guilt or negligence." *May v. Moore*, 424 So. 2d 596, 603 (Ala. 1982).

15

**3. GOLDEN HAS THE BURDEN TO SHOW THAT THE COMPLAINT ALLEGES, OR THE FACTS ESTABLISH, THAT HER CLAIMS ARE COVERED BY THE INSURING PROVISION OF THE POLICY; PROGRESSIVE HAS THE BURDEN TO SHOW THAT GOLDEN'S COMPLAINT ALLEGES FACTS ESTABLISHING THAT AN EXCLUSION BARS RECOVERY.**

If Golden had obtained a judgment, she would bear the burden of proving that the judgment awards damages for a loss covered by the insuring clause of the policy. Once she met that burden, then the burden would shift to Progressive to establish that an exclusion prevented recovery. *E.g., Acceptance Ins. Co. v. Brown*, 832 So. 1, 12 (Ala. 2001).

Golden would not be required "to negative the exceptions—their existence being a matter of affirmative defense." *Belt Automobile Indem. Ass'n v. Ensley Transfer & Supply*, 211 Ala. 84, 87, 99 So. 787 (1924). Moreover, "the ultimate burden of proof as to the applicability of [an] exclusionary clause rests with the … insurer." *Fleming v. Alabama Farm Bureau Mut. Cas.. Ins. Co.*, 293 Ala. 719, 722, 310 So. 2d 200 (1975).

Here, the situation is somewhat different. No judgment has been entered, and Progressive seeks to be relieved of both its duty to indemnify *and* its duty to defend. The court in *Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058 (Ala. 2003), summarized the insurer's duty to defend:

> If the allegedly injured person's complaint against the insured alleges a covered accident or occurrence, then the insurer owes the duty to defend even though the evidence may eventually prove that the gravamen of the complaint was not a covered accident or occurrence. If the complaint against the insured does not, on its face, allege a covered accident or occurrence, but the evidence proves one, then the insurer likewise owes the duty to defend. *The insurer owes no duty to*

16

> *defend only if neither does the complaint against the insured allege a covered accident or occurrence nor does the evidence in the litigation between insurer and insured prove a covered accident or occurrence. Acceptance Ins. Co., supra; Run-A-Ford, supra; Ladner, supra.* If the allegedly injured person's complaint against the insured alleges or the evidence proves not only claims based on a covered accident or occurrence but also claims not based on a covered accident or occurrence, the insurer owes a duty to defend at least the claims based on a covered accident or occurrence.

*Id.* at 1065.

17

## 4. GOLDEN'S CLAIMS ARE COVERED BY THE INSURING PROVISION OF THE POLICY.

To establish coverage, Golden bears the burden to show that either (1) *the complaint alleges or (2) the evidence shows*

> (a) that Golden suffered bodily injury or property damage (b) because of an accident (c) that "arises out of the ownership, maintenance, or use" (d) of one of the listed trucks *or* her mobile home while it was attached to one of the trucks.

Exhibit B, General Definitions § 8, at policy page 5; Exhibit B, Part I-Liability to Others, policy pages 9-10.

Once Golden meets that burden, then the burden shifts to Progressive to show that the complaint alleges facts that invoke an exclusion. Progressive may not escape its duty to defend by *offering evidence* that an exclusion precludes coverage. *Tanner*, 874 So. 2d at 1064.

### A. *The Insuring Provision of the Policy Covers Golden's Negligence Claim.*

Count XVI of Golden's First Amended Complaint is styled "Negligent Delivery and Installation" and alleges,

> 92. Parker and JMP, acting by and through their agents, servants, and employees, *undertook to deliver and install* the plaintiff's home.

> 93. Parker and JMP negligently performed this undertaking.

> 94. As a proximate consequence of these defendants' negligence, the home was not properly installed, and it was damaged; the plaintiff has suffered annoyance, inconvenience, and mental anguish; and the value of the home is now less than it otherwise would have been.

Exhibit X, Golden's First Amended Complaint.

18

*(1) Golden alleges that she suffered **property damage** and **bodily injury**.* "'Property damage' means damage to or destruction of tangible property, including loss of its use." Paragraph 94 alleges property damage ("the home … was damaged….").

The policy defines "bodily injury" as "physical injury to or sickness, disease, or death of any person." *General Definitions* ¶ 3, at page 3. "The terms 'sickness' or 'disease' necessarily encompass[] mental anguish." *American Economy Ins. Co. v. Fort Deposit Bank*, 890 F. Supp. 1011, 1017 (S.D. Ala. 1995); *see American States Ins. Co. v. Cooper*, 518 So. 2d 708 (Ala. 1987) (mental anguish covered by policy). Again, paragraph 94, which alleges that "the plaintiff has suffered …mental anguish," alleges bodily injury.[6]

*(2) Golden alleges that she suffered bodily injury and property damage **because of an accident**.* Without citing any case law, Progressive argues,

> In this case, there is no "accident" as defined by the Progressive policy. Golden's claims do not arise out of a "sudden, unexpected or unattended [*sic*] event." The defendants cannot present substantial evidence that the claims made by Golden are an "accident" under the Progressive policy.

Document 22, Progressive Brief at 6.

In *Moss v. Champion Insurance Co.*, 442 So. 2d 26, 28 (Ala. 1983), the Alabama Supreme Court said, "It is clear from our cases that the term 'accident' in such a policy does not necessarily exclude human fault called negligence." Alabama courts have repeatedly held that "negligence" is an "occurrence" or "accident" under similar policies. *USF & G v. National Tank & Machine Works, Inc.*, 402 So. 2d 925, 927 (Ala. 1981). ("[The complaint arises] from the negligent or wanton delivery of the wrong product.

---

[6]Golden consulted a physician for her mental anguish and was prescribed medication. Exhibit CC, Golden Deposition at 232-234.

Those allegations are sufficient to require a defense for an 'occurrence ....'" ); *USF & G v. Bonitz*, 424 So. 2d 569, 571 (Ala. 1982). ("As Bonitz is merely charged with negligence in installing the roof, there was an occurrence under USFG's policy."); *Moss v. Champion Ins. Co.*, 442 So. 2d 26, 29 (Ala. 1984). ("[The complaint] charged him with negligence (and breach of contract) .... Thus, there was an occurrence under the policy."); *Employers Insurance Company of Alabama, Inc. v. Alabama Roofing & Siding Company, Inc.*, 271 Ala. 394, 396, 124 So. 2d 261 (1960); *Employers Insurance Company of Alabama, Inc., v. Rives*, 264 Ala. 310, 87 So. 2d 653 (1955).

(3) *The evidence shows that Golden's claim "**arises out of the ownership, maintenance or use of [Parker's] insured auto**."* Without citing any portion of Golden's complaint, Progressive argues, "Golden alleges that the set-up and installation of the mobile home was improper not that the mobile home was damaged while it was being transported." Document 22, Progressive Brief at 6. Progressive is incorrect.

The complaint alleges that Parker and JMP "undertook to **deliver** and install the plaintiff's home ... [and] negligently performed this undertaking." Exhibit X, Golden's Amended Complaint ¶ 92. Thus, the complaint alleges damage resulting both from delivery **and** from installation. *Cf. Mission Ins. Co. v. Barnett*, 476 F. Supp. 925, 930 & n. 3 (S.D. Ala. 1979) ("[T]he defendants in this case should not dictate to Bedwell the legal theory upon which Bedwell must proceed in state court. That choice is Bedwell's.").

Progressive further argues, "[T]he cases agree that a causal relation or connection must exist between an accident or injury and the ownership, maintenance or use of a vehicle in order for the accident or injury to come within the meaning of the clause

'arising out of the ownership, maintenance, or use' of the vehicle ...." Document 22, Progressive Brief at 11.

Although Progressive is correct, the connection between the "accident" and the "use" of the vehicle need only be minimal. In *State Farm Fire & Casualty Co. v. Erwin*, 393 So. 2d 996 (Ala. 1981), the court noted that "the phrase 'ownership, maintenance or use' is ambiguous," and that it "is about as general and broad as could be written." *Id.* at 997, 999. The court further held,

> "Arising out of," as we said in *Red Ball Motor Freight v. Employers Mut. Liability Ins. Co.*, 5th Cir., 1951, 189 F.2d 374, 378, "are words of much broader significance than 'caused by.' They are ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from,' or, in short, '*incident to, or having connection with*,' the use of the car."

*State Farm Fire & Casualty Co. v. Erwin*, 393 So. 2d 996, 998 (Ala. 1981) (quoting *Blue Bird Body Co. v. Ryder Truck Rental, Inc.*, 583 F.2d 717, 726 (5th Cir. 1978)); *see Taliaferro v. Progressive Specialty Ins. Co.*, 871 So. 2d 976, 980 (Ala. 2001) ("[T]he term 'arising out of the use' in liability policies has generally been held to be a broad, comprehensive term meaning 'origination from,' 'having its origin in,' 'growing out,' or flowing from.'").

Of course, when a policy is ambiguous, that ambiguity must be resolved in favor of coverage. *Garrett v. Alfa Mutual Ins. Co.*, 584 So. 2d 1327 (Ala. 1991); *Guaranty National Ins. Co. v. Marshall County Bd. of Educ.*, 540 So. 2d 745 (Ala. 1989). The ambiguity in the phrase "ownership, maintenance or use" must be resolved in favor of coverage.

*(a) The claim for **negligent delivery** arises out of Parker's use of his "insured auto."* Progressive has admitted that Parker delivered Golden's home with one of the

trucks listed on the declarations page. Exhibits H-I, Response to First Request for Admission 3. Thus, with Progressive's admission, the complaint alleges that Golden's bodily injury and property damage arose from Parker's "use" of both the insured truck and the "non owned attached trailer." *See State Farm Fire & Cas. Co.*, 393 So. 2d 996, 998 (Ala. 1981) ("Erwin's car and the towed boat … were being operated as a single unit. The operation of both caused the accident.").

The evidence also shows that the damage arose from Parker's "use" of the insured truck in two ways: First, he delivered the home *with the truck* when the property was too wet, Exhibit BB, Bracknell Deposition at 124, lines 2-3, and second, he drug the home onto the property, causing property damage to it. Exhibit KK, Affidavit of Gordon Davis ¶ 12.[7]

(b) *The claim for* **negligent installation** *arises out of Parker's use of an insured vehicle.* The installation of the home was an act "'originating from,' 'having its origin in,' 'growing out of' or 'flowing from,' or, in short, '*incident to, or having connection with*'"[8] Parker's "use of [an] insured auto"[9] *because Parker used the truck to place the home on*

---

[7] Progressive does not appear to contend that delivery or transportation damage would not be covered *by the insuring language* of the policy. It does, however, contend that such damage would be excluded by exclusion nine. Document 22, Progressive Brief at 7. Golden addresses this exclusion on pages 40-43 *infra*.

[8] *State Farm Fire & Casualty Co. v. Erwin*, 393 So.2d 996, 998 (Ala. 1981).

[9] As shown earlier, see page 8 *supra*, Statement of Facts No. 48-49, the "insured auto" was both the truck used to pull Golden's trailer *and* Golden's trailer while it was attached to the truck. Even if a portion of the installation—the blocking and tying down of the home—was done while the home was not attached to the trailer, those acts 'originat[ed] from,' 'ha[d] [their] origin in,' 'gr[e]w[] out of' or 'flow[ed] from,' or in short,[were] '*incident to, or ha[d] connection with*,'" the use of the truck, because the truck had been used to place the home in the location, and the Alabama Manufactured Housing

22

*the lot, and this was the first step in installation.* Exhibit R, Regulation 535-X-12-.02(5), at 48 (defining "installation" as "*locating*, setting up, *siting*, installing, tying down, anchoring or *placing* a manufactured home or manufactured building on the lot or site of installation"). Some of these activities ("locating [and] siting" the home) occurred while the home was still attached to the truck and was still itself an insured vehicle. Moreover, the State regulates the transportation of the home as part of the installation. Exhibit R, Regulation 535-X-12-.03(1) at 48 ("transporters of manufactured homes … who are not under written contract with a licensed manufacturer or licensed retailer must be a certified installer ….").

In *State Farm Fire & Casualty Co. v. Erwin*, 393 So. 2d 996, 998 (Ala. 1981), the court held that an insured's automobile collision arose out of the ownership, maintenance, or use of a boat, which was attached to the car, even though the insured testified that the boat itself did not play any part in the collision "other than it was the added weight on the car." Here, the relationship between the installation and the use of the truck was closer than in *Erwin*. Delivery of the home, which was done with the truck, was regulated as part of the installation and defined as part of the installation by the Alabama Manufactured Housing Commission.

### B. The Insuring Provision of the Policy Covers Golden's Wantonness Claim.

Golden's wantonness claim is identical to her negligence claim except that she alleges wantonness. Progressive argues that the policy does not cover wantonness:

Progressive's policy specifically excludes wanton conduct. It states as follows:

---

Commission regulated the installation and transportation together. Exhibit R, Regulation 535-X-12-.03(1) at 48.

23

> We will pay damages, OTHER THAN PUNITIVE OR EXEMPLARY DAMAGES, for which an **insured** is legally liable because of an accident.
>
> (Progressive's policy, page 9).

Document 22, Progressive Brief at 8.

Progressive is incorrect for two reasons. First, the policy provision cited does not exclude claims for wantonness; it excludes punitive damages.[10] The Alabama Supreme Court has held that wantonness claims are covered under policies similar to Progressive's. *Tapscott v. Allstate Ins. Co.*, 526 So. 2d 570, 574 n.3 (Ala. 1988) ("[T]he claim of wantonness does not require intent," and is thus covered.); *USF & G v. National Tank & Machine Works, Inc.*, 402 So. 2d 925, 927 (1981). ("[The complaint arises] from the negligent or wanton delivery of the wrong product. Those allegations are sufficient to require a defense for an 'occurrence . . . .'" ).

Second, the policy Progressive filed as a "true and **complete** copy of the original" **does not contain** Form 8627 (03/88), which eliminates the exclusion for punitive damages,

> ### Part I-LIABILITY TO OTHERS.
>
> The phrase "other than punitive damages" in this section does not apply to your policy.

Exhibit G, Progressive's Response to Golden's Second Request for Production, at 17. Thus, the insuring language of Parker's policy covers punitive damages.

---

[10] Not all wantonness claims carry punitive damages. A different burden of proof applies to wantonness claims seeking compensatory damages and those seeking punitive damages. *See, e.g., Hamme v. CSX Transportation, Inc.*, 621 So. 2d 281 (Ala. 1993).

24

*C. The Insuring Provision of the Policy Covers Golden's Breach-of-Warranty Claim.*

Count XVIII, which is styled Breach of Implied Warranty, alleges,

100. Parker and JMP, acting by and through their agents, servants, and employees, undertook to deliver and install the plaintiff's home.

101. These defendants impliedly warranted to the plaintiff that the home would not be damaged during delivery and installation and would be properly set and installed.

102. Parker and JMP, acting by and through their agents, servants, and employees *damaged the home in delivery and installation* and failed to install the home properly.

103. The plaintiff gave these defendants' notice of the damage, and they failed to correct it.

104. As a proximate consequence of these defendants' breach of warranty, the home was damaged; the plaintiff has suffered annoyance, inconvenience, and mental anguish; and the value of the home is less than it otherwise would have been.

Exhibit X, Golden's Amended Complaint.

This claim is based on *Franklin Motor Car Company v. Ratliff,* 207 Ala. 341, 92

So. 449 (1922), wherein the court stated,

It is true that the parties, at the time of the contract of sale, entered into an exclusive covenant of warranty as to the condition of the machine; but this, according to our view, did not exclude the warranty, implied by every consideration of common honesty and intelligence, that so far at least as concerned in anything done or suffered by plaintiff [the dealership] while the car was yet in its possession, the condition of the car upon delivery should be the same as at the time of the contract of sale.

207 Ala. at 341.

The claim is essentially the same as the negligence claim except that the duty

breached is implied in contract rather than in tort. The Alabama court has previously held

that liability policies cover warranty claims. *See Townsend Ford, Inc. v. Auto-Owners*

*Insurance Co.,* 656 So. 2d 360, 364 (Ala. 1995) ("[The] policy *does* require Auto-Owners

25

to defend claims alleging *breach of an express warranty.*"); *U.S.F. & G. v. Andalusia Ready Mix*, 436 So. 2d 868, 871 (Ala. 1983) ("[T]he complaint in the underlying action alleges that the product in question failed to perform *as warranted . . . .* Hence, we conclude that there was an occurrence within the terms of the policy.").

### D. The Insuring Provision of the Policy Covers Golden's Failure-to-Disclose Claim.

Under Alabama law, Parker was required to be licensed to deliver or install the manufactured home. Count XIX of the Golden's First Amended Complaint alleges that "Parker and JMP innocently, negligently, wantonly or intentionally ... failed to disclose to the plaintiff certain material facts...namely, that they were not licensed as required by law to install manufactured homes." Exhibit X, First Amended Complaint ¶ 106.

Progressive's Amended Complaint does not specifically allege any reason why this claim is not covered by the insuring provision of the policy. In her First Interrogatories to Progressive, Golden asked Progressive to "identify, by page and section number, each policy provision that you contend excludes coverage," and "state the facts on which you base your contention that the policy provisions ... exclude coverage." Exhibit L, Golden's First Interrogatories 1-2. In its responses, Progressive makes no specific reference to Golden's failure-to-disclose claim. Exhibit M.

Although Progressive's Brief notes that Golden alleges that "JMP and Parker fraudulently failed to disclose that they were not licensed," Document 22, Progressive Brief at 3, Progressive fails to otherwise mention the claim in its brief. Thus, Progressive has admitted that the claim is covered if notice was adequate.[11]

---

[11] Progressive contends that none of Golden's claims are covered because Parker failed to provide adequate notice. Document 22, Progressive Brief at 8-9

26

*(1) Golden alleges that she suffered **property damage** and **bodily injury**.* Paragraph 110 of Golden's First Amended Complaint alleges, "As a proximate consequence of these defendants' [Parker and JMP's] failure to disclose, the plaintiff has suffered annoyance, inconvenience, and mental anguish, and the value of the home is less than it otherwise would have been." Diminution in value is property damage, and mental anguish is bodily injury. *Perkins v. Hartford Ins. Group*, 932 F.2d 1392 (11th Cir. 1991) (diminution in value); *Fitness Equipment Co. v. Pennsylvania General Ins. Co.*, 493 So. 2d 1337, 1343 (Ala. 1995) (diminution in value); *Westchester Fire Ins. Co. v. Barnett Millworks*, 364 So. 2d 1137 (Ala. 1978) (diminution in value); *American Economy Ins. Co. v. Fort Deposit Bank*, 890 F. Supp. 1011, 1017 (S.D. Ala. 1995) (mental anguish is bodily injury). Thus, the complaint alleges damages covered by the policy.

*(2) Golden alleges that she suffered property damage and bodily injury **because of an accident**.* "[I]n alleging suppression, an allegedly injured person alleges an 'occurrence' with damages not 'expected or intended from the standpoint of the insured.'"[12] *Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1065 (Ala. 2003). *Townsend Ford, Inc. v. Auto-Owners Insurance Co.*, 656 So. 2d 360, 364 (Ala. 1995) ("Auto-Owners had an obligation under the policy to defend the claims alleging suppression of a material fact.").

*(3) The evidence shows that Golden's claim "**arises out of the ownership, maintenance or use of [Parker's] insured auto**."* The only remaining requirement is that

---

[12] The policy in *Tanner* defined an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in bodily injury...." *Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1061-62 (Ala. 2003).

27

Golden's "bodily injury or property damage ... *arises out of the ownership, maintenance, or use or your insured auto*."[13] Exhibit B, General definitions, ¶ 9 at page 5.

Parker's duty to be licensed "'originat[ed] from,' 'ha[d] its origin in,' 'gr[e]w[] out of' or 'flow[ed] from,' or in short, [was] '*incident to, or ha[d] connection with*,'"[14] his use of the insured truck to deliver and install the home, *which was itself insured while connected to the truck.* Exhibit R, Regulation 535-X-12-.03(1), at 48 ("[T]ransporters of manufactured homes .... who are not under written contract with a licensed manufacturer or licensed retailer must be certified installers ..."); Exhibit R, Regulation 535-X-12-.02(5), at 48 (defines "installation" as "*locating*, setting up, *siting*, installing, tying down, anchoring or *placing* a manufactured home or manufactured building on the lot or site of installation."). Similarly, Parker's duty to disclose that he was not licensed arose from his *use of the truck*, to perform acts that he was not licensed to perform; namely, "*locating*, setting up, *siting*, installing, tying down, anchoring or *placing* [the] manufactured home ... on the lot ...." *Id.* Thus, Golden's claim for failure to disclose is covered by the insuring language of the policy.

---

[13] See page 21 *supra* for a discussion of this requirement.

[14] State Farm Fire & Casualty Co. v. Erwin, 393 So. 2d 996, 998 (Ala. 1981).

28

**5. THE NOTICE PROVISION AND THE EXCLUSIONS ARE NOT ENFORCEABLE AGAINST GOLDEN.**

Progressive argues that Parker and JMP violated the notice provision of the policy and that exclusions 1, 2, 9, and 10 prevent coverage for some or all Golden's claims. Document 22, Progressive Brief at 4-5, 8-9. For the reasons stated below, Progressive may not enforce these provisions against Golden.

*A. The Uniform Motor Carrier Endorsement Precludes Progressive from Enforcing the Notice Provision and the Exclusions against Golden.*

Although Progressive filed a policy certified to be a "true and **complete** copy of the original," Exhibit B, Progressive Policy at 1, that policy fails to contain Form E, the Uniform Motor Carrier Bodily Injury and Property Damage Liability-Certificate of Insurance, which Progressive filed with the Alabama Public Service Commission. That form provides in part,

> This is to certify, that the PROGRESSIVE SPECIALTY INSURANCE COMPANY ... has issued to JMP ENTERPRISES, INC. .. a policy or policies of insurance effective from 08/-01/2004 ... which by attachment of the Uniform Motor Carrier Bodily Injury and Property Damage Liability Insurance Endorsement, has or have been amended to provide automobile bodily injury and property damage liability insurance covering the obligations imposed upon such motor carrier by the provisions of the motor carrier law of the State in which the Commission has jurisdiction ....

Exhibit C; Exhibit E, University Agency File, at 14, 21. Progressive charged a fee of $50.00 for this endorsement. Exhibit E, University Agency File at 5.[15]

Section 37-3-18 of the Alabama Code provides in part,

---

[15] The bottom of the first page of the declarations lists "Fees" of $150.00, without further explanation. The University Agency file shows that this $150.00 is for two state public liability filings, Alabama and Georgia, and one ICC filing. Exhibit E, University Agency File at 5.

No motor carrier subject to the provisions of this chapter shall engage in any operation on any highway of this state, unless such carrier complies with such reasonable rules and regulations as the commission shall prescribe governing the filing and approval of surety bonds, policies of insurance . . . to pay . . . any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance, or use of motor vehicles under certificate or permit or for loss or damage to property of others.

In *Michigan Mutual Liability Co., v. Carroll,* 271 Ala. 404, 123 So. 2d 920

(1960), the court said,

In the *Jacks* case[16] this court made clear that the Motor Carrier Act was for the protection of the public and that *neither exclusions nor breach of conditions could be relied on by the insured to defeat the purposes of the statute.*

271 Ala. at 411.[17] Thus, Progressive may not enforce its notice provisions or its

exclusions against Golden. *Employers Ins. Co. of Alabama v. Johnston.* 238 Ala. 26, 189

So. 58 (1939); *Fidelity & Casualty Company of New York v. Jacks*, 231 Ala. 394, 165 So.

242 (1936).

**B. The Endorsement under the Federal Motor Carrier Act Precludes Progressive from Enforcing the Notice Provision and the Exclusions against Golden.**

In addition to filing Form E with the Alabama Public Service Commission,

Progressive issued Form MCS-90, which was required by the Motor Carrier Act of 1980.

That form provides in part,

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the

---

[16] *Fidelity and Casualty Company of New York v. Jacks*, 231 Ala. 394, 165 So. 242 (1936).

[17] In *Carroll* the court considered section 301(16) of Title 48 of the 1940 Code, which is now codified in section 37-3-18 of the Code. The court referred to this section as "basically" the same as the provision construed in *Jacks.* 271 Ala. at 411.

limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. ... It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured.

Exhibit E, University Agency File at 16. Progressive charged a fee of $50 for this endorsement. *Id.* at 5.[18]

Again, although Progressive filed a policy certified to be a "true and **complete** copy of the original," **that policy does not contain this endorsement**. Exhibit B, Progressive Policy. Under the plain language of this endorsement, "no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment ...." Thus, Progressive may not enforce the notice provisions or the policy exclusions against Golden.

## C. Section 27-23-1 Precludes Progressive from Asserting Lack of Notice against Golden.

Section 27-23-1 of the Alabama Code provides,

As to every contract of insurance made between an insurer and any insured by which such insured is insured against loss or damage on account of the bodily injury or death by accident of any person for which loss or damage such insured is responsible, whenever a loss occurs on account of a casualty covered by such

---

[18] See note 15 supra.

contract of insurance, the liability of the insurer shall become absolute and the payment of the loss shall not depend upon the satisfaction by the insured of a final judgment against him for loss, or damage or death occasioned by the casualty. No such contract of insurance shall be cancelled or annulled by any agreement between the insurer and the insured after the insured has become responsible for such loss or damage, and any such cancellation or annulment shall be void.

*See also* Ala. Code § 27-23-2 (1975).

By its language, this section does not permit the insurer to assert *against the injured parties* the insured's lack of timely notice. It provides that the insurer's liability "shall become absolute." Although an early Alabama case held that the insured's failure to comply with the policy provisions could preclude the injured party from recovering, it did so on the basis that "this interpretation is necessary *to save the constitutionality of the act* . . . ." *George v. Employers' Liability Assurance Corp.*, 219 Ala. 307, 311, 122 So. 175 (1929).[19]

A more recent decision questions whether the absence of notice will preclude the injured party from recovering. In *Haston v. Transamerica Insurance Services,* 662 So. 2d 1138 (Ala. 1995), the court stated,

> First, if service on Smith Brothers was proper and, for whatever reason, including an expectation of imminent insolvency, Smith Brothers neither defended the Haston's action nor notified Transamerica of the action, the default judgment would be proper, *but the issue would arise as to whether given the mandate and spirit of §§ 27-23-1 and –2, the plaintiff should be left without a remedy because the insured, insolvent and arguably indifferent, failed to give the insurer notice of the action.*

*Id.* at 1138.

Here, no evidence suggests that Progressive suffered any prejudice between the filing of Golden's complaint and its notification. No substantive action occurred after Golden filed her complaint and before she notified Progressive.

---

[19] This view is not in accord with more recent authority. *E.g., Watson v. Employers Liability Assurance Corp., Ltd*, 348 U.S. 66 (1954).

Under the facts of this case, where Progressive received reasonably prompt notice of Golden's complaint, no unconstitutionality results from applying section 27-23-1 as it is written. Progressive's liability became "absolute" notwithstanding any technical failure of the insured to comply with the notice provisions.

## 6. PROGRESSIVE WAIVED ANY DEFICIENCY IN NOTICE.

"A reservation of rights letter must be clear and specific. An insurer that specifically disclaims coverage on one ground of forfeiture waives all other grounds which might have been stated but were not." Exhibit LL, B. Allen, *Alabama Liability Insurance Handbook*, § 4-2(h), at 91 (1996).

In *American Automobile Ins. Co. v. English*, 266 Ala. 80, 86, 94 So. 2d 397 (Ala. 1957), the court said, "When American specifically denied liability on the ground that it was not the primary insurer, it waived forfeiture for lack of sufficient notice ...." See also *First Alabama Bank of Montgomery, N.A., v. First State Insurance Co.*, 899 F.2d 1045, 1064 (11th Cir. 1990). In its letter dated April 27, 2006, the only ground of denial listed by Progressive was, "It appears we have a potential coverage problem as **this loss doesn't appear to meet the definition of a [*sic*] 'accident' under your policy**." Exhibit U. (emphasis added).

Again, Progressive's declaratory judgment complaint filed October 16, 2006, failed to raise any notice issue. Notwithstanding this, Progressive continued to defend JMP and Parker in the state-court action. Progressive first raised the defense of notice on March 27, 2007, when it filed a Motion to Amend its complaint to allege this defense. Document 15.

Even if Progressive's initial letter of April 27, 2006, was sufficient to reserve the alleged deficiency in notice, Progressive could still waive that reservation by later conduct. *First Alabama Bank of Montgomery, N.A., v. First State Insurance Co.*, 899 F.2d 1045, 1064 (11th Cir. 1990) ("While the defendant preserved its right to rely on the late notice defense in its July 9, 1981, letter, it subsequently **waived** this defense in its

34

October 2, 1981, letter."). When Progressive filed the original complaint, and it made no reference to the defense of lack of notice, then this waived any deficiency in notice.

The subsequent Amendment could not revive the defense any more than the subsequent letter in *First Alabama Bank of Montgomery, N.A., v. First State Insurance Co.*, 899 F.2d 1045 (11th Cir. 1990):

> While the defendant preserved its right to rely on the late notice defense in its July 9, 1981, letter, it subsequently **waived** this defense in its October 2, 1981, letter. The fact that a subsequent letter, dated July 25, 1983, contains nonwaiver language does not work to reverse the **waiver** because a **waiver** is irrevocable and cannot be recalled.

*Id.* at 1064.

**7. PROGRESSIVE RECEIVED ADEQUATE NOTICE.**

Without citing any evidence, Progressive argues that it did not receive proper notice of the accident or the lawsuit:

> Progressive was not provided any notice of Golden's claims until Golden's attorney forwarded correspondence on April 13, 2006 which was one year after the mobile home was delivered and set up and two months after the lawsuit was filed by Golden in state court.

> JMP and Parker have still not provided any notice of Golden's claim to Progressive as required under the policy. Consequently, Progressive is entitled to summary judgment because proper notice has not been provided.

Document 22, Progressive Brief at 9.

Even if Progressive may enforce the notice provisions against Golden, this argument fails for a number of reasons. First, Progressive has not submitted any evidence showing when Parker first received notice of Golden's claim or when it first received notice of the claim. In the absence of such evidence, Progressive is not entitled to summary judgment.

Second, even if the letter from Golden's attorney was Progressive's first notice, that notice was adequate. In *Webb v Zurich Ins. Co.*, 200 F.3d 759 (11th Cir. 2000), the court said,

> Webb [the injured party] could have overcome Bramalea's [the defendant's] decision not to notify Zurich and satisfied the notification requirement if it had mailed a copy of the complaint directly to Lowe or a Zurich representative.

*Id* at 761 n.1.

Golden's counsel followed the procedure suggested in *Webb*. Exhibit T. Progressive received Howard's letter on April 13, 2006, which was seven weeks after Parker had been served on February 23, 2006. This was timely notice. *See Safeway Ins. Co. v. Thompson*, 688 So.2d 271, 277 (Ala. Civ. App.1996) ("Counsel for Pierce and

36

Thompson *forwarded a copy of the suit papers to Safeway eight months after the suit was filed ....*). (Crawley, J., concurring).

Third, with regard to notice of the claim, Golden did not attempt to notify Parker of any problem until January 11, 2006, when she wrote him a letter. Exhibit CC, Golden Deposition at page 195, line 3-page 196, line 6. The return receipt card reflects that Parker's wife, Jill Parker, signed for the letter. Exhibit Z. Even if Parker had a duty to notify Progressive of the letter, that duty did not arise until Parker received the letter.[20] *See American States Ins. Co. v. Barker*, 438 So. 2d 748, 749-50 (Ala. 1983) (summons and complaint delivered to insured's wife was not notice to insured). Parker testified that he never saw the letter. Exhibit AA, Parker Deposition page 133, line 15-17; page 135, lines 16-19.

Last, neither the "notice provision" nor the "suit against us" provision makes notice a condition precedent to Progressive's liability. The "suit" provision states,

> 4. **Suit Against Us.** We may not be sued unless there is full compliance by you or an insured with all the terms of this Policy.

Exhibit B, General Provision § 4, at policy page 29.

---

[20] Parker was not the named insured; he was an additional insured. The provision entitled "Your Duties in Case of an Accident or Loss" did not apply to him because the policy defined "you and your" as "the organization shown in the Declarations page as the named insured." Exhibit B, General Definitions § 2, policy page 3. The declarations list JMP Enterprises as the named insured. Exhibit B, page 1 of 24. As an additional insured, Parker's only duty was to "promptly send us any and *all papers received* relating to any claim or lawsuit." Exhibit B, Other Duties § 4, policy page 2. See Exhibit MM, *Star Insurance Co. v. Ward*, 2:05 CV 197-WKW (M.D. Ala. July 12, 2006) ("According to the plain language of the insurance policy, however, Cochran—as an insured but not a named insured—was only obligated to provide notice to Star upon receiving written notice of a suit or claim against him."). Again, Progressive has offered no evidence that Parker ever received any such papers.

37

This provision fails to make notice a condition precedent to Progressive's liability. *Cf. See Southern Guaranty Insurance Co. v. Thomas*, 334 So. 2d 879, 882 (Ala. 1976) ("No suit or action shall lie against this Company, unless: (1) as a *condition precedent* thereto there has been full compliance with all the provisions and stipulations of this policy . . . ."); *Lakeshore Drive Recreation Club, Inc. v. United States Fidelity & Guaranty Co.*, 398 So. 2d 278, 279 (Ala. 1981) ("No action shall lie against the Company unless as a *condition precedent* thereto, there shall have been full compliance with all of the terms of this policy); *Cherokee Insurance Co. v. Frazier*, 406 So. 2d 881, 882 (Ala. 1981) ("No action shall lie against the Company unless, as a *condition precedent* thereto, there shall have been full compliance with all of the terms of this policy....").

"[W]hether the insurer was prejudiced by the delay is immaterial to a determination of the reasonableness of the delay *where the giving of reasonably timely notice is expressly made a condition preceden*t to any action against the insurer ...." *Southern Guaranty Insurance Co. v. Thomas*, 334 So. 2d 879, 883 (Ala. 1976) (emphasis added). When failure to give notice is not expressly made a condition precedent, then lack of proper notice is merely a "matter of defense." *Provident Life & Accident Ins. Co. v. Elliot*, 198 Ala. 230, 232 73 So. 476 (1916); *cf. Benefit Ass'n of Ry. Employees v. Vardaman*, 36 Ala. App. 411, 413, 57 So. 2d 122 (1952) ("Some appellate courts have adopted the holding that unless the giving of notice is made a condition precedent by the provisions of the policy the courts would not be justified by construction to imply that the contracting parties intended a strict compliance with the notice provision as a condition precedent to the right to recover.").

38

If Parker or JMP breached the notice provisions of the policy, Progressive has nevertheless failed to submit any evidence that it has suffered any damage as a result of that breach. Such is required by ordinary contract law where compliance with the notice provision is not expressly made a condition precedent.

## 8. THE EXCLUSION FOR PROPERTY "IN THE CHARGE OF ANY INSURED" DOES NOT RELIEVE PROGRESSIVE.

Progressive argues that Golden's claim for transportation damage is excluded by exclusion nine, which excludes coverage for damage to property "in the charge of" an insured. Document 22, Progressive Brief at 7.

This argument has no merit for two reasons. First, if the exclusion applies to the liability coverage on the "non owned attached trailer," then it eliminates entirely the coverage for which Parker paid $1107. Second, the exclusion applies only to property damage; even if it were otherwise applicable, it does not apply to Golden's claims for mental anguish.

### A. If Exclusion Nine Applies to the Coverage on the "Non Owned Attached Trailer," then the Exclusion Renders Such Coverage Illusory.

The policy includes liability coverage for any "non-owned attached trailer," but only while attached to a listed power unit specifically described on the declarations page." Exhibit BB, page 2 of 24. Progressive charged $1,107 for this coverage. Since Golden's trailer is a "non-owned" trailer, the insuring clause provides liability coverage for property damage to the trailer itself. Exhibits H-I, Response to Request for Admission No. 2.

Progressive contends, however, that this coverage is excluded by exclusion nine, which states,

Coverage under this **PART I** and our duty to defend does not apply to:

9. Property damage to any property owned by, rented to, being transported by, used by, or in the charge of any insured including any motor vehicle operated or being operated.

Exhibit B, Part I, Liability to Others, Exclusions, at policy page 13.

Of course, if the non-owned trailer *must be attached to a power unit* for coverage to apply, then the exclusion *would always apply* because any trailer attached to the power unit would be "in the charge of an[] insured." *State Farm Mut. Auto Ins. Co. v. Dorough*, 277 Ala. 662, 664, 174 So. 2d 303 (1965) ("We feel that while the boat and trailer were thus attached to the truck, the boat and trailer were in charge of" the driver of the insured vehicle and therefore the insured would come within the exclusion of this policy."*). Thus, the coverage for which Parker paid $1107.00 is illusory.

Progressive may argue that Parker received bodily-injury coverage for his $1107.00 premium. Exclusion nine does not exclude coverage for bodily injury.

This coverage, however, already existed as part of the coverage on the listed trucks. Under paragraph 9d, "your insured auto" is defined to include a "trailer ... but only while upon a public road and connected to your insured auto." Exhibit B, General Definitions § 9, at policy page 6; Exhibits H-I, Response to Request for Admission 1. See *Taylor v. Ins. Co. of N.A.*, 565 So. 2d 129, 134 (Ala. 1990) ("[T]he **policy** provides that a **trailer attached** to an insured auto is covered as an insured auto.").

Although paragraph 9d limits coverage to accidents on public roads, this is not the end of Parker's standard coverage. An accident that arises from the use of a truck and an "attached" trailer "arises out of the use of both regardless of which part of the unit was actually involved in the accident." *Blue Bird Body Co. v. Ryder Truck Rental, Inc.*, 583 F.2d 717, 726 (5th Cir. 1978); *State Farm Fire & Cas. Co. v. Erwin*, 393 So. 2d 996, 997 (Ala. 1981). Any such accident is thus covered by the policy on the truck.

41

As a result, even if Parker had not paid $1107 for liability coverage for the "non owned attached trailer," he would have still received liability coverage for damage arising from his use of the truck and any attached trailer under paragraph **9a** of the policy. Exhibit B, General Definitions § 9, at policy page 5. *See id.*; *Tyler v. Ins. Co. of N.A., Inc.*, 331 So. 2d 641, 646 (Ala. 1976) (coverage existed where "the contact [was] with a tangible object attached or connected to the automobile but not properly part of the automobile itself.").

Of course, under the standard coverage, exclusion nine would have excluded coverage for damage to the trailer itself. This exclusion is the reason—and the only reason—for Parker to pay an additional premium for coverage on a *"non-owned attached trailer."*

If the court applies exclusion nine to Parker's liability coverage on the "non-owned attached trailer," then that coverage becomes illusory, and Parker received absolutely nothing for his premium of $1107.00. This is not a permissible construction of the policy.

In *Scottsdale Insurance Co. v. National Security Fire & Cas. Co.*, 741 So. 2d 424 (Ala. Civ. App. 1999), the court said,

> While the policy's definition of "auto" *excludes coverage* for bodily injury or property damage that arises from the use of "mobile equipment," the declarations page of the policy *includes* the truck, which is a piece of "mobile equipment," in its schedule of covered autos owned by Webb, and shows that a substantial premium was charged for liability insurance on the truck. ... We conclude that the conflict between the declarations and the definitions sections of the policy constitutes a patent ambiguity, and that the trial court erred in concluding that the National Security policy excluded coverage with respect to Webb's liability for the tower collapse.

*Id.* at 426-27.

42

Similarly, in *Townsend Ford, Inc. v. Auto-Owners Insurance Co.*, 656 So. 2d 360

(Ala. 1995), the court rejected arguments similar to Progressive's:

> Auto-Owners sold the insurance policy with the knowledge that Townsend Ford was in the business of selling automobiles. To apply the "automobile exclusion" as Auto-Owners argues would be to **exclude** coverage of almost everything. It is not reasonable to interpret this provision to apply to the sale of inventory, which for Townsend Ford happens to be automobiles. Consequently, the trial court correctly rejected Auto-Owners' argument regarding the "automobile exclusion."

*Id.* at 365.

This same analysis applies. The policy application reflects that Parker was a "mobile home toter," Exhibit E, University Agency File at 6, and Progressive has admitted that it knew that vehicles listed in paragraphs one and three of the declarations page were used to deliver manufactured homes that Parker and JMP did not own. Exhibits P-Q, Golden's Third Requests for Admission and Progressive's Response Nos. 10-11.

**B. Even if Exclusion Nine Excludes Liability for Property Damage, It Does Not Exclude Liability for Mental Anguish.**

Even if exclusion nine excludes all of Golden's claims for property damage, the exclusion does not apply to bodily injury. Thus, the exclusion does not relieve Progressive of its obligation to defend Golden's claims for mental anguish, which are a type of bodily injury. See page 19 *supra*.

43

## 9. THE EXCLUSION FOR LOADING AND UNLOADING DOES NOT RELIEVE PROGRESSIVE.

Progressive contends that exclusion ten relieves it of its obligations to defend Parker:

> Coverage under this PART I and our duty to defend does not apply to . . .
>
> 10. **Bodily injury** or **property damage** resulting from or caused by the loading or unloading of property with any device other than a hand truck.

Document 22, Progressive Brief at 7.

Since this argument is based on an exclusion, Progressive bears the burden of proof. Yet, it has cited no portion of Golden's complaint alleging that damage occurred during the loading or unloading of either the truck or the trailer.

In *Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1064 (Ala. 2003), the court held, "[T]his Court has never held that, even though the allegations of a complaint do allege a covered accident or occurrence, the courts may consider evidence outside the allegations to disestablish the duty to defend." The complaint does not allege that Golden's damage occurred during "loading or unloading."

Moreover, as shown earlier, even without purchasing separate coverage for the "non-owned attached trailer," Parker had liability coverage for both personal injury and property damage "while upon a public road. . . ." By the nature of his business, the "non-owned attached trailer" was Parker's load. That is, it was the property he delivered. Again, by the very nature of Parker's business, this load would be delivered at a location that was not on a public road; namely, on an insured's property or lot.

If the policy is interpreted to mean that damage caused by the delivery, placement, and siting of the home on the lot is excluded, then again, the additional

44

coverage on the non-owned trailer for which Parker paid $1,107.00 is illusory. This is not

a permissible interpretation of the policy. See pages 42-43 *supra.*

## 10. THE EXCLUSION FOR ASSUMED LIABILITY DOES NOT RELIEVE PROGRESSIVE.

Progressive contends that exclusion two relieves it from liability on the breach-of-implied warranty claim. Document 22, Progressive Brief at 7. That exclusion states,

> Coverage under this Part I and our duty to defend does not apply to:...2. *Any liability assumed* under any contract or agreement, including liability imposed upon an insured by statute arising from the insured's sponsorship of a minor or an operator's license.

Exhibit B, at policy page 13.

As shown earlier, the insuring language covers breach-of-warranty claims. See page 25-26 supra. Moreover, the scope of this exclusion is extremely narrow. In *U.S. Fidelity & Guaranty Co. v. National Tank & Machine Works, Inc.*, 402 So. 2d 925 (Ala. 1981), the court said,

> The allegations of the amended complaint pertain to an action ex delicto, arising out of a contractual relationship, to be sure, but not relying upon it. *C & C Products, Inc. v. Premier Industrial Corp.*, 290 Ala. 179, 275 So.2d 124 (1973). Those allegations do not depend upon any "liability assumed by the Insured under any contract" but upon an alleged breach of duty implied by law; hence that exclusion does not apply.

*Id.* at 927.

Golden's breach of implied warranty claim is not based on *any liability assumed*; rather, it is based on breach of duties that arose by operation of law. The court rejected an argument similar to Progressive's in *Townsend Ford, Inc. v. Auto-Owners Insurance Co.*, 656 So. 2d 360 (Ala. 1995):[21]

> The trial court stated that this type of provision "traditionally serves to exclude 'indemnity' types of liability, whereby the liability itself was assumed," and held that it did not apply to warranty situations. The trial court stated that the warranty

---

[21] Progressive's counsel in the present case was the counsel for *Auto-Owners in Townsend Ford, Inc. v. Auto-Owners Insurance Co.*, 656 So. 2d 360 (Ala. 1995).

46

pleaded in the underlying complaint "does not involve the 'assumption of liability' but rather merely a representation." Auto-Owners argues that the trial court held the exact opposite of what the policy exclusion meant. Auto-Owners contends that the policy does not exclude coverage of indemnity contracts for tort liability but does exclude coverage of liability for breach of warranty or breach of contract.

We agree with the trial court that the policy does not require Auto-Owners to defend claims involving indemnity contract liability but that the policy does require Auto-Owners to defend claims alleging breach of an express warranty. The "contractual exclusion" excludes all liability for damages the insured might be obligated to pay "by reason of the assumption of liability in a contract or agreement" unless it is under one of the specific types of contracts that are included in the definition of "insured contract." An express warranty is not included in the definition of "insured contract" under the policy. The trial court correctly noted that this type of provision "traditionally serves to exclude 'indemnity' types of liability, whereby the liability itself was assumed, rather than warranty situations." The specific express warranty alleged to have been breached is that "[Townsend Ford] warranted that said automobile had in fact only been driven by a Ford manager" and the plaintiff alleged that "[Townsend Ford] breached said warranty by failing to deliver a conforming automobile." This warranty does not involve "the assumption of liability," but rather merely a representation. Insurers can plainly provide in their policies that coverage for breach of warranty claims is excluded if they so choose.

*Id.* at 364-65.

## 11. WHETHER PROGRESSIVE WOULD BE RELIEVED BY THE EXCLUSION FOR INTENTIONAL INJURY IS NOT RIPE FOR DECISION.

The policy contains an exclusion for intentional injury. Exhibit B, Exclusion § 1, policy page 11. The complaint alleges both intentional and non-intentional injury. See Exhibit X, Golden's First Amended Complaint,¶¶ 93 (negligent injury), 96 (wanton injury), 106 ("innocently, negligently, wantonly, **or** intentionally"). Whether a verdict would be excluded as an intentional injury may only be determined after a verdict is entered. This issue is not ripe for adjudication.

## CONCLUSION

For the reasons stated above, Progressive's Motion for Summary Judgment is due to be denied, and Golden's Motion for Summary Judgment is due to be granted.

HOWARD, DUNN, HOWARD, & HOWARD,
Attorneys for Jennifer Golden

BY _____
G. Houston Howard II (HOW015)

OF COUNSEL:
G. HOUSTON HOWARD II
HOWARD, DUNN, HOWARD & HOWARD
P. O. BOX 1148
WETUMPKA, AL 36092
(334) 567-4356
ghhowardii@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of above document L. Larry Bradford, Bradford & Sears, P.C., 2020 Canyon road, Suite 100, Birmingham, Alabama, 35216, and John Mark Parker, P. O. Box 3501, LaGrange, Georgia 30242 by mailing a copy of it to them first-class mail, postage prepaid on this the 10th day of July 2007.

_____
G. Houston Howard II

49