IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RECEIVED

2007 JUL 10   A 10: 24

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

PROGRESSIVE PREFERRED
INSURANCE COMPANY
    Plaintiff


vs.               CASE NO. 3:06-CV-00934-WKW


JMP ENTERPRISES, INC.;
JOHN MARK PARKER; and
JENNIFER M. GOLDEN
    Defendants

**GOLDEN'S EVIDENTIARY SUBMISSION IN OPPOSITION TO
PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT AND
IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT**


Of Counsel:
**G. Houston Howard II**
HOWARD, DUNN, HOWARD & HOWARD
P. O. Box 1148
Wetumpka, AL 36092
334-567-4356

## INDEX TO EXHIBITS

A.  Golden's Original Complaint (as filed by Progressive)

B.  Progressive Policy (as filed by Progressive)

C.  Uniform Motor Carrier Bodily Injury and Property Damage Liability Certificate

D.  Subpoena to University Agency

E.  University Agency File

F.  Second Request for Production to Progressive

G.  Progressive's Response to Second Request for Production

H.  First Requests for Admission to Progressive.

I.  Progressive's Response to First Request for Admission

J.  First Request for Production to Progressive

K.  Progressive's Response to First Request for Production

L.  First Interrogatories to Progressive

M.  Progressive's Answers to First Interrogatories

N.  Second Requests for Admission to Progressive

O.  Progressive's Response to Second Request for Admission

P.  Third Requests for Admissions to Progressive

Q.  Progressive's  Response to Third Requests for Admission

R.  Excerpts for 2005 Regulations of Alabama Manufactured Housing Commission

S.  Notification of Service of Complaint on John Mark Parker

T.  Letter dated April 13, 2006 from G. Houston Howard II to Progressive.

U.  Letter dated April 27, 2006, from Progressive to JMP Enterprises, Inc.

V.  Motion to Amend filed by J. M. Parker on May 1, 2006.

W.  Motion to Stay filed by J. M. Parker on May 1, 2006.

X.  Plaintiff's First Amended Complaint in State Court.

Y.  Answer of Parker and JMP Enterprises to Golden's First Amended Complaint.

Z.  Golden's Letter of January 11, 2006, to Parker and return receipt card signed by

Jill Parker.

AA. Excerpts from Deposition of John Mark Parker.

BB. Excerpts from Deposition of Randall Bracknell.

CC. Excerpts from Deposition of Jennifer Golden

DD. Scheduling Order in state-court where Parker appeared

EE. Parker's 2004 Installation License

FF.  Settlement Statement dated April 27, 2005.

GG. State Set up Inspection Report.

HH. Purchase Agreement dated January 28, 2005.

II.  Golden's Second Interrogatories to Progressive.

JJ.  Progressive's Answers to Second Interrogatories

KK. Affidavit of Gordon L. Davis

LL. B. Allen, *Alabama Liability Insurance Handbook* (1996).

MM. Decision in Star Insurance Co. v. A-1 Metals, Inc., Case No. 2:05-CV-197-WKW

(M.D. Ala. July 12, 2006).

NN. Request for Admissions Establishing Date Parker Paid for 2005 License.

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on:

**R. Larry Bradford**
**Bradford & Sears, P.C.**
**2020 Canyon Road, Suite 100**
**Birmingham, AL 35216**

**John Mark Parker**
**P. O. Box 3501**
**LaGrange, GA 30242**

counsel of record, by placing the same in the U.S. Mail, postage prepaid and properly addressed, on this the ___10___ day of July, 2007.

_____
Of Counsel

# EXHIBIT A:

# GOLDEN'S ORIGINAL COMPLAINT

IN THE CIRCUIT COURT OF LEE COUNTY F I L E D

FEB 14 2006

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

JENNIFER M. GOLDEN,
     PLAINTIFF,

v.

CASE NO. 2006- 106

DEER VALLEY HOMEBUILDERS, INC.,
a CORPORATION; TIMBERLINE HOMES, INC.,
a corporation; JOHN MARK PARKER,
an individual.
     DEFENDANTS

## COMPLAINT

1.   The plaintiff is an individual residing at 2999 Lee Road 17, Opelika, AL.

2.   Timberline Homes, Inc., is a corporation engaged in the business of selling manufactured homes. Its registered agent for service of process is Michael K. Morris, 1251 South Boulevard, Brewton, AL 36426

3.   John Mark Parker is an individual engaged in the business of installing manufactured homes. His address is P. O. Box 3501, La Grange, Ga. 30241.

4.   Deer Valley Homebuilders, Inc., is a corporation engaged in the business of constructing manufactured homes. Its address for service of process is P.O. 310 Guin, Alabama 35563.

### CLAIMS AGAINST DEER VALLEY
### COUNT I: BREACH OF EXPRESS WARRANTY

5.   On or about April 27, 2005, the plaintiff purchased a home manufactured by Deer Valley.

6.   Deer Valley had manufactured the home specifically for the plaintiff.

7.   The plaintiff purchased the home for her personal, family, or household use.



EXHIBIT
A

1

8.  Deer Valley expressly warranted to the plaintiff by written warranty that the home was free from manufacturing defects in material or workmanship and that it would repair any such defects.

9.  The home contained substantial manufacturing defects.

10.  The plaintiff gave Deer Valley notice of this breach of warranty as provided in the warranty or Deer Valley has waived any failure to give notice as provided in the warranty.

11.  Deer Valley attempted to make repairs on some items, but has failed to repair the home properly and has failed to complete repairs. As a result, Deer Valley has breached the warranty, and the warranty has failed of its essential purpose.

12.  As a proximate consequence of this defendant's breach of warranty, the plaintiff has suffered annoyance, inconvenience, and mental anguish, and the value of the home is less than it would have been if the home had been as warranted and if the defendant had performed according to its warranty.

### COUNT II: BREACH OF IMPLIED WARRANTY

13.  On or about April 27, 2005, the plaintiff purchased a manufactured home constructed by Deer Valley.

14.  Deer Valley manufactured the home specifically for the plaintiff.

15.  The plaintiff purchased the home for her personal, family, or household use.

16.  Pursuant to section 7-2-314 of the Alabama Code and section 2308(a) of title fifteen of the United States Code, the defendant impliedly warranted to the plaintiff that the home was merchantable, that it was habitable, that it was free from defects, and that it would meet the ordinary expectations of a consumer concerning a new product.

2

17. The home contained substantial defects upon delivery to the plaintiff.

18. The plaintiff gave Deer Valley notice of this breach of warranty, and Deer Valley failed or refused to repair some defects and failed to repair properly other defects.

19. As a proximate consequence of Deer Valley's breach of warranty, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been as warranted and if Deer Valley had performed according to its warranty.

## COUNT III: VIOLATION OF MAGNUSON MOSS ACT

20. The plaintiff incorporates herein the allegations of counts one and two.

21. This defendant's conduct described therein is a violation of the Magnuson Moss Warranty Act.

## COUNT IV: NEGLIGENT REPAIR

22. Deer Valley undertook to repair certain defects in the plaintiff's home.

23. Deer Valley negligently performed this undertaking.

24. As a proximate consequence of Deer Valley's negligence, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been properly repaired.

## COUNT V: WANTON REPAIR

25. Deer Valley undertook to repair certain defects in the plaintiff's home.

26. Deer Valley wantonly performed its undertaking.

27. Deer Valley consciously and deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff.

3

28. With respect to any conduct herein for which a principal or employer is to be held liable for the wrongful conduct of an agent, servant or employee, the plaintiff alleges that the principal knew or should have known of the unfitness of the agent, servant, or employee, and employed him or continued to employ him or continued to use his services without proper instruction or with a disregard of the rights or safety of others; or authorized the wrongful conduct; or ratified the wrongful conduct; or the act of the agent, servant, or employee was calculated to or did benefit the principal or employer.

29. As a proximate consequence of Deer Valley's wantonness, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been properly repaired.

WHEREFORE, the plaintiff demands judgment against Deer Valley Homebuilders, Inc. for such compensatory and punitive damages, in excess of $10,000, as a jury may award.

## CLAIMS AGAINST TIMBERLINE
## COUNT VI: BREACH OF IMPLIED WARRANTY

30. On or about April 27, 2005, the plaintiff purchased from Timberline a home constructed by Deer Valley.

31. The plaintiff purchased the home for their personal, family, or household use.

32. Pursuant to section 7-2-314 of the Alabama Code, Timberline impliedly warranted to the plaintiff that the home was merchantable, that it was habitable, that it was free from substantial defects, and that it would meet the ordinary expectations of a consumer concerning a new product.

33. The home contained substantial defects.

34. The plaintiff gave Timberline notice of this breach of warranty, and it failed or refused to repair the defects.

35. As a proximate consequence of Timberline's breach of warranty, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been as warranted and if the defendant had performed according to its warranty.

## COUNT VII: BREACH OF IMPLIED WARRANTY

36. Prior to April 27, 2005, the plaintiff contracted to purchase from Timberline a home constructed by Deer Valley.

37. The plaintiff contracted to purchase the home for her personal, family, or household use.

38. As part of the purchase, Timberline agreed to deliver and set up the home.

39. Timberline impliedly warranted to the plaintiff that home would not be damaged in delivery and that the home would be properly set and installed.

40. The defendant breached such implied warranties in that it, or persons acting on its behalf, damaged the home in delivery, installation, and set up and failed to install properly the home.

41. The plaintiffs gave Timberline notice of this breach of warranty, and it failed or refused to repair the defects.

42. As a proximate consequence of this defendants' breach of warranty, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been as warranted and if the defendant had performed according to its warranty.

## COUNT VIII: VIOLATION OF MAGNUSON MOSS ACT

43. The plaintiff incorporates herein the allegations of the last two counts.

44. The conduct of Timberline described therein constitutes a violation of the Magnuson Moss Act.

## COUNT IX: NEGLIGENT DELIVERY AND SET UP

45. Timberline undertook to deliver and install the plaintiff's home.

46. Timberline negligently performed this undertaking.

47. As a proximate consequence of the negligence of Timberline, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been properly delivered and installed.

## COUNT X: WANTON DELIVERY AND SET UP

48. Timberline undertook to deliver and install the plaintiff's home.

49. Timberline wantonly performed this undertaking.

50. The defendant consciously and deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiffs.

51. With respect to any conduct herein for which a principal or employer is to be held liable for the wrongful conduct of an agent, servant, or employee, the plaintiff alleges that the principal knew or should have known of the unfitness of the agent, servant, or employee, and employed him or continued to employ him or continued to use his services without proper instruction or with a disregard of the rights or safety of others; or authorized the wrongful conduct; or ratified the wrongful conduct; or the act of the agent, servant, or employee was calculated to or did benefit the principal or employer.

52. As a proximate consequence of the wantonness of Timberline, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been properly delivered and installed.

## COUNT XI: FRAUD BY FAILURE TO DISCLOSE

53. The plaintiff incorporates herein the allegations of counts six, seven, nine and ten.

54. Timberline innocently, negligently, wantonly, or intentionally withheld, concealed, and failed to disclose to the plaintiffs certain material facts that it was under a duty to communicate to the plaintiffs based upon a confidential relationship between the parties or the particular facts of the case; namely, that Parker was not licensed, as required by law, to install manufactured homes.

55. In reasonable reliance on the defendants, the plaintiff purchased a home from Timberline and made no objection to Parker's installing it.

56. The defendant consciously and deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff.

57. With respect to any conduct herein for which a principal or employer is to be held liable for the wrongful conduct of an agent, servant, or employee, the plaintiff alleges that the principal knew or should have known of the unfitness of the agent, servant, or employee, and employed him or continued to employ him or continued to use his services without proper instruction or with a disregard of the rights or safety of others; or authorized the wrongful conduct; or ratified the wrongful conduct; or the act of the agent, servant, or employee was calculated to or did benefit the principal or employer.

7

58. As a proximate consequence of Timberline's failure to disclose, the plaintiff has suffered annoyance, inconvenience, and mental anguish, and the value of the home is less than it otherwise would have been.

WHEREFORE, the plaintiff demand judgment against Timberline Homes, Inc., for such compensatory and punitive damages, in excess of $10,000, as a jury may award.

## CLAIMS AGAINST GERALD MARK PARKER
## COUNT XII: NEGLIGENT DELIVERY AND INSTALLATION

59. Parker, acting by and through his agents, servants, and employees, undertook to deliver and install the plaintiff's home.

60. Parker negligently performed this undertaking.

61. As a proximate consequence of Parker's negligence, the home was damaged; the plaintiff has suffered annoyance, inconvenience, and mental anguish; and the value of the home is now less than it otherwise would have been.

## COUNT XIII: WANTON DELIVERY AND INSTALLATION

62. Parker, acting by and through his agents, servants, and employees, undertook to deliver and install the plaintiff' home.

63. This defendant wantonly performed this undertaking.

64. This wantonness included, among other things, this defendant's failure to protect the home from rain during installation.

65. This defendant consciously and deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff.

66. With respect to any conduct herein for which a principal or employer is to be held liable for the wrongful conduct of an agent, servant or employee, the plaintiff allege that the principal knew or should have known of the unfitness of the agent, servant, or

8

employee, and employed him or continued to employ him or continued to use his services without proper instruction or with a disregard of the rights or safety of others; or authorized the wrongful conduct; or ratified the wrongful conduct; or the act of the agent, servant, or employee was calculated to or did benefit the principal or employer.

67. As a proximate consequence of Parker's wantonness, the home was damaged; the plaintiff has suffered annoyance, inconvenience, and mental anguish; and the value of the home is less than it otherwise would have been.

## COUNT XIV: BREACH OF IMPLIED WARRANTY

68. Parker, acting by and through his agents, servants, and employees, undertook to deliver and install the plaintiff's home.

69. Parker impliedly warranted to the plaintiff that the home would not be damaged during delivery and installation and would be properly set and installed.

70. Parker, acting by and through his agents, servants, and employees damaged the home in delivery and installation.

71. The plaintiff gave Parker notice of the damage, and he has failed to correct it.

72. As a proximate consequence of Parker' breach of warranty, the home was damaged; the plaintiff has suffered annoyance, inconvenience, and mental anguish; and the value of the home is less than it otherwise would have been.

## COUNT XV: FRAUD BY FAILURE TO DISCLOSE

73. The plaintiff incorporates herein the allegations of last three counts.

74. Parker innocently, negligently, wantonly, or intentionally withheld, concealed, and failed to disclose to the plaintiff certain material facts that he was under a duty to communicate to the plaintiff based upon a confidential relationship between the parties

or the particular facts of the case; namely, that he was not licensed, as required by law, to install manufactured homes.

75. In reasonable reliance on the defendants, the plaintiff purchased a home from Timberline and made no objection to Parker's installing it.

76. The defendant consciously and deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff.

77. With respect to any conduct herein for which a principal or employer is to be held liable for the wrongful conduct of an agent, servant, or employee, the plaintiff alleges that the principal knew or should have known of the unfitness of the agent, servant, or employee, and employed him or continued to employ him or continued to use his services without proper instruction or with a disregard of the rights or safety of others; or authorized the wrongful conduct; or ratified the wrongful conduct; or the act of the agent, servant, or employee was calculated to or did benefit the principal or employer.

78. As a proximate consequence of Parker's failure to disclose, the plaintiff has suffered annoyance, inconvenience, and mental anguish, and the value of the home is less than it otherwise would have been.

WHEREFORE, the plaintiff demands judgment against Gerald Mark Parker for such compensatory and punitive damages, in excess of $10,000, as a jury may award.

HOWARD, DUNN, HOWARD & HOWARD,
Attorneys for Plaintiff

By _____
G. Houston Howard II (HOW15)

10

OF COUNSEL:
G. HOUSTON HOWARD II
HOWARD, DUNN, HOWARD & HOWARD
P. O. BOX 1148
WETUMPKA, AL 36092
(334) 567-4356

PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL ISSUES.

_____
    G. Houston Howard II


PLAINTIFF REQUESTS SERVICE ON ALL DEFENDANTS BY CERTIFIED MAIL.

_____
    G. Houston Howard II

11

# EXHIBIT B:

# PROGRESSIVE POLICY AS FILED BY  PROGRESSIVE

*PROGRESSIVE*®

UNIVERSITY AGCY INC
PO BOX 3067
AUBURN, AL 36831

Named Insured:

JMP ENTERPRISES, INC
PO BOX 3501
LAGRANGE, GA 30241

**Policy number: 08263817-0**
Progressive Preferred Insurance Company
January 5, 2005
Policy Period: Aug 1, 2004 - Aug 1, 2005
Page 1 of  2

**personal.progressive.com**
Make payments, check billing activity or check
status of a claim.

**334-887-6569**
UNIVERSITY AGCY INC
Contact your agent during business hours.

**800-444-4487**
For policy service and claims service,
24 hours a day, 7 days a week.

# Commercial Auto
# Insurance Coverage Summary
## This is your Declarations Page
## Your coverage has changed

Your coverage began the later of August 1, 2004 at 12:01 a.m. or at the time your application is executed on the first day of the
policy period.  This policy period ends on August 1, 2005 at 12:01 a.m.

This coverage summary replaces your prior one. Your insurance policy and any policy endorsements contain a full explanation of
your coverage. The policy limits shown for an auto may not be combined with the limits for the same coverage on another auto,
unless the policy contract allows the stacking of limits. The policy contract is form 1050 (11-94). The contract is modified by forms
1602 (08/83), 1857 (03/96), 6931 (04/89), 2012 (03/96), 8282 (04/84), 8470 (12/86), 4792A (01/03), 1197 (08/93), MC1632
(06/71), 9809 (04/96) and 8627 (03/88).

The named insured organization type is a corporation.

## Policy changes effective January 4, 2005

| | |
|---|---|
| Premium change: | $0.00 |
| Changes: | The lienholder information on this policy has changed. |

The changes shown above will not be effective prior to the time the changes were requested.

## Outline of coverage

| Description | Limits | Deductible | Premium |
|---|---|---|---|
| Liability To Others | | | $8,363 |
| Bodily Injury and Property Damage Liability | $1,000,000 combined single limit | | |
| Uninsured/Underinsured Motorist | $25,000 each person/$50,000 each accident | | 84 |
| Uninsured Motorist Property Damage | $25,000 each accident | $250 | 44 |
| Medical Payments | $2,000 each accident | | 60 |
| Comprehensive | | | 461 |
| See Schedule Of Covered Autos | Limit of liability less deductible | | |
| Collision | | | 2,168 |
| See Schedule Of Covered Autos | Limit of liability less deductible | | |
| **Subtotal policy premium** | | | **$11,180** |
| Fees | | | 150 |
| **Total 12 month policy premium** | | | **$11,330** |

## Rated drivers

| | |
|---|---|
| 1. JOHN PARKER | |
| 2. JILL PARKER | |

CERTIFIED COPY
THIS WILL CERTIFY THAT THE
ATTACHED IS A TRUE AND COMPLETE COPY
OF THE ORIGINAL
Stephanie Moore
CUSTODIAN OF RECORDS

**EXHIBIT**
**B**

Form 6489 (05/02)

Continued

Policy number: 08263817-0
JMP ENTERPRISES, INC
Page 2  of 2

## Auto coverage schedule

**1.  1992 Intl 810**
VIN:  1HSHBAZN7NH443814

Stated Amount:  $25,000
Garaging Zip Code:  30240          Radius:  100

| Liability Premium | Liability | UM/UIM BI | UM PD | Med Pay | | |
|---|---|---|---|---|---|---|
| | $4,836 | $42 | $22 | $25 | | |

| Physical Damage Premium | Comp Deductible | Comp Premium | Collision Deductible | Collision Premium | | Auto Total |
|---|---|---|---|---|---|---|
| | $1,000 | $242 | $1,000 | $1,092 | | **$6,259** |

**2.  NON Owned Attached Trlr ***
VIN:  NONE

Garaging Zip Code:  30240          Radius:  100

| Liability Premium | Liability | | Auto Total |
|---|---|---|---|
| | $1,107 | | **$1,107** |

**3.  2000 Ford F650 Super Duty**
VIN:  3FDNW6540YMA03102

Stated Amount:  $28,000
Garaging Zip Code:  30240          Radius:  100

| Liability Premium | Liability | UM/UIM BI | UM PD | Med Pay | | |
|---|---|---|---|---|---|---|
| | $2,420 | $42 | $22 | $35 | | |

| Physical Damage Premium | Comp Deductible | Comp Premium | Collision Deductible | Collision Premium | | Auto Total |
|---|---|---|---|---|---|---|
| | $1,000 | $219 | $1,000 | $1,076 | | **$3,814** |

* Non-Owned trailer but only while attached to a listed power unit specifically described on the declarations page

## Lienholder information

We will send certain notices such as coverage summaries and cancellation notices to the following:

| 1. | Lienholder | Auto 1 | CHARTER BANK |
|---|---|---|---|
| | | | PO BOX 570 WEST POINT, GA 31833 |
| | | | 1992 Intl 810 (1HSHBAZN7NH443814) |
| 2. | Lienholder | Auto 3 | CHARTER BANK |
| | | | PO BOX 570 WESTPOINT, GA 31833 |
| | | | 2000 Ford F650 Super Duty (3FDNW6540YMA03102) |

Form 6489 (05/02)



*1050 1194*



# COMMERCIAL
# AUTO POLICY

Form No. 1050 (11-94)
© 1995 The Progressive Corporation. All Rights Reserved.

## WE'RE HERE FOR YOU!

Our Immediate Response®

claims service

and 24 Hour Policy Service

are available 24 hours a day,

7 days a week.

To report a claim, call:

**1-800-274-4499**

For policy service, call:

**1-800-444-4487**

## INDEX OF POLICY PROVISIONS

**PAGE**

**YOUR DUTIES IN CASE OF**
**ACCIDENT OR LOSS** . . . . . . . . . . . . . . . . . . . . . .1
   Notice of Accident or Loss . . . . . . . . . . . . . . .1
   Other Duties . . . . . . . . . . . . . . . . . . . . . . . . . .1

**GENERAL  DEFINITIONS** . . . . . . . . . . . . . . . . . .3

**ADDITIONAL PREMIUM AGREEMENT** . . . . . . . .8

**PART I - LIABILITY TO OTHERS** . . . . . . . . . . . .9
   Coverage A - Bodily Injury . . . . . . . . . . . . . . .9
   Coverage B - Property Damage . . . . . . . . . . .9
   Additional Definitions . . . . . . . . . . . . . . . . . . .10
   Additional Payments . . . . . . . . . . . . . . . . . . .10
   Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . .11
   Limit of Liability . . . . . . . . . . . . . . . . . . . . . . .16
   Coverage Required by Filings . . . . . . . . . . . .16
   Other Insurance . . . . . . . . . . . . . . . . . . . . . . .18

**PART II - EXPENSES FOR MEDICAL**
**SERVICES TO INSUREDS** . . . . . . . . . . . . . . . .19
   Coverage C - Medical Payments . . . . . . . . . .19
   Additional Definitions . . . . . . . . . . . . . . . . . . .19
   Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . .20
   Limit of Liability . . . . . . . . . . . . . . . . . . . . . . .21
   Other Insurance . . . . . . . . . . . . . . . . . . . . . . .22

**PART III - DAMAGE TO YOUR AUTO** . . . . . . . .22
   Coverage D - Comprehensive . . . . . . . . . . . .22
   Coverage E - Collision . . . . . . . . . . . . . . . . . .23
   Coverage F - Fire and Theft with
      Combined Additional Coverage (CAC) . . . .23
   Additional Definitions . . . . . . . . . . . . . . . . . . .24
   Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . .24
   Limit of Liability . . . . . . . . . . . . . . . . . . . . . . .26
   No Benefit to Bailee . . . . . . . . . . . . . . . . . . . .27
   Appraisal . . . . . . . . . . . . . . . . . . . . . . . . . . . .27
   Payment of Loss . . . . . . . . . . . . . . . . . . . . . .28
   Other Insurance . . . . . . . . . . . . . . . . . . . . . . .29

## INDEX OF POLICY PROVISIONS (CONT'D)

**PAGE**

**PART IV - GENERAL PROVISIONS** . . . . . . . . . .29
    Policy Period . . . . . . . . . . . . . . . . . . . . . . . .29
    Changes . . . . . . . . . . . . . . . . . . . . . . . . . . .29
    Two or More Autos Insured . . . . . . . . . . . . .29
    Suit Against Us . . . . . . . . . . . . . . . . . . . . . .29
    Our Recovery Rights . . . . . . . . . . . . . . . . . .30
    Assignment . . . . . . . . . . . . . . . . . . . . . . . . .30
    Waiver . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31
    Bankruptcy . . . . . . . . . . . . . . . . . . . . . . . . .31
    Inspection and Audit . . . . . . . . . . . . . . . . . .31
    Fraud and Misrepresentation . . . . . . . . . . . .31
    Terms of Policy Conformed to Statutes . . . . .32

**CANCELLATION OF THIS POLICY** . . . . . . . . . .32

**NONRENEWAL OF THIS POLICY** . . . . . . . . . . .33

## POLICY AGREEMENT

If **you** pay **your** premium when due, **we** agree to insure **you**, based upon the warranties and representations made by **you** in **your** application, subject to all of the terms of this Policy including all applicable endorsements attached to this Policy and shown in the Declarations. The Declarations and **your** application are a part of this Policy.

---

## YOUR DUTIES IN CASE OF AN ACCIDENT OR LOSS

### Notice of Accident or Loss

In the event of an **accident** or **loss**, report it to **us** as soon as practicable by calling **our** toll-free claims reporting number 1-800-274-4499. The report should give the time, place and circumstances of the **accident** or **loss**, including the names and addresses of any injured persons and witnesses, and the license plates of the vehicles involved.

**You** should also notify the police within twenty-four (24) hours or as soon as practicable if:
a.    a hit-and-run **auto** is involved; or
b.    theft or vandalism has occurred.

All **accidents** or **losses** should be reported even if an insured person is not at fault.

### Other Duties

Any person claiming coverage under this Policy must:

    1.    cooperate with and assist **us** in any matter concerning a claim or lawsuit;

    2.    provide any sworn or written proof of **loss** that **we** require before payment of a **loss**;

    3.    provide **us** with signed or recorded statements under oath as often as **we** may reasonably require;

1

4. promptly send **us** any and all legal papers received relating to any claim or lawsuit;

5. attend hearings and trials as **we** require;

6. submit to medical examination at **our** expense by doctors **we** select as often as **we** may reasonably require;

7. authorize **us** to obtain medical and other records which **we** deem appropriate;

8. authorize **us** access to **your** business or personal records as often as **we** deem necessary;

9. provide **us** with written notice of any legal action which such person has undertaken in regard to the **accident** for which coverage is sought;

10. assume no obligation, make no payment or incur no expense without **our** consent, except at **your** own cost;

11. convey title to and possession of the damaged, destroyed, or stolen property to **us** if **our** payment is based on a total loss or constructive total loss of the property; a constructive total loss occurs when the cost of repairs exceeds the lesser of the **actual cash value** of the damaged property immediately before the **loss**, or the limit of liability of the damaged property as indicated in the Policy.

In addition to the above, a person claiming coverage under PART III - DAMAGE TO YOUR AUTO must:

1. take reasonable steps after a **loss** to protect the **insured auto** and its equipment from further **loss**, provided that **we** shall pay reasonable expenses incurred in providing that protection, provided further that if **you** fail to do so, any further damages will not be covered under this Policy.

2. keep a record of **your** expenses for consideration in the settlement of a claim.

3. report the theft or vandalism of the **insured auto** to the police within twenty-four (24) hours of the **accident**;

4. allow **us** to inspect and appraise the **insured auto** before repair or disposal.

## GENERAL DEFINITIONS

**The following words and phrases have special meaning when used in bold throughout this Policy and in the endorsements unless specifically modified.**

1. "**We**", "**us**" and "**our**" mean the Company providing this insurance as shown in the Declarations.

2. "**You**" and "**your**" mean:

    a. if the policy is issued in the name of an individual, the person shown in the Declarations as the named insured; or

    b. the organization shown in the Declarations as the named insured.

3. "**Bodily injury**" means physical injury to or sickness, disease or death of any person. **Bodily injury** does not include harm, sickness, disease or death arising out of a medically defined communicable disease contracted by any person, nor the exposure of such a disease by any person to any other person.

4. "**Property damage**" means damage to or destruction of tangible property, including loss of its use.

5. "**Auto**" means a land motor vehicle or **trailer** designed for travel on public roads. It does not include **mobile equipment**.

2

3

6. "**Trailer**" includes a semi-trailer and any piece of equipment used to convert a semi-trailer to a full trailer while it is attached to the semi-trailer.

7. "**Mobile equipment**" means any of the following types of equipment, including but not limited to any attached machinery:

   a. Equipment such as: Bulldozers, power shovels, cranes, rollers, booms, winches, graders, diggers, mixers, compressors, generators, drills, welders, pumps, farm implements and machinery, forklifts, shredders or other similar specialized equipment.

   b. Vehicles **you** use solely on premises **you** own or rent and on accesses to public roads from these premises, unless listed in the declarations of this policy and not defined as **mobile equipment** under other parts of this definition.

   c. Any vehicle designed for customary use off public roads or those which do not require licensing in the state in which **you** live or **your** business is licensed.

   d. Vehicles, whether self-propelled or not, used primarily to provide mobility to permanently attached equipment including, but not limited to: Air compressors, pumps, generators, spraying, welding, cleaning, lighting, geophysical exploration and well servicing equipment, cherry pickers or other devices used to raise or lower workers, snow removal equipment, or road maintenance equipment.

   e. Vehicles used primarily for purposes other than transportation of persons or cargo. However, self-propelled vehicles with permanently attached equipment listed below are not **mobile equipment** but will be considered **autos**:

      1) Snow removal, road maintenance and street cleaning equipment.

8. "**Accident**" means a sudden, unexpected and unintended event, or a continuous or repeated exposure to that event, that causes **bodily injury** or **property damage** and arises out of the ownership, maintenance or use of **your insured auto**.

9. "**Your insured auto**" or "**insured auto**" means:

   a. Any **auto** described in the Declarations or any **replacement auto**. The same coverages and limits will apply to the **replacement auto** as applied to the **auto** being replaced, until **you** notify **us**. You must, however, notify **us** within 30 days of replacement <u>for coverage to continue to apply. Once ownership in the original auto is transferred or it becomes permanently inoperable, this policy no longer applies to it.</u>

   b. Any additional **auto** of which **you** acquire ownership during the policy period provided that: 1) if the **auto** is used in **your** business, **we** must insure all other **autos you** own and that have been used in **your** business, and 2) if the **auto** is not used in **your** business, **we** must insure all other **autos you** own. The same coverages and limits will apply to the additionally acquired **auto** as apply to **your** other **autos** on the policy, except that:

4

5

1) For coverage to apply to the additional **auto** under PART I - LIABILITY TO OTHERS and PART II - EXPENSES FOR MEDICAL SERVICES TO IN-SUREDS, **you** must notify **us** within 30 days of its acquisition. If **you** have not notified **us** of an additional **auto** and an **accident** occurs within 30 days of **your** acquisition, only those coverages and limits for Parts I and II shown in **your** most current declarations will apply.

2) For coverage to apply to the additional **auto** under PART III - DAMAGE TO YOUR AUTO, **you** must have notified **us** of the **auto** prior to any **accident** or **loss**.

c. Any **non-owned auto** while **you** or an employee of **yours** is temporarily driving it as a substitute for any other **auto** described in this definition because of its withdrawal from normal use for a period of not greater than 30 days without notification to **us** due to breakdown, repair, servicing, **loss**, or destruction. Coverage for PART III - DAMAGE TO YOUR AUTO does not apply to these temporary substitute **autos**.

d. **Trailers** designed primarily for travel on public roads, even if such **trailers** are not shown in the Declarations, but only while upon a public road and connected to **your insured auto**. However, no coverage shall be provided for a **trailer** under PART III - DAMAGE TO YOUR AUTO, unless the appropriate premium has been paid for that coverage for such **trailer**.

e. **Mobile equipment**, even if not shown in the Declarations, but only if

6

it is permanently attached to **your insured auto** and **your insured auto** is in transit on a public roadway.

10. "**Replacement auto**" means any **auto** which **you** have acquired ownership of during the current policy term that has taken the place of an **auto** described in the Declarations due to:

a. termination of **your** ownership of the **auto** described in the Declarations; or

b. mechanical breakdown, deterioration or loss of the **auto** described in the Declarations, rendering it permanently inoperable.

11. "**Non-owned auto**" means any **auto** which is:

a. not owned by or registered to **you, your** nonresident spouse or a resident of the household in which **you** reside;

b. not hired, owned by or borrowed from **your** employees or members of their households; or

c. Not hired by **you** or an employee of **yours**, and if **you** are a person, not hired by a resident of the household in which **you** reside unless it is specifically listed on the policy Declarations.

12. "**Occupying**" means in, on, getting into, getting off, or getting out of.

13. "**State**" means the District of Columbia and any state, territory or possession of the United States and any province of Canada.

14. "**Relative**" means, if **you** are a person, any other person living in the household

7

in which **you** reside who is related to **you** by blood, marriage or adoption, including a ward or foster child.

15. **"Loss"** means sudden, direct and accidental destruction of, theft or damage to **your insured auto.**

16. **"Actual cash value"** means the amount it would cost to replace the stolen or damaged property with property of like kind and quality. In the event replacement property of like kind and quality is unavailable, allowances can be made for the difference in value between the replacement and damaged property.

17. **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

---

### ADDITIONAL PREMIUM AGREEMENT

**You** acknowledge that the premium for each term of **your** Policy is determined by information in **our** possession at the inception date of the Policy period. Any change in this information during the period which would affect the rating of **your** Policy gives **us** the right to make an additional charge on a pro-rata basis. In addition, **you** have a duty to inform **us** of any such change.

1. If a premium adjustment is necessary because of an error made by **us** or **our** agent, **we** shall:

    a. Notify **you** of the nature of the error and the amount of additional premium required; and

    b. Offer to cancel the policy pro rata based on the original (incorrect) premium for the period for which coverage was provided, or

8

c. Offer to continue the policy for its full term with the correct premium applying for the entire term.

2. If the premium revision results from erroneous or incomplete information supplied by **you** or on **your** behalf, **we** shall:

    a. Correct the premium or rate retroactive to the inception date of the policy; and

    b. Notify **you** of the reason for the amount of the change. If **you** are not willing to pay the additional premium billed, within ten (10) days of **our** demand for such premium, **you** may cancel the policy by not paying the additional premium. **We** will notify **you** of the date such cancellation becomes effective and compute any return premium based on the correct premium.

3. In the event **we** discover that additional premium is due when **we** adjust a claim under PART II - EXPENSES FOR MEDICAL SERVICES TO INSUREDS or PART III - DAMAGE TO YOUR INSURED AUTO, **you** agree that such premium may be deducted from the amount of payment otherwise due under such Parts if such payment is to benefit **you** either directly or indirectly.

Nothing contained in this section will limit **our** right to void this policy for breach of warranty or misrepresentation of any information by **you.**

---

### PART I - LIABILITY TO OTHERS

Coverage A - Bodily Injury
Coverage B - Property Damage

**We** will pay damages, OTHER THAN PUNITIVE OR EXEMPLARY DAMAGES, for which an **insured** is legally liable because of an **accident.**

9

We will defend any lawsuit for damages which are payable under this Policy or settle any claim for those damages as we think appropriate. We have no duty to settle or defend any lawsuit or make any additional payments after we have paid or offered to pay the Limit of Liability for this coverage.

**Additional Definitions Used in this Part Only:**

When used in PART I - LIABILITY TO OTHERS, "Insured" means:

1. **You;**

2. Any additional driver listed on **your** policy but only while driving **your insured auto;**

3. Any other person driving **your insured auto** with **your** permission and within the scope of that permission;

4. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this PART I - LIABILITY TO OTHERS while driving **your insured auto.**

However, the owner or anyone else from whom you hire or borrow **your insured auto** is an **insured** with respect to that **auto** only if it is a trailer connected to an **insured auto.**

**Additional Payments**

For an **insured**, **we** will pay, in addition to **our** Limit of Liability:

1. interest, on damages not exceeding **our** Limit of Liability, accruing after entry of judgment in any lawsuit **we** defend before **we** have paid or tendered payment of that portion of the judgment which does not exceed **our** Limit of Liability;

2. premiums on appeal bonds and attachment bonds required in any lawsuit **we** defend, provided that **we** will not pay the premium for attachment bonds that are more than **our** Limit of Liability, and **we** have no duty to apply for or furnish these bonds;

3. up to $250 for a bail bond required because of an **accident** or traffic law violation arising out of the use of **your insured auto**, but **we** have no duty to apply for or furnish such a bond;

4. reasonable expenses, except loss of earnings, incurred at **our** request;

5. reasonable expenses, up to $1,000, incurred by an **insured** for immediate medical or surgical relief to others necessary at the time of an **accident** resulting in **bodily injury** covered by this PART I - LIABILITY TO OTHERS provided that such expenses are not due to war;

6. all costs **we** incur in any settlement of any claim.

**EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, AN INSURED WILL NOT HAVE COVERAGE FOR AN ACCIDENT OR LOSS THAT OTHERWISE WOULD BE COVERED UNDER THIS PART I - LIABILITY TO OTHERS.**

Coverage under this **PART I** and **our** duty to defend does not apply to:

1. **Bodily injury** and **property damage** either expected or caused intentionally by or at the direction of an **insured.**

2. Any liability assumed by an **insured** under any contract or agreement, including liability imposed upon an **insured** by statute arising from the **insured's** sponsorship of a minor for an operator's license.

10

11

3. Any obligation assumed or expense incurred by any person claiming coverage under this Policy other than for emergency medical and surgical care imperative at the time of the **accident.**

4. Any obligation for which an **insured** or the insurer of that **insured,** even if one does not exist, may be held liable under Workers' Compensation, unemployment compensation, or disability benefits law or any similar law.

5. An **accident** for which any person is insured under nuclear energy liability insurance. This exclusion applies even if the limits of that insurance are exhausted.

6. **Bodily injury** to an employee of an **insured,** or a spouse, child, parent, brother or sister of that employee, arising out of or within the course of employment, except with respect to a domestic employee if benefits are neither paid nor required to be provided under any Workers' Compensation, disability benefits or other similar law. This exclusion applies whether the **insured** may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

7. **Bodily injury** to a fellow employee of an **insured** injured while within the course of their employment, except injuries for which the **insured** is legally liable.

8. **Bodily injury** or **property damage** involving an **auto** while being operated, used or maintained by any person when employed or engaged in the business of selling, repairing, parking, storing, servicing, or while delivering, testing, road testing, parking or storing **autos,** unless the business is **your** business, and it was warranted in **your** application.

9. **Property damage** to any property owned by, rented to, being transported by, used by, or in the charge of an **insured,** including any motor vehicle operated or being towed.

10. **Bodily injury** or **property damage** resulting from or caused by the loading or unloading of property with any device other than a hand truck.

11. **Bodily injury** or **property damage** resulting from or caused by the loading or unloading of property with a hand truck before the property is placed in or upon the **insured auto** or after it has been removed from the **insured auto.**

12. **Bodily injury** or **property damage** resulting from anyone who is not **your** employee loading or unloading an **auto.**

13. **Bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any **pollutants:**

   a. That are, or that are contained in any property that is:

      1) Being transported or towed by, or handled for movement into, onto or from, the **insured auto;**

      2) Otherwise being transported by or on behalf of the **insured;** or

      3) Being stored, disposed of, treated or processed in or upon the **insured auto;**

   b. Before the **pollutants** or any property in which the **pollutants** are contained are moved from the place where they are accepted by the **insured** for movement into or onto the **insured auto;** or

12

13

c. After the **pollutants** or any property in which the **pollutants** are contained are moved from the **insured auto** to the place where they are finally delivered, disposed of or abandoned by the **insured**.

Paragraph a. does not apply to fuels, lubricants, fluids, exhaust gasses or other similar **pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the **insured auto** or its parts, if:

    (1) The **pollutants** escape or are discharged, dispersed or released directly from an **insured auto** part designed by its manufacturer to hold, store, receive or dispose of such **pollutants** and is a part that would be required for the customary operation of the **insured auto**; and

    (2) The **bodily injury** or **property damage** does not arise out of the operation of any **mobile equipment**.

Paragraphs b. and c. of this exclusion do not apply to **accidents** that occur away from premises owned by or rented to an **insured** with respect to **pollutants** not in or upon an **insured auto** if:

a. The **pollutants** or any property in which the **pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of an **insured auto**; and

b. The discharge, dispersal, release or escape of the **pollutants** is caused directly by such upset, overturn or damage.

14. Any loss, cost or expense arising out of any governmental direction or request that **you** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **pollutants**.

14

15. **Bodily injury** to **you** or an **insured**.

16. **Bodily injury** or **property damage** arising out of **you** or an **insured** participating in or preparing for an organized race, speed contest or performance contest.

17. **Bodily injury** or **property damage** due to war (declared or undeclared), civil war, insurrection, rebellion, revolution, or to any act or condition incident to these.

18. Any obligation for which the United States Government is liable under Federal Tort Claim Act.

19. **Bodily injury** or **property damage** resulting from the delivery of any liquid into the wrong receptacle or the wrong address, or from the delivery of one liquid in place of another.

20. **Bodily injury** or **property damage** resulting from the explosion or discharge of Class A and B explosives, poisonous gas, liquid gas, compressed gas, or radioactive material and all other materials and/or commodities as listed in the Motor Carrier Act of 1980 (49 CFR 173, 172.101, 173.389, 171.389, 171.8), manufactured, sold, transported, handled or distributed by an **insured**.

21. **Bodily injury** or **property damage** occurring outside any territory or possession of the United States and any province of Canada, or while an **auto** is being transported between their ports.

22. **Bodily injury** or **property damage** if **your insured auto** or a **non-owned auto** is attached to a **trailer** with load capacity in excess of two thousand (2,000) pounds if it is not listed in the Declarations and it:

a. is owned by **you** or **your** employee; or

15

b. has been hired or borrowed by **you** or **your** employee for more than 60 consecutive calendar days.

23. **Bodily injury** or **property damage** caused by or through the ownership, use or operation of any **mobile equipment** or other apparatus attached to or pulled by **your insured auto** except while **your insured auto** is in transit on a public roadway.

24. **Bodily injury** or **property damage** arising out of the operation of **your insured auto** by any driver not meeting legal age requirements to operate a vehicle in the **state** shown in the declarations.

## Limit of Liability

Regardless of the number of **insured autos**, separate premiums paid, **insureds**, claims made, vehicles involved or lawsuits brought, **we** will pay no more than the Limit of Liability shown for this coverage in the Declarations, subject to the following:

1. **COVERAGE REQUIRED BY FILINGS:**

   If **we** are required by any applicable filing which **we** have made on **your** behalf to provide coverage not otherwise provided by this policy under this PART I - LIABILITY TO OTHERS, to any person or organization, the coverage provided hereunder for such person shall be the minimum coverage required by law. If **we** are required to make any payment under this policy that would not have been made except for the certification, **you** must reimburse **us**.

2. **COMBINED BODILY INJURY AND PROPERTY DAMAGE LIMITS:**

   Subject to Section 1 above, if **your** Declarations indicates that combined **bodily injury** and **property damage** lim-

its apply, the most **we** will pay for the aggregate of all damages resulting from any one **accident** is the combined liability insurance limit shown in the Declarations.

3. **SEPARATE BODILY INJURY LIABILITY AND PROPERTY DAMAGE LIABILITY LIMITS:**

   Subject to Section 1 above, if **your** Declarations indicates that Separate **Bodily Injury** Liability and **Property Damage** Liability Limits apply:

   a. The **bodily injury** liability limit for "each person" listed on the Declarations page is the maximum **we** will pay for **bodily injury** sustained by any one person in any one **accident**, and only the limit for "each person" will apply to the aggregate of claims made for such **bodily injury** and any and all claims derived from such **bodily injury** including, but not limited to, loss of society, loss of companionship, loss of services, loss of consortium and wrongful death.

   b. Subject to the **bodily injury** liability limit for "each person", the **bodily injury** limit for "each accident" listed on the Declarations Page is the maximum **we** will pay for **bodily injury** sustained by two or more persons in any one **accident**, including all derivative claims which include, but are not limited to, loss of society, loss of companionship, loss of services, loss of consortium and wrongful death.

   c. The **property damage** liability limit for "each accident" listed on the Declarations page is the maximum **we** will pay for all **property damage** sustained in any one **accident**.

For the purpose of determining **our** Limit of Liability under sections 1, 2, or 3 above, all **bod-**

16

17

ily **injury** and **property damage** resulting from continuous or repeated exposure to substantially the same conditions shall be considered as resulting from one **accident**.

An **insured auto** and a **trailer or trailers** attached thereto shall be deemed to be one **auto** as respects **our** Limit of Liability.

Any amount payable under PART I - LIABILITY TO OTHERS to or for an injured person will be reduced by any payment made to that person under any UNINSURED MOTORIST COVERAGE, UNDERINSURED MOTORIST COVERAGE, PERSONAL INJURY PROTECTION OR EXPENSES FOR MEDICAL SERVICES TO INSUREDS coverages of this policy.

### Other Insurance

Subject to the above, if there is other applicable liability insurance for an **accident** covered by this PART I - LIABILITY TO OTHERS for a **replacement auto**, an additional **auto** or a **non-owned auto** used as a temporary substitute **auto**, coverage under this Policy will be excess to all other applicable insurance.

This coverage is primary when **your insured auto** which is a **trailer** is attached to an **insured auto you** own and is excess while attached to a motor vehicle **you** do not own.

If there is other applicable liability insurance for an **accident** covered by this PART I - LIABILITY TO OTHERS, **we** will pay the proportionate share **our** Limit of Liability bears to the total of all applicable liability limits.

If coverage under more than one policy applies as excess:

1. the total limits of liability under such excess coverages shall not exceed the difference between the limit of liability of the primary coverage and the highest limit of liability of any one of the excess coverages; and

2. the difference between the limit of liability of the primary coverage and the highest limit of liability of any one of the excess coverages shall be referred to as the excess amount; and

3. **we** shall be liable only for that percent of the excess amount that the Limit of Liability under this PART I - LIABILITY TO OTHERS bears to the total of all limits of liability for coverages applicable as excess.

If any applicable insurance other than this policy is issued by **us** and is applicable to a covered **accident**, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability.

---

### PART II - EXPENSES FOR MEDICAL SERVICES TO INSUREDS

### Coverage C - Medical Payments

If **you** purchase this coverage and it is shown on the Declarations page, **we** will pay **medical expenses** incurred by an **insured** caused by an **accident**.

**Additional Definitions as used in this Part only:**

"**Insured**" means any person **occupying your insured auto** while it is being driven by **you** or anyone with **your** permission and within the scope of that permission.

"**Medical expenses**" means reasonable, necessary and curative medical, surgical, dental, x-ray, ambulance, hospital and funeral services, including the cost of pharmaceuticals, orthopedic and prosthetic devices, incurred within one (1) year of the date of **accident**.

"**Accident**" means a sudden, unexpected and unintended event that causes **bodily injury**.

18

19

**EXCLUSIONS - PLEASE READ THE EXCLU-SIONS CAREFULLY. IF AN EXCLUSION APPLIES, AN INSURED WILL NOT HAVE COVERAGE FOR AN ACCIDENT THAT OTHERWISE WOULD BE COVERED UNDER THIS POLICY.**

This coverage does not apply for **bodily injury** to any person:

1. Occurring during the course of employment if Workers' Compensation coverage should apply.

2. Caused by war (declared or undeclared), civil war, insurrection, rebellion, revolution, nuclear reaction, radiation or radioactive contamination, or any consequence of any of these.

3. Caused while the **insured** is committing or attempting to commit a felony, or while the **insured** is involved in an illegal occupation. This exclusion does not apply when the felony is solely a violation of a Motor Vehicle Law.

4. Caused by the operation of **your insured auto** by any driver not meeting legal age requirements to operate a vehicle in the **state** shown in the declarations.

5. Sustained while **your insured auto** is driven in or preparing for any pre-arranged or organized race, speed contest or performance contest.

6. Sustained by any person while **occupying your insured auto** while it is being used or maintained by a person when employed or engaged in the business of selling, repairing, parking, storing, servicing, delivering or while testing, road testing, parking or storing **autos**.

7. To any person entitled to receive similar services from the United States Government or its military services.

8. Sustained in any **accident** which occurs outside any **state**.

9. Sustained while using or **occupying a non-owned auto** or a temporary substitute **auto**.

**Limit of Liability**

**Our** Limit of Liability for payments provided under this PART II - EXPENSES FOR MEDICAL SERVICES TO INSUREDS for covered **medical expenses** incurred by one or more persons in any one **accident** shall not exceed the amount stated in the Declarations for each **accident**. Regardless of the number of **insured autos**, premiums paid, **insureds** injured, claims made, policies applicable, or vehicles involved in any one **accident**, **we** shall pay no more than the Limit of Liability shown for this coverage on the Declarations page for any one **accident**.

The limit for funeral expenses shall not exceed $1,500 per person, subject to the maximum per accident limit of liability listed on the Declarations page for this coverage.

**We** will not be liable under this Policy for any **medical expense** paid or payable under the provisions of any:

1. Workers' Compensation or disability benefits law or any similar law; or

2. State No-Fault Law requiring personal injury protection coverage; or

3. premises insurance providing coverage for medical expenses; or

4. individual, blanket, or group accident, disability or hospitalization; or

5. medical, surgical, hospital or funeral services, benefit or reimbursement plan.

Any amount paid or payable under PART I - LIABILITY TO OTHERS or the UNINSURED

20

21

MOTORIST COVERAGE OR UNDERINSURED MOTORIST COVERAGE of this policy shall be deducted from the amounts payable under this PART II if the **insured** has been fully compensated for his/her injuries.

### Other Insurance

If there is other applicable medical payment insurance for **medical expenses** covered by this PART II - EXPENSES FOR MEDICAL SERVICES TO INSUREDS, **we** shall pay the proportionate share **our** Limit of Liability bears to the total of all applicable medical payments limits. HOWEVER, COVERAGE AFFORDED UNDER PART II - EXPENSES FOR MEDICAL SERVICES TO INSUREDS OTHER THAN **YOU** OR A **RELATIVE** IS EXCESS OVER SUCH OTHER APPLICABLE MEDICAL PAYMENT INSURANCE, AND IS THEN AFFORDED ONLY IN THE AMOUNT BY WHICH THE LIMIT OF LIABILITY UNDER THIS PART II - EXPENSES FOR MEDICAL SERVICES TO INSUREDS EXCEEDS THE LIMIT OF LIABILITY OF OTHER MEDICAL PAYMENTS INSURANCE AVAILABLE TO SUCH PERSON.

If any applicable insurance other than this policy is issued by **us**, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability.

---

### PART III - DAMAGE TO YOUR AUTO

### Coverage D - Comprehensive

If **you** pay a specific premium for Comprehensive coverage, as shown in the Declarations, **we** will pay for **loss** to **your insured auto**, less any applicable deductible, caused by means other than are covered under **Coverage E - Collision**. Any deductible amount shall apply separately to each **loss**.

Any **loss** caused by missiles, falling objects, fire, theft, collision with an animal or accidental glass breakage shall be deemed a **Comprehensive loss**.

22

### Coverage E - Collision

If **you** pay a specific premium for **Collision** coverage, as shown in the Declarations, **we** will pay for **loss** to **your insured auto**, less any applicable deductible, when it collides with another object or overturns. Any deductible amount shall apply separately to each **loss**.

### Coverage F - Fire and Theft with Combined Additional Coverage (CAC)

If **you** pay a specific premium for **Fire and Theft with Combined Additional Coverage (CAC)**, as shown in the Declarations, **we** will pay for **loss**, less any applicable deductibles, caused by:

1. **fire;**

2. **theft;**

3. windstorms;

4. hail;

5. earthquakes;

6. explosions;

7. the forced landing or falling of any aircraft or its parts or equipment;

8. flood or rising waters;

9. malicious mischief or vandalism;

10. external discharge or leakage of water except **loss** resulting from rain, snow, or sleet whether or not wind driven; or

11. Collision with a bird or animal.

No **losses** other than those specifically described above will be covered under the terms of this Policy. Any deductible will apply separately to each **loss**.

23

**Additional definitions used in this Part only:**

1. **"Fire"** means:

   a. fire or lightning, or

   b. smoke or smudge due to a sudden, unusual, and faulty operation of any fixed heating equipment serving the premises on which the **insured auto** is located, or

   c. the stranding, sinking, burning, collision, or derailment of any conveyance in or upon which the **insured auto** is being transported.

2. **"Theft"** means theft, larceny, robbery, or pilferage.

3. **"Your insured auto"** means any **auto** described on the Declarations page, including any permanently attached equipment included in the Limit of Liability shown on the Declarations or by endorsement attached to this Policy, or any **replacement auto**, if the **auto** being replaced previously had DAMAGE TO YOUR AUTO COVERAGE and **we** are notified within 30 days of acquisition of the **replacement auto**.

**EXCLUSIONS - PLEASE READ THE EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, YOU WILL NOT HAVE COVERAGE FOR A LOSS THAT OTHERWISE WOULD BE COVERED UNDER THIS POLICY.**

This coverage does not apply to **loss**:

1. Caused by war (declared or undeclared), any warlike action, any action taken to defend against an actual or expected attack, civil war or commotion, insurrection, rebellion, revolution, or nuclear contamination, regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**.

2. To any sound equipment, video equipment or transmitting equipment not permanently installed in **your insured auto**, or to tapes, records, or similar items used with sound equipment.

3. To radar detectors.

4. To camper units, pickup covers, caps or shells which are not permanently installed in **your insured auto**.

5. To tarpaulins, binders, chains, or any other cargo securing devices.

6. Resulting from manufacturer's defects, wear and tear, freezing, mechanical or electrical breakdown or failure. But, coverage does apply if the damage is the result of other **loss** covered by the Policy.

7. To **your insured auto** when it is in the care, custody or control of any person for the purpose of selling it.

8. To wearing apparel, tools, or personal effects.

9. While **your insured auto** is used in any illicit trade or transportation.

10. Due to use of **your insured auto** for transportation of any explosive substance, flammable liquid, or similarly hazardous material other than substances transported for common household usage.

11. Caused by **you** or an **insured** participating in or preparing for an organized race, speed contest or performance contest.

12. While **your insured auto** is subject to any bailment lease, conditional sale, mortgage or other encumbrance not specifically declared and described on the Declarations.

24

25

13. Due to **theft** or conversion of **your insured auto**:

   a. by **you**, a **relative** or a resident of **your** household or an employee;

   b. prior to its delivery to **you**; or

   c. while it is in the care, custody or control of anyone for the purpose of selling **your insured auto**.

14. To **your insured auto** while in anyone else's possession under a written trailer exchange agreement, provided that this exclusion shall not apply to a loss payee. If **we** pay the loss payee, **you** must reimburse **us** for payment.

15. To any **non-owned auto** or temporary substitute **auto**.

16. To any **trailer**, unless a premium has been paid for **DAMAGE TO YOUR AUTO COVERAGE** for the **trailer** involved in the **loss**.

## Limit of Liability

The most **we** will pay for **loss** to **your insured auto** is the least of:

1. the **actual cash value** of the stolen or damaged property at the time of **loss** reduced by the applicable deductible;

2. the amount necessary to repair or replace the property with other of like kind and quality reduced by the applicable deductible and subject to any other endorsement or policy provisions;

3. the applicable Limit of Liability shown in the Declarations or in the endorsements to this policy,

4. the amount necessary to repair or replace with new property, less any applicable depreciation and deductible.

26

When **we** determine **our** payment for **loss** to **your insured auto**, any salvage value of **your insured auto** as a result of **loss** may at **our** option be deducted from 1, 2, 3 or 4 above. If **we** pay the **actual cash value** of **your insured auto** or the limit of liability as stated within the policy, less the deductible, **we** are entitled to all salvage.

A separate deductible applies to each **insured auto** involved in the **loss**.

If **we** repair the property, **we** shall not be responsible for any diminution in value of the property caused by the **loss**. If repair or replacement of damaged property increases the overall value of **your insured auto**, **we** may deduct this amount from the repair cost.

If the Limit of Liability shown on the Declarations for the **insured auto** involved in the **loss** is less than 90% of the **actual cash value** at the time of **loss**, **you** will share with **us** in the cost of repair or replacement as follows:

1. **We** will pay the same proportion of the **loss** which the Limit of Liability shown in the Declarations or in the endorsements to this policy for **your insured auto** involved in the **loss** bears to the **actual cash value** of **your insured auto** at the time of **loss**.

2. **We** will reduce the amount of **loss** by the appropriate deductible shown in the Declarations prior to calculating the proportionate amount **we** will pay.

## No Benefit to Bailee

These coverages shall not directly or indirectly benefit any carrier or other bailee for hire liable for **loss** to **your insured auto**.

## Appraisal

If **we** cannot agree with **you** on the amount of **your loss**, then **you** or **we** may demand an appraisal of the **loss**. Each party shall appoint a competent and disinterested appraiser. If the

27

appraisers agree on the amount of the **loss**, they shall submit a written report to **us** and this shall be deemed to be the amount of the **loss**.

If the appraisers cannot agree within a reasonable time, they shall then choose a competent, impartial umpire, provided that if they cannot agree on an umpire within fifteen (15) days, either **you** or **we** may petition a judge of a court having jurisdiction to choose an umpire. The disagreement of the appraisers shall then be submitted to the umpire. Subject to the provisions of the Policy, a written agreement signed by two of these three will then be the amount of the **loss**.

**You** must pay **your** fees and expenses and those of **your** appraiser. **We** will pay **our** fees and expenses and those of **our** appraiser. **We** shall share evenly with **you**;

1. payment of the umpire; and

2. all other expenses of the appraisal.

By agreeing to appraisal, **we** do not waive any of **our** rights under any other part of this Policy, including **our** right to deny the claim.

**Payment of Loss**

**We** may pay the **loss** in money or repair or replace the damaged or stolen property. **We** may, at any time before the **loss** is paid or the property is replaced, return, at **our** expense, any stolen property either to **you** or to the address shown on the declarations page, with payment for the resulting damage less any applicable deductibles. **We** may keep all or part of the property at the agreed or appraised value, but there shall be no abandonment to **us**.

**We** may make payment for a **loss** to **you** or the owner of the property. Payment for a **loss** is required only if **you** have fully complied with the terms of this Policy.

28

**Other Insurance**

If there is other applicable insurance on a **loss** covered by this PART III - DAMAGE TO YOUR AUTO, **we** will pay the proportionate share **our** Limit of Liability bears to the total limits of all applicable similar insurance.

---

### PART IV - GENERAL PROVISIONS

1. **Policy Period**

   Subject to other provisions in the policy, this Policy applies only to **accidents**, **losses** and occurrences during the Policy period shown in the Declarations.

2. **Changes**

   This Policy with the Declarations includes all the agreements between **you** and **us** relating to this insurance. No change or waiver may be effected except by endorsement issued by **us**. It is **your** responsibility to notify **us** immediately of any changes to drivers or vehicles.

3. **Two or More Autos Insured**

   With respect to any **accident** or occurrence to which this and any other Policy issued to **you** by **us** applies, the total limit of **our** liability under all the Policies shall not exceed the highest applicable Limit of Liability under any one Policy.

4. **Suit Against Us**

   **We** may not be sued unless there is full compliance by **you** or an **insured** with all the terms of this Policy. **We** may not be sued under the PART I - LIABILITY TO OTHERS coverage until the obligation of an **insured** to pay is finally determined by judgment against the **insured** after actual trial or by written agreement of the **insured**, the claimant, and **us**.

29

**5. Our Recovery Rights**

In the event of any payment under this Policy, **we** are entitled to all the rights of recovery of the person or organization to whom payment was made. That person or organization must sign and deliver to **us** any legal papers relating to that recovery, do whatever else is necessary to help **us** exercise those rights, and do nothing after **loss** or **accident** to harm **our** rights.

When a person has been paid damages by **us** under this Policy and also recovers from another, the amount recovered from the other shall be held in trust for **us** and reimbursed to **us** to the extent of **our** payment, provided that the person to or on behalf of whom such payment is made is fully compensated for their **loss**.

In the event recovery has already been made from the responsible party, any rights to recovery by the person(s) claiming coverage under this policy no longer exist.

**6. Assignment**

Interest in this Policy may not be assigned without **our** written consent. If the Policyholder named in the Declarations is a person and that person dies, the Policy will cover:

a. the survivor;

b. the legal representative of the deceased person while acting within the scope of duty of a legal representative; and

c. any person having proper custody of **your insured auto** until a legal representative is appointed, but in no event for more than thirty (30) days after the date of death.

**7. Waiver**

Notice to any agent or knowledge possessed by any agent or other person shall not change or effect a waiver on any portion of this Policy nor stop **us** from exerting any of **our** rights under this Policy.

**8. Bankruptcy**

**We** are not relieved of any obligation under this Policy because of the bankruptcy or insolvency of an **insured**.

**9. Inspection and Audit**

**We** shall have the right to inspect **your** property and operations at anytime. This includes, but is not limited to, the right to inspect and audit the maintenance of any **autos** covered hereunder, who **your** drivers are and what their driving records are, and **your** radius of operations. In doing so, **we** do not warrant that the property or operations are safe and healthful, or are in compliance with any law, rule or regulation.

**We** shall also have the right to examine and audit **your** books and records at any time during the Policy period and any extensions of that period and within three (3) years after termination of the Policy, as far as they relate to the subject matter of this insurance.

**10. Fraud and Misrepresentation**

This Policy shall be void if **you** or an **insured** has concealed or misrepresented any material fact, or in case of any fraud or attempted fraud touching any matter regarding this Policy, whether before or after a **loss** or **accident**.

30

31

### 11. Terms of Policy Conformed to Statutes

Terms of this Policy which are in conflict with the statutes of the **state** in which this Policy is issued are hereby amended to conform to the statutes.

## CANCELLATION OF THIS POLICY

1. **You** may cancel this policy by mailing or delivering to **us** advance written notice of cancellation or by not paying a premium installment when it comes due. The cancellation date can be no earlier than 12:01 a.m. on the day after **your** written request is postmarked.

2. If **you** cancel this policy by not paying a premium installment when it is due, **we** will provide **you** written notice of cancellation, at **your** last mailing address known to **us**, at least 10 days before the effective date of cancellation.

3. **We** may cancel this policy by mailing or delivering to **you** and **your** representative in charge of the subject of the insurance, if applicable, written notice of cancellation, including the actual reason for the cancellation, to the last mailing address known to **us**, at least 45 days before the effective date of cancellation, except as provided below.

4. **We** will also mail to any lienholder, pledgee or other person shown in this policy with a financial interest in **your insured auto**, at their last mailing address known to **us**, the same written notice of cancellation that **we** provide to **you**.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is canceled, **we** will send **you** any premium refund due. If **we** cancel, the refund will be pro rata. If **you** cancel, **we** will return 90% of the calculated pro-rata refund.

7. If notice is mailed, proof of mailing will be sufficient proof of notice.

## NONRENEWAL OF THIS POLICY

1. **We** may elect not to renew or continue this policy by mailing or delivering to **you** written notice before the end of the policy period including the actual reason for nonrenewal. If **we** fail to provide notice within 30 days of the end of the policy period, the policy will continue in effect until 30 days from the date of the notice. **You** will be responsible for any premiums due while the policy is in effect. If **we** offer to renew or continue and **you** do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that **you** have not accepted **our** offer.

2. If **we** fail to mail or deliver proper notice of nonrenewal and **you** obtain other insurance, this policy will end on the effective date of that insurance.

Secretary          President

32

33

*1050 1194*

# EXHIBIT C:

# UNIFORM MOTOR CARRIER BODILY INJURY AND PROPERTY DAMAGE LIABILITY CERTIFICATE



# STATE OF ALABAMA
ALABAMA PUBLIC SERVICE COMMISSION
P.O. BOX 304260
MONTGOMERY, ALABAMA 36130-4260

JIM SULLIVAN, PRESIDENT

JAN COOK, ASSOCIATE COMMISSIONER

SUSAN D. PARKER, PhD, ASSOCIATE COMMISSIONER

WALTER L. THOMAS, JR.
SECRETARY

STATE OF ALABAMA        )
                        )
MONTGOMERY COUNTY  )

    I, Walter L. Thomas, Jr., do hereby certify that I am Secretary of the Alabama Public Service Commission, and I further certify that the attached copies of the Form E and Form K for JMP Enterprises, Inc. are true copies as they appear in the records and files of the Commission.

    I do further certify that I, as Secretary of the Alabama Public Service Commission, am the official custodian of its books, records, and seal, and the proper officer to make and certify copies of such books and records, and that this attestation is in due form and that the seal hereto affixed is the official seal of said Commission.

    IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed the official seal of the Alabama Public Service Commission at Montgomery, Alabama, on this the 19th day of June 2007.

Walter L. Thomas, Jr., Secretary
Alabama Public Service Commission

EXHIBIT
*C*

Form E

296734

**UNIFORM MOTOR CARRIER BODILY INJURY AND PROPERTY**
**DAMAGE LIABILITY CERTIFICATE OF INSURANCE**

Filed with the ALABAMA PUBLIC SERVICE COMMISSION (hereinafter called Commission) of PO BOX 304260, MONTGOMERY, AL 36130

This is to certify, that the PROGRESSIVE SPECIALTY INSURANCE COMPANY (hereinafter called Company) of PO BOX 94739, CLEVELAND, OH 44101 has issued to JMP ENTERPRISES, INC of 2205 GREENVILLE ROAD, LAGRANGE, GA 30240 a policy or policies of insurance effective from 08/01/2004 12:01 A.M. standard time at the address of the insured stated in said policy or policies and continuing until cancelled as provided herein, which, by attachment of the Uniform Motor Carrier Bodily Injury and Property Damage Liability Insurance Endorsement, has or have been amended to provide automobile bodily injury and property damage liability insurance covering the obligations imposed upon such motor carrier by the provisions of the motor carrier law of the State in which the Commission has jurisdiction or regulations promulgated in accordance therewith.

Whenever requested, the Company agrees to furnish the Commission a duplicate original of said policy or policies and all endorsements thereon.

This certificate and the endorsement described herein may not be cancelled without cancellation of the policy to which it is attached. Such cancellation may be effected by the Company or the insured giving thirty (30) days notice in writing to the State Commission, such thirty (30) days notice to commence to run from the date notice is actually received in the office of the Commission.

Countersigned at 6300 WILSON MILLS, MAYFIELD VILLAGE, OH 44143
this 3rd day of September, 2004
Insurance Company File No. CA 08263817
(Policy Number)

MC1633a(08/99)

(Authorized Company Representative)

IRB35393

---

**FORM K**
**UNIFORM NOTICE OF CANCELLATION OF**
**MOTOR CARRIER INSURANCE POLICIES**

290734

| Check Type Cancelled | |
|---|---|
| BI and PD | X |
| Cargo | |

Filed with ALABAMA PUBLIC SERVICE COMMISSION (hereinafter called Commission) of PO BOX 304260, MONTGOMERY, AL 36130

This is to advise that under the terms of a policy or policies issued to:

JMP ENTERPRISES, INC of 2205 GREENVILLE ROAD, LAGRANGE, GA 30240 by PROGRESSIVE SPECIALTY INSURANCE CO. of 6300 WILSON MILLS, MAYFIELD VILLAGE, OH 44143

Said policy or policies, including any and all endorsements forming a part thereof or certificates issued in connection therewith, is (are) hereby cancelled effective as of the 20th day of November, 2005, 12:01 A.M., standard time at the address of the insured as stated in said policy or policies provided such date is not less than thirty (30) days after the actual receipt of this notice by the Commission.

Insurance Company File No.   CA 08263817
(Policy Number)

(Signature of Insurer)

CERTIFIED A TRUE COPY
WALTER L. THOMAS, JR.
Secretary
Alabama Public Service Commission
Date June 19 2007

# EXHIBIT D:

## SUBPOENA TO UNIVERSITY AGENCY

AO88 (Rev. 12/06) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

MIDDLE      DISTRICT OF      EASTERN DIVISION

PROGRESSIVE PREFERRED INSURANCE CO.

V.

JMP ENTERPRISES, INC., JOHN MARK PARKER
AND JENNIFER M. GOLDER

THIRD PARTY
**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  3:06-CV-00934

TO:  UNIVERSITY AGENCY, INC.
P. O. BOX 3067, AUBURN, ALABAMA 36831

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

AS DESCRIBED ON THE ATTACHED LIST

| PLACE | Office of Howard Dunn Howard & Howard, 102 South Boundary Street, P. O. Box 1148, Wetumpka, Alabama 36092 | DATE AND TIME | 6/19/2007 8:00 am |
|---|---|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _Attorney for Defendant_ | 5-24-2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
G. Houston Howard II, P. O. Box 1148, Wetumpka, Alabama 36092; 334-567-4356



(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.



AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                         DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

The following documents are to be produced:

1.   The Application for Policy number 08263817-0, which policy was issued by Progressive to JMP Enterprises, Inc., or if you have no application for such policy, the application for the first or most recent predecessor policy for which you have an application.

2.   Your complete file concerning Progressive Policy Number 08263817-0.

3.   A full and complete copy of Progressive Policy Number 08263817-0, including the Declaration's Page and all policy provisions and endorsements.

4.   All correspondence to JMP Enterprises, Inc. or any of its agents, servants, or employees, (including but not limited to John Mark Parker and Jill Parker) concerning Progressive Policy Number 0863817-0.

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

University Agency Inc
P. O. Box 3067
Auburn   AL
            36831

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X *LeAnne Griggs*    ☑ Agent
                      ☐ Addressee

B. Received by ( Printed Name)   C. Date of Delivery

5-3-07

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☑ Certified Mail   ☐ Express Mail
   ☐ Registered       ☒ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)            ☐ Yes

2. Article Number
   (Transfer from service label)

7004 2510 0007 1464 7837

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-15

# EXHIBIT E:

# UNIVERSITY AGENCY FILE

*PROGRESSIVE*®

UNIVERSITY AGCY INC
PO BOX 3067
AUBURN, AL 36831

Named Insured:

JMP ENTERPRISES INC
PO BOX 3501
LAGRANGE, GA 30241

**Policy number:** 01773934-4
Progressive Specialty Insurance Company
July 8, 2004
Policy Period: Aug 1, 2004 - Feb 1, 2005
Page 1 of 3

**personal.progressive.com**
Make payments, check billing activity or check status of a claim.

**334-887-6569**
UNIVERSITY AGCY INC
Contact your agent during business hours.

**800-444-4487**
For policy service and claims service,
24 hours a day, 7 days a week.

# Commercial Auto
# Insurance Coverage Summary
## This is your Renewal
## Declarations Page

This Renewal Declarations Page is effective only if the minimum amount due to renew your policy is received or postmarked by August 1, 2004.

Your coverage begins on August 1, 2004 at 12:01 a.m. This policy expires on February 1, 2005 at 12:01 a.m.

Your insurance policy and any policy endorsements contain a full explanation of your coverage. The policy limits shown for an auto may not be combined with the limits for the same ... auto, unless the policy contract allows the stacking of limits. The policy contract is form 1050 (1 ... ... by forms 1197 (08/93), 1349 (12/96), 1602 (08/83), 1857 (03/96), 2000A (12/96), 3098 (12/96), 33 ... ... 532  (06/71) and 4792A (01/03).
The named insured organization type is a ...

*Melody rewrote to do nothing expires 8-1-04*

## Outline of coverage

| Description | | Deductible | Premium |
|---|---|---|---|
| Liability To Others | | | $5,095 |
| Bodily Injury and Property Damage Liabilit... | ...d single limit | | |
| Uninsured/Underinsured Motorist | *$40,000 each accident | | 175 |
| Medical Payments | | | 131 |
| Comprehensive | | | 438 |
| See Schedule Of Covered Autos | Limit of liability less deductible | | |
| Collision | | | 1,875 |
| See Schedule Of Covered Autos | Limit of liability less deductible | | |
| **Subtotal policy premium** | | | **$7,714** |
| Fees | | | 75 |
| **Total 6 month policy premium** | | | **$7,789** |

## Rated drivers

1. MARK PARKER
2. JILL PARKER

*6-14-07*
*These are true and certified copies of All records requested.*
*Yvette Biglou - Agent*



EXHIBIT
E



*Myrna M. Johnson*
*Notary Public*
*8-14-07*

00 1

```
          Progressive Corp.    7/30/2004 3:51  PAGE  2/10    RightFAX
```

```
****************************************************************************
07/30/04   P.R:04/04   GEORGIA                ADVANTAGE                 PAGE 1
           JMP ENTERPRISES INC        POLICY #: 08263817-0  QUOTE #: 0623JM62A
****************************************************************************

UPLOAD MESSAGE: This application has not been uploaded.

COMPANY INFORMATION:
PROGRESSIVE INSURANCE COMPANIES     P.O. Box 94739      Cleveland    OH 44101
AGENT INFORMATION:        TOTAL PREMIUM: 11330.00   POLICY #: 08263817-0
GENERIC                   DOWN PAYMENT: 2945.00      LEVEL: ADVANTAGE
ANY                       BALANCE DUE: 8385.00

ANY, VT 05495             DOWNPAY REQ: 2945.00    POLICY TERM: ANNUAL
(   )   -     CA-28270     PAY PLAN: 10-PAY
INTERNAL PROCESSING       DOWNPAY METH: CASH/CHECK/MONEY ORDER
                             (Do Not Retain Commission)
                 ($5.00 fee included for each installment payment)


------------------------- NAMED INSURED / BUSINESS -------------------------
                                                EFF DATE: 07/29/04
                                                EFF TIME: 03:50PM
BUSINESS TYPE: SERVICES
SUB BSNS TYPE: SERVICES NOT OTHERWISE CLASSIFIED
OTHER: MOBILE HOME TOTER

1. Are any of the listed vehicles rented or leased to others?   NO
2. Are at least half of the vehicles listed on this policy used in the
business?   YES


APPLICANT: Individual/Sole Prop.(I), Partnership (P), or Corp (C)? C
EMPLOYER IDENTIFICATION NUMBER: 582159875


NAME: JMP ENTERPRISES INC
DBA:
ADDR: PO BOX 3501
      LA GRANGE , GA 30241-
INSURED'S PHONE: (706)881-5301
INSURED'S E-MAIL:
NONE
```

Kadreda
8-9-04

MC-290734-C

motor carrier ✕✕

Leslie
note to processing
8-1-04

```
        Progressive Corp.    7/30/2004 3:51  PAGE  3/10    RightFAX


  ***********************************************************************
  07/30/04  RR:04/04   GEORGIA              ADVANTAGE                   PAGE 2
           JMP ENTERPRISES INC      POLICY #: 08263817-0  QUOTE #: 0623JM62A
  ***********************************************************************
  -----------------------------VEHICLE INFORMATION ----------------------------
  VEH                           VEHICLE ID          BODY   USE
  #  YR    MAKE   MODEL          NUMBER             TYPE   CLASS
  1  1992  INTL   810            1HSHBAZN7NH443814   01     H
  2  2030  NON O  ATTACHED TRLR  NONE               20     H
  3  2000  FORD   F650 SUPER DUTY 3FDNW6540YMA03102  63     H

  VEH   TRAILER          PERSONAL      GARAGING       STATED                DR
  #     HITCH            USE       ZIP     TERR       AMT    RADIUS         NO
  1                      N         30240   78         25000  100            2
  2                      N         30240   78                100            2
  3                      N         30240   78         28000  100            1

  ------------------------------ VEHICLE QUESTIONS -----------------------------
  VEH  1
   1. Is this vehicle used for business, personal or both?   BUSINESS ONLY
   2. Is this vehicle primarily used to haul goods for others?     YES

  VEH  2
   1. Is this vehicle used for business, personal or both?   BUSINESS ONLY
   2. Is this vehicle primarily used to haul goods for others?     YES

  VEH  3
   1. Is this vehicle primarily used to haul goods for others?     YES


  ------------------------------ LOSS PAYEE -----------------------------------
  1  SUN TRUST            PO BOX 7031          PASADENA        CA    91109
  3  SUN TRUST            PO BOX 7031          PASADENA        CA    91109

  ----------------------- DRIVER INFORMATION - LIST ALL DRIVERS ----------------
   (Failure to accurately and completely report all driver information may
    result in premium differences and service delays.)

                              BIRTH       MARITAL        SR22
  DR# DRIVER'S NAME          DATE    AGE  STATUS     Y/N   CASE #
  1   JOHN PARKER            10/20/68 35  MARRIED     N
  2   JILL PARKER            12/19/73 30  MARRIED     N
                              SOCIAL      EXCLUDED        CDL    YR CDL
  DR#   LICENSE NUMBER   ST  SECURITY #  DRVR Y/N   PTS  Y/N   ISSUED
  1     025286805        GA  260453157       N       0    Y     1986
  2     049592541        GA  000000000       N       0    N
```

```
*******************************************************************************
07/30/04  RR:04/04   GEORGIA              ADVANTAGE                     PAGE 3
          JMP ENTERPRISES INC     POLICY #: 08263817-0  QUOTE #: 0623JM62A
*******************************************************************************
-----------------------PROOF OF PRIOR QUESTIONS-----------------------------
Is Applicant currently insured?                    YES
Which Company is your current policy with?         PROGRESSIVE INS CO -COMMERCIAL PO
What is your current policy number?                1773934-3
Effective Date of Current Insurance Coverage: 02/01/04
Expiration Date of Current Insurance Coverage: 08/01/04
What is the liability limit closest to the insured's current policy:
      1000 CSL
Has Applicant had continuous coverage for at least one year? YES

           Failure to provide(fax) proper Proof of Current Insurance
           may result in a change in market.

-------------------------UNDERWRITING QUESTIONS-----------------------------
Does Applicant require Any Waivers of Subrogation? No     How Many? 0
                                   (Attach list of names & addresses)
Number of Additional Insureds Required   0

FILINGS:
Do we insure all commercial vehicles the insured owns?  YES
Do we insure all vehicles that the insured uses in their business?  YES

Must Applicant Comply with the Motor Carrier Act of 1980 (MCS90)? Yes
If Yes, Does Applicant Haul Hazardous Waste?  No
If Yes, Risk is UNACCEPTABLE.  Do NOT Submit.

Does Applicant Require an ICC Filing? Yes

Does Applicant Require a State Filing? Yes     How Many? 2
                                   (Attach list of names & addresses)


------------------------ADDITIONAL POLICY QUESTIONS-------------------------
Year the business was established?                              1998
Year the Principal Operator started in current industry / occupation?  1988
Does the insured currently have General Liability Insurance or a Business
Owners Policy?    NONE
```

```
        Progressive Corp.     7/30/2004 3:51  PAGE 5/10   RightFAX
```

```
*************************************************************************
07/30/04  RR:04/04    GEORGIA                ADVANTAGE                PAGE 4
          JMP ENTERPRISES INC       POLICY #: 08263817-0  QUOTE #: 0623JM62A
*************************************************************************
-----------------------------------COVERAGES----------------------------------
MODEL YR  1992       2030         2000                    VEH  VEH  VEH
USE/BODY  H/01       H/20         H/63                     1    2    3

BI-PD    1000 CSL   1000 CSL    1000 CSL                  4836 1107 2420
UM-UIM   25/50      NONE        25/50                      42    0   42
UMPD     25 W/ 250  NONE        25 W/ 250                  22    0   22
MED-PAY  2,000      NONE        2,000                      25    0   35
FR-THFT  N/A        N/A         N/A                         0    0    0
COMP     1,000      N/A         1,000                     242    0  219
COLL     1,000      N/A         1,000                    1092    0 1076
ON-HOOK  NONE       NONE        NONE                        0    0    0
NON-TRK  NONE       NONE        NONE                        0    0    0
-------  ---------  ----------  -----------            ------------------
                                                        6259 1107 3814
                                 Dr #/Marital/Age: 2M30  2M30 1M35


SubTotal                        11180.00

Add'l Coverages
NON-OWNED      NONE                        0
HIRED-AUTO     NONE                        0
GKLL1          NONE                        0
GKLL2          NONE                        0
GKLL3          NONE                        0
TRLR-INT       NONE                        0
                               ------------------
SubTotal                            0.00

ICC Filing Fee                     50.00
State Filing Fee                  100.00
                               ------------------
Total Fees:                       150.00

                               ------------------

Total Premium                   11330.00

COVERAGE   DESCRIPTION
TRLR-INT   NONE
-----------------------------------DISCOUNTS----------------------------------
```

Progressive Corp.    7/30/2004 3:51  PAGE  6/10   RightFAX

```
*********************************************************************************
07/30/04  RR:04/04   GEORGIA              ADVANTAGE                    PAGE 5
          JMP ENTERPRISES INC     POLICY #: 08263817-0  QUOTE #: 0623JM62A
*********************************************************************************
*********************************************************************************
```

REPORT ALL ACCIDENTS IMMEDIATELY
24 HOURS A DAY, 7 DAYS A WEEK

1-800-274-4499

Call us immediately so we can go to work for you.

INSTRUCTIONS TO INSURED IN CASE OF ACCIDENT OR LOSS:

1.  Obtain full names, addresses, phone numbers, and license numbers of all
    persons involved and all witnesses.

2.  Do not admit liability or discuss the accident with anyone except police
    or company representative.

3.  Call Progressive immediately.


NOTE: FOR QUESTIONS REGARDING YOUR POLICY OR BILL, PLEASE CALL: 1-877-776-2436

```
*********************************************************************************
```

```
--------------------------------NOTES SECTION--------------------------------
```
  SERVICES NOT OTHERWISE CLASSIFIED SERVICES
  MOBILE HOME TOTER

```
-------------------------------------------------------------------------------
```

0006

Progressive Corp.     7/30/2004 3:51  PAGE  7/10   RightFAX

```
*******************************************************************************
07/30/04    RR:04/04    GEORGIA              ADVANTAGE                PAGE 6
            JMP ENTERPRISES INC     POLICY #: 08263817-0  QUOTE #: 0623JM62A
*******************************************************************************
```

```
----------------------------INSURED'S SIGNATURE----------------------------
```
The insured hereby applies to Company for a policy of insurance as set forth in
this application on the basis of statements contained herein.  The insured
agrees that such policy shall be null and void if such information is false, or
misleading, or would materially affect acceptance of the risk by the Company.
The insured understands that this application becomes part of the insurance
policy.  The insured agrees to submit to loss control inspections as often as
the Company may reasonably require.  The insured agrees that refusal to submit
to an inspection is grounds for cancellation of this policy.  The insured
agrees that no coverage will be bound and this policy shall be void from
inception if the payment is not honored by the bank.  The insured understands
that a service charge of $20.00 will be assessed if any check offered in
payment is returned from the bank unpaid.

The insured agrees to pay the installment fees shown on the billing statement
that become due during the policy term and each renewal policy term in
accordance with the payment plan the insured selects.  The insured understands
that the amount of these fees may change upon policy renewal or if the insured
changes the payment plan.  The insured also understands that the amount of
these fees may change if the premium is increased due to inaccurate or
incomplete information in this application.

The insured agrees to pay a late fee of $5.00 during the policy term and each
renewal policy term when the minimum amount due is not paid or payment is
postmarked more than 02 days after the premium due date.  The amount of this
fee may change upon policy renewal.

The insured acknowledges that the Company may collect information from consumer
reporting agencies, such as driving record. This information will be used to
underwrite the insurance and provide an accurate quote in one of Progressive's
underwriting companies.  Future reports may be used to update or renew the
insurance. The insured also acknowledges that information may be disclosed
without authorization, as required or permitted by law.  The insured may access
and correct information believed to be inaccurate.  Complete details are in the
Company's Privacy Policy, which will be provided with the insurance policy and
upon request. The insured has or will obtain from existing and new drivers
employed or contracted by the insured, an acknowledgment that their driving
record information may be disclosed to the insured or their employer,
contractor or agent in connection with the insurance being applied for
hereunder.

X _____          Date: 7-30-04
  Signature of Insured

0007

Progressive Corp.      7/30/2004 3:51  PAGE  8/10    RightFAX

```
***************************************************************
07/30/04   RR:04/04   GEORGIA              ADVANTAGE              PAGE 7
           JMP ENTERPRISES INC     POLICY #: 08263817-0  QUOTE #: 0623JM62A
***************************************************************
-------------------------  AGENT SIGNATURE  --------------------------
The undersigned hereby warrants and certifies that all information contained
herein is correct to the best of his/her knowledge, that this form was
completed and then signed by the insured, that a completed copy hereof has
been given to the insured, and that a duplicate signed copy hereof has been
retained.
```

X_____ _Yvette W Biglow_____     Date: __7/30/04____
  Signature of Producing Agent

```
****************************************************************************
07/30/04  RR:04/04    GEORGIA              ADVANTAGE                PAGE 8
          JMP ENTERPRISES INC    POLICY #: 08263817-0  QUOTE #: 0623JM62A
****************************************************************************
```

### UNINSURED MOTORIST COVERAGE - ELECTION OF LOWER LIMITS

I have been offered and I have rejected the option to purchase Uninsured Motorist Coverage for bodily injury and property damage in an amount equal to the limits I have selected for liability coverage. Instead, I elect the lower limits of Uninsured Motorist Coverage selected below. I understand that Uninsured Motorist Coverage for bodily injury protects me, my resident relatives, and occupants of a covered vehicle if any of us sustain bodily injury, including any resulting death, in an accident in which the owner or operator of a motor vehicle who is legally liable does not have insurance, or has liability insurance or a bond with limits lower than my Uninsured Motorist Coverage limit.

I understand and agree that this rejection of the higher limits and election of lower limits shall be binding on all persons insured under the policy, and that this election shall apply to any renewal, reinstatement, substitute, amended, altered, modified, or replacement policy with this company or any affiliated company, unless a named insured revokes this election or selects a different option.

Uninsured Motorist Coverage
```
_X_$25,000 each person/$50,000 each accident bodily injury
___$50,000 each person/$100,000 each accident bodily injury
___$100,000 each person/$100,000 each accident bodily injury
___$100,000 each person/$300,000 each accident bodily injury
___$300,000 each person/$300,000 each accident bodily injury
___$350,000 each person/$350,000 each accident bodily injury
___$250,000 each person/$500,000 each accident bodily injury
___$500,000 each person/$500,000 each accident bodily injury
___$750,000 each person/$750,000 each accident bodily injury
___$1,000,000 each person/$1,000,000 each accident bodily injury
```

Uninsured Motorist Coverage - Property Damage
```
_X_$25,000 each accident property damage
___$50,000 each accident property damage
___$100,000 each accident property damage
___$100,000 CSL each accident property damage
___$300,000 CSL each accident property damage
___$350,000 CSL each accident property damage
___$500,000 CSL each accident property damage
___$750,000 CSL each accident property damage
___$1,000,000 CSL each accident property damage
```

Uninsured Motorist Coverage - Property Damage Deductible
```
_X_$250 each accident
___$500 each accident
___$1,000 each accident
```

Signature of Named Insured                          Date

X_____                    7-30-04

Form 2702 GA CV(11/02)

UNIVERSITY AGCY INC
PO BOX 3067
AUBURN, AL 36831

Named insured:



JMP ENTERPRISES, INC
2205 GREENVILLE ROAD
LAGRANGE, GA 30240

*PROGRESSIVE*®

**Policy number:** 08263817-0

Progressive Preferred Insurance Company
August 10, 2004
Policy Period: Aug 1, 2004 - Aug 1, 2005
Page 1 of 2

**personal.progressive.com**
Make payments, check billing activity or check
status of a claim.

**334-887-6569**
UNIVERSITY AGCY INC
Contact your agent during business hours.

**800-444-4487**
For policy service and claims service,
24 hours a day, 7 days a week.

# Commercial Auto
# Insurance Coverage Summary
## This is your Declarations Page

Your coverage began the later of August 1, 2004 at 12:01 a.m. or at the time your application is executed on the first day of the policy period. This policy period ends on August 1, 2005 at 12:01 a.m.

Your insurance policy and any policy endorsements contain a full explanation of your coverage. The policy limits shown for an auto may not be combined with the limits for the same coverage on another auto, unless the policy contract allows the stacking of limits. The policy contract is form 1050 (11-94). The contract is modified by forms 1602 (08/83), 1857 (03/96), 6931 (04/89), 2012 (03/96), 8282 (04/84), 8470 (12/86), 4792A (01/03), 1197 (08/93), MC1632 (06/71), 9809 (04/96) and 8627 (03/88).

The named insured organization type is a corporation.

## Outline of coverage

| Description | Limits | Deductible | Premium |
|---|---|---|---|
| | | | $8,363 |
| Liability To Others | | | |
| Bodily Injury and Property Damage Liability | $1,000,000 combined single limit | | |
| Uninsured/Underinsured Motorist | $25,000 each person/$50,000 each accident | | 84 |
| Uninsured Motorist Property Damage | $25,000 each accident | $250 | 44 |
| Medical Payments | $2,000 each accident | | 60 |
| Comprehensive | | | 461 |
| See Schedule Of Covered Autos | Limit of liability less deductible | | |
| Collision | | | 2,168 |
| See Schedule Of Covered Autos | Limit of liability less deductible | | |
| **Subtotal policy premium** | | | **$11,180** |
| Fees | | | 150 |
| **Total 12 month policy premium** | | | **$11,330** |

## Rated drivers

1. JOHN PARKER
2. JILL PARKER



Form 6489 (05/02)

Continued

Policy number: 0826381/-.
JMP ENTERPRISES, INC
Page 2   of 2

## Auto coverage schedule

**1. 1992 Intl 810**
VIN: 1HSHBAZN7NH443814

| | Stated Amount: | $25,000 | |
|---|---|---|---|
| | Garaging Zip Code: | 30240 | Radius: 100 |

| Liability Premium | Liability | UM/UIM BI | UM PD | Med Pay | |
|---|---|---|---|---|---|
| | $4,836 | $42 | $22 | $25 | |

| Physical Damage Premium | Comp Deductible | Comp Premium | Collision Deductible | Collision Premium | Auto Total |
|---|---|---|---|---|---|
| | $1,000 | $242 | $1,000 | $1,092 | **$6,259** |

**2. NON Owned Attached Trlr ***
VIN: NONE

| | Garaging Zip Code: | 30240 | Radius: 100 |
|---|---|---|---|

| Liability Premium | Liability | Auto Total |
|---|---|---|
| | $1,107 | **$1,107** |

**3. 2000 Ford F650 Super Duty**
VIN: 3FDNW6540YMA03102

| | Stated Amount: | $28,000 | |
|---|---|---|---|
| | Garaging Zip Code: | 30240 | Radius: 100 |

| Liability Premium | Liability | UM/UIM BI | UM PD | Med Pay | |
|---|---|---|---|---|---|
| | $2,420 | $42 | $22 | $35 | |

| Physical Damage Premium | Comp Deductible | Comp Premium | Collision Deductible | Collision Premium | Auto Total |
|---|---|---|---|---|---|
| | $1,000 | $219 | $1,000 | $1,076 | **$3,814** |

\* Non-Owned trailer but only while attached to a listed power unit specifically described on the declarations page

## Lienholder information

We will send certain notices such as coverage summaries and cancellation notices to the following:

| 1. | Lienholder | Auto 1 | SUN TRUST |
|---|---|---|---|
| | | | PO BOX 7031 PASADENA, CA 91109 |
| | | | 1992 Intl 810 (1HSHBAZN7NH443814) |
| 2. | Lienholder | Auto 3 | SUN TRUST |
| | | | PO BOX 7031 PASADENA, CA 91109 |
| | | | 2000 Ford F650 Super Duty (3FDNW6540YMA03102) |

Form 6489 (05/02)



**PROGRESSIVE**®
COMMERCIAL VEHICLE INSURANCE

Issued by:    COMMERCIAL VEHICLE DIVISION
              PO BOX 94739
              CLEVELAND OH 44101-4739

## LOSS PAYABLE CLAUSE

We agree with **you** to change **your** policy as follows:

1.    **We** will pay the loss payee named in the Policy for **loss** to **your insured auto,** as the interest of the loss payee may appear.

2.    The insurance covers the interest of the loss payee unless the **loss** results from fraudulent acts or omissions on **your** part.

3.    Cancellation ends this agreement as to the loss payee's interest.  If **we** cancel the Policy **we** will mail **you** and the loss payee the same advance notice.

4.    If **we** make any payment to the loss payee, **we** will obtain his rights against any other party.

Vehicle 1                                              Vehicle 2
SUN TRUST
_____               _____
             Secured Party                                          Secured Party
Address:                                               Address:
PO BOX 7031
_____               _____

PASADENA        CA  91109
_____               _____


Vehicle 3                                              Vehicle 4
SUN TRUST
_____               _____
             Secured Party                                          Secured Party
Address:                                               Address:
PO BOX 7031
_____               _____

PASADENA        CA  91109
_____               _____


All other parts of this Policy remain unchanged.

This endorsement changes Policy No. CA 08263817-0

Issued to: JMP ENTERPRISES, INC      2205 GREENVILLE ROAD      LAGRANGE        GA 30240
_____
           Name of Insured              Address                 City/State

Endorsement
Effective:  08/01/04

                              ACO C2

0012



**PROGRESSIVE**®
COMMERCIAL VEHICLE INSURANCE

Issued By: PROGRESSIVE PREFERRED INSURANCE CO.

## AUTO DAMAGE LIMIT OF LIABILITY POLICY CHANGE

We agree with **you** to change **Part III, Damage to Your Auto,** as follows:

**Limit of Liability**

If the Limit of Liability shown below is less than **90%** of the actual cash value at the time of **loss** to **your insured auto, you** will share with **us** in the cost of repair or replacement as follows:

1.   **We** will pay the same proportion of the **loss** which the Limit of Liability shown below bears to the actual cash value of **your insured auto** at the time of **loss.**

2.   **We** will reduce the amount of **loss** by the Auto Damage deductible shown in the Policy Declarations prior to calculating the proportionate amount **we** will pay.

If **we** pay the actual cash value of the **auto** less deductible, **we** are entitled to all salvage.

| No. | Year | Trade Name | Serial No. | Liability | Limits of Liability(Including Custom Parts & Equip.) Less Deductible Shown Below Comp/FTCAC Ded. | Coll. Ded. |
|---|---|---|---|---|---|---|
| 01 | 1992 | INTL | 1HSHBAZN7NH443814 | 25000 | 1000 | 1000 |
| 02 | 2030 | NON OWN | NONE | 0 | | |
| 03 | 2000 | FORD | 3FDNW6540YMA03102 | 28000 | 1000 | 1000 |

All other parts of this Policy remain unchanged.

Issued to: JMP ENTERPRISES, INC     2205 GREENVILLE ROAD     LAGRANGE     GA 30240

This endorsement changes Policy No. CA 08263817-0     Endorsement Effective: 08/01/04

ACO C2

8470 (12-86)                    AGENT'S COPY                    CVSE0809021617L847001

0013

08/16/04  09:56 FAX 440 516 5076        PROGRESSIVE                    ☒001

**Form E**
**UNIFORM MOTOR CARRIER BODILY INJURY AND PROPERTY**
**DAMAGE LIABILITY CERTIFICATE OF INSURANCE**

Filed with the ALABAMA PUBLIC SERVICE COMMISSION (hereinafter called Commission) of PO BOX 304260, MONTGOMERY, AL 36130

This is to certify, that the PROGRESSIVE PREFERRED INSURANCE COMPANY (hereinafter called Company) of PO BOX 94739, CLEVELAND, OH 44101 has issued to JMP ENTERPRISES, INC of 2205 GREENVILLE ROAD, LAGRANGE, GA 30240 a policy or policies of insurance effective from 08/01/2004 12:01 A.M. standard time at the address of the insured stated in said policy or policies and continuing until cancelled as provided herein, which, by attachment of the Uniform Motor Carrier Bodily Injury and Property Damage Liability Insurance Endorsement, has or have been amended to provide automobile bodily injury and property damage liability insurance covering the obligations imposed upon such motor carrier by the provisions of the motor carrier law of the State in which the Commission has jurisdiction or regulations promulgated in accordance therewith.

Whenever requested, the Company agrees to furnish the Commission a duplicate original of said policy or policies and all endorsements thereon.

This certificate and the endorsement described herein may not be cancelled without cancellation of the policy to which it is attached. Such cancellation may be effected by the Company or the insured giving thirty (30) days notice in writing to the State Commission, such thirty (30) days notice to commence to run from the date notice is actually received in the office of the Commission.

Countersigned at 6300 WILSON MILLS, MAYFIELD VILLAGE, OH 44143
this 11th day of August, 2004
Insurance Company File No. CA 08263817
    (Policy Number)

             (Authorized Company Representative)

MC1633a(08/99)                       IRB3539B

UNIVERSITY AGCY INC
PO BOX 3067
AUBURN, AL 36831



**PROGRESSIVE**®
COMMERCIAL AUTO INSURANCE

August 11, 2004
Policy number: CA 08263817-0

JMP ENTERPRISES, INC
2205 GREENVILLE ROAD
LAGRANGE, GA 30240

Enclosed is the MCS90.

Please retain this copy for your records.

A copy of this endorsement has been sent to the insured at the above address.

Thank you,
Commercial Auto
State Permit Issuance and Verification

0015

ENDORSEMENT FOR
MOTOR CARRIER POLICIES OF INSURANCE FOR PUBLIC LIABILITY
UNDER SECTIONS 29 AND 30 OF THE MOTOR CARRIER ACT OF 1980

Form Approved
OMB No. 2125-0074

Issued to JMP ENTERPRISES, INC of 2205 GREENVILLE ROAD, LAGRANGE, GA 30240
Dated at MAYFIELD VILLAGE, OH 44143 this 11th day of August, 2004
Amending Policy No. CA 08263817-0 Effective Date 08/01/2004
Name of Insurance Company PROGRESSIVE PREFERRED INSURANCE COMPANY
Telephone Number

Countersigned by ———————————————————————
Authorized Company Representative

The policy to which this endorsement is attached provides primary or excess insurance as indicated by [X] for the limits shown:

[X] This insurance is primary and the company shall not be liable for amounts in excess of $1,000,000 for each accident.

[ ] This insurance is excess and the company shall not be liable for amounts in excess of $———— for each accident.

in excess of the underlying limit of $———— for each accident.

Whenever required by the Federal Highway Administration (FHWA) or the Interstate Commerce Commission (ICC), the company agrees to furnish the FHWA or the ICC a duplicate of said policy and all its endorsements. The company also agrees, upon telephone request by an authorized representative of the FHWA or the ICC, to verify that the policy is in force as of a particular date.

Cancellation of this endorsement may be effected by the company or the insured by giving (1) thirty-five (35) days notice in writing to the other party (said 35 days notice to commence from the date the notice is mailed, proof of mailing shall be sufficient proof of notice), and (2) if the insured is subject to the ICC's jurisdiction, by providing thirty (30) days notice to the ICC (said 30 days notice to commence from the date the notice is received by the ICC at its office in Washington, D.C.).

## DEFINITIONS AS USED IN THIS ENDORSEMENT

**ACCIDENT** includes continuous or repeated exposure to conditions which result in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

**MOTOR VEHICLE** means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

**BODILY INJURY** means injury to the body, sickness, or disease to any person, including death resulting from any of these.

**ENVIRONMENTAL RESTORATION** means restitution for the loss, damage or

destruction of natural resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish and wildlife.

**PROPERTY DAMAGE** means damage to or loss of use of tangible property.

**PUBLIC LIABILITY** means liability for bodily injury, property damage, and environmental restoration.

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Highway Administration (FHWA) and the Interstate Commerce Commission (ICC).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from

liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately, to each accident, and any payment under the policy because of any one accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

The Motor Carrier Act of 1980 requires limits of financial responsibility according to the type of carriage and commodity transported by the motor carrier. It is the MOTOR CARRIER'S obligation to obtain the required limits of financial responsibility.
THE SCHEDULE OF LIMITS SHOWN ON THE REVERSE SIDE DOES NOT PROVIDE COVERAGE.
The limits shown in the schedule are for information purposes only.

Form MCS-90

Page 1

MC 1622k (Ed. 10-99)

0016

## SCHEDULE OF LIMITS
### Public Liability

MC 1622k (cont'd)

| | Type of Carriage | Commodity Transported | Minimum Insurance |
|---|---|---|---|
| (1) | For-hire (In interstate or foreign commerce). | Property (nonhazardous). | $  750,000 |
| (2) | For-hire and Private (In interstate, foreign, or intrastate commerce). | Hazardous substances, as defined in 49 CFR 171.8, transported in cargo tanks, portable tanks, or hopper-type vehicles with capacities in excess of 3,500 water gallons; or in bulk Divisions 1.1, 1.2, and 1.3 materials; any quantity of Division 2.3 Hazard Zone A or Division 6.1, Packing Group 1, Hazard Zone A material; in bulk Division 2.1 or 2.2; or highway route controlled quantities of a Class 7 material as defined in 49 CFR 173.403. | 5,000,000 |
| (3) | For-hire and Private (In interstate or foreign commerce: in any quantity) or (In interstate commerce: in bulk only). | Oil listed in 49 CFR 172.101; hazardous materials and hazardous substances defined in 49 CFR 171.8 and listed in 49 CFR 172.101, but not mentioned in (2) above or (4) below. | 1,000,000 |
| (4) | For-hire and Private (In interstate or foreign commerce). | Any quantity of Division 1.1, 1.2 or 1.3 material; any quantity of a Division 2.3, Hazard Zone A, or Division 6.1, Packing Group 1, Hazard Zone A material; or highway route controlled quantities of a Class 7 material as defined in 49 CFR 173.403. | 5,000,000 |

**Note:** The type of carriage listed under numbers (1), (2), and (3) applies to vehicles with a gross vehicle weight rating of 10,000 pounds or more. The type of carriage listed under number (4) applies to all vehicles with a gross vehicle weight rating of less than 10,000 pounds.

## SCHEDULE OF LIMITS
### Public Liability

For-hire motor carriers of passengers operating in interstate or foreign commerce

| | Vehicle Seating Capacity | Minimum Insurance |
|---|---|---|
| (1) | Any vehicle with a seating capacity of 16 passengers or more. | $  5,000,000 |
| (2) | Any vehicle with a seating capacity of 15 passengers or less. | 1,500,000 |

0017



AUGUST 12, 2004

UNIVERSITY AGCY INC
PO BOX 3067
AUBURN, AL   36831


Re: Policy # CA 8263817-0
        JMP ENTERPRISES, INC.
        2205 GREENVILLE ROAD
        LAGRANGE, GA   30240

Enclosed is a Form F.

This is to confirm that Form E filings have been made for the

indicated state(s) with the effective date of 08/01/04.

Please forward the original Form F to the insured and use the other

copies to update your files.


Thank You,

State Permit Issuance and Verification




Commercial Vehicle Division
1-800-444-4487


0018

## FORM F

### UNIFORM MOTOR CARRIER BODILY INJURY AND PROPERTY DAMAGE LIABILITY INSURANCE ENDORSEMENT

It is agreed that:

1.  The Certification to the policy, by proof of financial responsibility under the provisions of any State motor carrier law or regulations promulgated by any State Commission having jurisdiction with respect thereto, amends the policy to provide insurance for automobile bodily injury and property damage liability in accordance with the provisions of such law or regulations to the extent of the coverage and limits of liability required thereby; provided only that the insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except by reason of the obligation assumed in making such certification.

2.  The Uniform Motor Carrier Bodily Injury and Property Damage Liability Certificate of Insurance has been filed with the State Commissions indicated below.

3.  This endorsement may not be canceled without cancellation of the policy to which it is attached. Such cancellation may be effected by the company or the insured giving thirty (30) days' notice in writing to the State Commission with which such certificate has been filed, such thirty (30) days' notice to commence to run from the date the notice is actually received in the office of such Commission.

Attached to and forming part of policy No. _____ CA 8263817-0 _____

Issued by _____ PROGRESSIVE PREFERRED INSURANCE COMPANY _____

Company, of _____ CLEVELAND, OH _____

to _____ JMP ENTERPRISES, INC. _____

of _____ LAGRANGE, GA _____

Dated at _____ CLEVELAND, OH _____ this 11 day of AUGUST 20 04

Countersigned by _____  
Authorized Signature

| X - INDICATES STATE COMMISIONS WITH WHOM UNIFORM MOTOR CARRIER BODILY INJURY AND PROPERTY DAMAGE LIABILITY CERTIFICATE OF INSURANCE HAS BEEN FILED | | | | | | | |
|---|---|---|---|---|---|---|---|
| ALABAMA | | ILLINOIS | | MONTANA | | RHODE ISLAND | |
| ALASKA | | INDIANA | | NEBRASKA | | SOUTH CAROLINA | |
| ARIZONA | | IOWA | | NEVADA | | SOUTH DAKOTA | |
| ARKANSAS | | KANSAS | | NEW HAMPSHIRE | | TENNESSEE | |
| CALIFORNIA | | KENTUCKY | | NEW JERSEY | | TEXAS | |
| COLORADO | | LOUISIANA | | NEW MEXICO | | UTAH | |
| CONNECTICUT | | MAINE | | NEW YORK | | VERMONT | |
| DELAWARE | | MARYLAND | | NORTH CAROLINA | | VIRGINIA | |
| DISTRICT OF COLUMBIA | | MASSACHUSETTS | | NORTH DAKOTA | | WASHINGTON | |
| FLORIDA | | MICHIGAN | | OHIO | | WEST VIRGINIA | |
| GEORGIA | X | MINNESOTA | | OKLAHOMA | | WISCONSIN | |
| HAWAII | | MISSISSIPPI | | OREGON | | WYOMING | |
| IDAHO | | MISSOURI | | PENNSYLVANIA | | ICC | |

MC1632 (8-99)

0019

09/03/2004 14:17 FAX 1440603455

## FAX TRANSMITTAL

**Date** 9·3-04

To _Yvette_

Address/Box# _Agent_

Fax# 334-887-6566

Phone/Network#

**From**

PROGRESSIVE COMMERCIAL INSURANCE

P.O. Box 94739

CLEVELAND, OH 44101

Fax# 1-440-603-4555

Phone/Network#

# of Pages Transmitted _2_
(Including this page)

Message _AL Form E for JMP Enterprises Inc_

## PROGRESSIVE®

Not what you'd expect from an insurance company.℠

**AUTO • MOTORCYCLE • WATERCRAFT • RV • COMMERCIAL VEHICLE**

1-800-444-4487 for policy service or claims service, 24 hours a day.

0020

09/03/2004 14:18 FAX 1440603455~     PROGRESSIVE     ☑ 002/002

**Form E**
**UNIFORM MOTOR CARRIER BODILY INJURY AND PROPERTY**
**DAMAGE LIABILITY CERTIFICATE OF INSURANCE**

Filed with the ALABAMA PUBLIC SERVICE COMMISSION (hereinafter called Commission) of PO BOX 304260, MONTGOMERY, AL 36130

This is to certify, that the PROGRESSIVE SPECIALTY INSURANCE COMPANY (hereinafter called Company) of PO BOX 94739, CLEVELAND, OH 44101 has issued to JMP ENTERPRISES, INC of 2205 GREENVILLE ROAD, LAGRANGE, GA 30240  a policy or policies of insurance effective from 08/01/2004 12:01 A.M. standard time at the address of the insured stated in said policy or policies and continuing until cancelled as provided herein, which, by attachment of the Uniform Motor Carrier Bodily Injury and Property Damage Liability Insurance Endorsement, has or have been amended to provide automobile bodily injury and property damage liability insurance covering the obligations imposed upon such motor carrier by the provisions of the motor carrier law of the State in which the Commission has jurisdiction or regulations promulgated in accordance therewith.

Whenever requested, the Company agrees to furnish the Commission a duplicate original of said policy or policies and all endorsements thereon.

This certificate and the endorsement described herein may not be cancelled without cancellation of the policy to which it is attached.  Such cancellation may be effected by the Company or the insured giving thirty (30) days notice in writing to the State Commission, such thirty (30) days notice to commence to run from the date notice is actually received in the office of the Commission.

Countersigned at 6300 WILSON MILLS, MAYFIELD VILLAGE, OH 44143
this 3rd day of September, 2004
Insurance Company File No. CA 08263817
                    (Policy Number)

MC1633a(08/99)

(Authorized Company Representative)

                                                                    IRB3539B

*PROGRESSIVE*®

UNIVERSITY AGCY INC
PO BOX 3067
AUBURN, AL 36831

Named Insured:

JMP ENTERPRISES, INC
PO BOX 3501
LAGRANGE, GA 30241



**Policy number: 08263817-0**
Progressive Preferred Insurance Company
September 10, 2004
Policy Period: Aug 1, 2004 - Aug 1, 2005
Page 1 of 2

**personal.progressive.com**
Make payments, check billing activity or check
status of a claim.

**334-887-6569**
UNIVERSITY AGCY INC
Contact your agent during business hours.

**800-444-4487**
For policy service and claims service,
24 hours a day, 7 days a week.

# Commercial Auto
# Insurance Coverage Summary
This is your Declarations Page
Your coverage has changed

Your coverage began the later of August 1, 2004 at 12:01 a.m. or at the time your application is executed on the first day of the
policy period. This policy period ends on August 1, 2005 at 12:01 a.m.

This coverage summary replaces your prior one. Your insurance policy and any policy endorsements contain a full explanation of
your coverage. The policy limits shown for an auto may not be combined with the limits for the same coverage on another auto,
unless the policy contract allows the stacking of limits. The policy contract is form 1050 (11-94). The contract is modified by forms
1602 (08/83), 1857 (03/96), 6931 (04/89), 2012 (03/96), 8282 (04/84), 8470 (12/86), 4792A (01/03), 1197 (08/93), MC1632
(06/71), 9809 (04/96) and 8627 (03/88).

The named insured organization type is a corporation.

## Policy changes effective September 9, 2004

| Premium change: | $0.00 |
|---|---|
| Changes: | The mailing address information has changed. |

The changes shown above will not be effective prior to the time the changes were requested.

## Outline of coverage

| Description | Limits | Deductible | Premium |
|---|---|---|---|
| Liability To Others | | | $8,363 |
| Bodily Injury and Property Damage Liability | $1,000,000 combined single limit | | |
| Uninsured/Underinsured Motorist | $25,000 each person/$50,000 each accident | | 84 |
| Uninsured Motorist Property Damage | $25,000 each accident | $250 | 44 |
| Medical Payments | $2,000 each accident | | 60 |
| Comprehensive | | | 461 |
| See Schedule Of Covered Autos | Limit of liability less deductible | | |
| Collision | | | 2,168 |
| See Schedule Of Covered Autos | Limit of liability less deductible | | |
| **Subtotal policy premium** | | | **$11,180** |
| Fees | | | 150 |
| **Total 12 month policy premium** | | | **$11,330** |

## Rated drivers

1. JOHN PARKER
2. JILL PARKER

Form 6489 (05/02)


Continued

Policy number:  08263817-0
JMP ENTERPRISES, INC
Page 2  of 2

## Auto coverage schedule

1. **1992 Intl 810**
   VIN:  1HSHBAZN7NH443814

   Stated Amount:  $25,000
   Garaging Zip Code:  30240     Radius:  100

| Liability Premium | Liability | UM/UIM BI | UM PD | Med Pay | |
|---|---|---|---|---|---|
| | $4,836 | $42 | $22 | $25 | |

| Physical Damage Premium | Comp Deductible | Comp Premium | Collision Deductible | Collision Premium | |
|---|---|---|---|---|---|
| | $1,000 | $242 | $1,000 | $1,092 | Auto Total **$6,259** |

2. **NON Owned Attached Trlr ***
   VIN:  NONE

   Garaging Zip Code:  30240     Radius:  100

| Liability Premium | Liability | |
|---|---|---|
| | $1,107 | Auto Total **$1,107** |

3. **2000 Ford F650 Super Duty**
   VIN:  3FDNW6540YMA03102

   Stated Amount:  $28,000
   Garaging Zip Code:  30240     Radius:  100

| Liability Premium | Liability | UM/UIM BI | UM PD | Med Pay | |
|---|---|---|---|---|---|
| | $2,420 | $42 | $22 | $35 | |

| Physical Damage Premium | Comp Deductible | Comp Premium | Collision Deductible | Collision Premium | |
|---|---|---|---|---|---|
| | $1,000 | $219 | $1,000 | $1,076 | Auto Total **$3,814** |

* Non-Owned trailer but only while attached to a listed power unit specifically described on the declarations page

## Lienholder information

We will send certain notices such as coverage summaries and cancellation notices to the following:

1. Lienholder     Auto 1     SUN TRUST
   PO BOX 7031 PASADENA, CA 91109
   1992 Intl 810 (1HSHBAZN7NH443814)          *Charter Bank*

2. Lienholder     Auto 3     SUN TRUST
   PO BOX 7031 PASADENA, CA 91109
   2000 Ford F650 Super Duty (3FDNW6540YMA03102)     *Charter Bank*

*1-4-05 Laura Made Changes*

*Charter Bank P.O. Box 570 West Point, GA. 31833*

Form 6489 (05/02)



0023



Issued by:    COMMERCIAL VEHICLE DIVISION
              PO BOX 94739
              CLEVELAND OH 44101-4739

### LOSS PAYABLE CLAUSE

We agree with **you** to change **your** policy as follows:

1.  **We** will pay the loss payee named in the Policy for **loss** to **your insured auto**, as the interest of the loss payee may appear.

2.  The insurance covers the interest of the loss payee unless the **loss** results from fraudulent acts or omissions on **your** part.

3.  Cancellation ends this agreement as to the loss payee's interest. If **we** cancel the Policy **we** will mail **you** and the loss payee the same advance notice.

4.  If **we** make any payment to the loss payee, **we** will obtain his rights against any other party.

| Vehicle 1 | Vehicle 2 |
|---|---|
| SUN TRUST | |
| Secured Party | Secured Party |
| Address: | Address: |
| PO BOX 7031 | |
| PASADENA    CA  91109 | |

| Vehicle 3 | Vehicle 4 |
|---|---|
| SUN TRUST | |
| Secured Party | Secured Party |
| Address: | Address: |
| PO BOX 7031 | |
| PASADENA    CA  91109 | |

All other parts of this Policy remain unchanged.

This endorsement changes Policy No. CA 08263817-0

| Issued to: JMP ENTERPRISES, INC | PO BOX 3501 | LAGRANGE    GA 30241 |
|---|---|---|
| Name of Insured | Address | City/State |

Endorsement
Effective:  08/01/04

ACO C2

Form No. L1602 (8-83)            AGENT'S COPY            CVSE0620961617L160201

0024



COMMERCIAL VEHICLE INSURANCE

Issued By: PROGRESSIVE PREFERRED INSURANCE CO.

## AUTO DAMAGE LIMIT OF LIABILITY POLICY CHANGE

We agree with **you** to change **Part III, Damage to Your Auto,** as follows:

**Limit of Liability**

If the Limit of Liability shown below is less than **90%** of the actual cash value at the time of **loss** to **your insured auto, you** will share with **us** in the cost of repair or replacement as follows:

1.  **We** will pay the same proportion of the **loss** which the Limit of Liability shown below bears to the actual cash value of **your insured auto** at the time of **loss.**

2.  **We** will reduce the amount of **loss** by the Auto Damage deductible shown in the Policy Declarations prior to calculating the proportionate amount **we** will pay.

If **we** pay the actual cash value of the **auto** less deductible, **we** are entitled to all salvage.

| No. | Year | Trade Name | Serial No. | Liability | Limits of Liability(Including Custom Parts & Equip.) Less Deductible Shown Below Comp/FTCAC Ded. | Coll. Ded. |
|-----|------|-----------|-----------|-----------|------|------|
| 01 | 1992 | INTL | 1HSHBAZN7NH443814 | 25000 | 1000 | 1000 |
| 02 | 2030 | NON OWN | NONE | 0 | | |
| 03 | 2000 | FORD | 3FDNW6540YMA03102 | 28000 | 1000 | 1000 |

All other parts of this **Policy** remain unchanged.

Issued to: JMP ENTERPRISES, INC        PO BOX 3501            LAGRANGE        GA 30241

This endorsement changes Policy No. CA 08263817-0     Endorsement Effective: 08/01/04

ACO C2

8470 (12-86)                    AGENT'S COPY                CVSE0809021617L847001

Darryl 10-19
Watson 2:12
x36678
- not policy -
- Call when out of FL
no more 90 days continuous
if breaks in blu ok.

Brian
10-18-04

300 mile radius limit on later
345 kilometers to
range

harr
FL moratorium    no charge

don't even
have to 300
mi.

UNIVERSITY AGCY INC
PO BOX 3067
AUBURN, AL 36831

**PROGRESSIVE**®
COMMERCIAL AUTO INSURANCE

*[handwritten: 706-881-8433]*
*[handwritten: 4:21 mail calling de out Phone]*
*[handwritten: 5/3/05 Pay to Michelle JP]*
*[handwritten: lost ins Fallment]*

JMP ENTERPRISES, INC
PO BOX 3501
LAGRANGE, GA 30241

**Policy number: 08263817-0**
Progressive Preferred Insurance Company
May 20, 2005
Policy Period: Aug 1, 2004 - Aug 1, 2005
Page 1 of  1

**personal.progressive.com**
Make payments, check billing activity or check
status of a claim.

**800-999-8781**
**Automated Billing Inquiry**
Make a credit card payment, check last payment
received or due date of next payment.

## Cancel Notice
# We have not received your payment

**We have not received your payment.  Your policy will be
canceled at 12:01 a.m. on June 1, 2005 because you did not
pay the required premium.**  To maintain continuous coverage,
your payment must be received or postmarked by 12:01 a.m. on June 1,
2005.  If you have already sent your payment - thank you.

**334-887-6569**
UNIVERSITY AGCY INC
Contact your agent during business hours.

**800-444-4487**
Policy Services
Call when your agent is not available to
make policy changes 24 hours a day,
7 days a week.  **Se habla español.**

| | |
|---|---|
| Remaining balance | $1,865.88 |
| Payments remaining | 0 |
| Minimum amount due | $1,865.88 |
| Due date | June 1, 2005 |

### Billing detail for April 18, 2005 - May 20, 2005

Minimum amount due . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $1,865.88

Payments received after May 20 will appear on your next statement.
You can call Automated Billing Inquiry or check personal.progressive.com
to make sure we received your payment.

*You can make immediate
payments by using a credit card or
authorizing a withdrawal from
your checking account.  Simply go
to personal.progressive.com or
call us at 800-444-4487.  Have
your account number ready and
your payment will be credited
immediately.*

*[handwritten: * Jill - will re-instate no lapse 6/3/05 9:55am]*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## Payment Coupon

**Policy number: 08263817-0**
Policy holder: JMP ENTERPRISES, INC

| | |
|---|---|
| Minimum amount due | $1,865.88 |
| Due date | June 1, 2005 |
| Amount enclosed | $ |

To maintain continuous coverage, your payment must be received or
postmarked by 12:01 a.m. on June 1, 2005.

**For immediate payment** - to authorize
a withdrawal from your checking account
or make a credit card payment - go to
personal.progressive.com or call
800-444-4487.

**If you pay by check**, please allow 5 to 7
days for your payment to reach us by the
due date.

PROGRESSIVE
PO BOX 30108
TAMPA FL 33630-3108

Do not write below this section of coupon.
60-28270        Form 6268 (11.00)
Cancel Notice

3108082638170100065 0186588 0186568 0000000 0000000 008708010403

UNIVERSITY AGCY INC
PO BOX 3007
AUBURN, AL 36831



**Policy number:** 08263817-0
May 27, 2005
Page 1 of 1

JMP ENTERPRISES, INC
PO BOX 3501
LAGRANGE, GA 30241

# Your policy was canceled
## on June 1, 2005 at 12:01 a.m.

Although there is a balance due, you do not need to pay this amount because it has been waived. A summary of your billing detail follows.

If you have questions about this cancellation, please call Policy Services at 800-444-4487.

| | |
|---|---|
| Policy premium for coverage until June 1, 2005 | $9,312.00 |
| Installment fees | 45.00 |
| Late fees | 5.00 |
| Other fees | 150.00 |
| Total policy premium and fees | $9,512.00 |
| Total amount paid | -9,509.12 |
| Total amount waived | $2.88 |

**It is important that you obtain insurance as soon as possible.** To purchase a new Progressive policy or to see if you are eligible for commercial auto insurance, please call your agent at 334-887-6569.

Form 6269 (03/03)

0028

UNIVERSITY AGCY INC
PO BOX 3067
AUBURN, AL 36831



**PROGRESSIVE**®
COMMERCIAL AUTO INSURANCE

**Policy number:** 08263817-0
June 3, 2005
Policy Period: Aug 1, 2004 - Aug 1, 2005

JMP ENTERPRISES, INC
PO BOX 3501
LAGRANGE, GA 30241

# Your policy has been reinstated

Thank you for your payment of $1,865.88. We recently sent you a cancellation notice stating that your policy was canceled on June 1, 2005. We have now reinstated your policy, effective June 1, 2005. There was no lapse in your coverage.

If you have questions about this reinstatement, please call Policy Services at 800-444-4487.

Form 6270 (11/00)

0029

*PROGRESSIVE*®

UNIVERSITY AGCY INC
PO BOX 3067
AUBURN, AL 36831

Named Insured:

JMP ENTERPRISES, INC
PO BOX 3501
LAGRANGE, GA 30241

**Policy number:  08263817-0**
Progressive Preferred Insurance Company
January 5, 2005
Policy Period: Aug 1, 2004 - Aug 1, 2005
Page 1 of 2

**personal.progressive.com**
Make payments, check billing activity or check
status of a claim.

**334-887-6569**
UNIVERSITY AGCY INC
Contact your agent during business hours.

**800-444-4487**
For policy service and claims service,
24 hours a day, 7 days a week.

# Commercial Auto
# Insurance Coverage Summary
## This is your Declarations Page
## Your coverage has changed

Your coverage began the later of August 1, 2004 at 12:01 a.m. or at the time your application is executed on the first day of the policy period.  This policy period ends on August 1, 2005 at 12:01 a.m.

This coverage summary replaces your prior one. Your insurance policy and any policy endorsements contain a full explanation of your coverage. The policy limits shown for an auto may not be combined with the limits for the same coverage on another auto, unless the policy contract allows the stacking of limits. The policy contract is form 1050 (11-94). The contract is modified by forms 1602 (08/83), 1857 (03/96), 6931 (04/89), 2012 (03/96), 8282 (04/84), 8470 (12/86), 4792A (01/03), 1197 (08/93), MC1632 (06/71), 9809 (04/96) and 8627 (03/88).

The named insured organization type is a corporation.

## Policy changes effective January 4, 2005

| | |
|---|---|
| Premium change: | $0.00 |
| Changes: | The lienholder information on this policy has changed. |

The changes shown above will not be effective prior to the time the changes were requested.

## Outline of coverage

| Description | Limits | Deductible | Premium |
|---|---|---|---|
| Liability To Others | | | $8,363 |
|   Bodily Injury and Property Damage Liability | $1,000,000 combined single limit | | |
| Uninsured/Underinsured Motorist | $25,000 each person/$50,000 each accident | | 84 |
| Uninsured Motorist Property Damage | $25,000 each accident | $250 | 44 |
| Medical Payments | $2,000 each accident | | 60 |
| Comprehensive | | | 461 |
|   See Schedule Of Covered Autos | Limit of liability less deductible | | |
| Collision | | | 2,168 |
|   See Schedule Of Covered Autos | Limit of liability less deductible | | |
| **Subtotal policy premium** | | | **$11,180** |
| Fees | | | 150 |
| **Total 12 month policy premium** | | | **$11,330** |

## Rated drivers

1. JOHN PARKER
2. JILL PARKER

*[handwritten: 1,865.88 due 4/28  319 paying today]*

Form 6489 (05/02)

Continued

0030

Policy number: 08263817-0
JMP ENTERPRISES, INC
Page 2 of 2

## Auto coverage schedule

**1.** **1992 Intl 810**
VIN:  1HSHBAZN7NH443814

Stated Amount:  $25,000
Garaging Zip Code:  30240      Radius:  100

| Liability Premium | Liability | UM/UIM BI | UM PD | Med Pay |
|---|---|---|---|---|
| | $4,836 | $42 | $22 | $25 |

| Physical Damage Premium | Comp Deductible | Comp Premium | Collision Deductible | Collision Premium |
|---|---|---|---|---|
| | $1,000 | $242 | $1,000 | $1,092 |

Auto Total **$6,259**

**2.** **NON Owned Attached Trlr ***
VIN:  NONE

Garaging Zip Code:  30240      Radius:  100

| Liability Premium | Liability |
|---|---|
| | $1,107  – |

Auto Total **$1,107**

**3.** **2000 Ford F650 Super Duty**
VIN:  3FDNW6540YMA03102

Stated Amount:  $28,000
Garaging Zip Code:  30240      Radius:  100

| Liability Premium | Liability | UM/UIM BI | UM PD | Med Pay |
|---|---|---|---|---|
| | $2,420 | $42 | $22 | $35 |

| Physical Damage Premium | Comp Deductible | Comp Premium | Collision Deductible | Collision Premium |
|---|---|---|---|---|
| | $1,000 | $219 | $1,000 | $1,076 |

Auto Total **$3,814**

\* Non-Owned trailer but only while attached to a listed power unit specifically described on the declarations page

## Lienholder information

We will send certain notices such as coverage summaries and cancellation notices to the following:

1. Lienholder .................... Auto 1 ........... CHARTER BANK
PO BOX 570 WEST POINT, GA 31833
1992 Intl 810 (1HSHBAZN7NH443814)

2. Lienholder .................... Auto 3 ........... CHARTER BANK
PO BOX 570 WESTPOINT, GA 31833
2000 Ford F650 Super Duty (3FDNW6540YMA03102)




COMMERCIAL VEHICLE INSURANCE

Issued by:  COMMERCIAL VEHICLE DIVISION
            PO BOX 94739
            CLEVELAND OH 44101-4739

## LOSS PAYABLE CLAUSE

We agree with **you** to change **your** policy as follows:

1. **We** will pay the loss payee named in the Policy for **loss** to **your insured auto**, as the interest of the loss payee may appear.

2. The insurance covers the interest of the loss payee unless the **loss** results from fraudulent acts or omissions on **your** part.

3. Cancellation ends this agreement as to the loss payee's interest. If **we** cancel the Policy **we** will mail **you** and the loss payee the same advance notice.

4. If **we** make any payment to the loss payee, **we** will obtain his rights against any other party.

Vehicle 1                                    Vehicle 2
CHARTER BANK
_____              _____
          Secured Party                                Secured Party
Address:                                     Address:
PO BOX 570
_____              _____

WEST POINT       GA  31833
_____              _____


Vehicle 3                                    Vehicle 4
CHARTER BANK
_____              _____
          Secured Party                                Secured Party
Address:                                     Address:
PO BOX 570
_____              _____

WESTPOINT        GA  31833
_____              _____


All other parts of this Policy remain unchanged.

This endorsement changes Policy No. CA 08263817-0

Issued to: JMP ENTERPRISES, INC     PO BOX 3501          LAGRANGE          GA 30241
_____
           Name of Insured              Address              City/State

Endorsement
Effective:  08/01/04

                              ACO C2

0032


COMMERCIAL VEHICLE INSURANCE

Issued By: PROGRESSIVE PREFERRED INSURANCE CO.

## AUTO DAMAGE LIMIT OF LIABILITY POLICY CHANGE

We agree with **you** to change Part III, **Damage to Your Auto**, as follows:

**Limit of Liability**

If the Limit of Liability shown below is less than **90%** of the actual cash value at the time of loss to **your insured auto**, **you** will share with **us** in the cost of repair or replacement as follows:

1. We will pay the same proportion of the **loss** which the Limit of Liability shown below bears to the actual cash value of **your insured auto** at the time of **loss**.

2. We will reduce the amount of **loss** by the Auto Damage deductible shown in the Policy Declarations prior to calculating the proportionate amount **we** will pay.

If **we** pay the actual cash value of the **auto** less deductible, **we** are entitled to all salvage.

| No. | Year | Trade Name | Serial No. | Liability | Limits of Liability(Including Custom Parts & Equip.) Less Deductible Shown Below Comp/FTCAC Ded. | Coll. Ded. |
|---|---|---|---|---|---|---|
| 01 | 1992 | INTL | 1HSHBAZN7NH443814 | 25000 | 1000 | 1000 |
| 02 | 2030 | NON OWN | NONE | 0 | | |
| 03 | 2000 | FORD | 3FDNW6540YMA03102 | 28000 | 1000 | 1000 |

All other parts of this Policy remain unchanged.

Issued to: JMP ENTERPRISES, INC     PO BOX 3501          LAGRANGE       GA 30241

This endorsement changes Policy No. CA 08263817-0     Endorsement Effective: 08/01/04

ACO C2

8470 (12-86)                    AGENT'S COPY               CVSE0809021617L847001

0033

UNIVERSITY AGCY INC
PO BOX 3067
AUBURN, AL 36831

**PROGRESSIVE®**

Named Insured:

JMP ENTERPRISES, INC
PO BOX 3501
LAGRANGE, GA 30241

**Policy number: 08263817-1**
Progressive Preferred Insurance Company
June 15, 2005
Policy Period: Aug 1, 2005 - Aug 1, 2006
Page 1 of 2

**personal.progressive.com**
Make payments, check billing activity or check
status of a claim.

**334-887-6569**
UNIVERSITY AGCY INC
Contact your agent during business hours.

**800-444-4487**
For policy service and claims service,
24 hours a day, 7 days a week.

# Commercial Auto
# Insurance Coverage Summary
## This is your Renewal
## Declarations Page

This Renewal Declarations Page is effective only if the minimum amount due to renew your policy is received or postmarked by
August 1, 2005.

Your coverage begins on August 1, 2005 at 12:01 a.m. This policy expires on August 1, 2006 at 12:01 a.m.

Your insurance policy and any policy endorsements contain a full explanation of your coverage. The policy limits shown for an auto
may not be combined with the limits for the same coverage on another auto, unless the policy contract allows the stacking of
limits. The policy contract is form 1050 (05/04). The contract is modified by forms 1602 (08/83), 1857 (03/96), 2012 (05/04),
4792A (01/03), MC1632 (06/71), 9809 (04/96) and 8627 (03/04).

The named insured organization type is a corporation.

### Outline of coverage

| Description | Limits | Deductible | Premium |
|---|---|---|---|
| Liability To Others | | | $6,717 |
| Bodily Injury and Property Damage Liability | $1,000,000 combined single limit | | |
| Uninsured/Underinsured Motorist | $25,000 each person/$50,000 each accident | | 84 |
| Uninsured Motorist Property Damage | $25,000 each accident | $250 | 44 |
| Medical Payments | $2,000 each accident | | 59 |
| Comprehensive | | | 457 |
| See Schedule Of Covered Autos | Limit of liability less deductible | | |
| Collision | | | 1,753 |
| See Schedule Of Covered Autos | Limit of liability less deductible | | |
| **Subtotal policy premium** | | | **$9,114** |
| Fees | | | 75 |
| **Total 12 month policy premium** | | | **$9,189** |

### Rated drivers

1. JOHN PARKER
2. JILL PARKER

*Send
Renewal
letter
# make sure filings done
AL IGA*

*✓
6-15-33
*

Form 6489  GA (05/02)

E-COPY

Continued

0034

Policy number: 08263817-1
JMP ENTERPRISES, INC
Page 2 of 2

## Auto coverage schedule

1. **1992 Intl 810**
VIN: 1HSHBAZN7NH443814

| | | | | | Stated Amount: | $25,000 | |
| | | | | | Garaging Zip Code: | 30240 | Radius: 100 |

| Liability Premium | Liability | UM/UIM BI | UM PD | Med Pay | | |
|---|---|---|---|---|---|---|
| | $3,838 | $42 | $22 | $25 | | |

| Physical Damage Premium | Comp Deductible | Comp Premium | Collision Deductible | Collision Premium | | Auto Total |
|---|---|---|---|---|---|---|
| | $1,000 | $240 | $1,000 | $865 | | **$5,032** |

2. **NON Owned Attached Trlr ***
VIN: NONE

| | | | Garaging Zip Code: | 30240 | Radius: 100 |
|---|---|---|---|---|---|

| Liability Premium | Liability | | Auto Total |
|---|---|---|---|
| | $876 | | **$876** |

3. **2000 Ford F650 Super Duty**
VIN: 3FDNW6540YMA03102

| | | | | | Stated Amount: | $28,000 | |
| | | | | | Garaging Zip Code: | 30240 | Radius: 100 |

| Liability Premium | Liability | UM/UIM BI | UM PD | Med Pay | | |
|---|---|---|---|---|---|---|
| | $2,003 | $42 | $22 | $34 | | |

| Physical Damage Premium | Comp Deductible | Comp Premium | Collision Deductible | Collision Premium | | Auto Total |
|---|---|---|---|---|---|---|
| | $1,000 | $217 | $1,000 | $888 | | **$3,206** |

* Non-Owned trailer but only while attached to a listed power unit specifically described on the declarations page

## Premium discount

| Policy | |
|---|---|
| 08263817-1 | Renewal |

## Lienholder information

We will send certain notices such as coverage summaries and cancellation notices to the following:

| 1. | Lienholder | Auto 1 | CHARTER BANK PO BOX 570 WEST POINT, GA 31833 1992 Intl 810 (1HSHBAZN7NH443814) |
|---|---|---|---|
| 2. | Lienholder | Auto 3 | CHARTER BANK PO BOX 570 WESTPOINT, GA 31833 2000 Ford F650 Super Duty (3FDNW6540YMA03102) |

Form 6489 GA (05/02)


E-COPY

0035



**Cancels, Lapses, Notices**

| Insured Name | Phone | Prod | ST | Agent | Trans | Proc | Eff | Min Due | Bal Due | Unearned Prem |
|---|---|---|---|---|---|---|---|---|---|---|
| Cannon, Willie 02243445-4 | 334-749-8550 | Commercial Auto | AL | 28270 | Lapse | 08/02/05 | 08/01/05 | $0.00 | $0.00 | |
| Jmp Enterprises, Inc 08263817-1 | 706-881-5301 | Commercial Auto | GA | 28270 | Lapse | 08/02/05 | 08/01/05 | $0.00 | $0.00 | |
| Struck, Torsten 41857571-3 | h: 334-444-1504 | Auto | AL | 28270 | Final Cancel | 08/02/05 | 08/12/05 | $0.00 | ($165.00) | $165.00 |

**New Business, Renewals, Quotes**

| Insured Name | Phone | Prod | ST | Agent | Trans | Proc | Eff | Total Premium | PIF |
|---|---|---|---|---|---|---|---|---|---|
| Bonds, Kimberly J 45004935-3 | h: 334-821-0258 | Motor Home | AL | 28270 | Renewal Payment Received | 08/02/05 | 08/26/05 | $1,634.00 | |
| Hollis, Daniel W 36093237-7 | h: 3?-???-7393 | Auto | AL | 28270 | Renewal Payment Received | 08/02/05 | 08/02/05 | $586.00 | |
| Jackson, Brenda 41634501-4 | h: | | Al | 28270 | Renewal Payment Received | 08/02/05 | 08/02/05 | $981.00 | |
| Jackson, Reta 36748715-5 | ? | | | .70 | Renewed | 08/02/05 | 07/30/05 | $1,758.00 | |
| Johnson, Robert C 04356516-9 | | | | 3270 | Renewal Quote | 08/02/05 | 08/30/05 | $369.00 | |
| Moore, Erica R 55024262-6 | | | | 28270 | Renewal Payment Received | 08/02/05 | 08/28/05 | $639.00 | |
| Morgan, Jerry M 38286335-3 | h: 205-??-?<br>w: 205-714-1372 | | | 28270 | Renewal Payment Received | 08/02/05 | 08/12/05 | $344.00 | |
| Ragland, Frank 38332028-3 | w: 334-821-8336 | Auto | AL | 28270 | Renewal Quote | 08/02/05 | 08/28/05 | $1,269.00 | $1,063.00 |

*(handwritten)* 706 594 1763 Jill cell    706 882 6243 cell

**Policy C...**

| Insured Name | Phone | Prod | ST |
|---|---|---|---|
| | | No 'Policy C... | |

| Insured Name | Phone | P... |
|---|---|---|
| Bonds, Kimberly J 45004935-3 | h: 334-821-0258 | Moto |
| Hollis, Daniel W 36093237-7 | h: 334-502-7393 | A |
| Jackson, Brenda 41634501-4 | h: 334-501-7186 | A |
| Johnson, Recai 25206041-7 | h: 334-741-8572<br>w: 334-821-7185 | A |
| Komara, Kelly 38705096-1 | h: 334-707-1350 | A |
| Moore, Erica R | h: 334-444-3594 | A |

https://www1.foragentsonly.com/cpf/

**TRIUMPH**® *AUTO GLASS*  Get it fixed.  Get it fast.  Get back on track.

- Certified technicians
- Fast, FREE mobile service
- National lifetime warranty
- Insurance paperwork handled

*(handwritten)* 8/4/05 4.10  going to call Prog + pay

0036

FAO Policy Reports                                                                    Page 1 of 3

| Report Printed: 8/8/2005 9:05:56 AM |
|---|
| Processed Date: 08/05/2005 to 08/07/2005 |
| Product:     Auto, Boat, Commercial Auto, Motorcycle, Motor Home, Travel Trailer |
| Agent:       28270 |
| State:       AL, GA |

| Cancels, Lapses, Notices | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Insured Name | Phone | Prod | ST | Agent | Trans | Proc | Eff | Min Due | Bal Due | Unearned Prem |
| Jmp Enterprises, Inc 08263817-1 | 706-881-5301 | Commercial Auto | GA | 28270 | Cancel Rescind | 08/05/05 | 08/05/05 | | | |
| Kornegay, Mark 38748352-0 | h: 334-741-7364 | Auto | AL | 28270 | Initial Cancel | 08/07/05 | 08/08/05 | | | |
| Marshall, Thomas E 32430860-1 | h: 334-741-9034 | Boat | AL | 28270 | Lapse | 08/05/05 | 08/05/05 | $51.25 | $391.00 | |
| Morehouse, Chris 38523140-2 | h: 334-742-0952 | Auto | AL | 28270 | Cancel Sent | 08/07/05 | 08/20/05 | $468.15 | $2,300.74 | |
| Sims, Brenda 37286581-2 | h: 334-749-0634 w: 334-821-8335 | Motorcycle | AL | 28270 | Lapse | 08/07/05 | 08/07/05 | $201.00 | $201.00 | |

| New Business, Renewals, Quotes | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Insured Name | Phone | Prod | ST | Agent | Trans | Proc | Eff | Total Premium | PIF |
| Anderson, Marty 38715648-1 | h: 334-524-4132 | Auto | AL | 28270 | Renewal Quote | 08/05/05 | 09/01/05 | $1,008.00 | $836.00 |
| Henderson, Julian T 40137925-5 | h: 334-826-7796 | Motor Home | AL | 28270 | Renewal Quote | 08/07/05 | 09/14/05 | $333.00 | |
| Johnston, William P 40276565-3 | w: 334-887-7007 | Motorcycle | AL | 28270 | Renewal Payment Received | 08/07/05 | 08/14/05 | $864.00 | |
| Marshall, Thomas E 32430860-1 | h: 334-741-9034 | Boat | AL | 28270 | Renewal Payment Received | 08/07/05 | 08/05/05 | $0.00 | |
| O'neil, Katelyn 38695941-1 | h: 334-702-1423 | Auto | AL | 28270 | Renewal Payment Received | 08/07/05 | 08/08/05 | $957.00 | |
| Park, Jason 38318985-3 | h: 334-663-3641 | Auto | AL | 28270 | Renewal Quote | 08/05/05 | 08/20/05 | $946.00 | $851.00 |
| Parker, John M 38555408-1 | h: 706-881-5301 | Auto | GA | 28270 | Renewed | 08/05/05 | 08/04/05 | $1,442.00 | |
| Ridenour, Kim 38338823-3 | h: 334-466-8223 | Auto | AL | 28270 | Renewal Quote | 08/05/05 | 09/01/05 | $550.00 | $494.00 |
| Willeford, Linda 37290541-2 | h: 334-749-9623 | Motor Home | AL | 28270 | Renewal Payment Received | 08/05/05 | 08/13/05 | $448.00 | |
| Willeford, Linda 37290541-2 | h: 334-749-9623 | Motor Home | AL | 28270 | Renewed | 08/05/05 | 08/13/05 | $412.00 | |
| Williams, Dwight 38090684-8 | w: 334-749-8234 | Auto | AL | 28270 | Renewed | 08/07/05 | 08/18/05 | $1,517.00 | |
| Williams, Dwight 38090684-8 | w: 334-749-8234 | Auto | AL | 28270 | Renewal Payment Received | 08/05/05 | 08/18/05 | $1,517.00 | |
| Williams, Shari M 41468140-7 | h: 334-214-0395 | Auto | AL | 28270 | Renewal Payment Received | 08/05/05 | 08/08/05 | $830.00 | |
| Williams, Shari M 41468140-7 | h: 334-214-0395 | Auto | AL | 28270 | Renewed | 08/07/05 | 08/08/05 | $830.00 | |
| Williford, Amanda 38714926-1 | h: 334-704-0843 w: 334-740-1915 | Auto | AL | 28270 | Renewal Quote | 08/07/05 | 09/02/05 | $699.00 | $630.00 |

| Policy Changes | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Insured Name | Phone | Prod | ST | Agent | Proc | Eff | Conf. Number | Initiated By | Net Change |

0037

UNIVERSITY AGCY INC
PO BOX 3067
AUBURN, AL 36831


COMMERCIAL AUTO INSURANCE

August 6, 2005
Policy number:  CA 08263817-1

JMP ENTERPRISES, INC
2205 GREENVILLE ROAD
LAGRANGE, GA 30240

Enclosed is the Form F.

Please retain this copy for your records.

A copy of this endorsement has been sent to the insured at the above address.

Thank you,
Commercial Auto
State Permit Issuance and Verification
800-444-4487

0038

**FORM F**

UNIFORM MOTOR CARRIER BODILY INJURY AND PROPERTY DAMAGE LIABILITY INSURANCE ENDORSEMENT

It is agreed that:

1.  The certification of the policy, as proof of financial responsibility under the provisions of any State motor carrier law or regulations promulgated by any State Commission having jurisdiction with respect thereto, amends the policy to provide insurance for automobile bodily injury and property damage liability in accordance with the provisions of such law or regulations to the extent of the coverage and limits of liability required thereby; provided only that the insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except by reason of the obligation assumed in making such certification.

2.  The Uniform Motor Carrier Bodily Injury and Property Damage Liability Certificate of Insurance has been filed with the State Commissions indicated below.

3.  This endorsement may not be cancelled without cancellation of the policy to which it is attached. Such cancellation may be effected by the company or the insured giving thirty (30) days notice in writing to the State Commission with which such certificate has been filed, such thirty (30) days notice to commence to run from the date the notice is actually received in the office of such Commission.

Attached to and forming part of policy No. CA 08263817-1 issued by PROGRESSIVE PREFERRED INSURANCE CO., herein called Company, of PO BOX 94739, CLEVELAND, OH 44101 to JMP ENTERPRISES, INC of 2205 GREENVILLE ROAD, LAGRANGE, GA 30240

Dated at MAYFIELD VILLAGE, OH 44143 _____ this 6 th day of August, 2005

Countersigned by _____
_____
Authorized Representative

| X - - INDICATES STATE COMMISSIONS WITH WHOM UNIFORM MOTOR CARRIER BODILY INJURY AND PROPERTY DAMAGE LIABILITY CERTIFICATE OF INSURANCE HAS BEEN FILED | | | | | | |
|---|---|---|---|---|---|---|
| ALABAMA | X | ILLINOIS | | MONTANA | | RHODE ISLAND | |
| ALASKA | | INDIANA | | NEBRASKA | | SOUTH CAROLINA | |
| ARIZONA | | IOWA | | NEVADA | | SOUTH DAKOTA | |
| ARKANSAS | | KANSAS | | NEW HAMPSHIRE | | TENNESSEE | |
| CALIFORNIA | | KENTUCKY | | NEW JERSEY | | TEXAS | |
| COLORADO | | LOUISIANA | | NEW MEXICO | | UTAH | |
| CONNECTICUT | | MAINE | | NEW YORK | | VERMONT | |
| DELAWARE | | MARYLAND | | NORTH CAROLINA | | VIRGINIA | |
| DISTRICT OF COLUMBIA | | MASSACHUSETTS | | NORTH DAKOTA | | WASHINGTON | |
| FLORIDA | | MICHIGAN | | OHIO | | WEST VIRGINIA | |
| GEORGIA | X | MINNESOTA | | OKLAHOMA | | WISCONSIN | |
| HAWAII | | MISSISSIPPI | | OREGON | | WYOMING | |
| IDAHO | | MISSOURI | | PENNSYLVANIA | | | |

MC1632 (Ed. 06-04)

IPB 3538 A

0039

UNIVERSITY AGCY INC
PO BOX 3067
AUBURN, AL 36831



**PROGRESSIVE**®
COMMERCIAL AUTO INSURANCE

August 6, 2005
Policy number: CA 08263817-1

JMP ENTERPRISES, INC
2205 GREENVILLE ROAD
LAGRANGE, GA 30240

Enclosed is the MCS90.

Please retain this copy for your records.

A copy of this endorsement has been sent to the insured at the above address.

Thank you,
Commercial Auto
State Permit Issuance and Verification
800-444-4487

0040

ENDORSEMENT FOR

**MOTOR CARRIER POLICIES OF INSURANCE FOR PUBLIC LIABILITY**
**UNDER SECTIONS 29 AND 30 OF THE MOTOR CARRIER ACT OF 1980**

Form Approved
OMB No. 2125-0074

Issued to IMP ENTERPRISES, INC of 2205 GREENVILLE ROAD, LAGRANGE, GA 30240
Dated at MAYFIELD VILLAGE, OH 44143 this 5th day of August, 2005
Amending Policy No. CA 08263817-1 Effective Date 08/05/2005
Name of Insurance Company PROGRESSIVE PREFERRED INSURANCE CO.
Telephone Number 800-444-4487

Countersigned by _____
Authorized Company Representative

The policy to which this endorsement is attached provides primary or excess insurance as indicated by ☒ for the limits shown:

☒ This insurance is primary and the company shall not be liable for amounts in excess of $1,000,000 for each accident.

☐ This insurance is excess and the company shall not be liable for amounts in excess of $ _____ for each accident.

in excess of the underlying limit of $_____ for each accident.

Whenever required by the Federal Highway Administration (FHWA) or the Interstate Commerce Commission (ICC), the company agrees to furnish the FHWA or the ICC a duplicate of said policy and all its endorsements. The company also agrees, upon telephone request by an authorized representative of the FHWA or the ICC, to verify that the policy is in force as of a particular date.

Cancellation of this endorsement may be effected by the company or the insured by giving (1) thirty-five (35) days notice in writing to the other party (said 35 days notice to commence from the date the notice is mailed, proof of mailing shall be sufficient proof of notice), and (2) if the insured is subject to the ICC's jurisdiction, by providing thirty (30) days notice to the ICC (said 30 days notice to commence from the date the notice is received by the ICC at its office in Washington, D.C.).

## DEFINITIONS AS USED IN THIS ENDORSEMENT

**ACCIDENT** includes continuous or repeated exposure to conditions which result in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

**MOTOR VEHICLE** means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

**BODILY INJURY** means injury to the body, sickness, or disease to any person, including death resulting from any of these.

**ENVIRONMENTAL RESTORATION** means restitution for the loss, damage or

destruction of natural resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish and wildlife.

**PROPERTY DAMAGE** means damage to or loss of use of tangible property.

**PUBLIC LIABILITY** means liability for bodily injury, property damage, and environmental restoration.

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Highway Administration (FHWA) and the Interstate Commerce Commission (ICC).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from

liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately, to each accident, and any payment under the policy because of any one accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

The Motor Carrier Act of 1980 requires limits of financial responsibility according to the type of carriage and commodity transported by the motor carrier. It is the MOTOR CARRIER'S obligation to obtain the required limits of financial responsibility.
THE SCHEDULE OF LIMITS SHOWN ON THE REVERSE SIDE DOES NOT PROVIDE COVERAGE.
The limits shown in the schedule are for information purposes only.

0041

SCHEDULE OF LIMITS
Public Liability

MC 1622k (cont'd)

| | Type of Carriage | Commodity Transported | | Minimum Insurance |
|---|---|---|---|---|
| (1) | For-hire (In interstate or foreign commerce). | Property (nonhazardous). | $ | 750,000 |
| (2) | For-hire and Private (In interstate, foreign, or intrastate commerce). | Hazardous substances, as defined in 49 CFR 171.8, transported in cargo tanks, portable tanks, or hopper-type vehicles with capacities in excess of 3,500 water gallons; or in bulk Divisions 1.1, 1.2, and 1.3 materials; any quantity of Division 2.3 Hazard Zone A or Division 6.1, Packing Group 1, Hazard Zone A material; in bulk Division 2.1 or 2.2; or highway route controlled quantities of a Class 7 material as defined in 49 CFR 173.403. | | 5,000,000 |
| (3) | For-hire and Private (In interstate or foreign commerce: in any quantity) or (In interstate commerce: in bulk only). | Oil listed in 49 CFR 172.101; hazardous materials and hazardous substances defined in 49 CFR 171.8 and listed in 49 CFR 172.101, but not mentioned in (2) above or (4) below. | | 1,000,000 |
| (4) | For-hire and Private (In interstate or foreign commerce). | Any quantity of Division 1.1, 1.2 or 1.3 material; any quantity of a Division 2.3, Hazard Zone A, or Division 6.1, Packing Group 1, Hazard Zone A material; or highway route controlled quantities of a Class 7 material as defined in 49 CFR 173.403. | | 5,000,000 |

**Note:** The type of carriage listed under numbers (1), (2), and (3) applies to vehicles with a gross vehicle weight rating of 10,000 pounds or more. The type of carriage listed under number (4) applies to all vehicles with a gross vehicle weight rating of less than 10,000 pounds.

SCHEDULE OF LIMITS
Public Liability

For-hire motor carriers of passengers operating in interstate or foreign commerce

| | Vehicle Seating Capacity | | Minimum Insurance |
|---|---|---|---|
| (1) | Any vehicle with a seating capacity of 16 passengers or more. | $ | 5,000,000 |
| (2) | Any vehicle with a seating capacity of 15 passengers or less. | | 1,500,000 |

Page 2

0042

FAO Policy Reports

Report Printed: 9/8/2005 9:05:57 AM

Processed Date: 09/07/2005 to 09/07/2005
Product:    Auto, Boat, Commercial Auto, Motorcycle, Motor Home, Travel Trailer
Agent:    28270
State:    AL, GA

### Cancels, Lapses, Notices

| Insured Name | Phone | Prod | ST | Agent | Trans | Proc | Eff | Min Due | Bal Due | Unearned Prem |
|---|---|---|---|---|---|---|---|---|---|---|
| Heptinstall, Joshua 38618103-1 | h: 334-524-0961 | Auto | AL | 28270 | Final Cancel | 09/07/05 | 08/29/05 | $72.99 | $72.99 | $168.00 |
| Jmp Enterprises, Inc 08263817-1 | 706-881-5301 | Commercial Auto | GA | 28270 | Cancel Sent | 09/07/05 | 09/19/05 | $916.40 | $8,207.60 | |

*will take care of asap.* (handwritten)

### New Business, Renewals, Quotes

| Insured Name | Phone | Prod | ST | Agent | Trans | Proc | Eff | Total Premium | PIF |
|---|---|---|---|---|---|---|---|---|---|
| Reetz, James 38836810-0 | h: 334-887-1084 w: 334-707-1354 | Auto | AL | 28270 | New Business | 09/07/05 | 09/07/05 | $440.00 | |
| Superior Pools Inc 01891698-3 | 334-448-3877 | Commercial Auto | AL | 28270 | Renewal Quote | 09/07/05 | 10/05/05 | $2,543.00 | $2,420.00 |
| Williams, Kristen C 42027546-7 | h: 334-501-5392 | Auto | AL | 28270 | Renewal Payment Received | 09/07/05 | 09/11/05 | $1,864.00 | |
| Woolbright, Jonas 38603879-2 | h: 334-826-5785 | Auto | AL | 28270 | Renewal Quote | 09/07/05 | 10/01/05 | $196.00 | $178.00 |

### Policy Changes

| Insured Name | Phone | Prod | ST | Agent | Proc | Eff | Conf. Number | Initiated By | Net Change |
|---|---|---|---|---|---|---|---|---|---|
| Kolb, Reagan 41758708-4 | h: 256-287-0712 w: 256-287-0712 | Auto | AL | 28270 | 09/07/05 | 09/09/05 | 250WC8708 | insured mail/fax | $140.00 |
| | Detail: | Changes were requested by REAGAN KOLB on 09/06/2005 effective on 09/09/2005: The address for your 2001 Ford Explorer Xlsw has changed. The mailing address information has changed. | | | | | | | |
| O'neil, Katelyn 38695941-1 | h: 334-702-1423 | Auto | AL | 28270 | 09/07/05 | 09/07/05 | 250NET941 | Agent FAO | $0.00 |
| | Detail: | Changes were requested by STEPHANIE JONES on 09/07/2005 at 05:17 p.m. EST, effective on 09/07/2005: The address for your 1999 Volkswagen New Beetle Gls has changed. The mailing address information has changed. | | | | | | | |

### Payments and Adjustments

| Insured Name | Phone | Prod | ST | Agent | Trans | Proc | Eff | Adj Type | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Kunkel, Elizabeth K 38457982-2 | h: 334-734-0028 | Auto | AL | 28270 | Payment | 09/07/05 | 09/02/05 | | ($102.00) |
| Lashley, Amanda 38607168-1 | h: 334-749-5939 | Auto | AL | 28270 | Payment | 09/07/05 | 08/31/05 | | ($50.49) |
| O'neil, Katelyn 38695941-1 | h: 334-702-1423 | Auto | AL | 28270 | Payment | 09/07/05 | 09/07/05 | | ($148.70) |
| Reetz, James 38836810-0 | h: 334-887-1084 w: 334-707-1354 | Auto | AL | 28270 | Payment | 09/07/05 | 09/07/05 | | ($440.00) |
| Treadwell, Jennifer 36437208-8 | h: 334-745-3477 | Auto | AL | 28270 | Adjustment | 09/07/05 | 09/07/05 | Service Fee | $5.00 |
| Williams, Kristen C 42027546-7 | h: 334-501-5392 | Auto | AL | 28270 | Payment | 09/07/05 | 09/02/05 | | ($1,679.00) |
| Williams, Kristen C 42027546-7 | h: 334-501-5392 | Auto | AL | 28270 | Adjustment | 09/07/05 | 09/07/05 | Adjustment | ($5.00) |

0043

FAO Policy Reports                                                      Page 1 of 2

*[handwritten: Cile]*

| Report Printed: 9/19/2005 9:37:55 AM | | | | | |

Processed Date: 09/18/2005 to 09/18/2005
Product:     Auto, Boat, Commercial Auto, Motorcycle, Motor Home, Travel Trailer
Agent:       28270
State:       AL, GA

*[handwritten notes: 9-19-05; Change to call Mark to call Progressive direct to do check by phone to stop cancellation]*

*[handwritten left margin: same prob. let MJ know]*

### Cancels, Lapses, Notices

| Insured Name | Phone | Prod | ST | Agent | Trans | Proc | Eff | Min Due | Bal Due | Unearned Prem |
|---|---|---|---|---|---|---|---|---|---|---|
| Jmp Enterprises, Inc 08263817-1 | 706-881-5301 | Commercial Auto | GA | 28270 | Cancel Effective | 09/18/05 | 09/19/05 | | | |
| | Detail: | | | | | | | | | |

### New Business, Renewals, Quotes

| Insured Name | Phone | Prod | ST | Agent | Trans | Proc | Eff | Total Premium | PIF |
|---|---|---|---|---|---|---|---|---|---|
| Anderson, Marty 38715648-1 | h: 334-524-4132 | Auto | AL | 28270 | Renewed | 09/18/05 | 09/17/05 | $836.00 | |
| Aung, Hein 39081866-8 | h: 334-821-4216 | Auto | AL | 28270 | Renewed | 09/18/05 | 09/17/05 | $215.00 | |
| Haque, Anwarul 41460793-7 | h: 334-663-5830 w: 305-348-2694 | Auto | AL | 28270 | Renewal Payment Received | 09/18/05 | 09/15/05 | | |
| Hua, Thi Hahn 40448922-8 | h: 334-887-0590 | Auto | AL | 28270 | Renewed | 09/18/05 | 09/16/05 | $607.00 | |
| Kleypas, Kyle 38593937-2 | h: 334-319-1832 | Auto | AL | 28270 | Renewal Payment Received | 09/18/05 | 09/17/05 | $923.00 | |
| Woolbright, Jonas 38603879-2 | h: 334-826-5785 | Auto | AL | 28270 | Renewed | 09/18/05 | 10/01/05 | $178.00 | |

### Policy Changes

| Insured Name | Phone | Prod | ST | Agent | Proc | Eff | Conf. Number | Initiated By | Net Change Premium |
|---|---|---|---|---|---|---|---|---|---|
| No 'Policy Changes' found | | | | | | | | | |

### Payments and Adjustments

| Insured Name | Phone | Prod | ST | Agent | Trans | Proc | Eff | Adj Type | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Coon, Brian J 32613616-0 | h: 334-663-2624 w: 334-279-0726 | Motorcycle | AL | 28270 | Payment | 09/18/05 | 09/18/05 | | ($30.58) |
| Hamby Salvage Inc. 04726961-4 | 334-576-3727 | Commercial Auto | AL | 28270 | Adjustment | 09/18/05 | 09/18/05 | Service Fee | $5.00 |
| Haque, Anwarul 41460793-7 | h: 334-663-5830 w: 305-348-2694 | Auto | AL | 28270 | Payment | 09/18/05 | 09/17/05 | | ($866.00) |
| Howard, Jonathan 35994730-8 | h: 334-741-8618 w: 334-745-6271 | Auto | AL | 28270 | Adjustment | 09/18/05 | 09/18/05 | Service Fee | $5.00 |
| Kim, Sung H 38445972-2 | h: 404-513-1068 | Auto | AL | 28270 | Payment | 09/18/05 | 09/14/05 | | ($283.98) |
| Kleypas, Kyle 38593937-2 | h: 334-319-1832 | Auto | AL | 28270 | Payment | 09/18/05 | 09/17/05 | | ($154.87) |
| Renegar, Linda 38742574-0 | h: 334-887-7506 w: 334-844-2296 | Auto | AL | 28270 | Payment | 09/18/05 | 09/17/05 | | ($125.65) |
| Rieves, Lashonda 41746372-4 | h: 334-286-9773 w: 334-954-2833 | Auto | AL | 28270 | Payment | 09/18/05 | 09/17/05 | | ($140.83) |
| Waldon, Jerry 41621781-4 | h: 334-741-0906 w: 334-745-7308 | Auto | AL | 28270 | Payment | 09/18/05 | 09/18/05 | | ($85.00) |

0044

FAO Policy Reports                                                                 Page 1 of 1

| Report Printed: 9/21/2005 9:03:41 AM |
|---|
| Processed Date: 09/20/2005 to 09/20/2005 |
| Product:     Auto, Boat, Commercial Auto, Motorcycle, Motor Home, Travel Trailer |
| Agent:       28270 |
| State:        AL, GA |

### Cancels, Lapses, Notices

| Insured Name | Phone | Prod | ST | Agent | Trans | Proc | Eff | Min Due | Bal Due | Unearned Prem |
|---|---|---|---|---|---|---|---|---|---|---|
| Community Credit Counse 04129802-7 | 888-704-0100 | Commercial Auto | AL | 28270 | Cancel Sent | 09/20/05 | 10/02/05 | $131.40 | $257.80 | |
| | Detail: | | | | | | | | | |
| Jmp Enterprises, Inc 08263817-1 | 706-881-5301 | Commercial Auto | GA | 28270 | Cancel. Rescind. | 09/20/05 | 09/19/05 | | | |
| | Detail: | | | | | | | | | |

### New Business, Renewals, Quotes

| Insured Name | Phone | Prod | ST | Agent | Trans | Proc | Eff | Total Premium | PIF |
|---|---|---|---|---|---|---|---|---|---|
| Renegar, Linda 38742574-1 | h: 334-887-7506 w: 334-844-2296 | Auto | AL | 28270 | Renewal Quote | 09/20/05 | 10/17/05 | $949.00 | $831.00 |

### Policy Changes

| Insured Name | Phone | Prod | ST | Agent | Proc | Eff | Conf. Number | Initiated By | Net Change |
|---|---|---|---|---|---|---|---|---|---|
| Howard, Jonathan 35994730-6 | h: 334-741-8618 w: 334-745-6271 | Auto | AL | 28270 | 09/20/05 | 09/20/05 | 263NET730 | Agent FAO | $172.00 |
| | Detail: | Changes were requested by PATSY COAN on 09/20/2005 at 06:15 p.m. EST, effective on 09/20/2005: The 1998 Honda Accord EX 4D has been added. | | | | | | | |

### Payments and Adjustments

| Insured Name | Phone | Prod | ST | Agent | Trans | Proc | Eff | Adj Type | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Coon, Brian 41799082-4 | h: 334-826-2568 | Auto | AL | 28270 | Adjustment | 09/20/05 | 09/20/05 | Adjustment | ($5.00) |
| Jacobs, Amy 38321331-3 | h: 334-737-3779 | Auto | AL | 28270 | Payment | 09/20/05 | 09/20/05 | | ($97.17) |
| Jmp Enterprises, inc 08263817-1 | 706-881-5301 | Commercial Auto | GA | 28270 | Adjustment | 09/20/05 | 09/20/05 | Service Fee | $5.00 |
| Mayfield, Marshall 55115440-3 | h: 334-319-0867 | Motorcycle | AL | 28270 | Adjustment | 09/20/05 | 09/20/05 | Service Fee | $5.00 |
| Moss, Larry A 36026371-7 | h: 334-727-4838 | Auto | AL | 28270 | Adjustment | 09/20/05 | 09/20/05 | Service Fee | $5.00 |
| Thompson Exteriors, Inc 08612870-0 | 678-283-6966 | Commercial Auto | AL | 28270 | Adjustment | 09/20/05 | 09/20/05 | Late Fee | $5.00 |
| Thompson, Thomas 38797600-0 | h: 334-663-6662 | Auto | AL | 28270 | Adjustment | 09/20/05 | 09/20/05 | Service Fee | $5.00 |

### Underwriting Memos

| Insured Name | Phone | Prod | ST | Agent | Memo Date | Addressee | Reply Due | Subject |
|---|---|---|---|---|---|---|---|---|
| | | | | No 'Underwriting Memos' found | | | | |

https://www1.foragentsonly.com/cpf/PrintFriendly.asp?type=all&subtype=critical,new,end...   9/21/2005

0045

Progressive Insurance

UNIVERSITY AGCY INC
PO BOX 3067
AUBURN, AL 36831


COMMERCIAL AUTO INSURANCE

**Policy number: 08263817-1**
Underwritten by:
Progressive Preferred Insurance Co.
November 3, 2005
Page 1 of 1

JMP ENTERPRISES, INC
PO BOX 3501
LAGRANGE, GA 30241

## Confirmation of policy cancellation
## on October 19, 2005 at 12:01 a.m.

The amount you owe us for coverage provided prior to the cancellation is past due. A summary of the
amount due follows. Please pay this amount to avoid further collection actions.

| | |
|---|---|
| Total policy premium and fees | $1,970.00 |
| Total amount paid | -1,902.80 |
| Total amount due | $67.20 |
| Due date | Immediately |

If you have questions, please call Policy Services at 800-444-4487.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## Payment Coupon

| | |
|---|---|
| Total amount due | $67.20 |
| Due date | Immediately |
| Amount enclosed | $ |

**Policy number: 08263817-1**
Policy holder: JMP ENTERPRISES, INC

**For immediate payment** - to authorize
a withdrawal from your checking account
or make a credit card payment - go to
personal.progressive.com or call
800-444-4487.

Prog Preferred Ins. Co.
PO BOX 30108
TAMPA FL 33630-3108

Do not write below this section of coupon
06-28270        Form 6269 (03/03)
Balance Due After Cancellation

310808263817110063 0006720 0006720 5200019 3081667 008708050508

E-COPY

0046



**ALABAMA RETAIL COMP**

*Sponsored by the Alabama Retail Association*

1/6/06

Called Mark 2:11 pm. to tell told him Progressive Comm. Policy cancelled 10/19/05 for non-pay. Balance of $607.20.

~~Progressive~~ I told Mark there is <u>NO</u> coverage as of 10/9/05.

Per Mark don't worry about. He's going to wait a month or so until his business picks back up.

For Underwriting Call 1-888-327-1915 or Fax ACORD to 334-263-0665

0047

**EXHIBIT F:**

**SECOND REQUEST FOR PRODUCTION TO PROGRESSIVE**

IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

PROGRESSIVE PREFERRED
INSURANCE COMPANY
    Plaintiff

vs.                             CASE NO. 3:06-CV-00934

JMP ENTERPRISES, INC.;
JOHN MARK PARKER; and
JENNIFER M. GOLDEN
    Defendants

## GOLDEN'S SECOND REQUEST FOR
## PRODUCTION OF DOCUMENTS TO PROGRESSIVE

_INSTRUCTIONS FOR USE_:  You are hereby requested to produce the documents listed below for inspection and copying at the offices of HOWARD, DUNN, HOWARD & HOWARD located at 102 South Boundary Street, Wetumpka, Alabama  36092, within the time allowed by law. The documents produced shall be grouped or numbered in accordance with the item numbers listed below. You are further requested to file a written response to this request for production of documents indicating, with respect to each numbered item or category, whether any such documents exist and whether such documents are being produced.

_Definitions:_ The "state court action" refers to that action filed by Jennifer Golden in the Circuit Court of Lee County, Alabama, on or about February 14, 2006, being case number CV-2006-106.

     5.  The Return Receipt Card for the letter dated April 26, 2006, from Jerry Knight to JMP Enterprises, Inc., which letter was attached to the defendants' Response to the Plaintiff's First Request for Production.

     6.  Any and all tape recordings of voice mail messages that you left for John Mark Parker or JMP Enterprises, Inc.

1



EXHIBIT
F

7.  Forms 1602 (08/83), 1857 (03/96), 6931 (04/89), 2012 (03/96), 8282 (04/84), 8470 (12/86), 4792A (01/03), 1197 (08/93), MC1632 (06/71), 9809 (04/96) and 8627 (03/88), which are listed on the Declaration's Page of Exhibit B to the Complaint, which was filed on February 14, 2007.

**HOWARD, DUNN, HOWARD & HOWARD**
Attorney for Jennifer M. Golden

By: _____
        G. Houston Howard II

Of Counsel:
**G. Houston Howard II (HOW015)**
Howard, Dunn, Howard & Howard
P.O. Box 1148
Wetumpka, Alabama 36092
Telephone:  334-567-4356
Facsimile:  334-567-7080

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on:

**R. Larry Bradford**
**Bradford & Sears, P.C.**
**2020 Canyon Road, Suite 100**
**Birmingham, AL 35216**

**John Mark Parker**
**P. O. Box 3501**
**LaGrange, GA 30242**

counsel of record, by placing the same in the U.S. Mail, postage prepaid and properly addressed, on this the 2 T day of May, 2007.

_____
Of Counsel

2

# EXHIBIT G:

# PROGRESSIVE'S RESPONSE TO SECOND REQUEST FOR PRODUCTION

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| PROGRESSIVE PREFERRED INSURANCE COMPANY, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action Number: 3:06-CV-00934 |
| | ) |
| JMP ENTERPRISES, INC.; JOHN MARK PARKER; and JENNIFER M. GOLDEN, | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |

**OBJECTIONS AND RESPONSES TO JENNIFER GOLDEN'S SECOND REQUEST FOR PRODUCTION BY PLAINTIFF, PROGRESSIVE PREFERRED INSURANCE COMPANY ("PROGRESSIVE")**

Comes now the defendant, Progressive Preferred Insurance Company ("Progressive"), pursuant to Rule 34 of the Federal Rules of Civil Procedure, and objects to Jennifer Golden's second request for production of documents as follows:

**GENERAL OBJECTIONS**

1.    Progressive objects to any and all requests for production to the extent that they are vague, overly broad, unduly burdensome, harassing and/or not calculated to lead to the discovery of relevant or admissible evidence.

2.    Progressive objects to any and all requests for production to the extent that they seek information protected from discovery by any privilege, including the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege or immunity.

0001

EXHIBIT
G

3.    Progressive objects to any and all requests for production to the extent that they seek confidential, financial, or proprietary business information.

4.    Progressive objects to any requests for production which are not reasonably limited in time and/or scope.

5.    Progressive objects to any and all requests for production to the extent that they contain certain key terms which are not defined or that are unreasonably compound, disjunctive, or conjunctive.

These "General Objections" are applicable to and incorporated into each of the plaintiff's responses as if specifically stated therein. The stating of specific objections to a particular request shall not be construed as a waiver of the plaintiff's "General Objections." Unless otherwise specifically stated, Progressive's objections to each request for production apply to the entire request, including each and every subsection and/or subpart of the request.

## SPECIFIC OBJECTIONS AND RESPONSES

5.    Progressive is attaching the return receipt card for the correspondence dated April 26, 2006 to JMP Enterprises, Inc. ("JMP").

6.    Progressive does not possess any tape recordings of voice mail messages.

7.    Progressive is attaching the requested forms which are listed on the declarations page of JMP's policy issued by Progressive.

R. Larry Bradford, Attorney for Plaintiff,
Progressive Preferred Insurance Company
Attorney Bar Code: BRA039

0002

_____
Shane T. Sears, Attorney for Plaintiff,
Progressive Preferred Insurance Company
Attorney Bar Code: SEA026


OF COUNSEL:

Bradford & Sears, P.C.
2020 Canyon Road
Suite 100
Birmingham, AL 35216


### CERTIFICATE OF SERVICE

I hereby certify that I have this the **25th** day of June, 2007, served a copy of the foregoing on all attorneys of record by placing a copy of same in the United States Mail, postage prepaid and properly addressed as follows:

G. Houston Howard, Esq.
Howard, Dunn, Howard & Howard
P.O. Box 1148
Wetumpka, Alabama 36092

Mr. John Mark Parker
JMP Enterprises
P.O. Box 3501
LaGrange, Georgia 30242

_____
OF COUNSEL

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "Return Receipt Requested" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):

1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:

J M P ENTERPRISES, INC.
ATTN : JOHN PARKER
P.O. BOX 3501
LAGRANGE, GA. 30241

4a. Article Number
7001 0320 0002 5034 2133

4b. Service Type
☐ Registered          ☑ Certified
☐ Express Mail        ☐ Insured
☐ Return Receipt for Merchandise  ☐ COD

7. Date of Delivery
6-3-06

5. Received By: (Print Name)

6. Signature: (Addressee or Agent)
X U.

8. Addressee's Address (Only if requested and fee is paid)

PS Form 3811, December 1994                    Domestic Return Receipt

0004

## LOSS PAYABLE CLAUSE

We agree with **you** to change **your** policy as follows:

1.  **We** will pay the loss payee named in the Policy for loss to **your** insured auto, as the interest of the loss payee may appear.

2.  The insurance covers the interest of the loss payee unless the **loss** results from fraudulent acts or omissions on **your** part.

3.  Cancellation ends this agreement as to the loss payee's interest. If **we** cancel the Policy **we** will mail **you** and the loss payee the same advance notice.

4.  If **we** make any payment to the loss payee, **we** will obtain his rights against any other party.

Vehicle 1

Secured Party
Address:

Vehicle 2

Secured Party
Address:

Vehicle 3

Secured Party
Address:

Vehicle 4

Secured Party
Address:

All other parts of this Policy remain unchanged.

This endorsement changes Policy No.    —

Issued to: _____
             Name of Insured          Address              City/State

Endorsement
Effective:
                          _____        _____
                          Your Signature           Your Agent

Form No. 1602 (8-83)                  INSURED COPY              CVCE1009952605L160201I

## Policy Amendments > Endorsement

| | |
|---|---|
| State(s): | Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Idaho, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, Wisconsin, Wyoming |
| Status: | Inactive |
| Product: | Commercial Auto |
| Form Number: | 1857 |
| Type: | Filing Indicator |

This form is an indicator that a federal filing is present on the policy. Filings are issued directly to the state.

Last Updated: 01/30/2006
©2004 Progressive Casualty Insurance Company, All rights reserved.

0006

## AMENDATORY ENDORSEMENT
## PUNITIVE DAMAGES

**UNINSURED MOTORISTS COVERAGE**

The phrase **"OTHER THAN PUNITIVE DAMAGES"** in this section does not apply to your policy.

All other terms and conditions remain unchanged.

**0007**

CVSE0125962907L8931

# GEORGIA UNINSURED MOTORISTS INSURANCE

It is agreed that the Policy is amended to include the following:

## ADDITIONAL DUTY OF A CLAIMANT UNDER THE POLICY

The following is added under the Policy provisions "Your Duties in Case of Accident or Loss"

A person claiming Uninsured Motorists Coverage must notify the police as soon as practicable after the accident if a hit-and-run driver is involved.

### Uninsured Motorist Coverage

We will pay damages which an insured is legally entitled to recover from the owner operator of an uninsured auto because of:

1. **bodily injury**, and

2. **property damage**,

caused by accident and resulting from the ownership, maintenance or use of the uninsured auto. **Bodily injury** and **property damage** coverage is subject to a deductible as shown in the Declarations.

If this coverage provides limits in excess of the amounts required by Georgia Financial Responsibility Laws, we will pay only after all bonds or liability Policies have been used up by judgments or payments. If a settlement is made between an insured and the insurer of the uninsured auto for any amount which does not use up the applicable bonds or liability Policies, we will not pay unless we have agreed to do so in writing.

### Additional Definitions used in this Endorsement

1. **Insured** means:

   (a) **You** or a **relative**;
   (b) any other person **occupying** an insured auto;
   (c) any person for damages that person is entitled to recover because of **bodily injury** or **property damage** to **you**, a **relative** or another occupant of your **insured auto**.
   But no person shall be considered an **insured** if that person uses **your insured auto** without **your** expressed permission.

2. **Auto** means a land motor vehicle or trailer but does not mean a vehicle:

   (a) operated on rails or crawler treads;
   (b) which is a farm type tractor or equipment designed for use principally off public roads, while not on public roads;
   (c) located for use as a residence or premises.

3. **Occupying** means in, on, getting into, off or out of.

4. **Property Damage** means injury to or destruction of the **insured auto** including loss of use and injury to or destruction of personal property owned by the **insured** which is contained in the **insured auto**, but not including the loss of use of damaged or destroyed property.

5. **Relative** means, if **you** are an individual, a person living in **your** household related to you by blood, marriage, or adoption, including a ward or foster child.

6. **Uninsured auto** means an auto for which there is:

   (a) no liability Policy or bond applicable at the time of the **accident**,
   (b) a liability Policy or bond applicable at the time of the **accident**, but its available coverage is less than the limit of liability of this coverage.
   (c) a liability Policy or bond at the time of the **accident** by the insurer denies coverage or is or becomes insolvent,

   or which is an underinsured auto. An underinsured auto is a motor vehicle or trailer for which the amount paid under all liability Policies or bonds is less than the sum of the limit of insurance for **Uninsured**

2012 (03-96)

Motorists coverage applicable to the **insured** under this Policy and the limit of insurance applicable to the **insured** under any other Policy,

or which is a hit-and-run vehicle whose operator or owner is unknown and which caused an **accident** resulting in **bodily injury** or **property damage** arising out of physical contact to an **insured**, an auto which an **insured** is occupying or the insured auto. An **insured** or someone on your behalf must have reported the **accident** as soon as practicable to a police officer.

An **uninsured auto** does not mean and auto designed for use mainly off public roads while not on public roads.

### Exclusions

We do not cover **bodily injury** or **property damage** sustained by a person or property:

(1) for any claim settled without our consent. An **insured** may however, without our consent, release an insurer of an uninsured motor vehicle from further obligation to pay damages after accepting from that **insurer** a payment or settlement which uses up the applicable Policies or bonds.

(2) while **occupying** a motor vehicle with less than (4) wheels.

(3) while **occupying** an auto driven without the owner's permission.

Also, this coverage does not apply:

(1) to an **auto** or property contained in an **auto** other than an **insured auto.**

(2) to a person for loss of use of damaged or destroyed property.

This coverage does not apply directly or indirectly to the benefit of any insurer or self insurer, under any Worker's Compensation, disability benefits or similar law.

Limits of Liability

(1) Regardless of the number of **autos** described in the Declarations, **insureds**, claims, claimants or Policies involved in the **accident**, we will pay no more than the limit of Uninsured Motorist Coverage shown in the Declarations.

(2) We will not pay for any part of loss for which a payment is made or an amount is payable because of the **bodily injury** under and Worker's Compensation law or disability benefits law or similar law.

(3) The limit of liability under this coverage will be reduced by all amounts paid or payable by or for anyone who is legally responsible, including any amount paid under this policy's PART I - LIABILITY TO OTHERS coverage.

(4) We will not pay for any **property damage** that is paid or payable under PART III - DAMAGE TO YOUR AUTO.

### Other Insurance

If there is other similar insurance on a loss covered by this Endorsement, the following priorities of recovery apply:

First, the Policy providing **Uninsured Motorists** and **Underinsured Motorists** Coverage to the **insured** as a **named insured** or relative.

Second, the **Uninsured** and **Underinsured Motorists** Coverage applicable to the vehicle the **insured** was occupying at the time of the **accident.**

We will pay our proportionate share as our limits of liability bear to the total limits of liability of all applicable similar insurance.

### Proof of Claim

Each person making claim under this Endorsement must give us full details of their injuries and treatment. Proof of claim shall be submitted on our forms unless we fail to provide them within 15 days after notice of the claim.

## NOTICE OF INSURANCE INFORMATION PRACTICES

In the course of underwriting your insurance policy, information may be gathered from several outside sources. Driving record information is obtained by ordering a Motor Vehicle Report from the Department of Motor Vehicles. In some instances, additional information is ordered from Credit Bureaus and Investigation Organization, or we may call or write your household and ask for additional information necessary to accurately rate your policy. We commonly follow up to see that all eligible drivers in the household are listed on the application.

This information is not disclosed to outside parties without your written authorization except in specific limited circumstances outlined by the law. Examples of these circumstances include to a law enforcement authority or to an insurance regulatory authority, in response to a valid subpoena, search warrant or judicial order, or to a medical professional for the purpose of verifying coverage restrictions.

You have the right to review and correct personal information in your file. Upon request by you, a copy of the information in our files relating to your policy, will be issued to you. The first copy will be at no charge. A charge for additional copies will be equal to the cost of reproduction.

If, after reading this, you have any questions about our procedures or information contained in our files about you, please contact us at:

Progressive Insurance Companies

Cleveland, Ohio 44101

Form No. 8282 (4-84) GA

CVSE0730962607L8282

0010

### AUTO DAMAGE LIMIT OF LIABILITY POLICY CHANGE

We agree with **you** to change Part III, Damage to Your Auto, as follows:

**Limit of Liability**

If the Limit of Liability shown below is less than 90% of the actual cash value at the time of loss to **your insured auto**, **you** will share with **us** in the cost of repair or replacement as follows:

1. **We** will pay the same proportion of the loss which the Limit of Liability shown below bears to the actual cash value of **your insured** auto at the time of loss.

2. **We** will reduce the amount of loss by the Auto Damage deductible shown in the Policy Declarations prior to calculating the proportionate amount we will pay.

If **we** pay the actual cash value of the auto less the deductible, we are entitled to all salvage.

| No. | Year | Trade Name | Serial No. | Stated Amount of Insurance (Including Custom Parts & Equip.) |
|-----|------|-----------|-----------|------------------------------------------------------------|
|     |      |           |           |                                                            |

All other parts of this Policy remain unchanged.

This endorsement changes Policy No. _____

Issued to: _____

    Name of Insured        Address        City/State

Endorsement
Effective:             Countersigned By: _____

                                        Authorized Representative

Form No. 8470 (12-86)                           CAICS28C  CVNE0505981513L8470

0011



# NOTICE OF TERRORISM
# INSURANCE COVERAGE

Coverage for acts of terrorism is included in your policy. You should know that, effective November 26, 2002, under your existing coverage, any losses caused by certified acts of terrorism would be partially reimbursed by the United States under a formula established by federal law.   Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The portion of your annual premium that is attributable to coverage for acts of terrorism is: $0.00.

You should file this form with your other policy information.



## AMENDATORY CANCELLATION ENDORSEMENT

If this policy is cancelled, we will send you (the first named insured) any premium refund due. If we cancel, the refund will be pro-rata. This means that unearned premium to be returned will be in the same proportion to total policy premium as the remaining policy term (after date of cancellation) bears to the total policy term. Unearned premium will be calculated on a daily basis.

If you cancel, during the policy period, we will return ninety percent (90%) of the pro-rata unearned premium for the remainder of the policy term after the effective date of cancellation. Unearned premium will be calculated on a daily basis. If the return premium is not refunded upon notice of cancellation, the premium will be refunded within a reasonable time after the date the cancellation takes effect. However, making or offering to make the refund is not a condition of cancellation.

**0013**

Form No. 1197 (6/93)

## Policy Amendments > Endorsement

| | |
|---|---|
| State(s): | Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Idaho, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, Wisconsin, Wyoming |
| Status: | Inactive |
| Product: | Commercial Auto |
| Form Number: | MC1632 |
| Type: | Filing Indicator |

This form is an indicator that a state filing is present on the policy. Filings are issued directly to the state.

Last Updated: 01/30/2006

©2004 Progressive Casualty Insurance Company, All rights reserved.

0014

## GEORGIA CHANGES

This endorsement changes the policy. Please read it carefully.

**Part I-Liability to Others-**

Exclusion (1) is amended as follows:
This exclusion does not apply for coverage up to the minumum limit specified by the Georgia Motor Vehicle Safety Responsibility Act.

**Part I-Liability to Others-**

(1) Liability coverage is primary for an auto **you** do not own, if operated by an **insured** and owned by a retail seller of **autos**.

(2) If **you** are a retail seller of **autos**, the insurance is excess for an auto **you** own if operated by an insured other than **you** or **your** employee.

**Part III-Damage to Your Auto is Amended to Add:**

(1) If collision coverage is provided, the collision coverage is primary for an auto **you** don't own if operated by the insured and owned by a retail seller of **autos**.

(2) If **you** are a retail seller of **autos**, the collision insurance is excess for an auto **you** own if operated by an insured other than **you** or **your** employee.

**Cancellation of this Policy**

(1) **You** may cancel this Policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the Policy is to be cancelled, subject to the following:

(a) If only **your** interest is involved, the effective date of cancellation will be either the date **we** received the notice from **you**, or the date specified in the notice, whichever is later.

If **we** receive the notice from **you** we may waive the requirement that the notice state the future date of cancellation by confirming the date and time of cancellation in writing to **you**.

(b) If by statute, regulation or contract, this policy may not be cancelled unless notice is given to a governmental agency, mortgage or third party, we will mail or deliver at least 10 days notice to **you** and the third party as soon as practiable after receiving **your** request for cancellation.

**Our** notice will state the effective date of cancellation which will be later of the following:

(1) 10 days from the date of mailing or delivering **our** notice, or

(2) the effective date of cancellation stated in **your** notice to us

Form No. 9809 (04-96)

CVSE1011962805L9809

**0015**

(2)   We may cancel this policy by mailing or delivering to you written notice of cancellation at least:

    (a)   10 days before the effective date of cancellation if we cancel for non-payment of premium: or

    (b)   45 days before the effective date of cancellation if we cancel for any other reason.

    (c)   We will mail or deliver our notice to your last mailing known to us.

Our notice of cancellation will state the effective date of cancellation. The Policy period will end on that date.

If notice is mailed, a receipt provided by, or other evidence of mailing as required or accepted by the US Postal Service shall be sufficient proof of notice.

## Nonrenewal of this Policy

We may elect not to renew or continue this policy by mailing or delivering to you written notice before the end of the policy period. If we fail to provide notice within 45 days of the policy period, the policy will continue in effect until 30 days from the date of notice.

You will be responsible for any premiums due while the policy is in effect. If we offer or continue and you do not accept, this policy will terminate at end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If we fail to mail or deliver proper notice of nonrenewal and you obtain other insurance this policy will end on the effective date of that insurance.

If notice is mailed, a receipt provided by, or other evidence of mailing as required or accepted by, the US Postal Service shall be sufficient proof of notice.

Form No. 9809 (04-96)

CVSE1011962805L9809

0016

AMENDATORY ENDORSEMENT
(Punitive Damages)

**PART I - LIABILITY TO OTHERS**

The phrase "Other than punitive damages" in this section does not apply to your policy.

All other terms and conditions remain unchanged.

Form No. 8627 (3-88)

CVSE0208962607L8627

**0017**

# EXHIBIT H:

# FIRST REQUEST FOR ADMISSION TO PROGRESSIVE

IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

PROGRESSIVE PREFERRED
INSURANCE COMPANY
     Plaintiff

vs.                            CASE NO. 3:06-CV-00934

JMP ENTERPRISES, INC.;
JOHN MARK PARKER; and
JENNIFER M. GOLDEN
     Defendants

## GOLDEN'S FIRST REQUEST
## FOR ADMISSIONS TO PROGRESSIVE

**INSTRUCTIONS FOR USE:** Pursuant to Rule 36 of the Federal Rules of Civil Procedure, the plaintiff requests the defendants to admit the truth of the following matters. Copies of the exhibits listed below were previously furnished to the defendants' attorneys by the plaintiff's attorney; an additional copy of the exhibits will be furnished to you upon written request.

You are further reminded that Rule 37(c) of the Federal Rules of Civil Procedure provides in part, "If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him reasonable expenses incurred in making that proof, including reasonable attorney's fees."

*Definitions:* The "state court action" refers to that action filed by Jennifer Golden in the Circuit Court of Lee County, Alabama, on or about February 14, 2006, being case number CV-2006-106.

1. Golden's manufactured home, which is the subject of the state court action, was a "trailer"

as that term is defined in the policy.

2. Golden's manufactured home, which is the subject of the state court action, was a "non-

owned attached TRLR" as described in item two of the auto's coverage schedule for the policy while



it was attached to a listed power unit specifically described in paragraphs one and two of the Declaration's Page of the policy.

3. Parker delivered Golden's manufactured home using one of the automobiles described in paragraphs one or three of the Declaration's Page of the policy.

4. Progressive did not provide any notice to John Mark Parker that it was assuming the defense of Golden's state court action before it filed an Answer in such case on Parker's behalf.

**HOWARD, DUNN, HOWARD & HOWARD**
Attorney for Jennifer M. Golden

By: _____
    G. Houston Howard II

Of Counsel:
**G. Houston Howard II (HOW015)**
Howard, Dunn, Howard & Howard
P.O. Box 1148
Wetumpka, Alabama 36092
Telephone: 334-567-4356
Facsimile: 334-567-7080

2

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on:

**R. Larry Bradford**
**Bradford & Sears, P.C.**
**2020 Canyon Road, Suite 100**
**Birmingham, AL 35216**

**John Mark Parker**
**P. O. Box 3501**
**LaGrange, GA 30242**

counsel of record, by placing the same in the U.S. Mail, postage prepaid and properly addressed, on this the _____ day of February, 2007.

Of Counsel

*Doc:Houston\Golden.Jennifer\Progressive\Request.Admissions*

3

# EXHIBIT I:

# PROGRESSIVE'S RESPONSE TO FIRST REQUEST FOR ADMISSION

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

PROGRESSIVE PREFERRED                )
INSURANCE COMPANY,                   )
                                     )
      Plaintiff,                     )
                                     )
v.                                   ) Civil Action Number: 3:06-CV-00934
                                     )
JMP ENTERPRISES, INC.;               )
JOHN MARK PARKER; and                )
JENNIFER M. GOLDEN,                  )
                                     )
      Defendants.                    )

## OBJECTIONS AND RESPONSES TO REQUEST FOR ADMISSIONS BY PLAINTIFF, PROGRESSIVE PREFERRED INSURANCE COMPANY ("PROGRESSIVE")

### GENERAL OBJECTIONS

1.    Progressive objects to any and all requests for admissions to the extent that they are vague, overly broad, unduly burdensome, harassing and/or not calculated to lead to the discovery of relevant or admissible evidence.

2.  Progressive objects to any and all requests for admissions to the extent that they seek information protected from discovery by any privilege, including the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege or immunity.

3.  Progressive objects to any and all requests for admissions to the extent that they seek confidential, financial, or proprietary business information.

4.  Progressive objects to any requests for admissions which are not reasonably limited in time and/or scope.

EXHIBIT
Blumberg No. 6116
I

5. Progressive objects to any and all requests for admissions to the extent that they contain certain key terms which are not defined or that are unreasonably compound, disjunctive, or conjunctive.

These "General Objections" are applicable to and incorporated into each of the plaintiff's responses as if specifically stated therein. The stating of specific objections to a particular request shall not be construed as a waiver of the plaintiff's "General Objections." Unless otherwise specifically stated, Progressive's objections to each request for admissions apply to the entire request, including each and every subsection and/or subpart of the request.

## SPECIFIC OBJECTIONS AND RESPONSES

1.     Progressive admits that Ms. Golden's mobile home is not excluded from the definition of "trailer" in definition 6 of the policy.

2.     Progressive admits that Ms. Golden's mobile home would constitute a non-owned attached trailer while it was attached to a listed tower unit as described in item number 2 of the auto coverage schedule.

3.     Progressive does not have information to admit or deny this request at this time although it assumes that the request is accurate. Progressive bifurcated the liability issues from the coverage issues; thus, the coverage file does not contain any of the depositions in the liability case.

Progressive has requested from the insured's defense counsel copies of the depositions taken in the underlying state court case. Progressive will conditionally admit this request at this time, but reserves the right to file a supplemental response to deny the request (if appropriate) after reviewing the deposition transcripts.

4.      Denied. Progressive's liability adjuster, Jerry Knight, attempted to contact the insureds on two separate occasions before the answer was filed to discuss the claim and to notify the insureds that a defense was being provided.


_R. Larry Bradford_

R. Larry Bradford, Attorney for Plaintiff
Progressive Preferred Insurance Company
Attorney Bar Code: BRA039

OF COUNSEL:

Bradford & Sears, P.C.
2020 Canyon Road
Suite 100
Birmingham, AL 35216

## CERTIFICATE OF SERVICE

I hereby certify that I have this the ___27___ day of March, 2007, served a copy of the foregoing on all attorneys of record by placing a copy of same in the United States Mail, postage prepaid and properly addressed as follows:

G. Houston Howard, Esq.
Howard, Dunn, Howard & Howard
P.O. Box 1148
Wetumpka, Alabama 36092

Mr. John Mark Parker
JMP Enterprises
P.O. Box 3501
LaGrange, Georgia 30242

OF COUNSEL

# EXHIBIT J:

# FIRST REQUEST FOR PRODUCTION TO PROGRESSIVE

IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

PROGRESSIVE PREFERRED
INSURANCE COMPANY
    Plaintiff

vs.                                   CASE NO. 3:06-CV-00934

JMP ENTERPRISES, INC.;
JOHN MARK PARKER; and
JENNIFER M. GOLDEN
    Defendants

## GOLDEN'S FIRST REQUEST FOR
## PRODUCTION OF DOCUMENTS TO PROGRESSIVE

_INSTRUCTIONS FOR USE_:  You are hereby requested to produce the documents listed below for inspection and copying at the offices of HOWARD, DUNN, HOWARD & HOWARD located at 102 South Boundary Street, Wetumpka, Alabama  36092, within the time allowed by law. The documents produced shall be grouped or numbered in accordance with the item numbers listed below. You are further requested to file a written response to this request for production of documents indicating, with respect to each numbered item or category, whether any such documents exist and whether such documents are being produced.

_Definitions:_ The "state court action" refers to that action filed by Jennifer Golden in the Circuit Court of Lee County, Alabama, on or about February 14, 2006, being case number CV-2006-106.

    1. The application for the policy of insurance that is the subject of this case, or if no application was made for this policy, then the application for the most immediate predecessor policy for which an application was made.

    2. All reservation of rights letters issued to John Mark Parker and  JMP Enterprises, Inc.

    3. All reservation of rights agreements with John Mark Parker and JMP Enterprises, Inc.



1

4. All notices provided to John Mark Parker and JMP Enterprises, Inc. that Progressive had or would assume the defense of the state court action.

**HOWARD, DUNN, HOWARD & HOWARD**
Attorney for Jennifer M. Golden

By: _____
      G. Houston Howard II

Of Counsel:
**G. Houston Howard II (HOW015)**
Howard, Dunn, Howard & Howard
P.O. Box 1148
Wetumpka, Alabama 36092
Telephone: 334-567-4356
Facsimile: 334-567-7080

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on:

**R. Larry Bradford**
**Bradford & Sears, P.C.**
**2020 Canyon Road, Suite 100**
**Birmingham, AL 35216**

**John Mark Parker**
**P. O. Box 3501**
**LaGrange, GA 30242**

counsel of record, by placing the same in the U.S. Mail, postage prepaid and properly addressed, on this the _____ day of February, 2007.

_____
Of Counsel

2

# EXHIBIT K:

# PROGRESSIVE'S RESPONSE TO FIRST REQUEST FOR PRODUCTION

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

PROGRESSIVE PREFERRED                )
INSURANCE COMPANY,                   )
                                     )
     Plaintiff,                    )
                                     )
v.                                   ) Civil Action Number: 3:06-CV-00934
                                     )
JMP ENTERPRISES, INC.;               )
JOHN MARK PARKER; and                )
JENNIFER M. GOLDEN,                  )
                                     )
     Defendants.                   )

## OBJECTIONS AND RESPONSES TO REQUEST FOR PRODUCTION BY PLAINTIFF, PROGRESSIVE PREFERRED INSURANCE COMPANY ("PROGRESSIVE")

### GENERAL OBJECTIONS

1.    Progressive objects to any and all requests for production to the extent that they are vague, overly broad, unduly burdensome, harassing and/or not calculated to lead to the discovery of relevant or admissible evidence.

2.  Progressive objects to any and all requests for production to the extent that they seek information protected from discovery by any privilege, including the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege or immunity.

3.  Progressive objects to any and all requests for production to the extent that they seek confidential, financial, or proprietary business information.

4. Progressive objects to any requests for production which are not reasonably limited in time and/or scope.



EXHIBIT

K

5. Progressive objects to any and all requests for production to the extent that they contain certain key terms which are not defined or that are unreasonably compound, disjunctive, or conjunctive.

These "General Objections" are applicable to and incorporated into each of the plaintiff's responses as if specifically stated therein. The stating of specific objections to a particular request shall not be construed as a waiver of the plaintiff's "General Objections." Unless otherwise specifically stated, Progressive's objections to each request for production apply to the entire request, including each and every subsection and/or subpart of the request.

## SPECIFIC OBJECTIONS AND RESPONSES

1.      Progressive does not have a copy of the application because the information is electronically uploaded to Progressive by the agent. However, Progressive has contacted University Agency in Auburn and requested that it furnish it with a copy of the application. Progressive will produce this information when it is received.

2.      A copy of the reservation of rights letter to the insured dated April 27, 2006 is attached.

3.      See response to request number 2. There was no separate nonwaiver agreement.

4.      There were no written notices to the insured concerning Progressive's assumption of the defense. Progressive typically will notify the insured that it is assuming the defense and inform the insured of the name of the defense attorney. Here, Progressive never received notice of claim and apparently did not receive notice of the lawsuit until the default application had already been filed against the insured.

Therefore, Progressive's liability adjuster, Jerry Knight, attempted to contact the insured on two occasions to notify him of the defense of the case. He did not receive a return phone call at that time. Therefore, Mr. Knight contacted defense counsel on or around May 15, 2006 to defend the case and obviously that defense counsel would have had communications with the insureds soon after that date.

R. Larry Bradford, Attorney for Plaintiff
Progressive Preferred Insurance Company
Attorney Bar Code: BRA039

OF COUNSEL:

Bradford & Sears, P.C.
2020 Canyon Road
Suite 100
Birmingham, AL 35216

## CERTIFICATE OF SERVICE

I hereby certify that I have this the _27_ day of March, 2007, served a copy of the foregoing on all attorneys of record by placing a copy of same in the United States Mail, postage prepaid and properly addressed as follows:

G. Houston Howard, Esq.
Howard, Dunn, Howard & Howard
P.O. Box 1148
Wetumpka, Alabama 36092

Mr. John Mark Parker
JMP Enterprises
P.O. Box 3501
LaGrange, Georgia 30242

OF COUNSEL

CERTIFIED MAIL - RETURN RECEIPT REQUESTED

April 27, 2006

JMP Enterprises, Inc.
Attn.: John Parker
P. O. Box 3501
Lagrange, Ga. 30241

| Re: | Claim Number: | 068235992 |
| --- | --- | --- |
| | Date of Loss: | April 27, 2005 |
| | Policy Number: | 08263817-0 |
| | Named Insured: | JMP Enterprises, Inc. |

Dear Mr. Parker:

As you know, the above referenced claim was reported to Progressive Preferred Insurance Company. After initial review, it appears we have a potential coverage problem as this loss doesn't appear to meet the definition of a "accident" under your policy. Please refer to page 5 of your Progressive Policy/Contract #08263817-0 which states:

> 8. "**Accident**" means a sudden, unexpected and unintended event, or a continuous or repeated exposure to that event, that causes **bodily injury** or **property damage** and arises out of the ownership, maintenance or use of **your insured Auto**.

Therefore, it is for the above reason that the handling of this file will be conducted under a Reservation of Rights. No action taken to date, nor any action this company might take in the future to investigate, explore settlement, or defend a lawsuit arising out of the above mentioned claim shall be deemed to be an admission of coverage under Policy No. 08263817-0 issued to JMP Enterprises, Inc.. Progressive expressly reserves all rights of denial under the policy and in no way waives any of our rights. The investigation of this matter has been, and is being conducted, with full and complete reservation of rights afforded us under policy of insurance issued to JMP Enterprises, Inc.

Once we have had an opportunity to complete our investigation into this matter, we will be in touch to advise you of our position with regards to coverage. Should you have any questions for me, please don't hesitate to contact me at (334) 244-4516.

Sincerely,


Jerry Knight
Casualty Specialist
Progressive Preferred Insurance Company

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

7001 0320 0002 5034 2133

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

PS Form 3800, January 2001          See Reverse for Instructions

---

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write *Return Receipt Requested* on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):

1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:

J M P ENTERPRISES, INC.
ATTN : JOHN PARKER
P. O. BOX 3501
LAGRANGE, GA. 30241

4a. Article Number

7001 0320 0002 5034 2133

4b. Service Type
☐ Registered          ☑ Certified
☐ Express Mail        ☐ Insured
☐ Return Receipt for Merchandise   ☐ COD

7. Date of Delivery

6-3-06

5. Received By: (Print Name)

6. Signature: (Addressee or Agent)
X

8. Addressee's Address (Only if requested and fee is paid)

PS Form 3811, December 1994          Domestic Return Receipt

Is your RETURN ADDRESS completed on the reverse side?

Thank you for using Return Receipt Service.

# EXHIBIT L:

# FIRST INTERROGATORIES TO PROGRESSIVE

IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

PROGRESSIVE PREFERRED
INSURANCE COMPANY
     Plaintiff

vs.                             CASE NO. 3:06-CV-00934

JMP ENTERPRISES, INC.;
JOHN MARK PARKER; and
JENNIFER M. GOLDEN
     Defendants

## GOLDEN'S FIRST INTERROGATORIES TO PROGRESSIVE

**_Instructions For Use:_** In answering the following interrogatories, you are required by law to answer each interrogatory separately and fully under oath. You are required to supply all information available to you, including information held by your attorney. If you discover additional information after filing your answers to these interrogatories, you are required by law to supplement your answers.

_Definitions:_ The "state court action" refers to that action filed by Jennifer Golden in the Circuit Court of Lee County, Alabama, on or about February 14, 2006, being case number CV-2006-106.

    1. Identify, by page and section number, each policy provision that you contend excludes coverage for Golden's claims.

    2. State the facts on which you base your contention that the policy provisions identified in response to interrogatory one exclude coverage.



1

3. At any time before you assumed the defense of Golden's state court action against John Mark Parker did you notify John Mark Parker that you were assuming the defense of the state court action?

4. If the answer to the last question is yes, please state the following information:

a.      The date that Parker was notified;

b.      The manner in which Parker was notified, whether orally or in writing;

c.      The name of the person who provided notice to Parker;

d.      The substance of the notification to Parker.

5. Did you ever provide Parker or JMP Enterprises, Inc. with a copy of the policy at any time before the filing of Golden's state court action?

6. If the answer to the last question is yes, please state the following information:

a.      Who provided Parker with the policy;

b.      When Parker was provided with the policy;

c.      Whether the Parker policy was provided by mail, hand delivery, or some other method.

2

7.  Was Golden's mobile home, as described in the state court action, a "trailer" as that term is defined in the policy?

**HOWARD, DUNN, HOWARD & HOWARD**
Attorney for Jennifer M. Golden

By: _____
        G. Houston Howard II

Of Counsel:
**G. Houston Howard II (HOW015)**
Howard, Dunn, Howard & Howard
P.O. Box 1148
Wetumpka, Alabama 36092
Telephone:  334-567-4356
Facsimile:  334-567-7080

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on:

**R. Larry Bradford**
**Bradford & Sears, P.C.**
**2020 Canyon Road, Suite 100**
**Birmingham, AL 35216**

**John Mark Parker**
**P. O. Box 3501**
**LaGrange, GA 30242**

counsel of record, by placing the same in the U.S. Mail, postage prepaid and properly addressed, on this the _____ day of February, 2007.

_____
Of Counsel

*Doc:Houston\Golden.Jennifer\Progressive\First.Interrogatories*

3

# EXHIBIT M:

# PROGRESSIVE'S ANSWERS TO FIRST INTERROGATORIES

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

PROGRESSIVE PREFERRED                )
INSURANCE COMPANY,                   )
                                     )
        Plaintiff,                   )
                                     )
v.                                   ) Civil Action Number: 3:06-CV-00934
                                     )
JMP ENTERPRISES, INC.;               )
JOHN MARK PARKER; and                )
JENNIFER M. GOLDEN,                  )
                                     )
        Defendants.                  )

**OBJECTIONS AND ANSWERS TO INTERROGATORIES BY PLAINTIFF,
PROGRESSIVE PREFERRED INSURANCE COMPANY ("PROGRESSIVE")**

**GENERAL OBJECTIONS**

1.      Progressive objects to any and all interrogatories to the extent that they are vague, overly broad, unduly burdensome, harassing and/or not calculated to lead to the discovery of relevant or admissible evidence.

2.      Progressive objects to any and all interrogatories to the extent that they seek information protected from discovery by any privilege, including the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege or immunity.

3.      Progressive objects to any and all interrogatories to the extent that they seek confidential, financial, or proprietary business information.

4.      Progressive objects to any interrogatories which are not reasonably limited in time and/or scope.



5. Progressive objects to any and all interrogatories to the extent that they contain certain key terms which are not defined or that are unreasonably compound, disjunctive, or conjunctive.

These "General Objections" are applicable to and incorporated into each of the plaintiff's interrogatories as if specifically stated therein. The stating of specific objections to a particular request shall not be construed as a waiver of the plaintiff's "General Objections." Unless otherwise specifically stated, Progressive's objections to each interrogatory apply to the entire request, including each and every subsection and/or subpart of the request.

## SPECIFIC OBJECTIONS AND ANSWERS

1. Progressive issued a commercial auto policy to JMP Enterprises, Inc. The policy number was 08263817-0. The policy form number was 1050(11/94).

The policy provided liability coverage for which an insured is legally liable because of an accident (page 9). The term "accident" was defined in definition 8 to mean a sudden, unexpected and unintended event arising out of the ownership, maintenance or use of your insured auto (page 5).

In turn, the term "your insured auto" was defined in definition 9 to include the auto described on the declarations page. It further included a trailer designed primarily for travel on public roads (pages 5-6).

The policy excluded contractual liability coverage (page 11). It excluded property damage to any property being transported or in the charge of an insured in exclusion 9. It excluded bodily injury or property damage resulting from the loading or unloading of property in exclusion 10 (page 13).

The policy contained a condition which required the insured to notify Progressive as soon as practicable of an accident or loss (page 1). Another condition required the insured to promptly send Progressive any and all legal papers received relating to any claim or lawsuit (page 2).

2.    Discovery is just beginning in this declaratory judgment action and has not been completed in the underlying state court action. However, it appears that any claims against the insured for breach of contract or breach of warranty do not constitute an "accident" and are excluded from liability by the contractual liability exclusion.

Further, it appears that the damages to Ms. Golden's mobile home were not caused by an "accident" as that term is defined in the policy. Damages to the mobile home while being transported or while being loaded or unloaded are excluded from coverage.

Further, it does not appear that the insureds gave Progressive timely notice of the claim or timely notice of the lawsuit. Ms. Golden's mobile home was transported and set-up around April 27, 2005. However, Progressive never received notice of the claim or lawsuit until it received the letter from Ms. Golden's attorney dated April 13, 2006.

3.    Yes, Progressive attempted to notify Mr. Parker that it was assuming the defense of him.

4.      Jerry Knight of Progressive attempted to contact Mr. Parker on April 27, 2006 and again on May 2, 2006 to notify him that Progressive had received notice of the lawsuit. However, it does not appear that Mr. Parker responded to these calls until his wife contacted Progressive on or around June 12, 2006.

5.      Yes.

6.      Progressive's policyholder services department would have automatically mailed the insured a copy of the commercial auto policy when it incepted on August 1, 2004. Mr. Parker would have been sent a copy of the declarations page and an I.D. card at the same time. Further, Mr. Parker would have been provided with a declarations page any time there was an endorsement to the policy.

7.      Ms. Golden's mobile home meets the definition of "trailer" in definition 6 of the policy or, more specifically, that definition does not exclude a mobile home from the scope of the definition.

Progressive Preferred Insurance Company

By: _Barbara Lanham_

Its: _Claims Rep_

Sworn to and subscribed before me this the _3_ day of May, 2007.

_Allen Olsen_
Notary Public
NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: July 12, 2009
BONDED THRU NOTARY PUBLIC UNDERWRITERS

_Rawly Bradford_

R. Larry Bradford, Attorney for Plaintiff
Progressive Preferred Insurance Company
Attorney Bar Code: BRA039

OF COUNSEL:

Bradford & Sears, P.C.
2020 Canyon Road
Suite 100
Birmingham, AL 35216

## CERTIFICATE OF SERVICE

I hereby certify that I have this the _10_ day of May, 2007, served a copy of the foregoing on all attorneys of record by placing a copy of same in the United States Mail, postage prepaid and properly addressed as follows:

G. Houston Howard, Esq.
Howard, Dunn, Howard & Howard
P.O. Box 1148
Wetumpka, Alabama 36092

Mr. John Mark Parker
JMP Enterprises
P.O. Box 3501
LaGrange, Georgia 30242

_Rawly Bradford_

OF COUNSEL

# EXHIBIT N:

## SECOND REQUEST FOR ADMISSION TO PROGRESSIVE

IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

PROGRESSIVE PREFERRED
INSURANCE COMPANY
     Plaintiff

vs.                                    CASE NO. 3:06-CV-00934

JMP ENTERPRISES, INC.;
JOHN MARK PARKER; and
JENNIFER M. GOLDEN
     Defendants

## GOLDEN'S SECOND REQUEST
## FOR ADMISSIONS TO PROGRESSIVE

**INSTRUCTIONS FOR USE**: Pursuant to Rule 36 of the Federal Rules of Civil Procedure, the plaintiff requests the defendants to admit the truth of the following matters. Copies of the exhibits listed below were previously furnished to the defendants' attorneys by the plaintiff's attorney; an additional copy of the exhibits will be furnished to you upon written request.

     You are further reminded that Rule 37(c) of the Federal Rules of Civil Procedure provides in part, "If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him reasonable expenses incurred in making that proof, including reasonable attorney's fees."

*Definitions:* The "state court action" refers to that action filed by Jennifer Golden in the Circuit Court of Lee County, Alabama, on or about February 14, 2006, being case number CV-2006-106.

     5. The plaintiff Progressive authorized the firm of Nix Holtsford Gilliland Higgins & Hitson, P.C. to file the Answer attached hereto as defendants' exhibit 10 to Golden's state court action.

     6. At the time that Nix Holtsford Gilliland Higgins & Hitson, P.C. filed the Answer attached as exhibit 10, Progressive had not orally told John Mark Parker or any agent, servant, or employee of JMP Enterprises, Inc. that it was assuming the defense of the state court action.

1



7. At the time Nix Holtsford Gilliland Higgins & Hitson, P.C. filed the Answer attached hereto as defendants' exhibit 10, Progressive had not mailed any letter to John Mark Parker or JMP Enterprises, Inc. that stated that Progressive was assuming the defense of the state court action.

8. At the time Nix Holtsford Gilliland Higgins & Hitson, P.C. filed the Answer marked as defendants' exhibit 10 to the state court action, no agent, servant, employee or attorney of Progressive had talked to John Mark Parker about Golden's state court action or the possibility of Progressive defending that action.

9. At the time Nix Holtsford Gillian Higgins and Hitson, P.C. filed the Answer marked as defendants' exhibit 10 to the state court action, no agent, servant, employee or attorney of Progressive had talked to JMP Enterprises, Inc. or any of its agents, servants, or employees about Golden's state court action or the possibility of Progressive defending that action.

**HOWARD, DUNN, HOWARD & HOWARD**
Attorney for Jennifer M. Golden

By: _____
    G. Houston Howard II


Of Counsel:
**G. Houston Howard II (HOW015)**
Howard, Dunn, Howard & Howard
P.O. Box 1148
Wetumpka, Alabama 36092
Telephone:  334-567-4356
Facsimile:  334-567-7080

2

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on:

**R. Larry Bradford**
**Bradford & Sears, P.C.**
**2020 Canyon Road, Suite 100**
**Birmingham, AL 35216**

**John Mark Parker**
**P. O. Box 3501**
**LaGrange, GA 30242**

counsel of record, by placing the same in the U.S. Mail, postage prepaid and properly addressed, on this the _27_ day of May, 2007.

_____
Of Counsel

*Doc:Houston\Golden.Jennifer\Progressive\Request.SecondAdmissions*

3

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

JENNIFER M. GOLDEN,

    Plaintiff,

vs.

DEER VALLEY HOMEBUILDERS,
INC., A Corporation; TIMBERLINE
HOMES, INC., A Corporation; And
JOHN MARK PARKER, An
Individual,

    Defendants.

CIVIL ACTION NO.: CV-06-106

## ANSWER TO COMPLAINT

COMES NOW Defendant John Mark Parker, by and through the undersigned

attorney, and for answer to the Complaint, says as follows:

1.    No answer is required of this Defendant as to Count I of the Complaint.

    However, any allegations therein against this Defendant are hereby denied.

2.    No answer is required of this Defendant as to Count II of the Complaint.

    However, any allegations therein against this Defendant are hereby denied.

3.    No answer is required of this Defendant as to Count III of the Complaint.

    However, any allegations therein against this Defendant are hereby denied.

4.    No answer is required of this Defendant as to Count IV of the Complaint.

    However, any allegations therein against this Defendant are hereby denied.

5.    No answer is required of this Defendant as to Count V of the Complaint.

    However, any allegations therein against this Defendant are hereby denied.



DEFENDANT'S
EXHIBIT
10

6.    No answer is required of this Defendant as to Count VI of the Complaint. However, any allegations therein against this Defendant are hereby denied.

7.    No answer is required of this Defendant as to Count VII of the Complaint. However, any allegations therein against this Defendant are hereby denied.

8.    No answer is required of this Defendant as to Count VIII of the Complaint. However, any allegations therein against this Defendant are hereby denied.

9.    No answer is required of this Defendant as to Count IX of the Complaint. However, any allegations therein against this Defendant are hereby denied.

10.    No answer is required of this Defendant as to Count X of the Complaint. However, any allegations therein against this Defendant are hereby denied.

11.    No answer is required of this Defendant as to Count XI of the Complaint. However, any allegations therein against this Defendant are hereby denied.

12.    This Defendant denies all material allegations of Count XII of the Complaint and demands strict proof thereof.

13.    This Defendant denies all material allegations of Count XIII of the Complaint and demands strict proof thereof.

14.    This Defendant denies all material allegations of Count XIV of the Complaint and demands strict proof thereof.

15.    This Defendant denies all material allegations of Count XV of the Complaint and demands strict proof thereof.

16.   This Defendant is not aware of the person named in the Complaint as Gerald Mark Parker, and any allegations against a person by the name of Gerald Mark Parker are unknown to this Defendant.

17.   This Defendant affirmatively avers that arbitration may be proper for this case, and this Defendant hereby asserts the right to arbitration and preserves any claim for relief by arbitration in this case.

18.   This Defendant affirmatively avers intervening or superseding causation.

19.   This Defendant affirmatively avers contributory negligence.

20.   This Defendant adopts in full all defenses raised by or available to the Co-Defendants as if set for th in full herein.

21.   This Defendant reserves the right to supplement this answer in the future.

22.   This Defendant pleads improper venue.

23.   This Defendant pleads lack of jurisdiction.

24.   This Defendant pleads the general issue.

_____

ALEX L. HOLTSFORD, JR. (HOL048)
Attorney For Defendant

OF COUNSEL:
NIX HOLTSFORD GILLILAND
   HIGGINS & HITSON, P.C.
Post Office Box 4128
Montgomery, Alabama 36103-4128
Telephone:       (334) 215-8585
Facsimile:        (334) 215-7101

Page 3 of 4

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day mailed, postage prepaid, an exact copy of the foregoing document to:

G. Houston Howard, II (Via-Facsimile Transmission-567-7080)
Attorney For Plaintiff
HOWARD, DUNN, HOWARD & HOWARD
Post Office Box 1148
Wetumpka, Alabama 36092

Robert Scott Hunt
HAMMITTE & HUNT
Post Office Box 397
Hamilton, Alabama 35570

Joel A. Williams
SADLER SULLIVAN, P.C.
Suite 2500
420 N. 20th Street
Birmingham, Alabama 35203-5203

This the 17th day of May, 2006.

_____
OF COUNSEL

# EXHIBIT O:

# PROGRESSIVE'S RESPONSE TO SECOND REQUEST FOR ADMISSION

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

PROGRESSIVE PREFERRED )
INSURANCE COMPANY, )
)
      Plaintiff, )
)
v. ) Civil Action Number: 3:06-CV-00934
)
JMP ENTERPRISES, INC.; )
JOHN MARK PARKER; and )
JENNIFER M. GOLDEN, )
)
      Defendants. )

### OBJECTIONS AND RESPONSES TO JENNIFER GOLDEN'S SECOND REQUESTS FOR ADMISSION BY PLAINTIFF, PROGRESSIVE PREFERRED INSURANCE COMPANY ("PROGRESSIVE")

Comes now the defendant, Progressive Preferred Insurance Company ("Progressive"),

pursuant to Rule 36 of the Federal Rules of Civil Procedure, and objects to Jennifer Golden's

("Golden") second requests for admission as follows:

### GENERAL OBJECTIONS

1.     Progressive objects to any and all requests for admission to the extent that they

are vague, overly broad, unduly burdensome, harassing and/or not calculated to lead to the

discovery of relevant or admissible evidence.

2.     Progressive objects to any and all requests for admission to the extent that they

seek information protected from discovery by any privilege, including the attorney-client

privilege, the attorney work-product doctrine or any other applicable privilege or immunity.


EXHIBIT
O

3.     Progressive objects to any and all requests for admission to the extent that they seek confidential, financial, or proprietary business information.

4.     Progressive objects to any requests for admission which are not reasonably limited in time and/or scope.

5.     Progressive objects to any and all requests for admission to the extent that they contain certain key terms which are not defined or that are unreasonably compound, disjunctive, or conjunctive.

These "General Objections" are applicable to and incorporated into each of the plaintiff's responses as if specifically stated therein. The stating of specific objections to a particular request shall not be construed as a waiver of the plaintiff's "General Objections." Unless otherwise specifically stated, Progressive's objections to each request for admission apply to the entire request, including each and every subsection and/or subpart of the request.

## SPECIFIC OBJECTIONS AND RESPONSES

5.     Admit.

6.     Deny.

7.     Deny.

8.     Deny.

9.     Deny.

R. Larry Bradford, Attorney for Plaintiff,
Progressive Preferred Insurance Company
Attorney Bar Code: BRA039

Shane T. Sears, Attorney for Plaintiff,
Progressive Preferred Insurance Company
Attorney Bar Code: SEA026

OF COUNSEL:

Bradford & Sears, P.C.
2020 Canyon Road
Suite 100
Birmingham, AL 35216

## CERTIFICATE OF SERVICE

I hereby certify that I have this the 25th day of June, 2007, served a copy of the foregoing on all attorneys of record by placing a copy of same in the United States Mail, postage prepaid and properly addressed as follows:

G. Houston Howard, Esq.
Howard, Dunn, Howard & Howard
P.O. Box 1148
Wetumpka, Alabama 36092

Mr. John Mark Parker
JMP Enterprises
P.O. Box 3501
LaGrange, Georgia 30242

OF COUNSEL

# EXHIBIT P:

## THIRD REQUEST FOR ADMISSIONS TO PROGRESSIVE

IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

PROGRESSIVE PREFERRED
INSURANCE COMPANY
     Plaintiff

vs.                                           CASE NO. 3:06-CV-00934

JMP ENTERPRISES, INC.;
JOHN MARK PARKER; and
JENNIFER M. GOLDEN
     Defendants

## GOLDEN'S THIRD REQUEST
## FOR ADMISSIONS TO PROGRESSIVE

**INSTRUCTIONS FOR USE**:  Pursuant to Rule 36 of the Federal Rules of Civil Procedure, the plaintiff requests the defendants to admit the truth of the following matters. Copies of the exhibits listed below were previously furnished to the defendants' attorneys by the plaintiff's attorney; an additional copy of the exhibits will be furnished to you upon written request.

     You are further reminded that Rule 37(c) of the Federal Rules of Civil Procedure provides in part, "If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him reasonable expenses incurred in making that proof, including reasonable attorney's fees."

*Definitions:* The "state court action" refers to that action filed by Jennifer Golden in the Circuit Court of Lee County, Alabama, on or about February 14, 2006, being case number CV-2006-106.

     10.  When Progressive sold JMP the policy that it is the subject of this action, it knew that Parker and JMP were in the business of delivering and installing manufactured homes that JMP and Parker did not own.

     11.  When Progressive sold JMP the policy that is the subject of this action, it knew that the vehicles listed in paragraphs one and three on the schedule of covered automobiles where used to deliver manufactured homes that neither Parker nor JMP owned.



12. Prior to the filing of this action, Progressive never told or informed Parker or JMP, either orally or in writing, of any specific defense to coverage other than that Golden's damages did not arise from an accident, as stated in Progressive's letter of April 26, 2007.

13. Progressive never told or informed Parker or JMP, either orally or in writing, that Progressive had received inadequate notice of the alleged accident or Golden's claims until Progressive filed its Motion to Amend Complaint in this action on March 27, 2007.

14. Progressive never told or informed Parker or JMP, either orally or in writing that Progressive had received inadequate notice of Golden's suit until it filed its Motion to Amend Complaint in this action on March 27, 2007.

**HOWARD, DUNN, HOWARD & HOWARD**
Attorney for Jennifer M. Golden

By: _____
    G. Houston Howard II

Of Counsel:
**G. Houston Howard II (HOW015)**
Howard, Dunn, Howard & Howard
P.O. Box 1148
Wetumpka, Alabama 36092
Telephone: 334-567-4356
Facsimile: 334-567-7080

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on:

**R. Larry Bradford**
**Bradford & Sears, P.C.**
**2020 Canyon Road, Suite 100**
**Birmingham, AL 35216**

**John Mark Parker**
**P. O. Box 3501**
**LaGrange, GA 30242**

counsel of record, by placing the same in the U.S. Mail, postage prepaid and properly addressed, on this the ____5____ day of June, 2007.

_____
Of Counsel

*Doc:Houston\Golden.Jennifer\Progressive\Admissions.NewRequest*

# EXHIBIT Q:

# PROGRESSIVE'S RESPONSE TO THIRD REQUEST FOR ADMISSION

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

PROGRESSIVE PREFERRED    )
INSURANCE COMPANY,     )
              )
   Plaintiff,       )
              )
v.           ) Civil Action Number: 3:06-CV-00934
              )
JMP ENTERPRISES, INC.;    )
JOHN MARK PARKER; and    )
JENNIFER M. GOLDEN,     )
              )
   Defendants.      )

## OBJECTIONS AND RESPONSES TO JENNIFER GOLDEN'S THIRD REQUESTS FOR ADMISSIONS BY PLAINTIFF, PROGRESSIVE PREFERRED INSURANCE COMPANY ("PROGRESSIVE")

Comes now the defendant, Progressive Preferred Insurance Company ("Progressive"), pursuant to Rule 36 of the Federal Rules of Civil Procedure, and objects to Jennifer Golden's ("Golden") third requests for admissions as follows:

### GENERAL OBJECTIONS

1. Progressive objects to any and all requests for admission to the extent that they are vague, overly broad, unduly burdensome, harassing and/or not calculated to lead to the discovery of relevant or admissible evidence.

2. Progressive objects to any and all requests for admission to the extent that they seek information protected from discovery by any privilege, including the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege or immunity.



EXHIBIT

Q

3.     Progressive objects to any and all requests for admission to the extent that they seek confidential, financial, or proprietary business information.

4.     Progressive objects to any requests for admission which are not reasonably limited in time and/or scope.

5.     Progressive objects to any and all requests for admission to the extent that they contain certain key terms which are not defined or that are unreasonably compound, disjunctive, or conjunctive.

These "General Objections" are applicable to and incorporated into each of the plaintiff's responses as if specifically stated therein. The stating of specific objections to a particular request shall not be construed as a waiver of the plaintiff's "General Objections." Unless otherwise specifically stated, Progressive's objections to each request for admission apply to the entire request, including each and every subsection and/or subpart of the request.

## SPECIFIC OBJECTIONS AND RESPONSES

10.     Admit.

11.     Admit.

12.     Deny.

13.     Admit.

14.     Admit.


_____
R. Larry Bradford, Attorney for Plaintiff,
Progressive Preferred Insurance Company
Attorney Bar Code: BRA039

OF COUNSEL:

Bradford & Sears, P.C.
2020 Canyon Road
Suite 100
Birmingham, AL 35216

## CERTIFICATE OF SERVICE

I hereby certify that I have this the **27** day of June, 2007, served a copy of the foregoing on all attorneys of record by placing a copy of same in the United States Mail, postage prepaid and properly addressed as follows:

G. Houston Howard, Esq.
Howard, Dunn, Howard & Howard
P.O. Box 1148
Wetumpka, Alabama 36092

Mr. John Mark Parker
JMP Enterprises
P.O. Box 3501
LaGrange, Georgia 30242

OF COUNSEL

**EXHIBIT R:**

**EXCERPTS FOR 2005 REGULATIONS OF ALABAMA MANUFACTURED HOUSING COMMISSION**

# ALABAMA MANUFACTURED HOUSING COMMISSION

## STATUTORY LAW

### 2005 EDITION

## INCLUDING
## RULES AND REGULATIONS





EXHIBIT
R

RULES AND REGULATIONS

## CHAPTER 535-X-12
## CERTIFICATION OF INSTALLATION PERSONNEL

### TABLE OF CONTENTS

535-X-12-.01    Purpose
535-X-12-.02    Definitions
535-X-12-.03    Certification
535-X-12-.04    Installation of Manufactured Homes or Manufactured Buildings
535-X-12-.05    Reporting Requirements
535-X-12-.06    Requirements of Manufacturer's Plans or Engineer's Plans
535-X-12-.07    Inspection of Installation
535-X-12-.08    Penalties and Appeals

**535-X-12-.01    Purpose**

For the health, safety, and welfare of people who utilize manufactured homes and/or buildings (modulars), all manufactured homes, new or used, shall be installed by a person duly certified by the Commission to make said installation. All manufactured buildings, new or used, shall also be installed by a person duly certified by the Commission to make said installation.

Author:  Jim Sloan

Statutory Authority:  **Code of Alabama, 1975, §§** 24-4A-3, 24-5-31, 24-5-32, 24-6-4.

History of Rule: Filed February 6, 1990. **Amended:** Filed June 24, 1993; Effective July 29, 1993. **Amended:** Filed July 27, 2000; effective October 1, 2000.

**535-X-12-.02    Definitions**

As used in this chapter, the following terms shall have the meanings ascribed to them by this section:

(1)    Approved Installation Plans – Plans which conform to the recognized codes and regulatory requirements of the Commission and which provide for (1) the assembly of a manufactured home or manufactured building or the components of a manufactured home or manufactured building on site, and (2) the process of affixing a manufactured home or manufactured building to land, a foundation, footing, or an existing building and service connections which are a part thereof.

(2)    Certified Installer – A person, firm or corporation certified by the Commission to install a manufactured home or manufactured building.

(3)    Transporter/Carrier/Mover – A person or business who transports, hauls or moves a manufactured home or manufactured building.

(4)    Commission – The Administrator, an Advisory Board and other staff and personnel.

RULES AND REGULATIONS

(5)   Installation – The locating, setting up, siting, installing, tying down, anchoring, or placing a manufactured home or manufactured building on the lot or site of installation. Any person and/or business who pulls and drops a manufactured home or manufactured building for final site delivery/installation shall notify the Commission of the exact location by certified mail or fax within 72 hours. To eliminate questions and concerns about whether a carrier installed a home or building, the carrier will be required to furnish, upon a request from the Commission, a signed and witnessed statement from the owner of the home or building that the carrier did not participate or contribute in any manner to the installation of the home or building. Carriers will only be allowed to block said units for the sole purpose of removing wheels and axles from the home or building. Any further blocking of the home or building by the carrier will be considered as an installation of the unit. The connection of gas, electrical, central heat and air conditioning, sewer, and water services shall be connected by licensed and/or certified contractors who are otherwise regulated by law.

(6)   Manufactured Building – See §24-4A-2

(7)   Manufactured Home – Any residential dwelling unit constructed to standards and codes as promulgate by the United States Department of Housing and Urban Development.

(8)   Modular Home – A manufactured building built and inspected in accordance with a national building code and in compliance with the provisions of **Code of Alabama,** 1975, Title 24, Chapter 4A.

Author: Jim Sloan

Statutory Authority:  **Code of Alabama,** 1975, §§ 24-4A-3, 24-5-31, 24-5-32, 24-6-4.

History of Rule:  Filed February 6, 1990. **Amended:** Filed June 24, 1993; Effective July 29, 1993. **Amended:** Filed July 27, 2000; effective October 1, 2000. **Amended:** Filed May 20, 2003; effective August 13, 2003; operative January 1, 2004.

**535-X-12-.03    Certification**

(1)   In addition to being registered or licensed with the Public Service Commission as a carrier, transporters of manufactured homes or manufactured buildings who are not under written contract with a licensed manufacturer or licensed retailer must be a certified installer with the Alabama Manufactured Housing Commission.

(2)   Each applicant for certification as an installer must complete the Commission application form and submit it to the Commission for approval along with a certification fee.

(3)   Each applicant shall satisfactorily complete an installer's course conducted by the Commission and pass a written or oral test prior to being issued a certification to install manufactured homes or manufactured buildings (modulars). The Commission will offer the course on various dates during the year at locations throughout the state. Each applicant, once certified, may thereafter renew their certification with Commission approval and the payment of an annual certification fee.

(4)   To be a certified installer a person, firm or corporation must maintain a minimum of one driver/installer who possesses a current Certificate of Training from the Alabama Manufactured Housing Commission.

48

RULES AND REGULATIONS

(5)    Each certified installer shall be required to satisfactorily complete a refresher course on installation every two years after completion of the initial course.

(6)    Failure to satisfactorily complete, in a timely manner, any of the installer courses described herein may result in the revocation of an installer's certification.

Author: Jim Sloan

Statutory Authority: **Code of Alabama**, 1975, §§ 24-4A-3, 24-4A-4, and 24-6-4.

History of Rule:    Filed February 6, 1990. **Amended:** Filed June 24, 1993; effective July 29, 1993. **Amended:** Filed July 27, 2000; effective October 1, 2000. **Amended:** Filed May 20, 2003; effective August 13, 2003; operative January 1, 2004.

**535-X-12-.04    Installation of Manufactured Homes or Manufactured Buildings**

(1)    No manufactured home or manufactured building shall be installed within this state unless such installation is done by a certified installer in accordance with the manufacturer's approved installation plan or the Commission's minimum standards. An officer or employee of the business who possesses a current certificate of training from the Commission must be present during the entire installation process. The owner or purchaser of a manufactured home or manufactured building is not allowed to install said home or building unless the owner or purchaser is a certified installer. If the manufacturer's plans are unavailable for installation, then the home must be installed according to minimum standards as established by the Commission or according to installation plans drawn and approved by a registered engineer.

(2)    All ground anchors and tiedown devices must be installed according to the anchor manufacturer's installation instructions for their respective ground anchors and tiedown devices. No ground anchor or tiedown device shall be used to anchor a manufactured home or manufactured building to the ground unless that ground anchor or tiedown device has received the Commission's approval. All manufacturers of ground anchors and tiedown devices must meet the Commission's requirements regarding anchor and tiedown manufacture and installation.

(3)    All installers shall purchase installation decals from the Commission and place said decal on each home or building so installed. This decal shall denote the date of installation and the name and certification number of the installer. Decal must be placed on the home or building immediately upon site location and prior to installation. Installation decals shall not be transferred. They must be used by the certified installer who purchased them.

(4)    No person, retailer, or manufacturer shall employ any person, firm, or corporation as an installer who is not certified as required by this Section. Violation of this section may be punished by the imposition of a fine against the violator in the amount of not more than $500.00 for each home installed by an uncertified installer. Appeal of a decision pursuant to this paragraph shall be according to the appeal provisions of Section 8 of this Chapter.

(5)    Manufactured homes that do not have a HUD label indicating federal construction and safety standards were met during construction shall not be relocated from another state into Alabama to be used as a dwelling unit, unless the home was

49

RULES AND REGULATIONS

a trade-in to a retailer licensed with the Alabama Manufactured Housing Commission.

(6)  Fire separation requirements contained in Paragraph 4-2.1 of NFPA 501A must be complied with when installing a manufactured home or manufactured building.

(7)  Transporters must have the proper number of escorts and individuals accompany them to aid in the safe transport of the home or building to its destination.

(8)  The transporter and/or business with which the transporter is employed will be responsible for all damages to the home or building while it is in the care, custody and/or control of said transporter.

(9)  Any home or building abandoned on a highway, parking lot or other location during a move shall be the sole responsibility of the transporter and/or the business with which the transporter is employed.

Author:  Jim Sloan

Statutory Authority:  **Code of Alabama**, 1975, §§ 24-4A-3, 24-4A-4, 24-5-31, 24-5-32, 24-6-4.

History of Rule:  Filed February 6, 1990. **Amended:** Filed June 24, 1993; effective July 29, 1993. **Amended:** Filed July 27, 2000; effective October 1, 2000. **Amended:** Filed May 20, 2003; effective August 13, 2003; operative January 1, 2004.

**535-X-12-.05    Reporting Requirements**

(1)  All installers shall complete a monthly installation report on a form provided by the Commission and file it with the Commission no later than the tenth day of the month denoting the previous month's installations. This report shall include the name of the installer, the name and the address of the owners of the home (and location of home if different), and the name of the person or persons who hired the installer.

(2)  The installation report shall also include an affidavit stating that the installer has installed said home in accordance with the manufacturer's plans or the minimum Commission standards, or plans drawn and approved by a registered engineer which are in accordance with minimum Commission standards. If a home is installed in accordance with plans provided by an engineer, a copy of those plans must be attached to the report.

Author:  Jim Sloan

Statutory Authority:  **Code of Alabama**, 1975, §§ 24-4A-3, 24-5-31, 24-5-32, 24-6-4.

History of Rule:  Filed February 6, 1990. **Amended:** Filed June 24, 1993; effective July 29, 1993. **Amended:** Filed July 27, 2000; effective October 1, 2000.

**535-X-12-.06    Requirements of Manufacturer's Plans or Engineer's Plans**

(1)  The manufacturer's installation manual must be approved and certified by the manufacturer's DAPIA or a third party agency approved by the Commission.

(2)  Manufacturers are required to furnish to the Commission their approved copy of a set-up manual for each model produced that is sold or set up within the State of Alabama.

50

RULES AND REGULATIONS

(3)   Each manufacturer's DAPIA or third party inspector must certify that each manual meets the State and Federal requirements for installation of the home.

Author:  Jim Sloan

Statutory Authority:  **Code of Alabama,** 1975, §§ 24-4A-3, 24-5-31, 24-5-32, 24-6-4.

History of Rule:  Filed February 6, 1990. **Amended:** Filed June 24, 1993; effective July 29, 1993. **Amended:** Filed July 27, 2000; effective October 1, 2000.

### 535-X-12-.07     Inspection of Installation

The Commission may inspect, or cause to be inspected, the installation of all manufactured homes or manufactured buildings. The Commission shall prepare a written report of its inspection.

Author:  Jim Sloan

Statutory Authority:  **Code of Alabama,** 1975, §§ 24-4A-3, 24-5-31, 24-5-32, 24-6-4.

History of Rule:  Filed February 6, 1990. **Amended:** Filed June 24, 1993; effective July 29, 1993. **Amended:** Filed July 27, 2000; effective October 1, 2000.

### 535-X-12-.08     Penalties and Appeals

(1)   The Commission may deny or revoke certification or re-certification, or impose a fine in an amount not to exceed $500.00 for each violation, for failure to maintain certification requirements, for improper installations, for failure to meet Commission reporting requirements, or for such other reasons as the Commission may determine from time to time which may affect the public health, safety or welfare.

(2)   Each applicant who has been refused certification or re-certification, has been assessed a fine, or has had his certification revoked by the Commission's Administrator may appeal the decision by filing a request for a hearing in writing with the Commission at its office within ten days from receipt of the adverse notice. The Commission shall then notify the person within ten days from receipt of the notice of the date, time, and place of the hearing, which hearing shall not be more than 30 days from the date of the request for hearing. The hearing shall afford the applicant an opportunity to be heard. The Commission's Administrator or designee and the applicant will be allowed to present evidence. The applicant may be represented by a person of his or her own choosing. The hearing officer shall issue a written decision within ten days of the conclusion of the hearing.

Author:  Jim Sloan

Statutory Authority:  **Code of Alabama,** 1975, §§ 24-4A-3, 24-5-31, 24-5-32, 24-6-4.

History of Rule:  Filed February 6, 1990. **Amended:** Filed June 24, 1993; effective July 29, 1993. **Amended:** Filed July 27, 2000; effective October 1, 2000.

51

# EXHIBIT S:

# NOTIFICATION OF SERVICE OF COMPLAINT ON JOHN MARK PARKER

AVSO702

ALABAMA JUDICIAL DATA CENTER
LEE     COUNTY
SERVICE NOTICE

CV 2006 000106.00
JOHN V. DENSON II

-----------------------------------------------------------------

IN THE CIRCUIT COURT OF     LEE          COUNTY

JENNIFER M GOLDEN   VS   DEER VALLEY HOMEBUILDERS, INC; TIMBERLINE HOMES D003

HOWARD G HOUSTON II                    CASE NUMBER: CV 2006 000106 00
P.O. BOX 1148                          PARTY NUMBER:C001

WETUMPKA  AL   36092

YOUR ATTORNEY CODE IS HOW015

THE SUMMONS AND COMPLAINT                WAS SERVED ON PARKER JOHN MARK
ON 02/23/2006 BY: CERTIFIED MAIL.

DATE:03/01/2006   CLERK:CORINNE T. HURST
                          2311 GATEWAY DRIVE RM 104
                          OPELIKA   AL   36801-6847
                          (334)737-3526

-----------------------------------------------------------------
OPERATOR: STM
PREPARED: 03/01/2006

EXHIBIT
Blumberg No. 5119
S

**EXHIBIT T:**

**LETTER DATED APRIL 13, 2006, FROM G. HOUSTON HOWARD II TO PROGRESSIVE**

HOWARD, DUNN, HOWARD AND HOWARD
ATTORNEYS AT LAW
POST OFFICE BOX 1148
WETUMPKA, ALABAMA 36092

G. HOUSTON HOWARD II
KEITH A. HOWARD

RETIRED
GEORGE P. HOWARD
WILLIAM B. DUNN

102 SOUTH BOUNDARY STREET
WETUMPKA, ALABAMA 36092

TELEPHONE (334) 567-4356
FAX (334) 567-7080
TAX I.D.# 63-0441630

April 13, 2006

**VIA CERTIFIED MAIL**

Progressive Insurance
Corporate Headquarters
The Progressive Corporation
6300 Wilson Mills Road
Mayfield Village, Ohio 44143

Re:    Jennifer Golden v. John Mark Parker
       Circuit Court of Lee County
       CV-2006-106

Dear Gentlemen:

Please find enclosed the Complaint, Interrogatories, and Request for Production of Documents that we filed in the above case on February 14, 3006. The records of the Alabama Manufactured Housing Commission reflect that you were or may be the general liability insurer for John Mark Parker at the time of the events described in the Complaint.

The records of the Circuit Clerk's Office in Lee County reflect that John Mark Parker, was served with our Complaint and discovery on February 23, 2006, and that he has failed to file a response.

Please be advised that unless a response is filed in court, and served on us, within thirty days of this date, we will ask the court to enter a default judgment against your insured. Upon receipt of such judgment, we will take appropriate action to collect that judgment from you under the terms of your liability policy.

This notice is being provided to you pursuant to the procedure authorized in *Safeway Insurance Company v. Thompson*, 688 So. 2d 271 (Ala. Civ. App. 1996), and *Webb v. Zurich Insurance Company*, 200 F.3d 759 n.1 (11th Cir. 2000). If we do not receive a pleading from you or your attorney within thirty days of this date, we may apply for entry of a default against your insured without further notice to you.

Yours very truly,

G. Houston Howard II
**FOR HOWARD, DUNN, HOWARD & HOWARD**
GHH/jkb

**EXHIBIT**
1

U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

Re: Jennifer Golden

| Postage | $ | 2.31 |
| Certified Fee | | 2.40 |
| Return Receipt Fee (Endorsement Required) | | 1.85 |
| Restricted Delivery Fee (Endorsement Required) | | 0 |
| Total Postage & Fees | $ | 6.56 |

Postmark
Here

Sent To
Progressive Insurance
Street, Apt. No.; or PO Box No.
6300 Wilson Mills Rd
City, State, ZIP+4
Mayfield Village Ohio 44143

PS Form 3800, June 2002                    See Reverse for Instructions

7004 2510 0007 1464 1422

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Progressive Insurance
Corporate Headquarters
The Progressive Corporation
6300 Wilson Mills Road
Mayfield Village, Ohio 44143

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                            ☐ Agent
                                             ☐ Addressee
B. Received by ( Printed Name)      C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail      ☐ Express Mail
   ☐ Registered          ☒ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)              ☐ Yes

2. Article Number
   (Transfer from service label)      7004 2510 0007 1464 1422

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

# EXHIBIT U:

# LETTER DATED APRIL 27, 2006, FROM PROGRESSIVE TO JMP ENTERPRISES, INC.

CERTIFIED MAIL - RETURN RECEIPT REQUESTED

April 27, 2006

JMP Enterprises, Inc.
Attn.: John Parker
P. O. Box 3501
Lagrange, Ga. 30241

Re:    Claim Number:           068235992
       Date of Loss:           April 27, 2005
       Policy Number:          08263817-0
       Named Insured:          JMP Enterprises, Inc.

Dear Mr. Parker:

As you know, the above referenced claim was reported to Progressive Preferred Insurance
Company. After initial review, it appears we have a potential coverage problem as this loss
doesn't appear to meet the definition of a "accident" under your policy. Please refer to page 5 of
your Progressive Policy/Contract #08263817-0 which states:

> 8. "Accident" means a sudden, unexpected and unintended event, or a continuous
> or repeated exposure to that event, that causes **bodily injury** or **property
> damage** and arises out of the ownership, maintenance or use of **your insured
> Auto.**

Therefore, it is for the above reason that the handling of this file will be conducted under a
Reservation of Rights. No action taken to date, nor any action this company might take in the
future to investigate, explore settlement, or defend a lawsuit arising out of the above mentioned
claim shall be deemed to be an admission of coverage under Policy No. 08263817-0 issued to
JMP Enterprises, Inc.. Progressive expressly reserves all rights of denial under the policy and in
no way waives any of our rights. The investigation of this matter has been, and is being
conducted, with full and complete reservation of rights afforded us under policy of insurance
issued to JMP Enterprises, Inc.

Once we have had an opportunity to complete our investigation into this matter, we will be in
touch to advise you of our position with regards to coverage. Should you have any questions for
me, please don't hesitate to contact me at (334) 244-4516.



EXHIBIT

4

**PROGRESSIVE**

Sincerely,


Jerry Knight
Casualty Specialist
Progressive Preferred Insurance Company

# EXHIBIT V:

# MOTION TO AMEND FILED BY J. M. PARKER ON MAY 1, 2006

In The Circuit Court Of Lee County, Alabama

JENNIFER M. GOLDEN                    *
                                      *
        Plaintiff,                    *
                                      *
Vs.                                   *     CASE NUMBER: CV-06-106
                                      *
                                      *
DEER VALLEY HOMEBUILDERS,             *
INC., A CORPORATION TIMBERLINE        *
HOMES, INC., A CORATION;              *
JOHN MARK PARKER, AN INDIVIDUAL,*
                                      *
        Defendant.                    *

## MOTION TO AMEND

Comes Now, the Defendant, John Mark Parker, an Individual, by amended and

removed from the complaint by substituting J.M.P. Enterprises Services, Inc. for

Fictitious Defendant "A" as this is the true name of Defendant, John Mark Parker.

Respectfully submitted on this the _____/_____ day of May, 2006.


                                    Parker & Parker


                                    J. M. Parker
                                    P. O. Box 3501
                                    La Grange, Ga. 30241
                                    706-594-1762
                                     706-882-6243 (FAX)

FILED
MAY 0 1 2006
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK



EXHIBIT

**EXHIBIT W:**

**MOTION TO STAY FILED BY J. M. PARKER ON MAY 1, 2006**

In The Circuit Court Of Lee County, Alabama

**JENNIFER M. GOLDEN**          *

     **Plaintiff,**              *

                         *

**Vs.**                          *      **CASE NUMBER: CV-06-106**

                         *

**DEER VALLEY HOMEBUILDERS,**   *
**INC., A CORPORATION TIMBERLINE**   *
**HOMES, INC., A CORATION;**        *
**JOHN MARK PARKER, AN INDIVIDUAL,** *

                         *

     **Defendant.**            *

*Motion to stay* ━

**COMES NOW, the Defendants, (JOHN MARK PARKER) substituting J.M.P.**

**Enterprises Serves INC., file a Motion to Stay and to Compel Arbitration as with**

**the binding agreement signed held with the Plaintiff.**

     **Respectfully submitted on this the ___/___ day of May, 2006.**

                                   **Parker & Parker**

                                   **J. M. Parker**
                                   **P. O. Box 3501**
                                   **La Grange, Ga. 30241**
                                   **706-594-1762**
                                    **706-882-6243 (FAX)**

**F I L E D**

**MAY 0 1 2006**

IN OFFICE
**CORINNE T. HURST**
**CIRCUIT CLERK**



EXHIBIT

W

# EXHIBIT X:

# PLAINTIFF'S FIRST AMENDED COMPLAINT IN STATE-COURT

IN THE CIRCUIT COURT OF LEE COUNTY

FILED

OCT 0 3 2006

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

JENNIFER M. GOLDEN,
        PLAINTIFF,

v.

CASE NO. CV-2006-106

DEER VALLEY HOMEBUILDERS, INC.,
a CORPORATION; TIMBERLINE HOMES, INC.,
a corporation; JMP ENTERPRISE SERVICES, INC.,
a corporation, and JOHN MARK PARKER,
an individual.
        DEFENDANTS

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Comes now the plaintiff and adds JMP ENTERPRISE SERVICES, INC., a corporation, as a defendant and substitutes the following for the complaint originally filed in this action on February 14, 2006:

1.   The plaintiff is an individual residing at 2999 Lee Road 17, Opelika, AL.

2.   Timberline Homes, Inc., is a corporation engaged in the business of selling manufactured homes.

3.   John Mark Parker is an individual engaged in the business of installing manufactured homes.

4.   JMP Enterprise Services, Inc., is a Georgia corporation engaged in the business of installing manufactured homes. Its agent for service of process is John Mark Parker, 2205 Greenville Road, LaGrange, GA 30240.

5.   Deer Valley Homebuilders, Inc., is a corporation engaged in the business of constructing manufactured homes.



EXHIBIT
X

## CLAIMS AGAINST DEER VALLEY
## COUNT I: BREACH OF EXPRESS WARRANTY

6.   On or about April 27, 2005, the plaintiff purchased a home manufactured by Deer Valley.

7.   Deer Valley had manufactured the home specifically for the plaintiff.

8.   The plaintiff purchased the home for her personal, family, or household use.

9.   Deer Valley expressly warranted to the plaintiff by written warranty that the home was free from manufacturing defects in material or workmanship and that it would repair any such defects.

10.  The home contained substantial manufacturing defects.

11.  The plaintiff gave Deer Valley notice of this breach of warranty as provided in the warranty or Deer Valley has waived any failure to give notice as provided in the warranty.

12.  Deer Valley attempted to make repairs on some items, but has failed to repair the home properly and has failed to complete repairs. As a result, Deer Valley has breached the warranty, and the warranty has failed of its essential purpose.

13.  As a proximate consequence of this defendant's breach of warranty, the plaintiff has suffered annoyance, inconvenience, and mental anguish, and the value of the home is less than it would have been if the home had been as warranted and if the defendant had performed according to its warranty.

## COUNT II: BREACH OF IMPLIED WARRANTY

14.  On or about April 27, 2005, the plaintiff purchased a manufactured home constructed by Deer Valley.

15.  Deer Valley manufactured the home specifically for the plaintiff.

2

16. The plaintiff purchased the home for her personal, family, or household use.

17. Pursuant to section 7-2-314 of the Alabama Code and section 2308(a) of title fifteen of the United States Code, the defendant impliedly warranted to the plaintiff that the home was merchantable, that it was habitable, that it was free from defects, and that it would meet the ordinary expectations of a consumer concerning a new product.

18. The home contained substantial defects upon delivery to the plaintiff.

19. The plaintiff gave Deer Valley notice of this breach of warranty, and Deer Valley failed or refused to repair some defects and failed to repair properly other defects.

20. As a proximate consequence of Deer Valley's breach of warranty, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been as warranted and if Deer Valley had performed according to its warranty.

## COUNT III: VIOLATION OF MAGNUSON MOSS ACT

21. The plaintiff incorporates herein the allegations of counts one and two.

22. This defendant's conduct described therein is a violation of the Magnuson Moss Warranty Act.

## COUNT IV: NEGLIGENT TRIM OUT

23. Deer Valley undertook to trim out the plaintiff's home after the home was placed on her property.

24. Deer Valley negligently performed this undertaking.

25. As a proximate consequence of Deer Valley's negligence, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been properly trimmed.

3

## COUNT V: WANTON TRIM OUT

26. Deer Valley undertook to trim out the plaintiff's home after the home was placed on her property.

27. Deer Valley wantonly performed its undertaking.

28. Deer Valley consciously and deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff.

29. With respect to any conduct herein for which a principal or employer is to be held liable for the wrongful conduct of an agent, servant, or employee, the plaintiff alleges that the principal knew or should have known of the unfitness of the agent, servant, or employee, and employed him or continued to employ him or continued to use his services without proper instruction or with a disregard of the rights or safety of others; or authorized the wrongful conduct; or ratified the wrongful conduct; or the act of the agent, servant, or employee was calculated to or did benefit the principal or employer.

30. As a proximate consequence of Deer Valley's wantonness, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been properly trimmed.

## COUNT VI: NEGLIGENT REPAIR

31. Deer Valley undertook to repair certain defects in the plaintiff's home.

32. Deer Valley negligently performed this undertaking.

33. As a proximate consequence of Deer Valley's negligence, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been properly repaired.

4

## COUNT VII: WANTON REPAIR

34. Deer Valley undertook to repair certain defects in the plaintiff's home.

35. Deer Valley wantonly performed its undertaking.

36. Deer Valley consciously and deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff.

37. With respect to any conduct herein for which a principal or employer is to be held liable for the wrongful conduct of an agent, servant, or employee, the plaintiff alleges that the principal knew or should have known of the unfitness of the agent, servant, or employee, and employed him or continued to employ him or continued to use his services without proper instruction or with a disregard of the rights or safety of others; or authorized the wrongful conduct; or ratified the wrongful conduct; or the act of the agent, servant, or employee was calculated to or did benefit the principal or employer.

38. As a proximate consequence of Deer Valley's wantonness, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been properly repaired.

WHEREFORE, the plaintiff demands judgment against Deer Valley Homebuilders, Inc. for such compensatory and punitive damages, in excess of $10,000, as a jury may award. The plaintiff further claims attorney's fees and costs under the Magnuson Moss Act.

5

## CLAIMS AGAINST TIMBERLINE
## COUNT VIII: BREACH OF WRITTEN WARRANTIES

39. The plaintiff entered into the written contract with Timberline attached hereto as exhibit 1.

40. In the contract, Timberline "represent[ed] and warrant[ed] to Buyer that the entire property conforms to all building codes and restrictions that may be imposed by any governmental agency national, state or local."

41. Timberline further provided the plaintiff with the Warranty of Completion of Construction attached hereto as exhibit 2. In that document, Timberline warranted the "property against defects in equipment, material, or workmanship and materials supplied or performed by the Warrantor *or any subcontractor or supplier at any tier* . . . ."

42. Timberline further warranted that the two "sections [of the home] were properly joined and sealed." Exhibit 2.

43. Finally, Timberline provided the warranty of Plans, Specifications, and Site attached as exhibit 3. In that warranty, Timberline warranted, among other things, that the foundation complied with the "Permanent Foundations Guide for Manufactured Housing."

44. The parties closed the sale on April 27, 2005, and Timberline delivered the home to the plaintiff.

45. The home and property as delivered to the plaintiff did not comply with warranties described above.

46. The plaintiff thereafter gave this defendant notice of defects in the home and property, and Timberline took no action to correct the defects.

6

47. As a proximate consequence of Timberline's breach of warranty, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been as warranted and if the defendant had performed according to its warranty.

## COUNT IX: BREACH OF IMPLIED WARRANTY

48. On or about April 27, 2005, the plaintiff purchased from Timberline a home constructed by Deer Valley.

49. The plaintiff purchased the home for her personal, family, or household use.

50. Pursuant to section 7-2-314 of the Alabama Code and section 2308(a) of title fifteen of the United States Code, Timberline impliedly warranted to the plaintiff that the home was merchantable, that it was habitable, that it was free from substantial defects, and that it would meet the ordinary expectations of a consumer concerning a new product.

51. The home contained substantial defects.

52. The plaintiff gave Timberline notice of this breach of warranty, and it failed or refused to repair the defects.

53. As a proximate consequence of Timberline's breach of warranty, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been as warranted and if the defendant had performed according to its warranty.

## COUNT X: BREACH OF IMPLIED WARRANTY

54. Prior to April 27, 2005, the plaintiff contracted to purchase from Timberline a home constructed by Deer Valley.

55. The plaintiff contracted to purchase the home for her personal, family, or household use.

56. As part of the purchase, Timberline agreed to deliver and set up the home and construct a brick foundation wall around the home.

57. Timberline impliedly warranted to the plaintiff that home would not be damaged in delivery, that the home would be properly set and installed, and the wall would be properly constructed.

58. The defendant breached such implied warranties in that it, or persons acting on its behalf, damaged the home in delivery, installation, and set up and failed to install properly the home.

59. The plaintiff gave Timberline notice of this breach of warranty, and it failed or refused to repair the defects.

60. As a proximate consequence of this defendant's breach of warranty, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been as warranted and if the defendant had performed according to its warranty.

## COUNT XI: VIOLATION OF MAGNUSON MOSS ACT

61. The plaintiff incorporates herein the allegations of the last three counts.

62. The conduct of Timberline described therein constitutes a violation of the Magnuson Moss Act.

## COUNT XII: NEGLIGENT DELIVERY AND INSTALLATION

63. Timberline contracted to deliver and install the plaintiff's home and construct a block foundation wall for the home.

8

64. Timberline's duty was a non-delegable duty.

65. Timberline, or persons acting on its behalf, undertook to deliver and install the home, and construct a block foundation wall for the home.

66. These persons negligently performed their undertaking.

67. As a proximate consequence of their negligence, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been properly delivered and installed.

### COUNT XIII: WANTON DELIVERY AND INSTALLATION

68. Timberline contracted to deliver and install the plaintiff's home and construct a block foundation wall for the home.

69. Timberline's duty was a non-delegable duty.

70. Timberline, or persons acting on its behalf, undertook to deliver and install the home, and construct a block foundation wall for the home.

71. These persons wantonly performed their undertaking.

72. This defendant consciously and deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiffs.

73. With respect to any conduct herein for which a principal or employer is to be held liable for the wrongful conduct of an agent, servant, or employee, the plaintiff alleges that the principal knew or should have known of the unfitness of the agent, servant, or employee, and employed him or continued to employ him or continued to use his services without proper instruction or with a disregard of the rights or safety of others; or authorized the wrongful conduct; or ratified the wrongful conduct; or the act of

9

the agent, servant, or employee was calculated to or did benefit the principal or employer.

74. As a proximate consequence of the wantonness of Timberline, the plaintiff has suffered annoyance, inconvenience, mental anguish, and the value of the home is less than it would have been if the home had been properly delivered and installed.

### COUNT XIV: REFUND OF PAYMENTS

75. The plaintiff contracted with Timberline for the purchase and installation of a manufactured home and paid it $10,000.00.

76. Section 24-5-32 of the Alabama Code provides, "All installers of manufactured homes and manufactured buildings must be certified by the commission to install such structures."

77. Timberline was not certified to install manufactured homes.

78. Regulation 535-X-12.04 of the Alabama Manufactured Housing Commission provides, "No person, *retailer*, or manufacturer shall *employ* any person, firm, or corporation as an installer who is not certified as required . . . ."

79. Timberline contracted with John Mark Parker or JMP Enterprises to install the home.

80. Neither Parker nor Timberline was certified to install manufactured homes.

81. The Alabama Manufactured Housing Commission inspected the installation on April 7, 2005, and determined that the home was not installed as required by its rules and regulations. Exhibit 4.

82. Section 24-5-33 of the Alabama Code provides, "It is a misdemeanor for any person to install, allow to be installed, occupy, *or allow to be occupied*, any

manufactured home . . . which is not in accordance with the uniform standards and the rules and regulations adopted and set forth by the commission . . . ."

83. On April 27, 2005, Timberline closed the sale to the plaintiff, and the plaintiff paid Timberline the additional sum of $74,095.

84. Timberline's contracting to deliver and set up the plaintiff's home, when it was not licensed to do so, was contrary to law; Timberline's employment of an unlicensed contractor to install the home was contrary to law, and Timberline's closing the sale to the plaintiff without first correcting the defects in the home was contrary to law.

85. Allowing Timberline to retain the plaintiff's payments is contrary to the public policy of Alabama. Consequently, the plaintiff is entitled to a refund from Timberline in the amount of $84,095.

## COUNT XV: FRAUD BY FAILURE TO DISCLOSE

86. The plaintiff incorporates herein the allegations of the last count.

87. Timberline innocently, negligently, wantonly, or intentionally withheld, concealed, and failed to disclose to the plaintiffs certain material facts that it was under a duty to communicate to her based upon the particular facts of the case; namely, (a) that Parker and JMP were not licensed, as required by law, to install manufactured homes (b) that the home and the installation of the home did not comply with the regulations of the Alabama Manufactured Housing Commission; (c) that Alabama law prohibited occupancy of the home; and (d) federal law prohibited the defendant from closing the sale to the plaintiff.

88. In reasonable reliance on Timberline, the plaintiff paid Timberline for the home and made no objection to Parker's installing it.

11

89. The defendant consciously and deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff.

90. With respect to any conduct herein for which a principal or employer is to be held liable for the wrongful conduct of an agent, servant, or employee, the plaintiff alleges that the principal knew or should have known of the unfitness of the agent, servant, or employee, and employed him or continued to employ him or continued to use his services without proper instruction or with a disregard of the rights or safety of others; or authorized the wrongful conduct; or ratified the wrongful conduct; or the act of the agent, servant, or employee was calculated to or did benefit the principal or employer.

91. As a proximate consequence of Timberline's failure to disclose, the plaintiff has suffered annoyance, inconvenience, and mental anguish, and the value of the home is less than it otherwise would have been.

WHEREFORE, the plaintiff demand judgment against Timberline Homes, Inc., for such compensatory and punitive damages, in excess of $10,000, as the arbitrator may award. The plaintiff further claims attorney's fees and costs under the Magnuson Moss Act.

## CLAIMS AGAINST JOHN MARK PARKER and JMP ENTERPRISE

## COUNT XVI: NEGLIGENT DELIVERY AND INSTALLATION

92. Parker and JMP, acting by and through their agents, servants, and employees, undertook to deliver and install the plaintiff's home.

93. Parker and JMP negligently performed this undertaking.

12

94. As a proximate consequence of these defendants' negligence, the home was not properly installed, and it was damaged; the plaintiff has suffered annoyance, inconvenience, and mental anguish; and the value of the home is now less than it otherwise would have been.

### COUNT XVII: WANTON DELIVERY AND INSTALLATION

95. Parker and JMP, acting by and through their agents, servants, and employees, undertook to deliver and install the plaintiff's home.

96. This defendant wantonly performed this undertaking.

97. This defendant consciously and deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff.

98. With respect to any conduct herein for which a principal or employer is to be held liable for the wrongful conduct of an agent, servant or employee, the plaintiff allege that the principal knew or should have known of the unfitness of the agent, servant, or employee, and employed him or continued to employ him or continued to use his services without proper instruction or with a disregard of the rights or safety of others; or authorized the wrongful conduct; or ratified the wrongful conduct; or the act of the agent, servant, or employee was calculated to or did benefit the principal or employer.

99. As a proximate consequence of these defendants' wantonness, the home was not properly installed and it was damaged; the plaintiff has suffered annoyance, inconvenience, and mental anguish; and the value of the home is less than it otherwise would have been.

## COUNT XVIII:  BREACH OF IMPLIED WARRANTY

100. Parker and JMP, acting by and through their agents, servants, and employees, undertook to deliver and install the plaintiff's home.

101. These defendants impliedly warranted to the plaintiff that the home would not be damaged during delivery and installation and would be properly set and installed.

102. Parker and JMP, acting by and through their agents, servants, and employees damaged the home in delivery and installation and failed to install the home properly.

103. The plaintiff gave these defendants' notice of the damage, and they failed to correct it.

104. As a proximate consequence of these defendants' breach of warranty, the home was damaged; the plaintiff has suffered annoyance, inconvenience, and mental anguish; and the value of the home is less than it otherwise would have been.

## COUNT XIX: FRAUD BY FAILURE TO DISCLOSE

105. The plaintiff incorporates herein the allegations of last three counts.

106. Parker and JMP innocently, negligently, wantonly, or intentionally withheld, concealed, and failed to disclose to the plaintiff certain material facts that they were under a duty to communicate to the plaintiff based upon a confidential relationship between the parties or the particular facts of the case; namely, that they were not licensed, as required by law, to install manufactured homes.

107. In reasonable reliance on the defendants, the plaintiff paid Timberline for the home and made no objection to JMP's and Parker's installing it.

108. These defendants consciously and deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff.

109. With respect to any conduct herein for which a principal or employer is to be held liable for the wrongful conduct of an agent, servant, or employee, the plaintiff alleges that the principal knew or should have known of the unfitness of the agent, servant, or employee, and employed him or continued to employ him or continued to use his services without proper instruction or with a disregard of the rights or safety of others; or authorized the wrongful conduct; or ratified the wrongful conduct; or the act of the agent, servant, or employee was calculated to or did benefit the principal or employer.

110. As a proximate consequence of these defendants' failure to disclose, the plaintiff has suffered annoyance, inconvenience, and mental anguish, and the value of the home is less than it otherwise would have been.

WHEREFORE, the plaintiff demands judgment against John Mark Parker and JMP Enterprise Services, Inc., a corporation, for such compensatory and punitive damages, in excess of $10,000, as a jury may award.

HOWARD, DUNN, HOWARD & HOWARD,
Attorneys for Plaintiff

By _____
G. Houston Howard II (HOW15)

OF COUNSEL:
G. HOUSTON HOWARD II
HOWARD, DUNN, HOWARD & HOWARD
P. O. BOX 1148
WETUMPKA, AL 36092
(334) 567-4356

PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL ISSUES.

_____
G. Houston Howard II

15

PLAINTIFF REQUESTS SERVICE ON JMP ENTERPRISE SERVICES, INC. BY CERTIFIED MAIL.

_____

G. Houston Howard II

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document on Scott Hunt at P.O. Box 397, Hamilton, Alabama 35570; Joel A. Williams at 2500 Wachovia Tower, 420 North 20th Street, Birmingham, Alabama 35203-5203; and M. Warren Butler at P.O. Box 2727, Mobile, Alabama 36652-2727, and Jeffrey G. Hunter, P.O. Box 4128, Montgomery, AL 36103 by depositing a copy thereof in a United States mail receptacle, addressed to the last known address of such counsel, first class mail, postage prepaid, this the 29th day of September 2006.

_____

OF COUNSEL (HOW015)

16

WHEN COMPLETED AND SIGNED BY BOTH PARTIES, THIS IS A LEGALLY BINDING
CONTRACT. IF THIS CONTRACT IS NOT FULLY UNDER-STOOD,
THE SERVICES OF A COMPETENT PROFESSIONAL SHOULD BE SOUGHT.

8 _____ Timberline Homes, Inc. _____ hereby agrees to sell
to Buyer _Jennifer Golden_ or Buyer's
Nominee, the real property set forth below and all improvements thereon (herein referred to as
the Property), and Buyer agrees to purchase said Property from the Seller on the terms and
conditions set forth in this contract.

**PROPERTY DESCRIPTION:** The Property is located in _Lee_ County,
(city/state _Opelika , Alabama_ and is commonly
known as (Physical Address) _2000 Lee Road 117_ zip _36804_,
has approximate lot dimensions of _____ x _____, and is legally described as
follows:_____

(If the legal description is not included at the time of execution, it may be attached to and
incorporated herein afterward.)

**PURCHASE PRICE:** Buyer warrant that buyer will have sufficient funds at closing, which
when combined with the loan(s), if any, referenced herein, will allow the Buyer to complete the
purchase of Property. The purchase price of the property to be paid by Buyer at closing is:
_one hundred three thousand dollars $00/100_ U.S. Dollars,
$ _103,000.0_

**METHOD OF PAYMENT: New Loan to be Obtained:** This agreement is made
conditional upon the Buyers Ability to Obtain a loan in the principal amount of 97% of the
purchase price listed above, with an interest rate of no more than _6.5_ % per year. The
loan balance, to be secured by a first lien security deed on the Property. The loan is to be
paid in consecutive monthly installments of principal and interest over a term of not less than
_30_ years. " Ability to Obtain" as used herein means the buyer is qualified to receive
the loan described herein based upon lenders customary and standard underwriting criteria.
The loan shall be of type listed below. The sections not marked are not made part of this
agreement.

   1) **Loan Type:** FHA
   2) **Rate Type:** Fixed Rate Mortgage

**CLOSING COST AND DISCOUNT POINTS:** At closing **Seller** shall pay a sum not to
exceed $ _4500.0_ to be used at the buyers discretion to pay for closing cost,
discount points, survey cost, insurance related to the property and if allowed by, other cost to
close including escrows and prepaid. Buyer shall pay any additional fees, closing costs,
insurance premiums or escrow amounts to fulfill lenders requirements or to otherwise close this
transaction.

**PRORATED ITEMS:** All rents, water taxes or charges, taxes, assessments, monthly
mortgage insurance premiums, fuel, prepaid service contracts, and interest on existing
mortgages shall be prorated as of the date of closing. If Buyer is to accept the Property, subject
to an existing mortgage requiring an escrow deposit for taxes, insurance, and/or other items, all
escrow payments required to be made up to the time of closing shall be made to the escrow
holder at Seller's expense and said escrow balance shall be assigned to the Buyer without
compensation to the Seller; it being expressly understood that said escrow balance is included
in the Total Purchase Price. All mortgage payments required of Seller to be made shall be
current as of the time of closing. If the exact amount of real estate taxes cannot be ascertained
at time of closing, Seller agrees to prorate said taxes on the basis of 110% of the last
available amount.

EXHIBIT 1

Seller's Initial _LCB_    Buyer's Initial _____

TH133

as specified above as being acceptable to Buyer, the sale shall be limited only to the permitted exceptions set forth above acceptable to Buyer, the sale shall be limited and Buyer shall perform the agreements made in this contract, at the office of Buyer's Attorney, on or before _____ DAY OF _____ 20 _____ or on such other date as agreed upon by both parties in writing. If title evidence or survey reveal any defect Or condition which is not acceptable to Buyer, the Buyer shall, within fifteen (15) days, notify the Seller of such title defects and Seller agrees to use reasonable efforts to rectify such defects and shall have thirty (30) days to do so, in which case this sale shall be closed within ten (10) days after delivery of acceptable evidence to Buyer and Buyer's Attorney that such defects have been cured. Seller agrees to pay for and clear all delinquent taxes, liens, and other encumbrances, unless the parties otherwise agree. If Seller is unable to convey to Buyer a good and insurable title to the Property, the Buyer shall have the right to demand all sums deposited by Buyer and held by or for the Seller. At the same time, Buyer shall return to Seller all items, if any, received from Seller, whereupon all rights and liabilities of the parties to this contract shall cease. However, the Buyer shall have the right to accept such title as Seller may be able to convey and to close this sale upon the other terms as set forth in this contract.

## RISK OF LOSS OR DAMAGE: the Seller retains Risk of loss or damage to the Property by any cause until closing.

## CONDITION OF THE PROPERTY: Seller agrees to deliver the Property to Buyer in its present condition, ordinary wear and tear excepted, and further certifies and represents that Seller knows of no latent defect in the Property. All heating, cooling, plumbing, electrical, sanitary systems, and appliances shall be in good working order at the time of closing. Seller represents and warrants that the personal property conveyed with the premises shall Buyer inspect the same property and that no substitutions will be made without the Buyer's written consent. Buyer may also inspect or cause to be inspected the foundation, roof supports, or structural member of all improvements located upon the Property. If any such system, appliance, roof, foundation, or structural member shall be found defective, Buyer shall notify Seller at or before closing and Seller shall thereupon remedy the defect forthwith at his/her sole expense (in which case the time for closing shall be reasonably extended as necessary). If the costs of such repairs shall exceed 5% of the total purchase price, Seller may elect not to make such repairs and the Buyer may elect to take the Property in such defective condition and deduct 5% from the purchase price or Buyer may, at his/her option, elect to terminate this contract and receive the full refund of all deposits and other sums tendered hereunder. In addition, Seller agrees to remove all debris from the Property by date of possession.

## OCCUPANCY: Seller shall deliver possession to Buyer no later than the closing date unless otherwise stated herein:

## ZONING: Unless the property is properly zoned for *Residential* use and there are no deed restrictions against such use at the time of closing, the Buyer shall have the right to terminate this contract and receive a full refund of all deposits made by Buyer hereunder.

## LEGAL USE: Seller represents and warrants to Buyer that the entire property conforms to all building codes and restrictions that may be imposed by any governmental agency national, state, or local. Seller also warrants that there are no building code violations on the Property and that Seller has received no notice of any building code violations for the past ten years that have not been fully corrected.

## LOCAL ORDINANCES: Seller shall procure for Buyer, at Seller's expense, all certificates of inspection, certificates of occupancy, or the like required under the terms of any local ordinance.

## R.E.S.P.A. COMPLIANCE: Seller and Buyer agree to make all disclosures and do all things necessary to comply with the provisions of the Real-Estate Settlement Procedures Act of 1974 if it is applicable to this transaction.

## REAL ESTATE CERTIFICATE: The Seller, Buyer and the Real Estate agent or broker involved in this sales transaction each certify that the terms of the sales contract are true to the best of their knowledge and belief and that any other agreement entered into by any of the parties in connection with the transaction is part of, or attached, to the sales agreement.

Seller's Initial L.E.2. _____        Buyer's Initial _____

of the contract, the buyer shall not be obligated to complete the purchase of the property described above or to incur any penalty by forfeiture of earnest money deposit or otherwise, unless the buyer has been given in accordance with HUD\FHA or department of Veterans Affairs requirements, a written statement by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct Endorsement lender setting forth the appraised value of the property of not less $_____ (Purchase Price). The Buyer shall have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraisal valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant neither the value nor the condition of the property. The buyer should satisfy himself\herself that the price and condition of the property are acceptable.

**TERMITE LETTER:** Five (5) days prior to the time of closing, **Seller** shall provide buyer with a report prepared by a _Licensed Pest Control_ operator dated within thirty (30) days of the closing, stating that each dwelling and garage has been found to be free from active infestation of termites and other wood destroying organisms. Prior to closing **Seller** shall treat active infestation of termites and other wood destroying organisms, if any. This paragraph shall not limit Buyer's rights to request that Seller repair and\or replace defects resulting from termites or wood destroying organisms. If Termites or wood destroying organisms are found the **Seller** will provide to Buyer a letter of structural integrity by a licensed contractor, engineer or home inspector.

**ADDITIONAL TERMS AND CONDITIONS:**
(a) Where the context requires, the terms that Seller and Buyer shall include are in the masculine as well as the feminine and the singular as well as the plural.
(b) There are no agreements, promises, or understandings between the parties except as specifically set forth in this contract. No alterations or changes shall be made to this contract unless the same are in writing and signed or initialed by the parties hereto.
(c) The provisions of this contract shall survive the closing and shall not merge in any deed of conveyance herein.
(d) This agreement shall be construed under the laws of the State of ___Alabama_____
(e) Other: _____

**NOTICES;** Any notices required to be given herein shall be sent to the parties listed below at respective addresses either by personal delivery or by certified mail - return receipt requested. Such notice shall be effective upon delivery or mailing.

**EXHIBITS AND ADDENDA:** All exhibits and\or addenda attached hereto listed below, or referenced herein are made part of this Agreement. If any such exhibit or addendum conflicts with any preceding paragraph, said exhibit, addendum or preceding paragraph shall control.

1.) Any repairs required by FHA will be completed and paid for by **Seller** prior to closing provided such repairs do not exceed _____ in total dollars.

2.) Seller shall pay the following lender fees: Underwriting, Document Preparation, Courier and Tax Service Fee. These cost _are__ OR are not___ _(Check One)_ included in any closing cost that the seller may have agreed to pay in accordance to the closing cost sub paragraph in this Real Estate Contract.

3.) Seller Retains $___(0.00)__.00 for earnest money.

4.) Sales Price includes $10,000 land equity.

3

TH131

SSENCE OI

Seller's Initial _L.C.S_____    Buyer's Initial _____

Witness whereof, the parties signed their names on the dates in the year set forth below.

Buyer Signature: _Jennifer Golden_____

Print Name: _Jennifer  Golden_____

SSN _421_ _25_ _7874_____

Buyer Signature: _____

Print Name: _____

SSN_____ _____ _____

Seller Signature: _A.C. Lee_____

Print Name: _A. C. Lee_____

SSN_____ _____ _____

Seller Signature: _____

Print Name: _____

SSN_____ _____ _____

This offer to Purchase said Property is ACCEPTED this

_____Day of_____20_____

Time _____: _____ PM or AM

4

Jan. 13. 2005 11:46AM    urnBank Mortgage    No. 3430    P. 6

# Warranty of Completion of Construction

U.S. Department of Housing
and Urban Development
Office of Housing
Federal Housing Commissioner

OMB Approval No. 2502-0059
(Expires 9/30/2007)

This information is required to obtain a HUD-insured single family mortgage. Public reporting burden for this collection of information is estimated to average 3 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. This agency may not conduct or sponsor, and you are not required to respond to, a collection of information unless that collection displays a valid OMB control number.

| Lender's Name, Address and Phone Number (include Area Code) | Name(s) of Purchaser/Owner |
|---|---|
| AuburnBank Mortgage<br>3206 20th Ave<br>Valley AL 36854 | Jennifer Golden |
| FHA/VA Case Number | Property Address |
| 011-5362150 | 2999 Lee Road 117<br>Opelika AL 36804 |

For good and valuable consideration, and in accordance with Section 801 of the Housing Act of 1954, and Public Law 85-857 (38 U.S.C. 3705), the undersigned Warrantor hereby warrants to the Purchaser(s) or Owner(s) identified in the caption hereof, and to his/her successors or transferees, that:

The dwelling located on the property identified in the caption hereof is constructed in substantial conformity with the plans and specifications (including any amendments thereof, or changes and variations therein) which have been approved in writing by the Federal Housing Commissioner or the Secretary of Veterans Affairs on which the Federal Housing Commissioner or the Secretary of Veterans Affairs based the valuation of the dwelling: Provided, however, That this warranty shall apply only to such instances of substantial nonconformity as to which the Purchaser(s)/ Owner(s) or his/her (their) successors or transferees shall have given written notice to the Warrantor at any time or times within one year from the date of original conveyance of title to such Purchasers(s)/Owner(s) or the date of initial occupancy, whichever first occurs: Provided further, however, That in the event (1) the Purchaser(s)/Owner(s) acquired title to the captioned property prior to the completion of construction of the dwelling thereon, such notice of nonconformity to the Warrantor may be given any time or times within one year from the date of completion or initial occupancy of such dwelling, whichever first occurs, or (2) where it has been necessary to postpone improvements such notice of nonconformity to the Warrantor as to such incomplete items may be given at any time or times within one year from the date of full completion of each of such items. The term "dwelling" as used herein shall be deemed to include all improvements or appurtenances set forth in the plans and specifications upon which the Federal Housing Commissioner or the Secretary of Veterans Affairs has based the valuation of the property, excepting those constructed by a municipality or other government authority.

The undersigned Warrantor further warrants to the Purchaser(s)/ Owner(s) or his/her (their) successors or transferees, the property against defects in equipment, material, or workmanship and materials supplied or performed by the Warrantor or any subcontractor or supplier at any tier resulting in noncompliance with standards of quality as measured by acceptable trade practices. This warranty shall continue for a period of one year from the date of original conveyance of title to such Purchaser(s) or from the date of full completion of each of any items completed after conveyance of title. The Warrantor shall remedy, at the Warrantor's expense, any defect(s) of equipment, material, or workmanship furnished by the Warrantor. Warrantor shall restore any work damaged in fulfilling the terms and conditions of this warranty.

If a manufactured (mobile) home was erected on this property, the Warrantor further warrants that (1) the property (other than the manufactured unit itself) complies with the submitted construction exhibits; (2) the manufactured home sustained no hidden damage during transportation and erection; and (3) if the home was manufactured in separate sections, the sections were properly joined and sealed.

| Manufacturer's Name, Address & Phone Number (include Area Code) |
|---|
| Timberline Homes<br>1809 Columbus Par Rway<br>Opelike, AL 36804 |

This warranty shall be in addition to, and is not in derogation of, all other rights and privileges which such Purchaser(s)/ Owner(s) or his/her (their) successors or transferees may have under any other law or instrument, and shall survive the conveyance of title, delivery of possession of the property, or other final settlement made by the Purchaser(s)/ Owner(s), and shall be binding on the Warrantor notwithstanding any provision to the contrary contained in the contract of purchase or other writing executed by the Purchaser(s)/ Owner(s) or his/her (their) successors or transferees heretofore or contemporaneously with the execution of this agreement or prior to final settlement.

This warranty is executed for the purpose of inducing the Federal Housing Commissioner or the Secretary of Veterans Affairs to make, to guarantee or to insure a mortgage on the captioned property, and the person signing for the Warrantor represents and certifies that he/she is authorized to execute the same by the warrantor and by his/her signature the Warrantor is duly bound under the terms and conditions of said warranty. The FHA Commissioner or the Secretary of Veterans' Affairs reserves the right to make a final determination as to whether a defect exists and whether the builder must remedy the defect.

| Warrantor | | Purchaser/ Acknowledgement |
|---|---|---|
| Warrantor's Title<br>General Manager | | Signature of Purchaser<br>Jennifer Golden |
| Signature<br>L. P. Lee | Date (mm/dd/yyyy)<br>11 8 04 | Signature of Purchaser | Date (mm/dd/yyyy)<br>11.8.04 |
| Builder's Name and Address<br>Timberline Homes<br>1809 Columbus Parkway<br>Opelika, AL 36804 | | Builder's Phone Number (include Area Code)<br>334-749-6538 | |

Purchaser Note: Any notice of nonconformity must be delivered to the warrantor within the period or periods set forth above.
Warning: HUD will prosecute false claims and statements. Conviction may result in criminal and/or civil penalties. (18 U.S.C. 1001, 1010, 1012; 31 U.S.C. 3729, 3802)
Provide completed copies of this warranty to both the homebuyer and the builder, at closing. Include a copy of this warranty in the case binder when sent to HUD.

Previous editions are obsolete. Combines previous HUD-92544-A.    VA form 26-1859    form HUD-92544 (6/92)<br>ref. Handbook 4145.1



EXHIBIT
2

Jan. 13. 2005 11:45AM       nBank Mortgage                                No. 3430    P. 3

# Builder's Certification
of Plans, Specifications, & Site

U.S. Department of Housing
and Urban Development
Office of Housing
Federal Housing Commissioner

OMB Approval No. 2502-0496
(exp. 09/30/2006)

Property Address (street, city, state, & zip code)

2999 Lee Road 117
Opelika Al 36804

Subdivision Name

Mortgagee (Lender's) Name & Address  (this is the lender who closed the loan)

AuburnBank Mortgage
3206 20th Ave
Valley Al 36854

FHA Case Number

011-5362150

Phone Number

334-768-5626

1. **Site Analysis Information:**  To be completed on all proposed and newly constructed properties regardless of LTV ratio.

   a. **Flood Hazards.**  Are the property improvements in a Special Flood Hazard Area (SFHA)?  ☐ Yes  ☒ No

   1) Provide the community number and date of the Flood Insurance Rate Map (FIRM) used to document your answer.  Community Number _____  Map Date _____

   2) Is the community participating in the National Flood Insurance Program and in good standing?  ☐ Yes  ☒ No

   3) If "Yes" to 1a. above, attach:
      (i)  a Letter of Map Amendment (LOMA) or;
      (ii) a Letter of Map Revision (LOMR) or;
      (iii) a signed Elevation Certificate documenting that the lowest floor (including basement) is built in compliance with 24 CFR 200.926d(c)(4).

   b. **Noise.**  Is the property located within 1000 feet of a highway, freeway, or heavily traveled road?  ☐ Yes  ☒ No
      Within 3000 feet of a railroad?  ☐ Yes  ☒ No
      Within one mile of a civil airfield or 5 miles of a military airfield?  ☐ Yes  ☒ No

   c. **Runway Clear Zones / Clear Zones.**  Is the property within 3000 feet of a civil or military airfield?  ☐ Yes  ☒ No
      If "Yes," is the property in a Runway Clear Zone / Clear Zone?  ☐ Yes  ☒ No

   d. **Explosive/Flammable Materials Storage Hazard.**  Does the property have an unobstructed view, or is it located within 2000 feet, of any facility handling or storing explosive or fire prone materials?  ☐ Yes  ☒ No

   e. **Toxic Waste Hazards.**  Is property within 3000 feet of a dump or landfill, or a site on an EPA Superfund (NPL) list or equivalent State list?  ☐ Yes  ☒ No

   f. **Foreseeable Hazards or Adverse Conditions.**
      (1) Does the site have any rock formations, high ground water levels, inadequate surface drainage, springs, sinkholes, etc.?  ☐ Yes  ☒ No
      (2) Does the site have unstable soils (expansive, collapsible, or erodible)?  ☐ Yes  ☒ No
      (3) Does the site have any excessive slopes?  ☐ Yes  ☒ No
      (4) Does the site have any earth fill?  ☐ Yes  ☒ No
      If "Yes," will foundations, slabs, or flatwork rest on the fill?  ☐ Yes  ☒ No

   If you marked "Yes" to any of the above questions in f, please attach a copy of the State licensed engineers' (soils and structural) reports, designs, and/or certifications showing compliance with HUD requirements to ensure the structural soundness of the improvements and the health and safety of the occupants.  Refer to HUD Handbook 4145.1 and FHA Data Sheet 79g.

**Complete this section when seeking eligibility for Maximum Loan-to-Value Financing.**  Items 2 and 3 must be checked.

| | |
|---|---|
| 2. ☒ | HUD Minimum Property Standards in the Code of Federal Regulations at 24 CFR 200.926d. |
| 3. ☒ | HUD Handbook 4145.1, Architectural Processing & Inspections for Home Mortgage Insurance, including Appendix 8, Site Grading & Drainage Guidelines. |

| 4. ☒ | Local/State Code | Applicable Provisions |
|---|---|---|
| | Cabo-One | All |

| | |
|---|---|
| 5. ☒ | CABO One- and Two-Family Dwelling Code, as listed in 24 CFR 200.926b. |
| 6. ☒ | CABO 1992 Model Energy Code |
| 7. ☒ | Electrical Code for One- and Two-Family Dwellings, as listed in 24 CFR 200.926b. (current edition: NFPA 70A/1964). |
| 8. ☒ | This is a manufactured (mobile) home and was constructed in accordance with the Federal Manufactured Home Construction & Safety Standards (FMHCS).  The label on the manufactured home shows compliance with the FMHCS.  I hereby certify that the plans and specifications for all other construction (i.e., site, foundation) comply with the applicable building code or HUD requirement listed above, including para. 3-4, Handbook 4145.1, and the Permanent Foundations Guide for Manufactured Housing. |

**Builder or Builder's Agent:**  I hereby certify that the site analysis information above is true and accurate to the best of my knowledge and belief and that the plans and specifications were designed to mitigate any foreseeable hazards or adverse conditions.  On all properties eligible for maximum LTV financing, I further certify that I have personally reviewed the plans, specifications, and site information submitted herewith.  Based upon my review, I hereby certify that such plans, specifications comply with the applicable building code specified above as well as complying with the HUD construction requirements listed above.  An "X" marked in the blank by each numbered item indicates that provisions from the marked code apply.

| 9. a. Name of Builder's Company or Builder's Agent  (type or print) | 10.a. Name & Title of Builder or Builder's Agent  (type or print) | |
|---|---|---|
| Timberline Homes Inc. | A. C. Lee   G.M. | 11804 |
| b. Street Address | b. Signature of Builder or Builder's Agent | Date (mm/dd/yyyy) |
| 1909 Columbus Parkway | A. C. Lee | |
| c. City, State, & Zip Code | c. Telephone Number (include area code) | |
| Opelika Al 36804 | 334-749-6538 | |

Previous editions are obsolete.              Page 1 of 3         ref. Handbook 4145.1      form HUD-92541 (4/2001)

EXHIBIT
**3**



BOB RILEY
GOVERNOR

JIM SLOAN
ADMINISTRATOR

# ALABAMA MANUFACTURED HOUSING COMMISSION
### 350 SOUTH DECATUR STREET • MONTGOMERY, ALABAMA 36104
### (334) 242-4036 • FAX (334) 240-3178
### WWW.AMHC.STATE.AL.US

May 5, 2005

1789
John Mark Parker
P.O. Box 3501
LaGrange, GA 30241

Dear Mr. Parker:

**Your Installer Certification was closed on 12/31/04.**

The Set-Up Inspection Report pertaining to the home of Jennifer Golden, located at 2999 Lee Rd 117 Opelika, Alabama 36804 (32x76 HUD#TRA546306 & 307) is enclosed for your information and immediate corrective action.

Alabama law requires anyone who installs a manufactured home to be certified with the Alabama Manufactured Housing Commission (AMHC). It also requires anyone who transports a manufactured home to be a certified installer unless they are under written contract with a licensed manufacturer or licensed retailer with the Alabama Manufactured Housing Commission. Our records indicate that you are not a certified installer. **Therefore, you must contract with a certified installer to install this home correctly within 30 days of the date of this letter, in compliance with the AMHC law, rules and regulations.**

You are assessed fines in the amount of $700.00 for this violation ($500.00, uncertified installer; $100.00, no installer decal; $100.00, no locator). This fine must be remitted to the above address by check or money order by Monday, June 5, 2005. If you do not comply within the allotted time, you case may be referred for prosecution.

You may appeal this decision by filing a written request for a hearing at this office within ten (10) days from your receipt of this letter. If you have any questions you should contact Mr. Lee Pamplin, ext. 23 or me at ext. 25.

You are advised to reimburse the homeowner any payments you received from him/her for work you were not certified to do.

Sincerely,

*Jim Sloan*

Jim Sloan
Administrator

JBS/lp

EXHIBIT
**4**

cc:  Jennifer Golden
     2999 Lee Rd 117
     Opelika, Alabama 36804

cc:  AMHC Inspector

*N [?] — weller not cert.*
*weller not cest.*

ALABAMA MANUFACTURED HOUSING COMMISSION
350 SOUTH DECATUR STREET ▪ MONTGOMERY, ALABAMA 36104
(334)242-4036 ▪ FAX (334)240-3178

## SET-UP INSPECTION REPORT

LOCATOR Y __ N ☒                                    DATE 4/7/05

### INSTALLER
John Mark Parker
PO Box 3501
LaGrange, GA 30241
CERTIFICATION # 1789   DECAL # None
INSPECTED BY: Mangum, S #18
MANUFACTURER: River Valley '05
HUD LABEL # TRA 546306  TRA 546307
SERIAL # CB77 A+B
INSIGNIA # N/A

### OWNER
Jennifer Golden
7999 Lee Rd 117
Opelika, AL 36804
COUNTY Lee
YEAR: NEW ☒   USED
SIZE OF UNIT 32 x 76
RESALE DECAL # N/A
RETAILER Timberline
CITY Opelika

| | CORRECT | INCORRECT |
|---|---|---|
| 1. FIRE SEPARATION *IAB installed* | ☒ | |
| 2. SITE PREPARATION *water standing* | | ☒ |
| 3. PIERS | | |
| *Above* FOOTINGS | ☒ | |
| *footings in water* SPACING | ☒ | |
| *W TE* ALIGNMENT | ☒ | |
| CAPS/PLATES | | ☒ |
| SHIMS | ☒ | |
| MARRIAGE WALL | ☒ | |
| PERIMETER PIERS | ☒ | |
| *at ceiling* CONSTRUCTION | | ☒ |
| *38"* PIER HEIGHT | ☒ | |
| 4. TYPE ANCHOR USED *HomePride CL #417* | | ☒ |
| DEPTH | | ☒ |
| SPACING | ☒ | |
| STABILIZER PLATE | ☒ | |
| VERTICAL TIES | ☒ | |
| *per* DIAGONAL TIES | ☒ | |
| *n.c.* LONGITUDINAL TIES | | ☒ |
| *ott* STRAP SECUREMENT | | ☒ |
| STRAP TENSION | ☒ | |
| *per* STRAP ANGLE *no strap* | | ☒ |
| 5. TYPE SYSTEM USED | N/A | |
| INSTALLATION | N/A | |

### COMMENTS:
① Water standing under home.
② All piers are to have full sized caps. (M.W. failand)
③ Several piers found leaning.
④ Anchors are to be installed to full depth until the anchor head rests on stabilizer
⑤ Longitudinal ties not installed per manufacturers instruction
⑥ Securment to vertical tie tabs not per manufacturers instruction
⑦ Strap angle is not to exceed 45°

INSTALLER MUST: (1) CERTIFY THAT CORRECTIONS HAVE BEEN MADE BY SIGNING THIS FORM
(2) RETURNING IT TO THIS OFFICE BY _____

DATE _____   SIGNATURE _____

# EXHIBIT Y:

## ANSWER OF PARKER AND JMP ENTERPRISES TO GOLDEN'S FIRST AMENDED COMPLAINT

ELECTRONICALLY FILED
11/27/2006 4:43 PM
CIRCUIT COURT OF
LEE COUNTY, ALABAMA
CORINNE T. HURST, CLERK

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

JENNIFER M. GOLDEN,                    *
                                       *
        Plaintiff,                     *
                                       *
vs.                                    *        CIVIL ACTION NO.: CV-06-106
                                       *
DEER VALLEY HOMEBUILDERS,              *
INC., A Corporation; TIMBERLINE        *
HOMES, INC., A Corporation; And        *
JOHN MARK PARKER, An                   *
Individual,                            *
                                       *
        Defendants.                    *

## ANSWER OF JOHN MARK PARKER AND JMP ENTERPRISE SERVICES, INC., TO PLAINTIFF'S FIRST AMENDED COMPLAINT

COME NOW Defendants John Mark Parker and JMP Enterprise Services, Inc., in answer to the Plaintiff's Amended Complaint, re-adopts its Answer to the Plaintiff's original Complaint as if fully set forth herein and in addition, states as follows:

1.    John Mark Parker and JMP Enterprise Services, Inc., deny the material averments of the Complaint and state that they are not guilty of any actual conduct or breach for which relief maybe granted against John Mark Parker and/or JMP Enterprise Services, Inc.

2.    John Mark Parker and JMP Enterprise Services, Inc., deny the alleged negligent delivery and installation as alleged in Count XVI of the Plaintiff's Amended Complaint and deny the Plaintiff's claims for damages as set forth therein.

3.    John Mark Parker and JMP Enterprise Services, Inc., deny the alleged wanton,



EXHIBIT

Y

delivery and installation as alleged in Count XVII of the Plaintiff's Amended Complaint and deny the Plaintiff's claims for damages as set forth therein.

4.  John Mark Parker and JMP Enterprise Services, Inc., deny the alleged breach of implied warranty as alleged in Count XVIII of the Plaintiff's Amended Complaint.

5.  John Mark Parker and JMP Enterprise Services, Inc., did not breach any alleged implied warranty to the Plaintiff and the Plaintiff is not entitled to any recovery against John Mark Parker and JMP Enterprise Services, Inc.

6.  John Mark Parker and JMP Enterprise Services, Inc., deny the alleged fraud by failure to disclose as alleged in Count XIX of the Plaintiff's Amended Complaint and deny the Plaintiff's claims for damages as set forth therein.

7.  This Defendant did not proximately cause the Plaintiff's alleged damages.

8.  This Defendant affirmatively avers that arbitration may be proper for this case, and this Defendant hereby asserts the right to arbitration and preserves any claim for relief by arbitration in this case.

9.  This Defendant affirmatively avers intervening or superseding causation.

10. This Defendant affirmatively avers contributory negligence.

11. This Defendant adopts in full all defenses raised by or available to the Co-Defendants as if set for th in full herein.

12. This Defendant reserves the right to supplement this answer in the future.

13.    This Defendant pleads improper venue.

14.    This Defendant pleads lack of jurisdiction.

15.    This Defendant pleads the general issue.


s/Jeffrey G. Hunter
JEFFREY G. HUNTER (HUN028)
ALEX L. HOLTSFORD, JR.  (HOLO48)
Attorneys For Defendants

OF COUNSEL:
NIX HOLTSFORD GILLILAND
    HIGGINS & HITSON, P.C.
Post Office Box 4128
Montgomery, Alabama 36103-4128
Telephone:          (334) 215-8585
Facsimile:          (334) 215-7101

## CERTIFICATE OF SERVICE

I hereby certify that I have this day mailed, postage prepaid, an exact copy of the foregoing document to:

G. Houston Howard, II
Attorney For Plaintiff
HOWARD, DUNN, HOWARD & HOWARD
Post Office Box 1148
Wetumpka, Alabama 36092

Warren Butler
Lyons, Pipes & Cook
Post Office Box 2727
Mobile, Alabama 36652-2727

Joel A. Williams
SADLER SULLIVAN, P.C.
Suite 2500
420 N. 20th Street
Birmingham, Alabama 35203-5203

This the 27th day of November, 2006.


s/Jeffrey G. Hunter_____
OF COUNSEL

# EXHIBIT Z:

**GOLDEN'S LETTER OF JANUARY 11, 2006, TO PARKER AND RETURN RECEIPT CARD SIGNED BY JILL PARKER**

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. John Parker
P.O. Box 3501
La Grange, Georgia
                30241

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _John Parker_    ☐ Agent
                   ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?    ☐ Yes
   If YES, enter delivery address below:    ☐ No

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered    ☒ Return Receipt for Merchandise
   ☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7004 2890 0003 6846 9406

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540



EXHIBIT
Z

PLAINTIFF'S
EXHIBIT
441

Dear Deer Valley, Timberline, and Mr. Parker      1/11/06
I purchased a home from Timberline's
Opelika office in April 2005.
Timberline sold me the home and Deer
Valley Manufactured the home. Mr. Parker
was the person who installed it. I was
under the impression that Mr. Parker
was certified and installed it correctly.
I received a letter stating that it
is not set up correctly and I have
a number of problems with the
home that need to be corrected.

1 The two sections of the home are not
joined right. There is a gap between the
sections and the home is not screwed
together on the marriage line.

2. The floor joists are seperated from the perimeter
joists.

3. The piers for the home are not constructed
right, as required by the regulations.

4. The tie downs are not installed right,
as required by the regulations.



DEFENDANT'S
EXHIBIT
23

PLAINTIFF'S
EXHIBIT
442

5. The bottom board is cut and not sealed.

6. The steps are not installed right.

7. The concrete wall is not constructed right.

8. The siding on the outside is wavy and bowed.

9. The outside trim looks bad.

10. The roof has patches all over it.

11. The shingles on the edge of the roof are ragged.

12. The metal collar around the fireplace is not sealed right.

13. Most of the inside walls are wavy and bowed.

14. The inside drywall finish is rough and needs sanding and repainting.

15. The crown molding throughout the house is wavy and bowed and there are gaps between it and the ceiling.

16. Most of the doors have problems

17. There is a gap at the top of the living room door and at the top of the utility room door. This lets air come in.

18. On the interior doors, there are large gaps between the doors and the door casings.

19. Door casings are cracked, out of square, and bowed.

20. Tile in the bathroom is loose and improperly installed.

21. Cabinet doors in the kitchen are not installed at the same height.

22. Throughout the home, switch plates and wall outlets are not level and square.

23. We still have never received the light globes or fixtures for the bathrooms.

24. I am sure there are some problems that I have missed, and when someone comes out, I will point them out to the repair person.

I would appreciate if these problems could be corrected in the next two weeks. Please call one day before you come so we can make arrangements for someone to be at home.

Thank You
Jennifer Golden
2999 Lee Rd 117
Opelika, AL 36804
(334) 742-0262

Jennifer Golden

**EXHIBIT AA:**

**EXCERPTS FROM DEPOSITION OF JOHN MARK PARKER**

.

1    ORIGINAL

IN THE CIRCUIT COURT

OF

LEE COUNTY, ALABAMA


JENNIFER M. GOLDEN,

        Plaintiff,

vs.                         CASE NO.:  CV-2006-106

DEER VALLEY HOMEBUILDERS,
INC., et al.,

        Defendants.


                * * * * * * * * * * *


        VIDEOTAPED DEPOSITION OF JOHN MARK

PARKER, taken pursuant to stipulation and

agreement before Sherry Mack, Court Reporter and

Commissioner for the State of Alabama at Large,

in the Law Offices of Nix, Holtsford, Gilliland,

Higgins & Hitson, 4001 Carmichael Road,

Suite 300, Montgomery, Alabama, on Tuesday,

October 24, 2006, commencing at approximately

11:09 a.m.


                * * * * * * * * * *



EXHIBIT
AA

36

```
  1    A.    I mean, if I had a problem with something or

  2          they had a problem without payment,

  3          University Agency would call me.  And I'd

  4          take care of it for them.

  5    Q.    Have you ever had any written contract with

  6          Timberline Homes?

  7    A.    Nope.  Verbal.

  8    Q.    What sort of verbal contract --

  9    A.    I wasn't -- I wasn't --

 10    Q.    Let me -- I'm sorry.  Let me rephrase that.

 11          Have you had a general contract with

             Timberline that covered multiple homes or you

 13          just had contracts to deliver and install

 14          particular homes?

 15    A.    You have to rephrase that.  I --

 16    Q.    You know, if Timberline asked you to install,

 17          for instance, the Golden home and you reach

 18          an agreement, I would call that a contract

 19          related to the particular home.  If you had

 20          an agreement with Timberline Homes that you

 21          would deliver all of their homes at a certain

 22          price per home, I would call that a general

             contract.
```

74

Q.   What conversations did you have with Randall
     Bracknell before delivery?

A.   Things like I had a SouthernLINC radio and he
     had one also.  He would call and say, Mark,
     is my house in?  No, not yet.  When do you
     think it's coming?  I don't know.  You have
     to call Mike Morris.  He would call Mike
     Morris.  Mike Morris would have to call
     somebody like Deer Valley and figure out.
     The house was three weeks late if I remember
     correctly.

Q.   So did your conversations with Randall before
     delivery just have to do with the timing of
     delivery, when it was going to be delivered?

A.   Uh-huh.  And he just -- whatever you
     type -- just a whatever-type guy.  You know,
     one of the deals, hey, man, what's going on
     type deal; where are y'all working at today?

Q.   Did you make any visits out to the site
     before the day you delivered the home?

A.   Yeah.

Q.   How many visits did you make to the site?

A.   Probably two.

```
 1    Q.  And do you remember when the first one was,
 2        how long before delivery of the home?
 3    A.  No.  I don't remember.  It was definitely a
 4        week or two.  Three weeks.
 5    Q.  Couple of weeks?
 6    A.  Yes, sir.
 7    Q.  And what did you do on that first visit?
 8    A.  Looked at where he had someone else grade the
 9        lot and see what it looked like.
10    Q.  And was -- at that point, was the site
11        preparation satisfactory?
12    A.  No.
13    Q.  What was not satisfactory?
14    A.  I told him he had water either running
15        towards the house or running where the pad
16        was located.  He was going to have to make
17        sure that he diverted that water before we
18        could deliver it.  It was too wet to deliver,
19        anyway.
20    Q.  Now, at that time, were you familiar with the
21        Alabama Regulations concerning set-up of
22        homes?
23    A.  Uh-huh.
```

79

```
 1    A.   It was still wet underneath the ground.  So
 2         we got stuck with the truck.  We had to get a
 3         dozer.  I called Mike Morris and asked
 4         permission to get one because they have to
 5         pay for it.
 6    Q.   And who did you get a dozer from?
 7    A.   Either Best Rental or RSC Rental or United
 8         Rental, one of the three.  I used all three
 9         of them.  I'm not sure which one I used.
10    Q.   I've got a -- which half of the home did you
11         get stuck or did you get both halves stuck?
12    A.   Both halves.
13    Q.   Which half -- which half of the home did you
14         try to put on the lot first?
15    A.   Back half.  No.  Wait a minute.  It may have
16         been the -- the front half.
17    Q.   When you got there to put the home on the
18         lot, was the site preparation satisfactory?
19    A.   I mean, yeah, the lot looked good.
20    Q.   And by that, I mean the place where the
21         mobile home was going to sit.
22    A.   Yes, sir.
23    Q.   Had the drainage problems you brought to
```

83

```
 1          it.
 2     A.   All the around.  Just make the mark all the
 3          way around.
 4     Q.   Okay.  So did you bring -- bring the home in
 5          on the road that's shown on Exhibit #501?
 6     A.   As far as I know.  I don't know if that's
 7          exactly the road number or not.  I assume it
 8          is.
 9     Q.   I mean, there was a little road there through
10          the woods, wasn't it?
11     A.   Yeah.  I mean --
12     Q.   And did you -- did you bring it down the road
13          as opposed to coming through some other way?
14     A.   No.  I brung it down the driveway that was
15          the existing driveway that was there for the
16          mother-in-law is what I thought.
17     Q.   And that's -- you got stuck coming in on that
18          driveway?
19     A.   That's right.
20     Q.   And you had to -- you said you had to pull it
21          with a dozer?
22     A.   Well, a toter truck normally is a single-axle
23          truck.
```

84

Q.   Yes, sir.

A.   And we backed off the road.  And as soon as
     those tires hit, whatever you want to call
     it, the gravel drive or whatever, it started
     to sink because it had been wet.  And it just
     spin, but it wasn't hurting nothing.  We just
     decided to get a dozer and get our airplane
     mats from the shop, brung them there, put the
     house on top of the mats, took the dozer and
     eased it right on in there.

Q.   Okay.  And so did you hook the dozer up to
     the front of the toter?

A.   Yes, sir.

Q.   And did you pull -- did you pull at an angle
     on the toter, or did you pull directly in a
     straight line?

A.   Just directly.

Q.   In a straight line?

A.   Uh-huh.

Q.   And did it take you about the same amount of
     time to unstick each half?

A.   I -- I imagine.  I don't remember.

Q.   What is an airplane mat?

86

Q.   I mean the whole thing.

A.   Probably four to five days, I'm not sure on
     that exact date.  Probably four to five days
     from the time started until the time ended.

Q.   That's what I mean.

A.   I don't think we did it all in one day
     because, if I'm not mistaken, we got the
     house in there.  And then it rained again.
     We hadn't done anything to the set-up, and
     then we came back and set the house up.

Q.   Do you have -- do you know what day or when
     you did this installation?

A.   No.

Q.   This exhibit we've marked as Exhibit #435 is
     a -- has a set-up inspection report attached
     to it.  It's either dated April the 2nd or
     the 7th.  Do you see that at the top right
     side?

A.   Uh-huh.

Q.   Is that a yes?

A.   Yes, sir.

Q.   Did you ever receive that set-up inspection
     report on this home?

133

```
1          went to see about doing it, and they said

2          they couldn't come over there unless you were

3          there.

4    Q.   Who said that?

5    A.   Jennifer Golden.

6    Q.   And was that after the lawsuit was filed?

7    A.   I don't know.  I never seen the lawsuit.

8    Q.   Well, did you get a letter from Jennifer

9          Golden?

10   A.   I didn't.

11   Q.   You didn't?

12   A.   I didn't.

13   Q.   Let me show you Exhibit #442.

14   A.   Okay.

15   Q.   This is a letter dated January the 11th,

16         2006.  Did you receive that?

17   A.   I didn't.

18   Q.   Is your address Post Office Box 3501,

19         LaGrange, Georgia?

20   A.   Yeah.

21   Q.   Is that -- do you normally get mail addressed

22         to that address?

23   A.   Normally, yeah.
```

135

| | | |
|---|---|---|
| 1 | | anything without seeing her lawyer.  I didn't |
| 2 | | know it was a lawsuit until that time.  And |
| 3 | | then I called Mike Morris back. |
| 4 | Q. | What conversation did you have with him when |
| 5 | | you called him back? |
| 6 | A. | He ain't heard nothing about it yet being a |
| 7 | | lawsuit. |
| 8 | Q. | Mr. Parker, you know you're in a lawsuit now, |
| 9 | | correct? |
| 10 | A. | Oh, yeah. |
| 11 | Q. | And before today, you knew that Jennifer |
| 12 | | Golden was saying that she had mailed you a |
| 13 | | letter, correct? |
| 14 | A. | She ain't never said nothing about mailing me |
| 15 | | a letter ever. |
| 16 | Q. | And it's your testimony under oath you've |
| 17 | | never -- you never saw this letter from |
| 18 | | Jennifer Golden; is that right? |
| 19 | A. | I've never seen it. |
| 20 | Q. | And you never had any conversations with your |
| 21 | | wife about whether she signed for a letter |
| 22 | | addressed to you? |
| 23 | A. | Nope. |

# EXHIBIT BB:

# EXCERPTS FROM DEPOSITION OF RANDALL BRACKNELL

**American Court Reporting**
**toll-free (877) 320-1050**

IN THE CIRCUIT COURT OF

LEE COUNTY, ALABAMA

CIVIL ACTION NUMBER

CV-2006-106

JENNIFER M. GOLDEN,

    Plaintiff,

vs.

DEER VALLEY HOMEBUILDERS, INC., et al.,

    Defendants.

DEPOSITION TESTIMONY OF:

RANDALL BRACKNELL

September 18, 2006

3:35 p.m.

COURT REPORTER:

GWENDOLYN P. TIMBIE, CSR



EXHIBIT
BB

**www.AmericanCourtReporting.com**
**September 18, 2006**

**American Court Reporting**
**toll-free (877) 320-1050**

Page 124

1   possible?

2        A      It was just too wet trying to

3   get in there.

4        Q      So they would have had to come

5   back another time?

6        A      Right.  And Mark said he could

7   back up.  He had a dozer he had been --

8   because he had done set five trailers that

9   week, I think he said, with a dozer

10  because of the weather.  And that's why he

11  continued on and set it.

12       Q      You told me Mark spent -- Mark

13  and his crew spent about a week and a half

14  off and on out there?

15       A      I say two -- two weeks it took

16  them to --

17       Q      To set it up?

18       A      But it wasn't every day, you

19  know, because he had so much going on.

20       Q      How many days was he actually

21  on site, setting it up?  Him or his crew.

22       A      I'd figure six.

23       Q      When Mark called you after you

**www.AmericanCourtReporting.com**
**September 18, 2006**

# EXHIBIT CC:

## EXCERPTS FROM DEPOSITION OF JENNIFER GOLDEN

Page 1

IN THE CIRCUIT COURT OF

LEE COUNTY, ALABAMA


CIVIL ACTION NUMBER

CV-2006-106


JENNIFER M. GOLDEN,

    Plaintiff,

vs.

DEER VALLEY HOMEBUILDERS, INC., et al.,

    Defendants.




DEPOSITION TESTIMONY OF:

JENNIFER M. GOLDEN




September 18, 2006

10:10 a.m.


COURT REPORTER:

GWENDOLYN P. TIMBIE, CSR

EXHIBIT
Blumberg No. 6119
CC

COPY

Page 195

1    your house?

2          A      No.

3          Q      All right.  You got a letter

4    dated May 5, 2005, from the Alabama

5    Manufactured Housing Commission; correct?

6          A      Correct.

7          Q      And that's -- it was a letter

8    directed to Mr. Parker; correct?

9          A      Right.

10         Q      And it's got you down here at

11   the bottom cc'ed; is that right?

12         A      Yes.

13         Q      And that's your address down

14   there; correct?

15         A      Yes.

16         Q      After you received this from

17   the Alabama Manufactured Housing

18   Commission, what did you do in response --

19   in regards, specifically, to Mr. Parker?

20   Did you contact him in any way?

21         A      I didn't know how to get in

22   contact with him.

23         Q      Did you send him a letter to

**American Court Reporting**
**toll-free (877) 320-1050**

Page 196

1    his address that's on the top of this

2    letter?

3          A    No, I did not.

4          Q    Did you do anything at all to

5    contact him?  Did you try to find him?

6          A    No, I did not.

7          Q    At that time, you were dealing

8    pretty much -- it looks like to me -- with

9    Deer Valley, from these reports with the

10   various things that we've already talked

11   about; correct?

12         A    Yes.

13         Q    But when you got the complaint

14   or the -- I won't say complaint, but the

15   document from the Alabama Manufactured

16   Housing Commission, you continued to

17   contact Deer Valley.  Fair?

18         A    Most likely.

19         Q    And Mr. Parker came to see

20   you.  Was it shortly after this letter, or

21   was it --

22         A    No.

23         Q    Okay.  Was it after the --

**www.AmericanCourtReporting.com**
**September 18, 2006**

**American Court Reporting**
**toll-free (877) 320-1050**

Page 232

```
1          Q       There is a claim in that
2    regard, in your lawsuit.
3          A       Because of my mental health.
4          Q       Do you have any claims for any
5    type of mental distress?
6          A       I think so.
7          Q       What would those be that you
8    think you might have?
9          A       What do you mean?  About how
10   this affected me?
11         Q       Whatever.  All I can do is ask
12   you.
13         A       I mean, what's your specific
14   question?
15         Q       Well, do you allege or do you
16   claim that this has had some adverse
17   effect on you?
18         A       Yes.
19         Q       How so?
20         A       On my mental health.
21         Q       How has it had an effect?
22         A       It stressed me out.  I went
23   through depression, had to see doctors
```

**www.AmericanCourtReporting.com**
**September 18, 2006**

**American Court Reporting**
**toll-free (877) 320-1050**

Page 233

1    about it.

2        Q       Okay.   When did you see any

3    doctors?

4        A       I believe it was in -- between

5    September and December.

6        Q       And what doctors did you see

7    between September --

8        A       It may have even been before

9    then.

10       Q       When would the earliest date

11   have been that you had mental stress,

12   where you needed to see a doctor?

13       A       I believe it might have been

14   August.

15       Q       And which doctor did you see,

16   or doctors?

17       A       Dr. Whatley is my doctor.

18       Q       Dr. Whatley?

19       A       Yes.

20       Q       What's his first name?

21       A       I'm not sure.

22       Q       And where is his office

23   located?

**American Court Reporting**
**toll-free (877) 320-1050**

Page 234

```
 1        A      In Opelika.
 2        Q      Where in Opelika?
 3        A      I couldn't give you the
 4   specific address.
 5        Q      And how long has he been your
 6   doctor?
 7        A      For years and years.
 8        Q      Is he a general practitioner,
 9   internal medicine doctor?
10        A      Yes.
11        Q      And what treatment has he
12   provided for you, as far as stress, on
13   account of your claims in this lawsuit?
14        A      He's put me on depression
15   medication and anxiety medications.
16        Q      And what medications are
17   those?
18        A      I've been through several.  I
19   believe Zoloft.
20        Q      All right.
21        A      Mirtazapine, Effexor.
22        Q      Any others?
23        A      I can't list them off the top
```

**www.AmericanCourtReporting.com**
**September 18, 2006**

**EXHIBIT DD:**

**SCHEDULING  ORDER  IN  STATE-COURT  WHERE PARKER APPEARED**

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

JENNIFER M. GOLDEN,                    *
                                       *
        Plaintiff,                     *
                                       *
vs.                                    *       CASE NUMBER: CV-06-106
                                       *
DEER VALLEY HOMEBUILDERS,              *
INC.; a Corporation TIMBERLINE         *
HOMES, INC., a Corporation;            *
JOHN MARK PARKER, an individual,       *
                                       *
        Defendant.                     *

## SCHEDULING CONFERENCE ORDER

This is a jury case which was filed on 02/14/06 and came on for a Scheduling Conference on 08/22/06.

Attorney for Plaintiff:      G. Houston Howard, III
Attorney for Defendants:     Warren Butler - Timberline Homes, Inc.
                             Joel Williams - Deer Valley Homebuilders, Inc.
                             John Mark Parker - Pro Se (Alex Holtsford has filed an appearance but apparently did not
                             get notice of the Scheduling Conference)

There are separate issues in this case relating to Arbitration and other issues relating to trial. Two Motions for Arbitration have been filed. The Plaintiff agrees to the Arbitration Motion filed by the Defendant, Timberline Homes, Inc. The Court DENIES the Motion for Arbitration filed by the Defendant, Deer Valley Homebuilders, Inc. Defendant, John Mark Parker, has filed a Motion for Arbitration and Plaintiff disputes his right Arbitration. Defendant, Parker, has thirty (30) days to respond to Plaintiff's objection to Arbitration.

The remaining issues for Trial are subject to the following ORDERS:

AMENDMENTS:      All amendments to pleadings including the adding of parties shall be filed by: 11/01/06

WITNESSES:       Names and address of witnesses and documents shall be exchanged 21 days before trial.   49

MOTIONS:         All motions including Motions for Summary Judgment shall be filed by: 12/01/06

DISCOVERY:       Discovery shall be completed by:  One week before trial   4 25 10

MEDIATION:       Motion for Mediation or Arbitration to be made within 60 days.   3/2/07

PRETRIAL
CONFERENCE:      Set for March 12, 2007 at 9:00 a.m.
                 Counsel shall prepare detailed specific factual contentions for submission in writing on
                 Pretrial date.

TRIAL DATE:      Set for April 30, 2007 at 8:30 a.m.

FURTHER
COMMENTS:        Plaintiff shall identify experts with Rule 26(b) information by 12/01/06 and make available for
                 deposition by 01/15/07

EXHIBIT
DD

# EXHIBIT EE:

# PARKER'S 2004 INSTALLATION LICENSE

# Alabama Manufactured Housing Commission

## 2004 Installer Certification Certificate

### Certification Number 1789

Pursuant to the rules and regulations of the Alabama Manufactured Housing Commission and application having been duly made and approved by the Authority having jurisdiction, this certificate is hereby issued to:

**John Mark Parker**
P. O. Box 3501
LaGrange GA 30241

This Certificate is not transferable and may be revoked for violations of the Installation Certification rules and regulations promulgated thereunder.

County: Troup
Initial School Date: 10/14/1998

Refresher Course Date: 5/15/2003

Expires: December 31, 2004

Fee: $150.00

By: _Glen Sloan_
Administrator

Blumberg No. 5114

DEFENDANT'S
EXHIBIT
14

EXHIBIT
EE

# EXHIBIT FF:

## SETTLEMENT STATEMENT DATED APRIL 27, 2005

## A. Settlement Statement

U.S. Department of Housing
and Urban Development

OMB No. 2502-0265

| B. Type of Loan | | |
|---|---|---|
| 1.☒ FHA   2.☐ FmHA   3.☐ Conv. Unins.<br>4.☐ VA   5.☐ Conv. Ins. | 6. File Number<br>2005-144 | 7. Loan Number<br>2819442 | 8. Mortgage Insurance Case Number<br>011-5362150-703 |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| Jennifer M. Golden<br>3031 Lee Road 117<br>Opelika, Alabama 36804 | Timberline Homes, Inc.<br>1809 Columbus Parkway<br>Opelika, Alabama 36801 | AuburnBank<br>100 North Gay Street<br>Auburn, AL  36830-3110 |

| G. Property Location | H. Settlement Agent | |
|---|---|---|
| 2999 Lee Road 117<br>Opelika, Alabama   36804 | Johnson, Caldwell & McCoy | |
| | Place of Settlement<br>117 North Lanier Avenue<br>Suite 201<br>Lanett, Alabama  36863 | I. Settlement Date<br>04/27/05 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract sales price | 103,000.00 | 401. Contract sales price | 103,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 1,095.00 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City/town taxes          to | | 406. City/town taxes          to | |
| 107. County taxes          to | | 407. County taxes          to | |
| 108. Assessments          to | | 408. Assessments          to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 104,095.00 | **420. GROSS AMOUNT DUE TO SELLER** | 103,000.00 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT TO SELLER** | |
| 201. Deposit or earnest money | 10,000.00 | 501. Excess Deposit (see instructions) | 10,000.00 |
| 202. Principal amount of new loan(s) | 74,095.00 | 502. Settlement charges to seller (line 1400) | 9,681.31 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. Land Equity | 20,000.00 | 506. Land Equity | 20,000.00 |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/town taxes          to | | 510. City/town taxes          to | |
| 211. County taxes          to | | 511. County taxes          to | |
| 212. Assessments          to | | 512. Assessments          to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY / FOR BORROWER** | 104,095.00 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 39,681.31 |
| **300. CASH AT SETTLEMENT FROM OR TO BORROWER** | | **600. CASH AT SETTLEMENT TO OR FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 104,095.00 | 601. Gross amount due to seller (line 420) | 103,000.00 |
| 302. Less amounts paid by/for borrower (line 220) | 104,095.00 | 602. Less reduction amount due to seller (line 620) | 39,681.31 |
| 303. CASH          FROM     BORROWER | | 603. CASH          TO     SELLER | 63,318.69 |

Jennifer M. Golden
_Jennifer M. Golden_

Timberline Homes, Inc.
_Michael K. Morris_, its Secretary - Treasurer



EXHIBIT

_FF_

Blumberg No. 5119

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
SETTLEMENT STATEMENT
PAGE 2

File Number: 2005-144

| | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| **L. SETTLEMENT CHARGES:** | | | |
| 700. | TOTAL SALES/BROKER'S COMMISSION based on price $          @          = | | |
| | Division of commission (line 700) as follows: | | |
| 701. | $          to | | |
| 702. | $          to | | |
| 703. | Commission paid at Settlement | | |
| 704. | | | |
| **800.** | **ITEMS PAYABLE IN CONNECTION WITH LOAN**                    P.O.C. | | |
| 801. | Loan Origination Fee          %   AuburnBank | | 730.00 |
| 802. | Loan Discount          % | | |
| 803. | Appraisal Fee          to   AuburnBank/Jackie Carter | | 450.00 |
| 804. | Credit Report          to   AuburnBank/MIS | | 17.00 |
| 805. | Lender's Inspection Fee          to | | |
| 806. | Mtg. Ins. Application Fee          to | | |
| 807. | Assumption Fee          to | | |
| 808. | Underwriting Fee          AuburnBank | | 450.00 |
| 809. | Tax Service Fee | | |
| 810. | Flood Cert. Fee          AuburnBank/First American Flood | | 19.00 |
| 811. | Processing Fee          AuburnBank | | 175.00 |
| 812. | Document Preparation Fee          AuburnBank | | 250.00 |
| 813. | | | |
| 814. | | | |
| 815. | | | |
| **900.** | **ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | |
| 901. | Interest from   04/27/05   to   05/01/05   @$   13.12   /day   4 day(s) | | 52.48 |
| 902. | Mortgage Insurance Premium          to   AuburnBank/FHA | 1,095.00 | |
| 903. | Hazard Insurance Premium          yrs. to   Quality Certified Insurance Services | | 848.00 |
| 904. | | | |
| 905. | | | |
| **1000.** | **RESERVES DEPOSITED WITH LENDER FOR** | | |
| 1001. | Hazard Insurance          2   mo. @$   70.87   / mo. | | 141.34 |
| 1002. | Mortgage Insurance          1   mo. @$   30.26   / mo. | | 30.26 |
| 1003. | City property taxes          mo. @$          / mo. | | |
| 1004. | County property taxes          8   mo. @$   35.03   / mo. | | 280.24 |
| 1005. | Annual Assessments          mo. @$          / mo. | | |
| 1006. | mo. @$          / mo. | | |
| 1007. | mo. @$          / mo. | | |
| 1008. | Aggregate Credit for Hazard/Flood Ins, City/County Prop Taxes, Mortgage Ins & Annual Assessments | | -210.16 |
| **1100.** | **TITLE CHARGES** | | |
| 1101. | Settlement or closing fee          to   Johnson, Caldwell & McCoy | | 350.00 |
| 1102. | Abstract or title search          to   Reli, Inc. | | 125.00 |
| 1103. | Title examination          to   Reli, Inc. | | 25.00 |
| 1104. | Title insurance binder          to | | |
| 1105. | Document preparation          to   Stewart & Associates, P.C. | | 150.00 |
| 1106. | Notary fees          to | | |
| 1107. | Attorney's fees          to | | |
| | (includes above item No:                    ) | | |
| 1108. | Title insurance          to   Reli, Inc. | | 434.00 |
| | (includes above item No:                    ) | | |
| 1109. | Lender's coverage   74,095.00 --- 76.00 | | |
| 1110. | Owner's coverage   103,000.00 --- 359.00 | | |
| 1111. | | | |
| 1112. | | | |
| 1113. | | | |
| **1200.** | **GOVERNMENT RECORDING AND TRANSFER CHARGES** | | |
| 1201. | Recording fees   Deed $   11.00   ; Mortgage $   32.00   ; Releases $   11.00 | | 54.00 |
| 1202. | City/county/stamps   Deed $   29.00   ; Mortgage $   111.15 | | 140.15 |
| 1203. | State tax/stamps   Deed $          ; Mortgage $ | | |
| 1204. | | | |
| 1205. | Conveyance fee - Reli, Inc. | | 35.00 |
| **1300.** | **ADDITIONAL SETTLEMENT CHARGES** | | |
| 1301. | Survey          to | | |
| 1302. | Pest inspection          to   S & S Termite and Pest          350S | | |
| 1303. | Ovrnght Mail, Copies, Postage | | |
| 1304. | | | |
| 1305. | Courier/Messenger Fee          Reli, Inc. | | 35.00 |
| 1306. | | | |
| 1307. | Matt Pickering          Installation Septic, Field Lines, etc. | | 4,500.00 |
| 1308. | Installation Service to Home          Hutchins Electrical Service, Inc. | | 600.00 |
| **1400.** | **TOTAL SETTLEMENT CHARGES** (enter on lines 103 and 502, Sections J and K) | 1,095.00 | 9,681.31 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Jennifer M. Golden

Michael T. Wirths   is   Secretary - Treasurer

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Johnson, Caldwell & McCoy          Date

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine or imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

RESPA, HB 4305.2 - REV. HUD1(3/86)

# EXHIBIT GG:

## STATE SET-UP INSPECTION REPORT

*No Decal*
*Installer not cert.*

ALABAMA MANUFACTURED HOUSING COMMISSION
350 SOUTH DECATUR STREET ■ MONTGOMERY, ALABAMA 36104
(334)242-4036 ■ FAX (334)240-3178

## SET-UP INSPECTION REPORT

LOCATOR Y __ N ☒                                              DATE 4/2/05

| INSTALLER | OWNER |
|---|---|
| John Mark Parker | Jennifer Golden |
| PO Box 3501 | 2999 Lee Rd 117 |
| LaGrange, GA 30241 | Opelika, AL 36804 |

CERTIFICATION # 1789   DECAL # None
INSPECTED BY: Mangum, S #18
MANUFACTURER: River Valley '05
HUD LABEL # IRA 546306  IRA 546307
SERIAL # C377 A+B
INSIGNIA # NA

COUNTY Lee
YEAR: NEW ☒   USED
SIZE OF UNIT 32x76
RESALE DECAL # NA
RETAILER Timberline
CITY Opelika

| | CORRECT | INCORRECT | COMMENTS: |
|---|---|---|---|
| 1. FIRE SEPARATION *not installed* | ☒ | | ① Water standing under home. |
| 2. SITE PREPARATION *water standing* | | ☒ | ② All piers are to have full steel |
| 3. PIERS *Heavy* | | | caps. (M.W. tailend) |
| FOOTINGS *pit footings needed* | ☒ | | ③ Several piers found leaning. |
| SPACING | ☒ | | ④ Anchors are to be installed to |
| ALIGNMENT *W TIE* | ☒ | | full depth until the anchor head rests |
| CAPS/PLATES | | ☒ | on stabilizer |
| SHIMS | ☒ | | ⑤ Longitudinal ties not installed per |
| MARRIAGE WALL | ☒ | | manufacturers instruction |
| PERIMETER PIERS *of siding* | ☒ | | ⑥ Securment to vertical tie tabs |
| CONSTRUCTION | | ☒ | not per manufacturers instruction |
| PIER HEIGHT 38" | ☒ | | ⑦ Strap angle is not to exceed 45° |
| 4. TYPE ANCHOR USED | HomeRide CH #17 | | |
| DEPTH | | ☒ | |
| SPACING | ☒ | | |
| STABILIZER PLATE | ☒ | | |
| VERTICAL TIES | ☒ | | |
| DIAGONAL TIES *per* | ☒ | | |
| LONGITUDINAL TIES *we* | | ☒ | |
| STRAP SECUREMENT *JTT* | | ☒ | |
| STRAP TENSION *tip sagg* | ☒ | | |
| STRAP ANGLE *>45* | | ☒ | |
| 5. TYPE SYSTEM USED | N/A | | |
| INSTALLATION | N/A | | |

INSTALLER MUST: (1) CERTIFY THAT CORRECTIONS HAVE BEEN MADE BY SIGNING THIS FORM
AND (2) RETURNING IT TO THIS OFFICE BY _____

DATE _____        SIGNATURE _____

PLAINTIFF'S
EXHIBIT
Blumberg No. 5113
529

EXHIBIT
Blumberg No. 5119
GG

# EXHIBIT HH:

# PURCHASE AGREEMENT DATED JANUARY 28, 2005

**Timberline Homes, Inc.**
1809 Columbus Parkway
Opelika, AL 36801
334-749-6538  fax  334-704-0382
**"Purchase Agreement-Form 500"**

In this Contract the words I, Me, and My refer to the Buyer and Co-Buyer Signing this Contract. The words You and Your refer to the Dealer/Retailer.
Subject to the terms on both pages of this agreement, you agree to sell and I agree to purchase the following described unit.

| Buyer(s): | Jennifer Golden | | | Phone 334.749.6904 | Date 1/28/2005 |
|---|---|---|---|---|---|
| Address | 3031 Lee Road 117   Opelika, Alabama   36804 | | | Salesperson | Brandon Bracknell |
| Delivery Address | 2999  Lee Road  117      Opelika, Alabama   36804 | | | | |

| Make & Model | | Year | Bedrooms | Floor Size | Hitch Size | Stock or Special Order |
|---|---|---|---|---|---|---|
| DeerValley/8001 | | 2005 | 4 | L 76  W 32 | L 80  W 32 | RSO |
| Serial Number | DVAL10500372AB | | New or Used New | Color Almond | Proposed Delivery Date ASAP | Stock Number |

| LOCATION | R-VALUE | THICKNESS | TYPE OF INSULATION | BASE PRICE OF UNIT | $ 68,050.00 |
|---|---|---|---|---|---|
| CEILING | 30 | 8.5" | Cellulose | (Tires/Axles Credit) | 550.00 |
| EXTERIOR | 19 | 6" | Fiberglass | Total Land Cost | |
| FLOORS | 11 | 3.5" | Fiberglass | Cost of Improvements | |
| | | | | SUB-TOTAL | $ 67,500.00 |

This insulation information was furnished by the manufacturer and is disclosed in compliance with the Federal Trade Commission Rule 16CRF, Section 460.16

| OPTIONAL EQUIPMENT, LABOR AND ACCESSORIES | | Sales Tax | 2,025.00 |
|---|---|---|---|
| | | Title Fees | 30.00 |
| Delivery, Set-Up. New A/C Unit Installed | INC. | Improvements | 7,750.00 |
| Power Installed | 750.00 | FHA Fees | 1,195.00 |
| Water Lines not to exceed 100' | 500.00 | | |
| Septic System not to exceed | 2,500.00 | 1.  CASH PURCHASE PRICE | $ 78,500.00 |
| Survey | 800.00 | | |
| Steps | INC. | TRADE-IN ALLOWANCE | $ |
| Block Skirting | 3,200.00 | LESS BAL DUE ON ABOVE | $ |
| | | NET ALLOWANCE | $ |
| | | CASH DOWN PAYMENT | $ 10,000.00 |
| | | CASH AS AGREED SEE REMARKS | $ |
| | | 2.  LESS TOTAL CREDITS | $ 68,500.00 |
| | | SUB-TOTAL | $ |
| | | Cash Payment | $ |
| | | 3. UNPAID BALANCE OF CASH SALE PRICE | $ 68,500.00 |
| Balance Carried to Optional Equipment | $ | | |

NOTE: WARRANTY AND EXCLUSIONS AND LIMITATIONS OF DAMAGES ON PAGE 2 OF THIS AGREEMENT

| Description of Trade-In | | Year | Bedrooms |
|---|---|---|---|
| Make | Model | | |
| Serial # | | | |
| Amount Owing to whom: | | | |
| Any Debt I owe on the Trade to be paid by: | | Me | |

**N/A**

You and I certify that the additional terms and conditions printed on page 2 of this contract are agreed to as a part of this agreement, the same as if printed above the signatures. I am purchasing the described manufactured home or vehicle; the optional equipment and accessories, the insurance as described has been voluntary; that my trade-in is free from all claims whatsoever, except as noted.

This agreement contains the entire understanding between you and me and no other representation or inducement verbal, or written, has been made which is not contained in this contract. I, or We, acknowledge receipt of this order and that I, or We, have read and understand Page 2 of this agreement.

Not Valid unless accepted and signed by an Officer of the Company or Authorized Agent.

SIGNED X _Jennifer Golden_ _____ Buyer

SOCIAL SECURITY NO 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 _____

APPROVED
Timberline Homes, Inc. — Retailer

SIGNED X _____ Buyer

SOCIAL SECURITY NO _____

See Page 2 Additional Terms and Conditions

EXHIBIT
HH

TH082

# EXHIBIT II:

# GOLDEN'S SECOND INTERROGATORIES TO PROGRESSIVE

IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

PROGRESSIVE PREFERRED
INSURANCE COMPANY
      Plaintiff

vs.                                   CASE NO. 3:06-CV-00934

JMP ENTERPRISES, INC.;
JOHN MARK PARKER; and
JENNIFER M. GOLDEN
      Defendants

## GOLDEN'S SECOND INTERROGATORIES TO PROGRESSIVE

***Instructions For Use:*** In answering the following interrogatories, you are required by law to answer each interrogatory separately and fully under oath. You are required to supply all information available to you, including information held by your attorney. If you discover additional information after filing your answers to these interrogatories, you are required by law to supplement your answers.

*Definitions:* The "state court action" refers to that action filed by Jennifer Golden in the Circuit Court of Lee County, Alabama, on or about February 14, 2006, being case number CV-2006-106.

      8. When did any agent, servant, or employee of Progressive first talk to John Mark Parker?

      9. Did any agent, servant, or employee of Progressive ever tell John Mark Parker orally that it was assuming defense of the Golden state court action?

1



10.  If the answer to the last question is yes, who told Parker this, and when?

11.  Did any agent, servant, or employee of Progressive ever tell JMP Enterprises, Inc. orally that it was assuming defense of the Golden state court action?

12.  If the answer to the last question is yes, who told the agent, servant, or employee of JMP Enterprises, Inc. this, and when?

13.  In response to interrogatory four, you state that "Jerry Knight of Progressive attempted to contact Mr. Parker on April 27, 2006, and again on May 2, 2006." With respect to each such attempted contact, please state,

    a.       Whether it was in person, by telephone, or in writing;

    b.       If the attempted contact was by telephone, please state what number you called,

2

whether you talked with anyone, and whether you left any voice mail message;

c.      If you left any voice mail message, please state the message that you left.

**HOWARD, DUNN, HOWARD & HOWARD**
Attorney for Jennifer M. Golden

By: _____
          G. Houston Howard II

Of Counsel:
**G. Houston Howard II (HOW015)**
Howard, Dunn, Howard & Howard
P.O. Box 1148
Wetumpka, Alabama 36092
Telephone:  334-567-4356
Facsimile:  334-567-7080

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on:

**R. Larry Bradford**
**Bradford & Sears, P.C.**
**2020 Canyon Road, Suite 100**
**Birmingham, AL 35216**

**John Mark Parker**
**P. O. Box 3501**
**LaGrange, GA 30242**

counsel of record, by placing the same in the U.S. Mail, postage prepaid and properly addressed, on this the _2-Y_ day of May, 2007.

_____
Of Counsel

*Doc:Houston\Golden.Jennifer\Progressive\Second.Interrogatories*

3

# EXHIBIT JJ:

# PROGRESSIVE'S ANSWERS TO SECOND INTERROGATORIES

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

PROGRESSIVE PREFERRED           )
INSURANCE COMPANY,              )
                                )
    Plaintiff,                )
                                )
v.                              ) Civil Action Number: 3:06-CV-00934
                                )
JMP ENTERPRISES, INC.;          )
JOHN MARK PARKER; and           )
JENNIFER M. GOLDEN,             )
                                )
    Defendants.               )

## OBJECTIONS AND ANSWERS TO JENNIFER GOLDEN'S SECOND INTERROGATORIES BY PLAINTIFF, PROGRESSIVE PREFERRED INSURANCE COMPANY ("PROGRESSIVE")

Comes now the defendant, Progressive Preferred Insurance Company ("Progressive"), pursuant to Rule 33 of the Federal Rules of Civil Procedure, and objects to Jennifer Golden's second interrogatories as follows:

### GENERAL OBJECTIONS

1.     Progressive objects to any and all interrogatories to the extent that they are vague, overly broad, unduly burdensome, harassing and/or not calculated to lead to the discovery of relevant or admissible evidence.

2.     Progressive objects to any and all interrogatories to the extent that they seek information protected from discovery by any privilege, including the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege or immunity.



3. Progressive objects to any and all interrogatories to the extent that they seek confidential, financial, or proprietary business information.

4. Progressive objects to any interrogatories which are not reasonably limited in time and/or scope.

5. Progressive objects to any and all interrogatories to the extent that they contain certain key terms which are not defined or that are unreasonably compound, disjunctive, or conjunctive.

These "General Objections" are applicable to and incorporated into each of the plaintiff's interrogatories as if specifically stated therein. The stating of specific objections to a particular request shall not be construed as a waiver of the plaintiff's "General Objections." Unless otherwise specifically stated, Progressive's objections to each interrogatory apply to the entire request, including each and every subsection and/or subpart of the request.

## SPECIFIC OBJECTIONS AND ANSWERS

8. Progressive's representative, Jerry Knight ("Knight"), contacted John Mark Parker on April 21, 2006.

9. Knight advised Jill Parker ("Parker") that Progressive would defend the state court action filed by Jennifer Golden ("Golden") under a reservation of rights.

10. Knight advised Parker that Progressive's defense of the state court action would be under a reservation of rights on or about June 1, 2006.

11.    Progressive's attorney objects to this interrogatory on the grounds that it is vague, overly broad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence.

12.    Progressive's attorney objects to this interrogatory on the grounds that it is vague, overly broad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence.

13.    (a)    Knight contacted John Mark Parker by telephone.

(b)    Telephone number: (706) 881-5301.

(c)    Knight left a message on voice mail on John Mark Parker's voice mail for him to return Knight's telephone call.

Progressive Preferred Insurance Company

By: _Barbara Lanham_

Its: _Casualty Specialist_

Sworn to and subscribed before me this the _26_ day of June, 2007.

_Joleen Olsen_
Notary Public NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: July 12, 2009
BONDED THRU NOTARY PUBLIC UNDERWRITERS

_Larry Bradford_
R. Larry Bradford, Attorney for Plaintiff,
Progressive Preferred Insurance Company
Attorney Bar Code: BRA039

Shane T. Sears, Attorney for Plaintiff,
Progressive Specialty Insurance Company
Attorney Bar Code: SEA026

OF COUNSEL:

Bradford & Sears, P.C.
2020 Canyon Road
Suite 100
Birmingham, AL 35216

## CERTIFICATE OF SERVICE

I hereby certify that I have this the **5th** day of July, 2007, served a copy of the foregoing on all attorneys of record by placing a copy of same in the United States Mail, postage prepaid and properly addressed as follows:

G. Houston Howard, Esq.
Howard, Dunn, Howard & Howard
P.O. Box 1148
Wetumpka, Alabama 36092

Mr. John Mark Parker
JMP Enterprises
P.O. Box 3501
LaGrange, Georgia 30242

OF COUNSEL

# EXHIBIT KK:

## AFFIDAVIT OF GORDON L. DAVIS

IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

PROGRESSIVE PREFERRED
INSURANCE COMPANY
     Plaintiff

vs.                              CASE NO. 3:06-CV-00934-WKW

JMP ENTERPRISES, INC.;
JOHN MARK PARKER; and
JENNIFER M. GOLDEN
     Defendants

### AFFIDAVIT OF GORDON L. DAVIS, PE

Before the undersigned Notary Public for the State of Alabama at Large personally appeared

Gordon L. Davis, who says on oath as follows:

1. My name is Gordon L. Davis, and I am a licensed Professional Engineer in the State of

Alabama. My Alabama license number is 10479. I have been licensed as a Professional Engineer

continuously in the State of Alabama since 1974, and I have been actively engaged in the practice

of structural engineering in Alabama since 1970. Exhibit 1 attached hereto is a true and correct copy

of my resume of training and experience. As is shown by the resume, I am also licensed as a

Professional Engineer in numerous other states.

2. I inspected the residence of Jennifer Golden at 2999 Lee Road 117, Opelika, Alabama

on April 12, 2007.

3. The home is located on a site that is significantly lower than the elevation of Lee Road

117, which is the access for the property.

4. During my inspection I went in the home, under the home, and I took photographs of

some conditions I observed.



EXHIBIT
KK

5. I personally observed an accumulation of soil on the bottom flanges of the girders and imbedded adjacent to the web of the girders. Exhibit 2 attached hereto is a true and accurate depiction of some of the conditions that I observed.

6. I also observed a curvature in the girders that was perpendicular to the frame.

7. These conditions that I observed indicate that the girders were imbedded in the ground during the transportation process.

8. I observed minor twisting and racking of door frames at the interior of the structure.

9. Some curvature of interior walls also exists. Inside the home I observed a bowed interior wall that was directly above the area where I observed the curvature or bend in the frame. Exhibits 3 and 4 truly and accurately depict the curvature in the wall.

10. The change in elevation from the county road to the home site is such an abrupt drop that, considering the length of the home, the girders under the home would have been binding and dragging across the ground surface as the home was brought from the county road on to the lot.

11. In my opinion, turning the structure as the binding conditions existed and as the home was moved from County Road 117 to the site resulted in twisting of the steel girders.

12. Based on my training and experience, and my examination of the home, it is my opinion that the damage described above is result of improper handling of the structure during the transportation process to the site. This resulted in lateral movements of the structure and caused permanent deformations in the structure.

2

13. It is also my opinion that the bowing of the interior wall at the marriage line is a direct result of the twisting of the frame in transportation.

_____

GORDON L. DAVIS

Subscribed and sworn to before me this ___3rd___ day of ___July___, 2007.

_____

NOTARY PUBLIC

*My Commission Expires:* ___12 - 2 - 07___

3

**Gordon L. Davis, P.E.**
**Consulting Structural Engineer**
P. O. Box 241371
Montgomery, Alabama  36124-1371
Phone:  (334) 252-9000
Fax:      (334) 252-9003
E-Mail:  gldavis1@mindspring.com

---

**Profile**

- Over 37 years experience as a structural engineer
- Commercial and residential structural design
- Structural design for renovation and restoration projects
- Structural inspections on commercial and residential property
- Structural evaluation and repair designs for foundations and framing systems of commercial and residential property
- Expert witness testimony

---

**Structural Design of Commercial Facilities**

Warehouses
Industrial Buildings
Schools
Hospitals
Churches
Prisons & Jails
Offices
Shopping Centers & Malls
Military Facilities
Bridges
Aircraft Hangars
Agricultural Facilities
Athletic Complexes

**Structural Design of Residential Buildings**

Single family housing
Apartments
Multi-level condominiums

---

**Education**

Bachelor of Science, Civil Engineering
Auburn University, 1970

EXHIBIT

*1*

**Employment**

1981 – Present
Owner/Structural Engineer, Davis Structural Engineers
Montgomery, Alabama

This employment includes responsible charge of structural design of commercial buildings including warehouses, industrial buildings, schools, hospitals, churches, prisons and jails, offices, shopping centers and malls, military facilities, aircraft hangars, agricultural facilities, athletic complexes, and bridges. The structural design of residential buildings includes single family housing, apartments and multi-level condominiums. Structural systems include designs using structural steel, reinforced concrete, prestressed concrete, masonry and timber. Design techniques include simple framing, continuous spans, rigid frames, semi-rigid frames and braced frames. Foundation designs include spread footings and pile foundations. As owner, the responsibilities include office management. As a structural engineer, structural inspections, evaluations and repair recommendations for framing systems and foundation systems of existing commercial and residential structures including providing construction inspections for repairs is part of the responsibilities. Expert witness testimony for structural related complaints is also provided.

1980 - 1981
Vice President - Jones, Davis and Associates, Inc.
Montgomery, Alabama

I was in responsible charge of structural design of commercial buildings, warehouses, schools, hospitals, etc. Structural systems included designs of structural steel, reinforced concrete, prestressed concrete, masonry and timber. Design techniques included simple framing, continuous spans, rigid frames, semi-rigid frames and braced frames. Foundation designs included spread footings and pile foundations. I performed structural inspections, evaluation and repair recommendations for framing systems and foundation systems of existing commercial and residential structures and provided construction inspections for repairs. I also provided expert witness testimony for structural related complaints.

1973 – 1980
Structural Engineer, Ralph E. Jones and Associates

I was in responsible charge of structural design of commercial buildings, warehouses, schools, hospitals, etc. Structural systems included designs of structural steel, reinforced concrete, prestressed concrete, masonry and timber. Design techniques included simple framing, continuous spans, rigid frames, semi-rigid frames and braced frames. Foundation designs included spread footings and pile foundations. I performed structural inspections, evaluations and repair recommendations for framing systems and foundation systems of existing commercial and residential structures and provided construction inspections for repairs. I also provided expert witness testimony for structural related complaints.

1970 – 1973
Graduate Civil Engineer, Alabama Highway Department
Montgomery, Alabama

Engineer in Training. I worked under the supervision of Professional Engineers in the layout and design of highway bridges. Designs included substructure and superstructures for all types of bridges using structural steel, reinforced concrete, and prestressed concrete.

2

**Technical and Professional Societies**

    American Concrete Institute
    American Society of Civil Engineers
    American Institute of Steel Construction
    International Code Council
    Prestressed Concrete Institute
    National Concrete Masonry Association
    Structural Engineers Association of Alabama
    Auburn Alumni Engineering Council

---

**Registration (Professional Engineer):**

    Alabama - Professional Engineer #10479
    Arkansas - Professional Engineer #5753
    Florida - Professional Engineer #21879
    Georgia - Professional Engineer #10337
    Kentucky - Professional Engineer #10,788
    Louisiana - Professional Engineer #16095
    Mississippi - Professional Engineer #8259
    North Carolina - Professional Engineer #11335
    Oklahoma - Professional Engineer #14797
    Pennsylvania - Professional Engineer #PE-054046-E
    South Carolina - Professional Engineer #12946
    Tennessee - Professional Engineer #15,306
    Texas - Professional Engineer #49186
    Virginia - Professional Engineer #031276
    West Virginia - Professional Engineer #10082



# DEPOSITION AND TRIAL APPEARANCES
## Gordon L. Davis, P.E.

## February 2002 – May 2007

Job#:      2000-433                      **Trial -**              2/26/02; 2/27/02
Client:    Nat Hess                      Property:    208 Wind Mist
Case:         Hess vs. Alexander                      Alexander City, Alabama
Location:    Elmore County Circuit Court
Case#:

---

Job #:     99236                         **Deposition -**         4/9/02
Client:    Steve Langham                 Property:
Case:      McDonald Construction, Inc. vs.
           Associated Scott Lands, Inc.
Location:     County Courthouse
              Union Springs, Alabama
Case #:

---

Job #:     2000-062                      **Deposition -**    5/1/02
Client:    David Bedgood -               Property:    408 Forest Hills Place
           Crumpton & Associates                     Alabaster, Alabama
Case:      Ralph & Linda Bingham vs.
           J. Elliott Corporation
Location:     Shelby County Circuit Court
Case #:      CV-00-907

---

Job#:      99236                         **Trial -**             5/30/02
Client:                                  Property:
Case:         McDonald Construction, Inc. vs.
              Associated Scott Lands, Inc.
Location:     County Courthouse
              Union Springs, Alabama
Case#:

---















**EXHIBIT LL:**

**LL. B. ALLEN,** *Alabama Liability Insurance Handbook (1996)*

# ALABAMA LIABILITY INSURANCE HANDBOOK

**Bibb Allen**
*of the Alabama Bar*

MICHIE
*Law Publishers*
CHARLOTTESVILLE, VIRGINIA



COPYRIGHT © 1996
BY
MICHIE
A Division of Reed Elsevier Inc.

———————

Library of Congress Catalog Card No. 96-75624
ISBN 1-55834-319-9

———————

All rights reserved

6010010

§ 4-2(b)    ALABAMA LIABILITY INSURANCE HANDBOOK

settlement, whether the settlement offers or rejections come from the injured party or the insurance company.[3]

### § 4-2(b). Reservation of Rights Letter to Be Sent to All Insureds.

It is axiomatic that a letter denying coverage, or reserving rights to contest coverage at a later date, must go not only to the named insured but to all possible insureds. Although apparently there is no Alabama law on the subject, the case of *Knox-Tenn Rental Co. v. Home Insurance Co.*[4] is sound law. In that case, Home Insurance issued a policy to Jenkins Insurance, Inc. Lowe was treasurer of the company and entitled to coverage as an officer of the corporation. Home sent a letter to Jenkins reserving its rights to defend and deny coverage at a later date. Lowe was not included in the letter nor did anyone speak to him about the letter. The insurer was held obligated to pay a $1,058,351.86 judgment because it failed to reserve its rights as to Lowe. The court, in the course of its opinion, said:

> The reservation of rights letter Home sent to Jenkins Insurance simply did not provide the level or clarity necessary to provide notice to Lowe. It is not reasonable to assume that a letter addressed to a company as a whole will come to the attention of a particular officer or employee. That is particularly true here, since Lowe's role with Jenkins was as accountant for the business, a role he also performed for at least one other company owned by Ronald Jenkins. He was not involved in all aspects of the business of Jenkins Insurance. Moreover, even if Lowe read the letter or its contents somehow came to his attention through co-workers, he reasonably could have concluded that Home's reservation of rights applied to the company and not to him in light of the fact that the

---

[3] *L & S Roofing*, 521 So. 2d at 1303.

[4] 2 F.3d 678 (6th Cir. 1993) (applying Tenn. law).

letter was addressed to Jenkins Insurance, although he and several others had been named as individual defendants in the same suit.[5]

## § 4-2(c).  Effect of Defending Without Notice of Reservation of Rights.

The general rule, and the law in Alabama, is that if an insurer takes over the defense of an action, without giving notice that it reserves the right to contest coverage, it is thereafter precluded from setting up defenses of non-coverage.[6]

## § 4-2(d).  Knowledge of Forfeiture.

A reservation of rights letter should go to an insured as soon as the insurer has knowledge of acts that would affect coverage. In *Blackwood v. Maryland Casualty Co.*,[7] the court said:

> It may be stated as a general rule that the acts or statements of an insurer admitting liability on a policy will not amount to a waiver of matters vitiating the policy, unless the insurer has knowledge of such matters at the time, and this is especially true if the insured

---

[5] *Id.* at 683.

[6] Shelby Steel Fabricators, Inc. v. USF&G, 569 So. 2d 309 (Ala. 1990); Campbell Piping Contractors, Inc. v. Hess Pipeline, 342 So. 2d 766 (Ala. 1977) ("The general rule is limited by the principle that the insurer may avoid the operation of the rule by giving notice that the assumption of the defense is not a waiver of its rights to deny coverage."); Burnham Shoes, Inc. v. West Am. Ins. Co., 504 So. 2d 238 (Ala. 1987) (Complaint alleged intentional wrongs and insurer took over the defense, without reserving its rights to deny coverage. The court held that the defense of lack of coverage had been waived. "Thus, under Alabama law, if an insurer does, in fact, undertake to defend an insured without reserving the right to withdraw its defense, it thereby waives its right to do so.").

[7] 24 Ala. App. 527, 137 So. 467 (1931) (insurer waived breach of the cooperation clause by continuing to defend after notice of a breach).

has taken no action before a denial of liability by the insurer, or has not been misled to his prejudice by such admission or act.[8]

### § 4-2(e).  Notice Must Be Timely.

For notice to the insured that the undertaking of a defense is not a waiver of any coverage defenses it might have, the notice must be timely. Quoting from *Campbell Piping Construction, Inc. v. Hess Pipeline Co.*,[9] the court, in *Burnham Shoes, Inc. v. West American Insurance Co.*,[10] said: "A like number of jurisdictions also held that the insurer need only give timely notice that its undertaking to defend does not constitute a waiver of any coverage question it might have."[11]

A sample of cases from other jurisdictions may be helpful.[12] All cases hold that notice must be given to an insured within a reasonable time after knowledge of a forfeiture is received.

---

[8] *Id.* at 530.

[9] 342 So. 2d 766 (Ala. 1977).

[10] 504 So. 2d 238 (Ala. 1987).

[11] *Id.* at 242; *see also* Alabama Farm Bur. Mut. Cas. Ins. Co. v. Adams, 289 Ala. 304, 267 So. 2d 151 (1972) (insured not prejudiced by six-month delay in giving notice from time of accident); Shelby Steel Fabricators, Inc. v. USF&G, 569 So. 2d 309 (Ala. 1990) (29 months from time of accident too long).

[12] *See, e.g.*, Cozzens v. Bazzani Bldg. Co., 456 F. Supp. 192 (Mich. 1978) (22 months between the time the complaint was received and reservation notice was too long); Fire Ins. Exch. v. Fox, 423 N.W.2d 325 (Mich. 1988) (four-month delay was not unreasonable); Saleno v. Western Cas. & Sur. Co., (CA 8 Mo. 1964) (ten-month delay was held too long); Whitney v. Continental Ins. Co., 595 F. Supp. 939 (Mass. 1984) (21 months held, as a matter of law, too long); Commercial Union Ins. Cas. v. Jedamich Enters., 536 N.Y.S. 523 (1989) (five-month delay a question for the jury).

### § 4-2(f).    Prompt Investigation Is Essential.

Investigation of the event should be made promptly and failure to investigate promptly may result in a constructive denial of coverage.[13]

### § 4-2(g).    Letter to Be Amended upon Knowledge of Additional Forfeiture.

Where an insurer reserves its rights on specific grounds and other grounds of forfeiture are brought to the insurer's attention through discovery or otherwise, the reservation of rights letter should be promptly amended to include the newly discovered grounds.[14]

### § 4-2(h).    All Grounds of Forfeiture to Be Included.

A reservation of rights letter must be clear and specific. An insurer that specifically disclaims coverage on one ground of forfeiture waives all other grounds which might have been stated but were not.[15]

---

[13] Livingston v. Auto Owners Ins. Co., 582 So. 2d 1038 (Ala. 1991) (delay of three months held to be a jury issue as to whether there was a constructive denial on a fire policy).

[14] American Ins. Co. v. Millican, 26 Ala. App. 31, 153 So. 448 (1933) ("... if its investigation develops a fact on which a forfeiture may justly be claimed and it desires and intends to rely thereon, it cannot without waiving such defense proceed thereafter as though the policy was valid. And a nonwaiver agreement does not prevent a waiver by subsequent independent acts or statement of insurer through its adjuster or other agent having authority to act in the premises. In other words, a nonwaiver agreement may be waived in like manner as any other clause in the contract of insurance. 26 *Corpus Juris*, 405 (519) (3), note 58."); Blackwood v. Maryland Cas. Co., 24 Ala. App. 527, 137 So. 467 (1931) ("If, however, Bostick breached that part of the insurance contract requiring him, at the request of defendant, to co-operate in the defense of plaintiff's claim and with a knowledge of this breach defendant continued to represent Bostick in defense of the suit, such was a waiver of the breach, and defendant cannot now plead such breach in bar of this action."); USF&G v. Remond, 221 Ala. 349, 129 So. 15 (1930).

[15] Home Indem. Co. v. Reed Equip. Co., 381 So. 2d 45 (Ala. 1980); Auto

In *Auto Owners Insurance Co. v. English*, the court wrote:

American, with knowledge of all pertinent facts, denied liability solely on the ground that it was not the primary insurer in the present situation. When an insurer specifically denies liability on one ground, it thereby waives all other grounds of forfeiture. Rhode Island Ins. Co. of Providence, R.I. v. Holley, 226 Ala. 320, 146 So. 817; Travelers Ins. Co. v. Plaster, 210 Ala. 607, 98 So. 909; Fidelity-Phoenix Fire Ins. Co. v. Ray, 196 Ala. 425, 72 So. 98; National Life & Accident Ins. Co. v. Singleton, 193 Ala. 84, 69 So. 80; Security Ins. Co. v. Laird, 182 Ala. 121, 62 So. 182; Georgia Home Ins. Co. v. Allen, 128 Ala. 451, 30 So. 537; 16 Appleman, Insurance Law and Practice, § 9260, p. 837; 45 C.J.S., Insurance, § 1005, p. 1230. Thus, when American specifically denied liability on the ground that it was not the primary insurer, it waived forfeiture for lack of sufficient notice and cooperation on the part of insured. Liverpool & London & Globe Ins. Co., Ltd., of England v. McCree, 213 Ala. 534, 105 So. 901; Travelers Ins. Co. v. Plaster, *supra*; 8 Appleman, Insurance Law and Practice, § 4747, p. 146; Indemnity Ins. Co. of North America v. Forrest, 9 Cir., 44 F.2d 465; Hunter v. Hollingsworth, 165 Va. 583, 183 S.E. 508; 8 Appleman, Insurance Law and Practice, § 4786, p. 185. Moreover, the question of cooperation of English with American is one of fact, and although the trial court made no specific finding as to this fact, the effect of the decree is that it has been determined by the trial court adversely to appellant on testimony taken orally before it.[16]

---

Owners Ins. Co. v. English, 266 Ala. 80, 94 So. 2d 397 (1957); St. Paul Fire & Marine Ins. Co. v. Smith, 280 Ala. 425, 194 So. 2d 830 (1967); Williams v. Alabama Farm Bur. Mut. Cas. Ins. Co., 416 So. 2d 744 (Ala. 1982) (by relying on the ground of non-cooperation, Alabama Farm Bureau "waived all other grounds of forfeiture"); Auto Owners Ins. Co. v. Rodgers, 360 So. 2d 716 (Ala. 1978).

[16] *English*, 266 Ala. at 86.

In *Shelby Steel Fabricators, Inc. v. USF&G,*[17] the reservation of rights letter sent to Shelby's attorney stated the following: "Since this was our first notice of the claim and the matter will require extensive investigation, it will be necessary for us to handle the matter under a non-waiver agreement pending the completion of the investigation." The non-waiver was very general and unsigned. The court said: "We are of the opinion that the correspondence that was sent to Shelby's attorney constituted *at least* constructive notice to Shelby Steel as to the reservation of rights." It is here strongly suggested by the author that the above letter is sufficient only under the exact facts involved in *Shelby Steel*.

Some insurers, apparently fearful that they will leave out something or be charged with the failure to detail the grounds for possible forfeiture, go to such extremes that an insured is bewildered by the detail. These letters often set out policy provisions that are not involved and serve to confuse rather than explain. Such letters should be discouraged. It is not necessary to detail each policy provision.

## § 4-3. Enhanced Obligation of Good Faith.

When an insurer elects to defend under a reservation of rights, it takes on an additional duty, known as "enhanced obligation of good faith."[18] The Alabama Supreme Court has laid down rigid rules of law directed to insurers and their attorneys as to their specific duties where a case is being defended by the insurer under a reservation of it rights to later deny coverage. The "enhanced obligation of good faith" is met as long as the insurance company complies with certain criteria. Where the criteria are met, the insurer need not pay for an insured's independent attorney but may use a competent attorney of its

---

[17] 569 So. 2d 309 (Ala. 1990).

[18] *Id.; see also* L & S Roofing Supply Co. v. St. Paul Fire & Marine Ins. Co., 521 So. 2d 1298 (Ala. 1987).

93

**EXHIBIT MM:**

**DECISION IN STAR INSURANCE CO. V. WARD, (Case No. 2:05-CV-197-WKW, United States District Court for the Middle District of Alabama)**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

STAR INSURANCE COMPANY,           )
                                  )
        Plaintiff,                )
                                  )
v.                                )        CASE NO. 2:05-CV-197-WKW
                                  )
A-1 METALS, INC., *et al.,*        )
                                  )
        Defendant.                )

**MEMORANDUM OPINION AND ORDER**

This cause is before the court on three motions for summary judgment (Docs. # 47, 49 and

52), filed on October 7, 2005, October 12, 2005, and October 14, 2005. For reasons to be discussed,

the Court finds that the motions filed by defendants Conrad and June Ward and Steve Cochran are

due to be GRANTED, and the motion filed by plaintiff Star Insurance Company is due to be

DENIED.

**I. FACTS AND PROCEDURAL HISTORY**

The facts contained in the parties' evidentiary submissions, viewed in a light most favorable

to the non-movant, show the following:

Conrad and June Ward ("Ward")[1] contracted with A-1 Metals in January 2003 for

construction of a metal roof on their house and barn. Steve Cochran ("Cochran"), a sales

representative for A-1 Metals, facilitated the contract. According to Ward, at the time she entered

into an agreement with A-1 Metals, Cochran represented that all A-1 Metals employees who

installed the roofing system would be factory trained. From March to June of 2003, Ward

---

[1] Conrad Ward is now deceased, and June Ward, as executrix of his estate, has been substituted as a party
for Conrad Ward. For the sake of simplicity, the Court will refer to June Ward as a singular defendant.

experienced numerous problems with the roofing system. On August 4, 2003, Ward filed suit against A-1 Metals, Cochran and others in state court, alleging, among other things, that Cochran's representations were fraudulent and that the installation of the roofing system was performed in a negligent and wanton manner.

A-1 Metals was insured through a general commercial liability policy issued by Star Insurance ("Star") which was in effect from February 12, 2003 until February 12, 2004. A-1 Metals did not attempt to notify Star when it was served with Ward's state court complaint in August 2003. Attorney Jerry Quick, without the knowledge of Cochran, entered an appearance in the state court action on behalf of both A-1 Metals and Cochran. Cochran, however, was not properly served until October or November of 2004, and had not met attorney Quick before then. In November 2004, after Cochran informed Quick that a liability insurance policy existed, Star was notified of the pending lawsuit. The trial was scheduled to begin in January 2005. Discovery was still ongoing at the time Star learned of the lawsuit. Depositions of two of the defendants were conducted in December 2004. Star did not inform the defendants as to whether it would provide a defense, nor did Star issue a reservation of rights letter. The case was tried in Elmore County in January 2005, and a jury returned a verdict in favor of Ward and against A-1 Metals and Cochran in the amount of $350,000.[2]

Star Insurance Company filed a Complaint (Doc. # 1) with this Court on March 1, 2005, seeking a declaratory judgment regarding its obligations in the underlying state court case. Ward filed an Answer and Counterclaim (Doc. # 5) on March 28, 2005. Now pending before the Court are three motions for summary judgment (Docs. # 47, 49 and 52), filed by, respectively, Ward, Cochran and Star. On March 23, 2006, this Court entered an order (Doc. # 86) limiting Star's

---

[2] The verdict has been upheld on appeal. *See Cochran v. Ward*, 2006 WL 204989 (Ala. 2006).

2

defenses in response to Ward's counterclaim.

## II. JURISDICTION AND VENUE

Star is a citizen of Michigan; A-1 Metals, Cochran and Ward are citizens of Alabama. The amount in controversy exceeds $75,000. Therefore, this Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. Additionally, the Court finds that the record includes adequate allegations supporting personal jurisdiction and venue.

## III. SUMMARY JUDGMENT STANDARD

Under Rule 56 (c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that

3

there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   On the other hand, the court must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).   After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c).

## IV. DISCUSSION

*A.    Notice to Star*

Star contends that, because it did not receive notice of the Wards' suit against Cochran and A-1 Metals until November 2004, it was not obligated to pay for the resulting state-court judgment. Star points to a provision in the insurance policy excluding any claims for which the insureds did not provide timely notice to the insurance company.  The exclusion reads:

> 2.    Duties In The Event Of Occurrence, Offense, Claim Or Suit
>
> a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.
> . . . .
>
> b.    If a claim is made or "suit" is brought against any insured, you must . . . see to it that we receive written notice of the claim or "suit" as soon as practicable.
> . . . .
>
> c.    You and any other involved insured must:
>
> > (1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit"; . . . .

4

(Doc. # 51, Ex. 3 at 22, 36.)   The policy explains that "you" refers to a named insured, and "insured" refers to any person covered under the policy. (*Id.* at 14.)  In this case, "you" referred to A-1 Metals, and "insured" referred to both A-1 Metals and Cochran.  A-1 Metals, therefore, was required to provide Star with notice of any occurrence which may have resulted in a claim; Cochran, however, was only required to provide Star with a copy of the complaint and summons after he became aware that a suit had been initiated.

It is undisputed that, upon learning of the state court suit, Cochran provided notice to Star. Although two summonses were sent to Cochran after the state court action was filed, there is no evidence that Cochran was served with either summons.  (Doc. # 47, Ex. A ¶ 4.)  Cochran testified that he was never served with a complaint and that he had "no actual knowledge" of the lawsuit until October or November of 2004.  (Doc. # 47, Ex. S.)  Although attorney Jerry Quick filed an appearance on behalf of all state court defendants, including Cochran, Cochran testified that he did not know who Quick was until October or November of 2004. (*Id.*)  The first time Quick and Cochran met, Cochran told Quick "that there was insurance for the case." (*Id.*)  Star admits that it was notified of the pending lawsuit on either November 5 or November 8, 2004. (Doc. # 47, Ex. E ¶ 5.)   Further, Quick made several attempts to contact Meadowbrook Insurance Group ("Meadowbrook"), to discuss the state court case during November and December 2004.[3] (Doc. # 47, Ex. C.)  Quick indicated to Meadowbrook's representative that A-1 Metals did not have the resources to thoroughly defend the case. (*Id.*)  Even after receiving notice of the lawsuit, Star did not notify A-1 Metals or Cochran as to whether it would provide a defense, nor did Star issue a

---

[3] The record does not describe Meadowbrook's connection to Star, but Star makes no issue of the efficacy of notice to Star through contacts with Meadowbrook.

reservation of rights letter to A-1 or Cochran. (Doc. # 47, Ex. E. ¶¶ 8, 10.) Discovery in the state

court case was still ongoing at the time Cochran provided notice to Star; the depositions of Herman

Cline, owner of A-1 Metals, and Cochran were not taken until December 17, 2004. (Doc. # 59, Exs.

X and Y.)

Star argues that it did not receive notice of the state court suit until two months before the

trial was scheduled to begin, and therefore was unable to mount a proper defense. However, the

Alabama Supreme Court has held that "whether the insurer was prejudiced by the delay is immaterial

to a determination of the reasonableness of the delay . . . ." *Southern Guaranty Ins. Co. v. Thomas*,

334 So. 2d 879, 883 (Ala. 1976). Upon learning that he had been named as a defendant in the

Wards' suit, Cochran gave notice to Star of the claims against him. When he first learned of the suit

in either October or November of 2004, Star was notified promptly. Moreover, had Star intervened

at that time, it could have participated in defending the suit. Discovery was still ongoing, and Star

had adequate time to ask for a continuance of the trial date. Even after Star was provided with notice

of the suit, it declined to participate or reserve its rights. The Court finds that Cochran provided Star

with proper notice, as required by the terms of the insurance policy, and that Star may not now rely

on lack of notice as a defense to payment of the underlying judgment.

Star argues that Cochran knew of a *potential* claim well in advance of November 2004

because he knew that the Wards were dissatisfied with the work performed on their roof. According

to the plain language of the insurance policy, however, Cochran—as an insured but not a named

insured—was only obligated to provide notice to Star upon receiving written notice of a suit or claim

against him. It is undisputed that Cochran did not know that he had been named as a defendant in

the Wards' suit until October or November of 2004. Even if Cochran had heard that the Wards were

dissatisfied, this knowledge alone was not enough to cause Cochran to believe he was liable for potential claims.

When the facts regarding notice are not disputed, adequacy of notice of pending litigation is a question of law. *Southern Guaranty*, 334 So. 2d at 882-83. Under the facts presented, the Court finds that Cochran's notice to Star was adequate under the terms of the policy, and that Cochran is therefore entitled to indemnity in the state court action.

B.    *Property Damage Exclusion*

Star claims that the Wards' state court claims against A-1 Metals and Cochran are not covered by the insurance policy. Star points to an exclusion in the policy which states that Star "will not pay for loss or damage caused by . . . [f]aulty, inadequate or defective . . . workmanship, repair, [or] construction." (Doc. # 52-1 at 9-10.) In its brief, Star neglects to cite to a specific provision of the policy where this exclusion can be found. Upon examining the insurance policy in its entirety, the Court finds this exclusion is stated only in the Commercial Property section of the policy. No such exclusion is found in the policy's general liability coverage.

The Alabama Supreme Court has repeatedly held that damage caused by roofing work is covered under general liability insurance policies which use language similar to that found in the policy in this case. *See Employers Ins. Co. of Ala., Inc. v. Ala. Roofing & Siding Co., Inc.*, 124 So. 2d 261 (Ala. 1960); *United States Fidelity & Guaranty Co. v. Bonitz Insulation Co. of Ala.*, 424 So. 2d 569 (Ala. 1982); *L.J. Moss v. Champion Ins. Co.*, 442 So. 2d 26 (Ala. 1983). The Court finds no policy language that excludes Ward's state court claims under the general liability insurance policy.

## V. CONCLUSION

For the reasons set forth above, it is hereby ORDERED that:

7

1.    Ward's Motion for Summary Judgment (Doc. # 47) is GRANTED.

2.    Cochran's Motion for Summary Judgment (Doc. # 49) is GRANTED.

3.    Star's Motion for Summary Judgment (Doc. # 52) is DENIED.

A final judgment will be entered in accordance with this order.

DONE this the 12th day of July, 2006.

    /s/   W. Keith Watkins
UNITED STATES DISTRICT JUDGE

**EXHIBIT NN:**

**REQUEST FOR ADMISSIONS ESTABLISHING DATE PARKER PAID FOR 2005 LICENSE**

IN THE CIRCUIT COURT OF LEE COUNTY

JENNIFER M. GOLDEN,
     PLAINTIFF,

v.

                            CASE NO. CV-2006-106

DEER VALLEY HOMEBUILDERS, INC.,
a CORPORATION; TIMBERLINE HOMES, INC.,
a corporation; JMP ENTERPRISE SERVICES, INC.,
a corporation, and JOHN MARK PARKER,
an individual.
     DEFENDANTS

PLAINTIFF'S SECOND REQUESTS FOR ADMISSIONS TO
JOHN MARK PARKER

Comes now the plaintiff and requests the defendant John Mark Parker to admit

the truth of the following facts:

16.   John Mark Parker did not submit any check or payment to the Alabama

Manufactured Housing Commission for his 2005 license to install manufactured homes

prior to May 19, 2005.

     HOWARD, DUNN, HOWARD & HOWARD,
      Attorneys for Plaintiff

By_____
      G. Houston Howard II (HOW15)

OF COUNSEL:
G. HOUSTON HOWARD II
HOWARD, DUNN, HOWARD & HOWARD
P. O. BOX 1148
WETUMPKA, AL 36092
(334) 567-4356



1

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document Joel A. Williams at 2500 Wachovia Tower, 420 North 20th Street, Birmingham, Alabama 35203-5203; M. Warren Butler at P.O. Box 2727, Mobile, Alabama 36652-2727, and Jeffrey G. Hunter, P.O. Box 4128, Montgomery, AL 36103 and R. Larry Bradford at 2020 Canyon Road, Suite 100, Birmingham, Alabama 35216, by depositing a copy thereof in a United States mail receptacle, addressed to the last known address of such counsel, first class mail, postage prepaid, this the 11th day of December, 2006.

OF COUNSEL (HOW015)

2

### IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

JENNIFER M. GOLDEN,                      *
                                         *
     Plaintiff,               *
                                         *
vs.                                      *     CIVIL ACTION NO.: CV-06-106
                                         *
DEER VALLEY HOMEBUILDERS,                *
INC., A Corporation; TIMBERLINE          *
HOMES, INC., A Corporation; And          *
JOHN MARK PARKER, An                     *
Individual,                              *
                                         *
     Defendants.              *

### DEFENDANT JOHN MARK PARKER'S RESPONSE TO PLAINTIFF'S SECOND REQUESTS FOR ADMISSIONS

16.     Admitted.

_____
JEFFREY G. HUNTER (HUN028)
ALEX L. HOLTSFORD, JR. (HOL048)
Attorney For Defendant

OF COUNSEL:
NIX HOLTSFORD GILLILAND
    HIGGINS & HITSON, P.C.
Post Office Box 4128
Montgomery, Alabama 36103-4128
Telephone:     (334) 215-8585
Facsimile:     (334) 215-7101

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I have this day mailed, postage prepaid, an exact copy of the foregoing document to:

G. Houston Howard, II
Attorney For Plaintiff
HOWARD, DUNN, HOWARD & HOWARD
Post Office Box 1148
Wetumpka, Alabama 36092

Joel A. Williams
SADLER SULLIVAN, P.C.
Suite 2500
420 N. 20th Street
Birmingham, Alabama 35203-5203

Warren Butler
Lyons, Pipes & Cook
Post Office Box 2727
Mobile, Alabama 36652-2727

This the 14th day of December, 2006.

_____
OF COUNSEL